# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KITCHEN WINNERS NY INC.,<br><br>Plaintiff,<br><br>v.<br><br>ROCK FINTEK LLC,<br><br>Defendant,<br><br>ROCK FINTEK LLC,<br><br>Counterclaim and Third-Party Plaintiff,<br><br>v.<br><br>KITCHEN WINNERS NY INC,<br><br>Counterclaim Defendant,<br><br>and<br><br>ADORAMA INC., HERSHEY WEINER, JOSEPH MENDLOWITZ, JNS CAPITAL HOLDINGS LLC and JOEL STERN,<br><br>Third-Party Defendants. | Civil Action No. 22-cv-05276-PAE |

## ROCK FINTEK LLC'S ANSWER, DEFENSES, COUNTERCLAIM AND THIRD-PARTY COMPLAINT

Defendant and counterclaim/third-party plaintiff Rock Fintek LLC ("Rock Fintek") as

and for its Answer and Defenses to the Complaint filed by plaintiff Kitchen Winners NY Inc.

("Kitchen Winners"), responds as follows to the corresponding paragraphs of the Complaint:

1.      Admitted that Kitchen Winners is a New York corporation with its principal place

of business in the State of New York. Rock Fintek lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations in paragraph 1.

2.      Admitted.

3.      Paragraph 3 calls for legal conclusions to which no response is required. Responding further, the April 7, 2021 Sales and Purchase Agreement between Rock Fintek on the one hand, and Kitchen Winners and Adorama Inc. ("Adorama") on the other hand (the "SPA"), speaks for itself as to the language therein.

4.      Paragraph 4 calls for legal conclusions to which no response is required. Responding further, the SPA speaks for itself as to the language therein.

5.      Admitted that Rock Fintek entered into the SPA with Kitchen Winners and Adorama, pursuant to which Kitchen Winners and Adorama agreed to sell to Rock Fintek 1,500,000 boxes of MedCare brand nitrile medical examination grade gloves (150,000,000 units) for $11.50/box, subject to a rebate, with the following specifications:

| Nitrile Gloves (Box 100) Color: Blue, Medical exam grade with FDA 510k |
| Brand: MedCare, examination glove |

Rock Fintek further states that the SPA speaks for itself as to the language therein and incorporates the SPA by reference.

6.      Rock Fintek states that the SPA speaks for itself as to the language therein and incorporates the SPA by reference.

7.      Rock Fintek states that the SPA speaks for itself as to the language therein and incorporates the SPA by reference.

8.      Denied.

9.      Denied.

10.     Denied.

11.     Admitted that Kitchen Winners and Adorama knowingly delivered to Rock Fintek gloves most or all of which did not meet the required specifications, including by providing gloves that were not the required "examination" gloves but were less expensive "protection" gloves that are not designed for medical use; by providing certain gloves were not MedCare brand gloves but fake knockoffs; by providing gloves that did not bear the required FDA 510(k) certification; and, upon information and belief, by providing gloves that were not "nitrile" examination gloves, but instead less expensive polyvinylchloride gloves.

12.     Denied.

13.     Denied.

14.     Denied.

15.     Denied.

16.     Denied.

17.     Rock Fintek repeats and realleges its responses to the paragraphs above.

18.     Paragraph 18 calls for legal conclusions to which no response is required. Responding further, the SPA speaks for itself as to the language therein.

19.     Denied.

20.     Denied.

21.     Denied.

22.     Denied.

23.     Denied.

24.     Rock Fintek repeats and realleges its responses to the paragraphs above.

25.     Denied.

26.     Denied.

27.     Denied.

## DEFENSES

1.      The Complaint fails to state a claim upon which relief can be granted.

2.      Plaintiff suffers from unclean hands, including through the fraudulent and illegal conduct set forth in the Counterclaim and Third-Party Complaint, which is incorporated by reference herein.

3.      Plaintiff has materially breached its obligations under the SPA, thereby excusing further performance by Rock Fintek, including by knowingly delivering to Rock Fintek gloves that did not meet the required specifications, by providing gloves that were not the required "examination" gloves but were less expensive "protection" gloves that are not designed for medical use; by providing certain gloves were not MedCare brand gloves but fake knockoffs; by providing a substantial number of gloves that did not bear the required FDA 510(k) certification; and, upon information and belief, by providing gloves that were not "nitrile" examination gloves, but instead less expensive polyvinylchloride gloves.

4.      The claims are barred because of the failure of a condition or conditions underlying the alleged obligations.

5.      The claims are barred in whole or in part based on rights of setoff and the plaintiff's failure to mitigate damages.

6.      The equitable claims are barred in whole or in part because remedies at law could be available.

7.      Rock Fintek reserves the right to assert additional defenses.

**Rock Fintek LLC Demands a Jury Trial on All Issues so Triable**

## COUNTERCLAIM AND THIRD-PARTY COMPLAINT

Defendant and third-party/counterclaim plaintiff Rock Fintek LLC as and for its

Counterclaim against Kitchen Winners NY Inc. ("Kitchen Winners") and for its Third-Party

Complaint against third-party defendants Adorama, Inc. ("Adorama"), Hershey Weiner and

Joseph Mendlowitz (Weiner, Mendlowitz, Kitchen Winners and Adorama are collectively

referred to herein as the "Adorama Parties"), and JNS Capital Holdings LLC ("JNS") and Joel

Stern (Stern and JNS are collectively referred to as the "JNS Parties"), and alleges as follows:

### Preliminary Statement

1.      Between in or about March and June 2021, amid personal protective equipment

shortages brought on by the global COVID-19 pandemic, the Adorama Parties, JSN Parties and

other non-party co-conspirators engaged in an elaborate fraudulent scheme to induce Rock

Fintek into buying more than $19 million worth of what the co-conspirators represented and

warranted to be MedCare brand medical grade Nitrile Examination grade gloves, bearing an

FDA 510(k) certification. At all times, the Adorama Parties and JNS Parties knew that Rock

Fintek would be delivering those gloves to its client – a major hospital group in the United States

– to be used by medical providers, and knew that Rock Fintek's representatives were prohibited

by COVID-19 related protocols from physically inspecting the products before they were loaded

by the Adorama Parties' representatives onto trucks and shipped directly to Rock Fintek's

client's hospital group's warehouses. In other words, the co-conspirators knew that Rock Fintek

had no choice but to rely on them to faithfully provide MedCare brand medical grade Nitrile

Examination gloves as specified in the contract.

2.      As detailed below, not only was the Adorama Parties' contractual performance

riddled with delays, inaccurate glove counts, and extortionate hidden charges to Rock Fintek, but

Rock Fintek has discovered that it is a victim of a massive fraudulent scheme perpetrated by the Adorama Parties and JNS Parties in that, among other things, a substantial number of gloves were not the required "examination" gloves but were less expensive "protection" gloves that are not designed for medical use; certain gloves were not MedCare brand gloves but fake knockoffs; all or a substantial number of gloves did not bear the required FDA 510(k) certification; and, even more egregiously, Rock Fintek has been made aware of recent laboratory testing showing that the gloves sold by the defendants were not the required "Nitrile" examination gloves, but instead less expensive polyvinylchloride gloves.

