

NEW YORK    BOSTON
www.psdfirm.com

**POLLACK SOLOMON DUFFY LLP**
43 West 43rd Street, Suite 174, New York, NY 10036
617-439-9800
prakhunov@psdfirm.com

June 29, 2023

<u>**VIA ECF**</u>

Honorable Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square, Room 2201
New York, NY 10007

      Re:    *Kitchen Winners NY Inc. v. Rock Fintek LLC*, Case No. 22-cv-05276-PAE
              **Request for Conference to Allow for Disposition and Potential Sale of Gloves for which Sampling and Inspection Has Been Completed**

Dear Judge Engelmayer:

      This firm represents defendant and counterclaim/third-party plaintiff Rock Fintek LLC. Rock Fintek respectfully submits this letter pursuant to paragraph 2.C of Your Honor's Individual Practices to seek a prompt conference in advance of our filing a motion to allow for an immediate sale of gloves located at the Grayslake, Illinois warehouse, where the parties have completed an inspection and sampling preservation process. As detailed below, counsel for the Adorama Parties and the JNS Parties do not claim a need to conduct further sampling of the gloves in Grayslake, but have raised a potential future desire to *re-count* the gloves, despite existence of multiple inventory counts by the warehouse operator and undisputable documentation between the parties of the quantities of gloves sold and delivered. While Adorama Parties and JNS Parties do not take the position that a sale or other disposal of the Grayslake gloves would constitute spoliation, they do not affirmatively consent to the removal and reserve the right to raise spoliation arguments in the future, leaving Rock Fintek with no choice but to seek Court guidance.

      As the Court may recall, this case involves a dispute over the nature and quality of approximately 200 million gloves that Adorama Parties and JNS Parties sold to Rock Fintek. These gloves are now owned by Rock Fintek's customer Ascension Health and held in eleven warehouses nationwide for which Ascension pays significant storage fees to warehouse operator non-party Medline Industries. Medline has provided to the parties a chart detailing an inventory of locations

and quantities of all gloves (*see* Exhibit A) and has provided a detailed spreadsheet of specific locations of gloves within each warehouse, together with quantities and dates of arrival.[1]

The parties have been working with Medline on inspection and sampling efforts. On June 13, 2023, the parties attended a warehouse in Grayslake, IL, which holds approximately 24 million (of 200 million) gloves. Using information provided by Medline, the parties identified gloves in 30 locations within the warehouse with different delivery dates, which Medline made available for a full-day inspection in a roped-off area. The parties had the opportunity to inspect, photograph, videotape and remove samples of gloves for preservation and testing. A Medline representative also walked the parties through the warehouse aisles where the parties had the ability to lay eyes on all "Medcare" gloves in that warehouse. Rock Fintek removed for preservation 60 cases (approximately 60 thousand gloves) from Grayslake, far more than required for a statistically significant sample for that location. Rock Fintek understands that Adorama Parties and JNS Parties representatives also took photographs, videos and gloves samples. The parties are diligently working to schedule similar visits to other warehouse locations in July.

As part of mitigation efforts, Rock Fintek has identified a potential buyer for the entire inventory of gloves (for non-medical use), who stands ready to immediately pick up all gloves at its own cost.[2] To that end, Rock Fintek has inquired of counsel for the Adorama Parties and JNS Parties whether they agree that preservation and sampling efforts at the Grayslake location are complete for the purposes of this lawsuit, such that these gloves may now be sold to a third party. Among other reasons, there is urgency in completing the glove sale because expiration dates for some of the glove inventory are coming up and because Ascension continues to incur significant storage costs for which it could assert claims.

On June 28, 2023, the undersigned counsel conferred by telephone with attorney Alexander Sperber, counsel for the Adorama Parties and attorney Avram Frisch, counsel for the JNS Parties regarding Grayslake. Mr. Sperber has taken the position that, depending on the cost, his clients *possibly* may want to count the entire inventory of gloves, including at the Grayslake warehouse and has asked Medline for a cost estimate for doing so. Mr. Sperber has not taken the position that his clients need additional sampling, just counting. Medline has not yet responded with a cost estimate for counting all approximately 24 million Grayslake gloves, but Rock Fintek anticipates the cost to be prohibitive. In any event, Rock Fintek cannot discern any legitimate evidentiary value in re-counting cases of gloves, where 1) Medline has already conducted multiple inventory

---

[1] On or about June 22, 2023, JNS Parties served a subpoena on Medline seeking documents concerning the storage of the gloves at issue. Rock Fintek anticipates that Medline will easily be able to authenticate the documentation of inventory of the gloves in its own warehouses.

[2] "New York's courts adhere to the universally accepted principle that a harmed plaintiff must mitigate damages." *BOCA Aviation Ltd. v. AirBridgeCargo Airlines, LLC*, No. 22-CV-2070 (LJL), 2023 WL 2896048, at *23 (S.D.N.Y. Apr. 11, 2023).

counts of the gloves and 2) the quantities of gloves sold and shipped is well documented in "pick up reports" exchanged between the parties during the pertinent transactions.

Mr. Frisch, on behalf of the JNS Parties stated that his client has no intention of going back to Grayslake for additional sampling, yet took the position that he would not agree one way or another whether the removal of those gloves constitutes spoliation.

Unfortunately, the unwillingness of the Adorama Parties and JNS Parties to consent to the release of the now-sampled gloves, while reserving spoliation arguments, leaves Rock Fintek with no choice but to seek guidance from the Court. Now that the parties have had the opportunity to obtain glove samples from Grayslake, those gloves should be released to be sold in mitigation efforts without a vague threat of a spoliation motion hanging over Rock Fintek. *See, e.g., Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475, 512 (S.D.N.Y. 2013) ("Sampling is a widely accepted method of proof in cases brought under New York law…."). The parties are free to later argue whether samples obtained are statistically significant or the like, but should not be allowed to maintain a vague spoliation claim threat that interferes with mitigation efforts.

                      Respectfully submitted,

                      /s/Phillip Rakhunov
                      Phillip Rakhunov

cc:    All counsel (via ECF)