3.      As detailed below, the co-conspirators knew at the time when making representations to Rock Fintek regarding the glove specifications that those representations were false and misleading in order to induce Rock Fintek to buy and to continue to buy gloves. Indeed, when Rock Fintek began to discover problems with the products and sought documentation to authenticate the delivered products, the Adorama Parties responded with personal threats and extortionate demands, seeking to condition future performance or the provision of further information on the gloves already sold and delivered to Rock Fintek's client, on Rock Fintek agreeing to buy an additional $18 million of gloves from Adorama.

4.      As a direct and proximate result of their failure to perform and fraudulent business practices, the co-conspirators have caused Rock Fintek tens of millions of dollars in damages that include amounts that Rock Fintek paid to the Adorama Parties and JNS Parties, the expenses that Rock Fintek has incurred in its efforts to mitigate and remedy the breaches, lost profits, and direct harm caused by the co-conspirators' tortious interference with Rock Fintek's business relationship with its hospital group client, causing Rock Fintek to lose tens of millions of dollars in actual and anticipated profits.

**Parties**

5.      Rock Fintek LLC is a Delaware limited liability company with its principal business address in Miami Beach, Florida. The sole member of Rock Fintek is an individual who is a citizen of the State of Florida.

6.      Third-party defendant Adorama Inc. is a New York corporation with principal places of business located at 1134 53rd Street, Brooklyn, New York 11219 and 42 W 18th St, New York, NY 10011.

7.      Counterclaim defendant Kitchen Winners NY Inc. is a New York corporation with a principal place of business located at 1134 53rd Street, Brooklyn, New York 11219.

8.      Third-party defendant Hershey Weiner is an individual with an address, upon information and belief, at 1134 53rd Street, 1st Floor, Brooklyn, NY 11219.

9.      Third-party defendant Joseph Mendlowitz is an individual residing, upon information and belief, at 1765 54th St., Brooklyn, NY 11204.

10.      Third-party defendant JNS Capital Holdings LLC is a New York limited liability company with a principal place of business located, upon information and belief, at 155 Skillman Street, Suite 1L, Brooklyn, New York 11205.

11.      Third-party defendant Joel Stern is an individual residing, upon information and belief, at 201 Ross Street, Brooklyn, NY 11211.

**Jurisdiction and Venue**

12.      This Court has jurisdiction over this dispute because complete diversity exists under 28 U.S.C. § 1332 and the amount in dispute exceeds $75,000 exclusive of interest and costs.

13. Venue is appropriate in this District under section 10(b) of the Sales and Purchase Agreement between Rock Fintek, Adorama and Kitchen Winners (the "SPA"). The SPA is incorporated herein by reference.

14. Venue is also appropriate in this District as to all parties pursuant to 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the events giving rise to the claims in this lawsuit occurred in this District and each of the third-party defendants is subject to personal jurisdiction in this District.

**Factual Background**

***The Genesis of the Parties' Relationship***

15. Rock Fintek is a trading company that has been engaged, among other things, in the business of buying and selling hospital and medical supplies, including personal protective equipment ("PPE") to medical providers in the United States, such as protective gowns, face masks and gloves.

16. Adorama is a New York corporation that had historically been in the business of selling cameras and other electronic equipment online and at its Manhattan, New York City brick and mortar location.

17. Since the start of the global COVID-19 pandemic, the demand and prices for PPE skyrocketed, while supplies were limited, which caused companies like Adorama that had historically been involved in other lines of business to insert themselves into the PPE industry.

18. Kitchen Winners is an affiliate of Adorama that Adorama formed, upon information and belief, for the purpose of engaging in the PPE business.

19. Upon information and belief, Kitchen Winners is an alter-ego of Adorama in that it is dominated and controlled by Adorama and its principals for the purposes of engaging in

fraudulent PPE transactions as described herein. Upon information and belief, Adorama and

Kitchen Winners commingle funds, fail to observe corporate formalities, share officers, directors

and office space. For example, payments for the transactions detailed below were made by Rock

Fintek directly to Adorama or its attorney even when Kitchen Winners appeared as the invoicing

party. Upon information and belief, Kitchen Winners is a mere shell set up by Adorama in an

ineffective effort to shield Adorama and its principals from liability for fraudulent PPE

transactions.

20.     In early 2021, Rock Fintek was introduced to Weiner, Mendlowitz and other

representatives of Adorama and Kitchen Winners, including their employee and agent Mendel

Banon.

21.     Around the same time, Rock Fintek was also introduced to Joel Stern, the

principal of JNS. Upon information and belief, Stern and JNS are not corporate affiliates of

Adorama or Kitchen Winners, but have held themselves out as a re-seller of gloves provided by

the Adorama Parties.

22.     Stern, Weiner, Medlowitz and Banon told Rock Fintek that Adorama and Kitchen

Winners had a connection to a new nitrile glove manufacturer in China that manufactured

"MedCare" brand medical grade nitrile (also referred to as NBR) "examination" gloves.

23.     The designation of a glove as a medical grade "examination" glove is an industry

term of art that carries specific chemical and use specifications, which render such gloves fit for

medical examination purposes as opposed to what are known as "protection" gloves, which are

of a different composition, lower cost and typically used for household and other non-medical

purposes.

24.     From the outset of their dealings, Rock Fintek expressly explained to Stern,

Weiner, Medlowitz and Banon that all gloves that Rock Fintek would purchase from the

Adorama Parties and JNS Parties would be immediately sold to Rock Fintek's hospital group

client in the United States for use by medical professionals. Rock Fintek required that all gloves

had to be medical "examination" grade. Stern, Weiner, Banon and other agents of the Adorama

Parties and JNS Parties represented orally and in writing that the gloves that Kitchen Winners

and Adorama planned to sell to Rock Fintek either directly or through Stern were in fact

nitrile/NBR medical grade "examination" gloves and provided written materials purporting to

substantiate that representation.

25.     In or about March 2021, Banon provided to Rock Fintek various written materials

describing the purported MedCare examination gloves that defendants were intending to sell to

Rock Fintek, including a MedCare product presentation.

26.     The product presentation described "MedCare Nitra Force Nitrile Examination

Gloves" as meeting certain specifications and standards, including certain ASTM International

certifications, FDA 501(k) certifications, and other international standards. The presentation

identified the glove manufacturer in China as Dongguan Grinvald Technology Co., Ltd.

27.     In addition, the Adorama Parties provided Rock Fintek with an FDA 510(k)

approval letter for another potential MedCare glove manufacturer known as Zhonghong Pulin

Medical Products Co., Ltd., which approval letter specifically pertained to "MedCare Nitrile

Examination" gloves that met certain ASTM specifications.

28.     By providing these materials to Rock Fintek, the Adorama Parties represented and

warranted that the gloves that they would sell to Rock Fintek, either directly or through Stern and

JNS, were the gloves described in the MedCare product presentation and the FDA 510(k)

approval letter.

29.     Pursuant to section 510(k) of the Food, Drug and Cosmetic Act, manufacturers are generally required to notify the FDA of their intent to market a medical device at least 90 days in advance. A section 510(k) pre-market submission is typically made to the FDA to demonstrate that a particular device would be marketed as safe and effective. Defendants knew that Rock Fintek intended to resell the gloves at issue to a hospital group, which would require an FDA 510(k) certification. *See* 21 C.F.R. 807.

30.     In other words, the co-conspirators represented and warranted that the gloves they sold to Rock Fintek would be MedCare gloves manufactured by Dongguan Grinvald Technology Co., Ltd. or Zhonghong Pulin Medical Products Co., Ltd., or at the very least, another approved MedCare manufacturer that had obtained an FDA 510(k) certification, among other things.

31.     At pertinent times, the Adorama Parties and JNS Parties and their agents had superior knowledge and exclusive access to the principals and agents of Global Tooling Service ("GTS"), the owner of the MedCare brand, and to the MedCare manufacturers from whom they were sourcing the products. The Adorama Parties and JNS Parties knew that Rock Fintek did not have access to the manufacturers in China or to GTS, and that Rock Fintek was relying on the Adorama Parties and JNS Parties and their agents for accurate information about the gloves that they were selling to Rock Fintek.

32.     In addition, the Adorama Parties and JNS Parties knew at all pertinent times that due to COVID-19 related safety restrictions, Rock Fintek and its logistics providers and contracted truck drivers were not permitted to unseal the pallets of gloves delivered by the defendants and could not open and inspect the contents of the boxes of gloves prior to the gloves being shipped to Rock Fintek's hospital client's warehouses around the United States.

33.     Through documents that they provided to Rock Fintek, Kitchen Winners and

11

Adorama held themselves out as being authorized by GTS and by MedCare glove manufacturers to package or re-package the MedCare gloves that Adorama, Kitchen Winners and JNS would resell to Rock Fintek and other buyers.

34.     Initially, the parties engaged in one-off transactions, including through Stern and JNS Capital Holdings, and directly with Adorama and Kitchen Winners, by which those parties sold to Rock Fintek several tranches of what they represented to be MedCare nitrile examination gloves, including the following transactions:

35.     On or about March 5, 2021, Rock Fintek purchased a lot of gloves that the packing slip and invoice to Rock Fintek described as "Nitrile examination gloves as specs" for $420,000, along with an additional $50,000 deposit for the next purchase. Pursuant to Banon's instructions, Rock Fintek wired the funds to Adorama's attorney Mark Nussbaum.

36.     On or about March 18, 2021, Rock Fintek purchased a lot of 3,000 boxes of gloves that the packing slip and invoice to Rock Fintek described as "Nitrile examination gloves as specs" for $420,000. Pursuant to Banon's instructions, Rock Fintek wired the funds to Adorama's attorney Mark Nussbaum.

37.     Between on or about April 16, 2021 and May 2, 2021, Rock Fintek purchased at least approximately $2,654,000 worth of gloves through Stern and JSN Capital Holdings, which Stern and JNS Capital Holdings represented to be MedCare Nitrile Medical Exam grade gloves sourced through the Adorama Parties.

38.     As with all shipments of gloves at issue in this lawsuit, Rock Fintek was not permitted to examine the contents of the pallets or boxes of gloves delivered by the Adorama Parties. Instead, Adorama Parties' agents loaded sealed pallets of gloves directly onto trucks

provided by Rock Fintek to be delivered to Rock Fintek's hospital client's warehouses.

39.     Adorama's representative Banon subsequently stated in writing that the gloves that the co-conspirators were selling to Rock Fintek were not only certified pursuant to certain ASTM International standards, but were certified as chemotherapy grade gloves, even though that purported certification was not included anywhere on the actual boxes delivered to Rock Fintek's client. Upon information and belief, this representation was false.

***Adorama Parties Induce Rock Fintek to Enter into the SPA***

40.     On or about April 7, 2021, Rock Fintek entered into the SPA with Kitchen Winners and Adorama, pursuant to which Kitchen Winners and Adorama agreed to sell to Rock Fintek 1,500,000 boxes of nitrile medical examination gloves (150,000,000 units) for $11.50/box, with the following specifications:

| Nitrile Gloves (Box 100) Color: Blue, Medical exam grade with FDA 510k |
| Brand: MedCare, examination glove |

41.     Section 8 of the SPA provided that upon completion of the contract, Adorama and Kitchen Winners would provide Rock Fintek with a rebate of $.50/box for the first five containers (150,000 boxes) of gloves for a total of $75,000, and that the subsequent purchase price would be reduced to $11.00/box for the remainder of the agreement.

42.     In other words, after the contractual rebate, the unit price for each box of 100 gloves was to be reduced to $11.00 for a total purchase price of $16,500,000. Because the contract provided that the rebate and reduction in price were contingent upon completion of the entire agreement and the parties therefore expected that the approximately $750,000 reduction in price would be paid by the Adorama Parties to Rock Fintek at the end of the contract term.

43.     In the SPA, the Adorama Parties expressly warranted that the nitrile gloves would conform to the specifications set forth in the SPA.

44.     As with prior glove purchases, the Adorama Parties knew that Rock Fintek would be immediately reselling the gloves contracted-for under the SPA to its client, a major hospital group in the United States.

***Intentional Breaches of the SPA by Adorama and Kitchen Winners***

45.     Pursuant to the terms of the SPA, Adorama and Kitchen Winners were required to have the products to be shipped by sea to the United States port of Long Beach, California, at which time Rock Fintek would arrange for the products to be delivered to its hospital client.

46.     Upon arrival at the port, the Adorama Parties' agents loaded sealed pallets of gloves onto trucks provided by Rock Fintek without an opportunity for Rock Fintek to inspect the merchandise included in any given delivery.

47.     For most of the tranches of gloves delivered under the SPA, Rock Fintek prepaid by wire transfer to Adorama in amounts requested based on the Adorama Parties' and their agents' representations of specific amounts of gloves included in any given delivery.

48.     In addition to the payments for individual transactions described above, Rock Fintek made at least the following payments to the defendants over the term of the SPA:

| Date of Payment | Amount |
| --- | --- |
| April 8, 2021 | $1,250,000 |
| April 20, 2021 | $690,000 |
| April 26, 2021 | $690,000 |
| April 27, 2021 | $345,000 |
| May 3, 2021 | $690,000 |
| May 10, 2021 | $690,000 |
| May 11, 2021 | $690,000 |
| May 12, 2021 | $690,000 |
| May 19, 2021 | $1,380,000 |
| May 20, 2021 | $345,000 |
| May 21, 2021 | $1,035,000 |

| May 24, 2021 | $1,725,000 |
|---|---|
| May 25, 2021 | $1,035,000 |
| May 27, 2021 | $2,070,000 |
| June 1, 2021 | $1,725,000 |
| June 3, 2021 | $1,380,000 |
| June 8, 2021 | $690,000 |
| June 10, 2021 | $1,035,000 |
| June 14, 2021 | $345,000 |
| **TOTAL** | **$19,190,000** |

49.     Despite what appeared to be a promising commercial relationship, performance problems and other misconduct began to surface after the parties signed the SPA, and Rock Fintek, having committed to deliver the product to its hospital client, began transferring significant sums of money to Adorama.

50.     On multiple occasions, it turned out that the glove counts provided by Adorama Parties to Rock Fintek's drivers were inaccurate. Because Rock Fintek was not permitted to unseal the pallets of gloves to count and inspect the contents, the discrepancies in glove counts were discovered only after delivery of the gloves to Rock Fintek's client's warehouses, where the boxes of gloves were later re-counted and reconciled.

51.     At times, Adorama Parties delivered fewer gloves than what they had represented was contained in a particular shipment. At other times, they overcharged Rock Fintek for gloves that were a higher quantity than what was required by the SPA.

52.     In or about early July 2021, when reconciling the transactions between the parties under the SPA, Rock Fintek discovered that it had been overcharged by approximately $1,035,000, which Rock Fintek unwittingly wired to Adorama on or about June 10, 2021.

53.     Rock Fintek also discovered that Adorama billed it for 25,510 boxes of gloves that were never delivered, for an additional overpayment of $242,245.

54.     In addition, the Adorama Parties delivered approximately 178,270 boxes of

gloves to Rock Fintek that were in excess of the quantity required under the SPA, for which

Rock Fintek unwittingly paid more than $2 million, and for which the Adorama Parties are

liable.

55.     In addition, by July 2021, Adorama and Kitchen Winners still owed to Rock

Fintek the rebate of more than $750,000 to which the parties had contractually agreed in the

SPA.

56.     Although the Adorama Parties had agreed to refund the $1,035,000 overcharge

and had agreed to pay the contractually required rebate, by July 2021, they reneged on their

agreement and sought to extort additional funds from Rock Fintek by conditioning the return of

the overcharges and payment of the rebate on Rock Fintek buying an additional 2 million boxes

of gloves from Adorama and Kitchen Winners for more than an additional $18 million. In other

words, despite acknowledging owing the funds, the Adorama Parties have held and continue to

hold Rock Fintek's funds hostage.

57.     In addition, Adorama and Kitchen Winners unilaterally invoiced Rock Fintek for

several hundred thousand dollars of previously undisclosed and unagreed-upon expenses, such as

insurance for the benefit of Kitchen Winners and Adorama; insurance for a logistics company,

Logic Imports, that had no apparent connection to the parties' contractual relationship; and for

trucking bills, while refusing to send invoices from trucking companies to support those bills.

When Rock Fintek challenged those expenses and sought additional information to support those

expenses, the Adorama Parties refused to provide it and engaged in further extortionate conduct

by conditioning continued delivery of gloves on Rock Fintek paying for those improperly

charged expenses.

58.     As the Adorama Parties knew, Rock Fintek had no choice but to comply with

their extortionate demands, or risk damaging the relationship with its hospital client.

***Defendants Have Defrauded Rock Fintek by Contracting to Sell and Selling Products that They Knew were Different from the Required Specifications***

59.     Starting in or about July 2021, Rock Fintek began receiving complaints from its hospital client that medical care providers using the gloves from the Adorama Parties were experiencing tearing and other performance issues that would not be expected from the gloves required under the SPA. Through further investigation, Rock Fintek has discovered that more than half of the 200 million gloves that the co-conspirators, including the JNS Parties and Adorama Parties had sold to Rock Fintek were in fact not the NBR/nitrile medical "examination" grade gloves expressly required by the SPA, but were less expensive household use "protection" gloves, contrary to the specifications in the SPA.

60.     Moreover, Rock Fintek has since learned that a substantial number of the boxes of "protection" gloves, which Rock Fintek was not allowed to inspect at the time of delivery, list "AnHui ABeiXiong Medical Technology Co., Ltd." as the manufacturer, which MedCare brand owner GTS has identified as an *unauthorized* fake manufacturer of MedCare gloves on its website.

61.     Rock Fintek promptly brought these issues to the Adorama Parties and their agents, and requested documentation concerning the "protection" gloves to demonstrate whether those "protection" gloves were comparable to those required under the SPA. The Adorama Parties refused to provide such documentation unless Rock Fintek agreed to purchase an additional 2 million boxes of gloves from Adorama.

62.     Rock Fintek has demanded that Adorama and Kitchen Winners take back the gloves that they had sold to it, but Adorama and Kitchen Winners refused to do so.

63.     At the time of entering into each of the one-off transactions in early 2021, at the

time of entering into the SPA and at the time of each glove delivery, the Adorama Parties, the JNS Parties and others associated with them, had superior and exclusive access to the information about the true nature of gloves that were being sold to Rock Fintek and in fact possessed the right from GTS and/or the glove manufacturers to package and repackage the gloves. The Adorama Parties and the JNS Parties and their respective agents therefore knew at the time of each one-off transaction, at the time that they entered into the SPA and at the time of each delivery that a substantial number of gloves sold to Rock Fintek were not nitrile/NBR medical grade "examination" gloves required by the SPA, but the cheaper "protection" gloves.

64.     The Adorama Parties and JNS Parties also knew that Rock Fintek would be unable to independently verify the nature of the gloves in sealed pallets before those gloves would be delivered to Rock Fintek's client and therefore knew and intended that Rock Fintek rely on their representations about the nature of gloves that were being delivered. Rock Fintek in fact reasonably relied on the co-conspirators' representations to its detriment.

65.     In the summer of 2021, the parties held a telephone call on which Rock Fintek's representatives, Weiner, Banon and a non-party Arik Maimon were present, during which Rock Fintek raised the overpayments by Rock Fintek and the improper delivery of "protection" gloves, as described above, among other issues. On that phone call, Weiner became belligerent and threatened one of Rock Fintek's representatives, saying in substance that he would be coming over to his house with a "big fucking dump truck to bury him."

66.     Subsequent to this telephone call and the apparent impasse in the parties' relationship, Rock Fintek and others have continued to investigate the nature of the gloves sold and delivered by the co-conspirators.

67.     Upon further examination of the manufacturer names imprinted on actual boxes

of gloves, which Rock Fintek was not able to examine at the time of delivery, Rock Fintek

learned that a substantial number of gloves were manufactured by factories that lacked an FDA

510(k) certification, contrary to the requirements of the SPA and the representations made by

Adorama Parties and JNS Parties to Rock Fintek when inducing Rock Fintek to enter into the

SPA and the pre-SPA purchases.

68.     At the time of entering into each of the one-off transactions described above, at

the time of entering into the SPA and at the time of each delivery, the Adorama Parties and JNS

Parties had superior and exclusive access to the information about the manufacturing locations of

the gloves and in fact held themselves out as possessing the right from GTS and/or the

manufacturers to package and repackage the gloves. The Adorama Parties and JNS Parties

therefore knew at the pertinent times that a substantial number of gloves that they sold to Rock

Fintek lacked an FDA 501(k) certification.

69.     Even more egregiously, Rock Fintek has recently been informed regarding third-

party reports of chemical testing of random samples of gloves that were sold by the Adorama

Parties and JNS Parties, which has revealed that the gloves tested were *not* in fact nitrile/NBR

gloves, as required under the SPA, but appeared to be less expensive *polyvinylchloride* gloves.

**The LevMed Fraud**

70.     In addition, in or about late April 2021, Kitchen Winners and Adorama shipped to

Rock Fintek a container with 90,000 boxes (3 million units) of gloves that were not MedCare

brand gloves as required by the SPA, but were gloves that were identified on their boxes as

"LevMed" brand gloves – a brand unknown to Rock Fintek.

71.     At the time of delivery, Adorama Parties' agent Banon personally instructed the

warehouse staff to load the LevMed gloves onto Rock Fintek's trucks along with MedCare

gloves, to be shipped to Rock Fintek's hospital clients' warehouses.

72.     Estern Banon, and apparent family member of Adorama's agent Mendel Banon and CEO and founder of an entity known as Perle Technologies, which is, upon information and belief, an affiliate of one of the Adorama Parties or their agents, holds herself out as a "Founder of LevMed" on her LinkedIn profile.

73.     Upon discovering LevMed gloves in its warehouses, Rock Fintek's client demanded to see paperwork regarding the origin and quality of the LevMed gloves and refused to pay Rock Fintek for the order.

74.     On April 27, 2021, Rock Fintek immediately brought the "LevMed" issue to the Adorama Parties' attention. In response, Banon falsely claimed that the LevMed gloves did not come from the Adorama Parties and falsely blamed the mix up on the warehouse employees.

75.     Upon information and belief, however, the Adorama Parties and their affiliates had been selling gloves bearing the LevMed brand to other clients all along and intentionally and knowingly shipped the wrong gloves to Rock Fintek.

76.     On April 29, 2021, Rock Fintek sent a follow up email to Adorama regarding the discrepancy and again explaining that the presence of the LevMed gloves was causing Rock Fintek's hospital client to reject the shipment. Rock Fintek again requested that Adorama provide FDA 510(k) and testing documentation for the LevMed gloves, so that Rock Fintek could present that documentation to its hospital client in an effort to mitigate the Adorama Parties' breach.

77.     On April 29, 2021, at approximately 7 p.m. ET, Adorama's Banon emailed Rock Fintek and others an image purporting to be a product specification sheet bearing the LevMed logo and a link to purported FDA documentation. Through this email, the Adorama Parties

represented to Rock Fintek that the information regarding LevMed gloves contained in the attachments was true and accurate, knowing that Rock Fintek would rely on that information in dealing with its client.

78.     On April 30, 2021, Banon re-sent to Rock Fintek what purported to be a complete version of the LevMed product specification sheet, a product brochure, as well as pictures of what purported to be inner and outer boxes of the LevMed gloves.

79.     In fact, the specification sheet and brochure that Banon sent to Rock Fintek were fraudulent, consisting of an altered MedCare/GTS document, apparently manipulated to create an appearance that the LevMed gloves were of the same quality and specifications as MedCare medical grade NBR/nitrile examination gloves that Adorama and Kitchen Winners were contractually obligated to sell to Rock Fintek.

80.     In addition, using the purported LevMed brochure, the Adorama Parties fraudulently represented that the LevMed brand gloves contained an FDA 510(k) certification. The brochure included a purported "letter" from a purported glove manufacturing facility in China "ZhongHong Pulon Medical Products Co. Ltd." and a purported certification stamp bearing that same name, claiming that "We Manufacture the Levmed Brand under our secondary factory named : Qingdao Zhongyang Medical Equipment Co., LTD Which is being manufactured all under our 510K # K152712."

81.     In reality, however, the 510(k) number listed on the LevMed brochure pertained to "Zhonghong Pulin Medical Products Co., Ltd." – an authorized manufacturer of MedCare brand gloves, which is a different entity from and has no relationship with "ZhongHong Pulon Medical Products Co. Ltd." Upon information and belief, neither the FDA 510(k) holder Zhonghong Pulin Medical Products Co., Ltd. nor any of its affiliate have any connection to the

LevMed gloves at issue contrary to the Adorama Parties' representations.

82.     Upon information and belief, including based on publicly available court records, Rock Fintek is not the only victim of the Adorama Parties' fraudulent glove sales.

***Co-Conspirators Have Interfered with Rock Fintek's Relationship with its Hospital Client***

83.     Adorama Parties and JNS Parties and their respective agents knew at all pertinent times that the gloves that they sold to Rock Fintek were being delivered directly to Rock Fintek's client, a major hospital group in the United States, with whom Rock Fintek had a preexisting contractual and business relationship.

84.     The Adorama Parties and JNS Parties and their respective agents knew that those gloves would be used by medical professionals to treat patients in the midst of an ongoing global COVID-19 pandemic and, therefore, knew that their oral and written representations that the gloves at issue were MedCare brand medical grade nitrile/NBR examination gloves bearing an FDA 510(k) certification were material to Rock Fintek's relationship with its client.

85.     In fact, Rock Fintek had an ongoing and profitable business relationship with its hospital client that predated Rock Fintek's purchases of gloves from the Adorama Parties and JNS Parties, which relationship Rock Fintek reasonably expected to continue into the future.

86.     Through their intentional tortious conduct detailed above, the Adorama Parties and JNS Parties and their co-conspirators have interfered with Rock Fintek's relationship with its hospital client.

87.     As a direct and proximate result of the conduct of the Adorama Parties and JNS Parties and their co-conspirators, Rock Fintek's hospital client has refused to do further business with Rock Fintek costing Rock Fintek significant lost revenues and profits that it reasonably expected.

**Count One**
(Breach of Contract - SPA)

88.     Rock Fintek repeats and incorporates each of its prior allegations of fact as if repeated in full herein.

89.     The SPA is a valid and enforceable agreement among Rock Fintek, Kitchen Winners, and Adorama that required Kitchen Winners and Adorama to deliver to Rock Fintek 1,500,000 boxes of MedCare brand nitrile/NBR medical grade examination gloves bearing FDA 510(k) certification, for a total price of $16,500,000, after the contractually required rebate.

90.     Rock Fintek has fully or substantially performed its obligations under the SPA.

91.     All conditions precedent to Rock Fintek's obligations under the SPA have been satisfied or excused, including by Adorama's and Kitchen Winners' failures to perform.

92.     As detailed above, Adorama and Kitchen Winners breached the SPA in multiple ways, including by delivering polyvinylchloride gloves to Rock Fintek rather than nitrile/NBR gloves, by delivering gloves that lacked an FDA 510(k) certification, by delivering "protection" gloves rather than medical grade "examination" gloves, by failing to pay Rock Fintek the contractually required rebate, and by overcharging Rock Fintek for erroneous quantities of gloves.

93.     Adorama's and Kitchen Winners' breaches of the SPA have directly and proximately caused significant damages to Rock Fintek for which they are liable in an amount to be proven at trial, including all amounts that Rock Fintek has paid to Adorama and Kitchen Winners, plus consequential damages, attorneys' fees, and pre- and post-judgment interest.

**Count Two**
(Breach of Contract – Kitchen Winners/Adorama; One-Off Transactions)

94.     Rock Fintek repeats and incorporates each of its prior allegations of fact as if repeated in full herein.

95.     Each of the one-off transactions with Kitchen Winners and Adorama identified above constitutes a valid and enforceable agreement among Rock Fintek, Kitchen Winners and Adorama that required Kitchen Winners and Adorama to deliver to Rock Fintek specified quantities of MedCare brand nitrile/NBR medical grade "examination" gloves bearing FDA 510(k) certification.

96.     Rock Fintek has fully performed its obligations under each of those transactions, including by making all required payments.

97.     All conditions precedent to Rock Fintek's obligations under these transactions have been satisfied or excused.

98.     As detailed above, Adorama and Kitchen Winners breached their contractual obligations with respect to each of those one-off transactions in multiple ways, including by delivering polyvinylchloride gloves to Rock Fintek rather than nitrile/NBR gloves, by delivering gloves that lacked an FDA 510(k) certification, and by delivering "protection" rather than "examination" gloves.

99.     These breaches have directly and proximately caused significant damages to Rock Fintek for which Adorama and Kitchen Winners are liable in an amount to be proven at trial, plus consequential damages, attorneys' fees, and pre- and post-judgment interest.

**Count Three**
(Breach of Contract – JNS Parties)

100.    Rock Fintek repeats and incorporates each of its prior allegations of fact as if repeated in full herein.

101.    Each of the transactions with the JSN Parties set forth above constitutes a valid and enforceable agreement between Rock Fintek and the JNS Parties that required the JNS Parties to deliver to Rock Fintek specified quantities of MedCare brand nitrile/NBR medical grade "examination" gloves bearing FDA 510(k) certification.

102.    Rock Fintek has fully performed its obligations under each of those transactions, including by making all required payments.

103.    All conditions precedent to Rock Fintek's obligations under these transactions have been satisfied or excused.

104.    As detailed above, the JSN Parties breached their contractual obligations with respect to each of those transactions in multiple ways, including by delivering polyvinylchloride gloves to Rock Fintek rather than nitrile gloves, by delivering gloves that lacked an FDA 510(k) certification, and by delivering "protection" gloves rather than "examination" gloves.

105.    The breaches have directly and proximately caused significant damages to Rock Fintek for which defendants are liable in an amount to be proven at trial in excess of $2,654,000 that Rock Fintek has paid to the JNS Parties, plus consequential damages, attorneys' fees, and pre- and post-judgment interest.

**Count Four**
(Breach of the Covenant of Good Faith and Fair Dealing – All Transactions)

106.    Rock Fintek repeats and incorporates each of its prior factual allegations as if repeated in full herein.

25

107.    Rock Fintek, Kitchen Winners, Adorama, JNS and Stern are parties to the contractual relationships described above, each of which is a valid and enforceable agreement.

108.    Each of the contractual relationships involving the parties implied a covenant of good faith and fair dealing.

109.    The misconduct of the Adorama Parties and the JNS Parties described above, including fraudulent omissions and misrepresentations about the nature and quantity of the gloves sold to Rock Fintek and the extortionate efforts to condition performance under the SPA on selling additional gloves to Rock Fintek, were designed to deprive Rock Fintek of the fruits of the deal to which the parties agreed, and constitutes a breach of the implied covenant of good faith and fair dealing.

110.    Adorama Parties' and JNS Parties' breaches of the covenant of good faith and fair dealing have directly and proximately caused significant damages to Rock Fintek for which the Adorama Parties and JNS Parties are liable in an amount to be proven at trial, in excess of all amounts that Rock Fintek has paid, plus consequential damages, attorneys' fees, and pre- and post-judgment interest.

## Count Five
(Fraud)

111.    Rock Fintek repeats and incorporates each of its prior allegations as if repeated in full herein.

112.    As detailed above, Adorama, Kitchen Winners, JNS, Stern, Weiner and Mendlowitz, directly and through their agents including Banon, made numerous misrepresentations and fraudulent omissions to Rock Fintek during the course of the parties' business dealings, including knowing oral and written misrepresentations that the gloves sold to Rock Fintek were MedCare brand nitrile/NBR medical grade "examination" grade gloves

bearing FDA 510(k) certification, and omissions regarding the true nature of the products sold to Rock Fintek.

113.    As detailed above, these representations were materially false and misleading.

114.    As detailed above, Adorama, Kitchen Winners, JNS, Stern, Weiner and Mendlowitz, knew that their omissions were material.

115.    At all times when Adorama, Kitchen Winners, JNS, Stern, Weiner and Mendlowitz, directly and through their agents including Banon made these representations, they knew those statements were false in that the gloves that were actually sold to Rock Fintek were not nitrile/NBR but polyvinylchloride gloves, a significant portion of the gloves lacked an FDA 510(k) certification, a significant portion of the gloves were not "examination" gloves, but "protection" gloves, and one shipment of approximately 3 million gloves were fake "LevMed" gloves for which the Adorama Parties and their agents and co-conspirators provided fraudulently altered documentation.

116.    At all pertinent times, Adorama, Kitchen Winners, JNS, Stern, Weiner and Mendlowitz, directly and through their agents including Banon, had superior and exclusive access to the information about the gloves that they were selling to Rock Fintek and possessed the right from MedCare/GTS and/or the manufacturers to package and repackage the gloves. Adorama, Kitchen Winners, JNS, Stern, Weiner and Mendlowitz, directly and through their agents including Banon, knew at all pertinent times that the gloves they were selling and sold to Rock Fintek were polyvinylchloride and not nitrile/NBR gloves, that certain gloves lacked FDA 501(k) certification, that a substantial portion of gloves were "protection" rather than "examination" gloves, and that approximately 3 million gloves were fake "LevMed" gloves.

117.    Adorama, Kitchen Winners, JNS, Stern, Weiner and Mendlowitz, directly and

through their agents including Banon, knew that Rock Fintek would be delivering the gloves at issue to its hospital group client and that Rock Fintek was unable due to COVID-19 protocols to independently verify the nature and quantities of the gloves in the sealed pallets or to test the physical or chemical properties of the gloves in sealed pallets before those gloves would be delivered to Rock Fintek's client. Adorama, Kitchen Winners, JNS, Stern, Weiner and Mendlowitz, directly and through their agents including Banon, therefore knew that Rock Fintek was relying and intended for Rock Fintek to rely on their representations about the nature and quantity of gloves that were being delivered.

118.    Rock Fintek reasonably relied on the misrepresentations set forth above when entering into each of the purchase and sale transactions set forth above, each time that Rock Fintek paid for and received each delivery from any of Adorama, Kitchen Winners, JNS, Stern, Weiner and Mendlowitz, directly and through their agents including Banon, and when delivering the gloves sold by the defendants to Rock Fintek's hospital group client.

119.    Adorama, Kitchen Winners, JNS, Stern, Weiner and Mendlowitz, directly and through their agents including Banon, made their false representations and omissions in order to induce Rock Fintek to enter into each of the transactions described above and to induce Rock Fintek to continue buying gloves from the defendants notwithstanding the fraud.

120.    As a direct and proximate result of the fraudulent omissions and representations set forth above, Rock Fintek has sustained significant damages in an amount to be proven at trial.

## Count Six
(Negligent Misrepresentation – All Defendants)

121.    Rock Fintek repeats and incorporates each of its prior factual allegations as if repeated in full herein.

122.    As detailed above, Adorama, Kitchen Winners, JNS, Stern, Weiner and
Mendlowitz, directly and through their agents including Banon, and their co-conspirators made
numerous false representations and omissions to Rock Fintek during the course of the parties'
business dealings, including oral and written representation that the gloves defendants were
selling to Rock Fintek were MedCare brand nitrile/NBR medical grade "examination" grade
gloves bearing FDA 510(k) certification in certain specified quantities.

123.    These representations were materially false and misleading.

124.    At all times when Adorama, Kitchen Winners, JNS, Stern, Weiner and
Mendlowitz, directly and through their agents including Banon, and co-conspirators made these
representations, they should have known through exercise of reasonable care, which these parties
had a duty to exercise, that the gloves sold to Rock Fintek were not nitrile/NBR but
polyvinylchloride gloves, that a significant portion of the gloves lacked an FDA 510(k)
certification, a significant portion of the gloves were not "examination" gloves, but "protection"
gloves, and that one shipment of approximately 3 million gloves were fake "LevMed" gloves for
which the Adorama Parties provided fraudulently altered documentation.

125.    At all pertinent times, Adorama, Kitchen Winners, JNS, Stern, Weiner and
Mendlowitz, directly and through their agents including Banon, had a duty to exercise reasonable
care in making representations about the gloves being sold and delivered to Rock Fintek because
those parties had superior and exclusive access to the information about the gloves that they were
selling and possessed the right from MedCare/GTS and/or the manufacturers to package and
repackage the gloves.

126.    At all pertinent times Adorama, Kitchen Winners, JNS, Stern, Weiner and
Mendlowitz, directly and through their agents including Banon, knew or should have known

through exercise of reasonable care that the gloves that they would be selling and sold to Rock

Fintek were polyvinylchloride and not nitrile/NBR gloves, that a significant portion of the gloves

lacked FDA 501(k) certification, that a significant portion of gloves were "protection" rather

than "examination" gloves, and that approximately 3 million gloves were fake "LevMed" gloves.

127.    Adorama, Kitchen Winners, JNS, Stern, Weiner and Mendlowitz, directly and

through their agents including Banon, knew that Rock Fintek would be delivering the gloves to

its hospital group client and that Rock Fintek would be unable to independently verify the nature

or quantity of the gloves included in the sealed pallets or to test the physical or chemical

properties of the gloves in sealed pallets before those gloves would be delivered to Rock Fintek's

client.

128.    Adorama, Kitchen Winners, JNS, Stern, Weiner and Mendlowitz, directly and

through their agents including Banon, therefore knew that Rock Fintek was relying and intended

for Rock Fintek to rely on their representations about the nature and quantity of gloves that were

being delivered. Accordingly, Adorama, Kitchen Winners, JNS, Stern, Weiner and Mendlowitz,

directly and through their agents including Banon, owed a duty of care to Rock Fintek with

respect to these products.

129.    Rock Fintek reasonably relied on the misrepresentations and omissions set forth

above when entering into each of the purchase and sale transactions set forth above, each time

that Rock Fintek paid for and received each delivery from the defendants, and when delivering

the gloves at issue to Rock Fintek's hospital group client.

130.    As a direct and proximate result of the negligent omissions and

misrepresentations set forth above, Rock Fintek has sustained significant damages in an amount

to be proven at trial.

**Count Seven**
(Unjust Enrichment – Adorama/Kitchen Winners)

131.    Rock Fintek repeats and incorporates each of its prior allegations as if repeated in full herein.

132.    As detailed above, the SPA required Adorama and Kitchen Winners to deliver 1,500,000 boxes (150 million units) of certain specified gloves.

133.    To the extent that Adorama's and Kitchen Winners' surreptitious deliveries of gloves above the quantities called for by the SPA are deemed to fall outside of the SPA, Adorama and Kitchen Winners have been unjustly enriched by the total amounts that Rock Fintek paid them for those quantities consisting of polyvinylchloride gloves rather than nitrile/NBR gloves, for gloves that lacked an FDA 510(k) certification, and for "protection" gloves rather than "examination" gloves.

134.    It would be against equity and good conscience to permit Kitchen Winners and Adorama to retain the funds paid by Rock Fintek for such gloves.

**Count Eight**
(Tortious Interference with Existing and Prospective Business Relations – All Defendants)

135.    Rock Fintek repeats and incorporates each of its prior allegations as if repeated in full herein.

136.    Each of Adorama, Kitchen Winners, JNS, Stern, Weiner and Mendlowitz, directly and through their agents including Banon, knew at all pertinent times that Rock Fintek had an existing contractual relationship with its client, a major hospital group in the United States, to whom Rock Fintek was contractually obligated to sell the gloves at issue. As such, Adorama, Kitchen Winners, JNS, Stern, Weiner and Mendlowitz, directly and through their agents including Banon, knew that those gloves would be used by medical professionals to treat patients

in the midst of an ongoing global pandemic and, therefore, knew that their oral and written representations that the gloves at issue were nitrile medical examination grade gloves bearing an FDA 510(k) certification were material to Rock Fintek's relationship with its client.

137.    Rock Fintek had an ongoing and continuing business relationship with its client that predated Rock Fintek's purchases of gloves at issue, which relationship Rock Fintek reasonably expected to continue into the future.

138.    Through their intentional and deliberate conduct detailed above, including by failing to deliver appropriate quantities of gloves, by delivering gloves that were "protection" gloves as opposed to "examination" gloves, by delivering "LevMed" gloves with fraudulent documentation, by delivering gloves lacking an FDA 510(k) certification, and by delivering gloves that were not nitrile/NBR gloves, Kitchen Winners and Adorama interfered with Rock Fintek's relationship with its hospital client.

139.    The interference was intentional and malicious, as evidenced by intentional fraudulent statements, by the Adorama Parties' repeated extortionate efforts and threats of violence when confronted with their wrongdoing.

140.    The intentional and malicious interference materially injured the existing and prospective relationship between Rock Fintek and its hospital group client, for which Adorama, Kitchen Winners, JNS, Stern, Weiner and Mendlowitz are liable in an amount to be proven at trial.

### Count Nine
(Conspiracy)

141.    Rock Fintek repeats and incorporates each of its prior allegations as if repeated in full herein.

142.    Adorama, Kitchen Winners, JNS, Stern, Weiner and Mendlowitz combined, agreed, and conspired with each other and with others, including, upon information and belief, the non-party manufacturers and suppliers of gloves that Adorama, Kitchen Winners, JNS, Stern, Weiner and Mendlowitz delivered to Rock Fintek, to defraud Rock Fintek and to unlawfully interfere with Rock Fintek's existing and prospective economic business relations with its hospital group client.

143.    Each of Adorama, Kitchen Winners, JNS, Stern, Weiner and Mendlowitz, directly and through their agents including Banon, engaged in overt acts in furtherance of the conspiracy by, among other things, knowingly selling and delivering gloves to Rock Fintek that these parties knew would not pass a nitrogen content test for nitrile/NBR gloves, by knowingly selling and delivering a significant portion of gloves that lacked an FDA 510(k) certification, by knowingly delivering to Rock Fintek a significant amount of "protection" gloves, by knowingly delivering a shipment of approximately 3 million "LevMed" gloves with fraudulently altered documentation, by taking steps to conceal their misconduct by refusing to provide information when requested regarding these products, and by making extortionate demands and threats of violence when confronted with their wrongdoing.

144.    Each of Adorama, Kitchen Winners, JNS, Stern, Weiner and Mendlowitz, directly and through their agents including Banon, and their unnamed co-conspirators acted knowingly, willfully, intentionally, corruptly, recklessly, in bad faith, and with a criminal indifference for the rights of Rock Fintek and its client, with a desire to unlawfully obtain money from Rock Fintek through the fraudulent conduct alleged herein, thereby entitling Rock Fintek to an award of punitive damages.

145.    By working together in ways that were concealed and hidden from Rock Fintek, Adorama, Kitchen Winners, JNS, Stern, Weiner and Mendlowitz and their co-conspirators were able to cause harm to Rock Fintek in a manner that they would not have been able to do had they not acted in combination with one another.

146.    Adorama, Kitchen Winners, JNS, Stern, Weiner and Mendlowitz are directly and vicariously liable to Rock Fintek for the damages directly caused by their and their co-conspirators' wrongdoing.

147.    The scheme alleged herein directly and proximately caused Rock Fintek to suffer significant damages alleged herein in an amount to be proven at trial.

### Count Ten
(Breach of Warranties under N.Y. U.C.C. Law § 2-313 and New York Common Law)

148.    Rock Fintek repeats and incorporates each of its prior allegations as if repeated in full herein.

149.    As detailed above, Adorama, Kitchen Winners, JNS, Stern, Weiner and Mendlowitz, directly and through their agents including Banon, provided Rock Fintek with written express warranties, including that the specific quantities of gloves being sold to Rock Fintek were MedCare brand nitrile/NBR medical grade examination gloves bearing an FDA 510(k) certification.

150.    As detailed above, Adorama, Kitchen Winners, JNS, Stern, Weiner and Mendlowitz, directly and through their agents including Banon, breached those warranties by selling Rock Fintek gloves that did not conform to those specifications.

151.    As a direct and proximate result, Rock Fintek has suffered damages in an amount to be determined at trial.

**Count Eleven**
(Violation of New York Consumer Protection Act)

152.    Rock Fintek repeats and incorporates each of its prior allegations as if repeated in full herein.

153.    Through the conduct alleged herein, Adorama, Kitchen Winners, JNS, Stern, Weiner and Mendlowitz, directly and through their agents including Banon, engaged in deceptive acts and practices in the conduct of their business, in violation of General Business Law § 349, including by knowingly selling and delivering gloves to Rock Fintek that these parties knew would be used by medical providers in the midst of a global COVID-19 pandemic, and that each of Adorama, Kitchen Winners, JNS, Stern, Weiner and Mendlowitz, directly and through their agents including Banon knew would not pass a nitrogen content test for nitrile gloves; by knowingly selling and delivering a significant portion of gloves that lacked an FDA 510(k) certification; by knowingly delivering to Rock Fintek a significant amount of "protection" gloves rather than medical grade "examination" gloves; and by knowingly delivering a shipment of approximately 3 million "LevMed" gloves with fraudulently altered documentation.

154.    The misconduct was willful and intentional.

155.    Rock Fintek is entitled to recover its actual damages in an amount to be determined at trial, an award of damages in an amount not to exceed three times the actual damages because Adorama, Kitchen Winners, JNS, Stern, Weiner and Mendlowitz willfully and knowingly engaged in the wrongdoing alleged herein, and to an award of reasonable attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff Rock Fintek LLC prays for the following relief:

1.  That judgment be entered in favor of Rock Fintek on all Counts set forth in its
    Counterclaim and Third-Party Complaint;

2.  that the Court award Rock Fintek punitive damages;

3.  on Count Eleven, that the Court award Rock Fintek its actual damages, treble damages
    and attorneys' fees;

4.  that the Court otherwise award Rock Fintek its attorneys' fees, costs, expenses, and pre-
    judgment and post-judgment interest;

5.  that the Court award to Rock Fintek any and all further and other relief to which it may
    be entitled at law or in equity.

**Rock Fintek Demands a Jury Trial on All Issues So Triable**

Dated:   June 24, 2022                    Respectfully submitted,

/s/Phillip Rakhunov
Phillip Rakhunov
POLLACK SOLOMON DUFFY LLP
485 Madison Avenue, Suite 1301
New York, NY 10022
Telephone: (212) 493-3100
Facsimile: (212) 434-0109
prakhunov@psdfirm.com