# EXHIBIT 5

IN THE CIRCUIT COURT FOR THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

ROCK FINTEK, LLC,

      Plaintiffs,

      CASE NO.: 2020-016234-CA-01

vs.

ANDREW     KOTSOVOS,     MICHAEL
BOBACK, and FIRST HOLDINGS GROUP,
LLC,

      Defendants.

## ROCK FINTEK, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANTS/COUNTER-PLAINTIFFS' MOTIONS FOR SANCTIONS

Plaintiff, Rock Fintek, LLC ("Plaintiff"), by and through its undersigned counsel, files this,

its Memorandum in Opposition to Defendant/Counter-Plaintiffs', Andrew Kotsovos ("Mr.

Kotsovos"), Michael Boback ("Mr. Boback'), and First Holdings Group, LLC ("First Holdings")

( Mr. Kotsovos, Mr. Boback and First Holdings may be collectively referred as the "Defendants"),

Motions for Sanctions dated April 18, 2022, August 9, 2022, and September 12, 2022 (collectively

the "Sanctions Motions") pursuant to Florida Rule of Civil Procedure 1.380(b)(2), and in support

thereof states as follows:

## I.    <u>Summary of Argument</u>

The dismissal of an action is a drastic remedy which should be used only in extreme

situations and upon a showing of deliberate and contumacious disregard of the trial court's

authority.  The striking of the Plaintiff's pleadings for the alleged non-compliance with discovery

orders is not warranted under these circumstances.  Plaintiff has not intentionally or deliberately

disregarded or violated the Court's Orders.  Plaintiff acted in good faith to comply with its

discovery obligations, and any outstanding issues have been cured.  Additionally, all of the factors

necessary to satisfy *Kozel* are not present in the record.   Consequently, Plaintiff respectfully requests this Honorable Court to deny, Defendants Sanctions Motions.

**II.**     **Background**

    *A.* *Summary of Claims*

    1.      The instant matter arises out of a business relationship between Plaintiff and Defendants to secure and supply personal protective equipment, i.e. masks ("PPE") during the pandemic.

    2.      The Plaintiff's claims are as follows: (a) Counts I- III of Plaintiff's Second Amended Complaint are for breach oral and/or written contracts; (b) Count IV is for declaratory relief and (c) Count V is for breach of a restrictive covenant.

    3.      Defendant, First Holdings asserted a counterclaim for breach of an oral contract; its claim for conversion was dismissed *with prejudice.*

    4.      The crux of the Plaintiff's claims is that it was double-crossed by the Defendants in order to undercut them (the "Plaintiff") on pricing of masks in order to sell the same product to Plaintiff's client Prisma Health ("Prisma"), for which Plaintiff is seeking lost profits.

    5.      The crux of Defendants' claims and defenses is that Plaintiffs failed to pay them commissions owed for sale of PPE masks made to customers that they (the Defendants) procured.

    *B.* *Discovery Orders*

    6.      On November 3, 2021, the Special Magistrate entered an Agreed Order on Defendants' Motion to Compel Responses to First Request for Production (the "November 3 Order").  A copy of the November 3 Order is attached as **Exhibit A**.

    7.      The November 3 Order required Plaintiff:

    a)      "to produce all documents in its possession…relative to the Prisma Health Transaction…"

b) "to produce all documents…relating to everything it did to fulfill orders for customers who were procured by [Defendants]…" _;

c) to produce its Articles of Incorporation and employment contract with Bradley Gilling [("Mr. Gilling")], if any, and

d) to amend its responses to discovery to definitively state whether it had documents and to produce an unredacted version of "Rock Fintek 043".

*see* ¶ ¶ 2, 3, 4 and 6 of **Ex**. **A**;

8.    On April 18, 2022, Defendants filed their Motion for Sanctions for Failure to Comply with the November 3 Order (the "First Sanctions Motion").

9.    The First Sanctions Motion claimed that: (a) the bank records from Wells Fargo that Plaintiff produced had improper redactions in order to hide payments that, ostensibly, would show that Plaintiff sold the masks it claims it was unable to sell to Prisma, (b) Plaintiff only produced emails from one supplier but not the other[1], (c) Plaintiff failed to produce transmittal emails that invoices were attached to invoices (d) Plaintiff failed to produce documentation from its invoicing software regarding the details of mask sales, deliveries, etc. that Mr. Gilling testified existed, (e) Plaintiff failed to produce documentation reflecting additional amounts above invoice amounts as testified to by Thomas Kato ("Mr. Kato"),  (f) Plaintiff failed to produce documents that masks that were to be sold to Prisma were still in China, (g) Plaintiff failed to amend its responses to discovery to definitively state whether it had responsive documents, (h) Plaintiff failed to produce any "internal communications relating to any of the Defendants", (i) Plaintiff failed to produce documentation of any "payments  by Rock Fintek to any of the Defendants, (j) Plaintiff failed to produce any "documents reflecting and/or relating to the professional standards" alleged in the Complaint, (k) Plaintiff failed to produce documents that support the allegations in

---

[1]  Defendants fail to identify the other supplier whose records were not produced.

paragraphs 1 and 13 of the Complaint, and (l) Plaintiff failed to produce documents evidence of the oral contract alleged in Counts II-III of the Complaint. S*ee* pg 2-3 of First Motion for Sanctions.

10.     On June 28, 2022 the Court entered an Order on the First Motion for Sanctions ( the "June 28 Order"). A copy of the June 28 Order is attached as **Exhibit B**.

11.     The June 28 Order required Plaintiff to certify in an affidavit (the "June 28 Affidavit"):

a)  That it has produced all documents in its possession…pursuant to the November 3 Order;

b)  That no documents have been redacted to omit any information that the Court Ordered produced in the November 3 Order; and

c)  That it has made a diligent search for all documents in its possession…that were ordered to be produced by the November 3 Order describing what efforts have been made to gather those documents; and

d)  Any documents that it has not yet produced or has redacted must be produced before 5:00 pm on June 28, 2022.

*See* **Ex**. **B**.

12.     On August 9, 2022 Defendants filed their Renewed Motion for Sanctions for Plaintiff's Refusal to Comply with November 3 Order and the June 28 Order (the "Second Sanctions Motion").

13.     In the Second Sanctions Motion, Defendants claimed: (a) that the June 28 Affidavit submitted by Plaintiff failed to comply with the June 28 Order because it did not "describe the efforts" that were made to gather responsive documents (*see* section B(1) of the Second Sanctions Motion); (b) that the document, RF30794, produced by Plaintiff on June 28, 2022, as well as other documents produced subsequently demonstrates that Plaintiff was hiding payments in the amount

of $4,454,012.18 from customers procured by First Holdings, and (c) re-alleges the same violations in sub paragraphs (b) through (l) above.

14.    Additionally, Defendants argue that Plaintiff's document production contradicts Mr. Gilling's deposition testimony. *See* footnote 3 and pg 7 of Second Sanctions Motion.

15.    On August 26, 2022 the Court entered an Order adopting the Special Magistrate's Order Defendant's Motion to Compel Regarding Plaintiff's Responses to the Defendants November 4, 2021 Second Request for Production and Boback and First Holdings First Set of Interrogatories (the "August 26 Order"). A copy of the August 26 Order is attached as **Exhibit C**.

16.    The August 26 Order:

a)  overruled Plaintiff's objections and required Plaintiff to produce all responsive documents to the Defendants Second Request for Production, but allowed Plaintiff to file an affidavit attesting that with respect to the bank records it produced it did not redact any responsive information; and

b)  ordered Plaintiff to answer First Holdings and Boback's first set of interrogatories

17.    On September 12, 2022, Defendants filed their Motion for Sanctions for Failure to Comply with the August 26 Order (the "Third Sanctions Motion").

18.    In the Third Sanctions Motion, Defendants re-argue the history of Rock Fintek's alleged discovery violations, specifically referencing the deficiencies in the June 28 Affidavit, that Plaintiff's June 28 production that contained redacted bank account records in violation of the June 28 Order, and the failure to respond to the discovery that was the subject of the August 26 Order.

19.     Presently, Rock Fintek believes it has cured all alleged defects and non-compliance claimed in the Sanctions Motions.[2]

### III.   <u>Memorandum of Law</u>

"Dismissal of an action is a drastic remedy which should be used only in extreme situations and upon a showing of deliberate and contumacious disregard of the trial court's authority. Moreover, such a sanction should not be imposed for failure to timely respond to a discovery order where defendants are unable to demonstrate that they were prejudiced in any meaningful way by plaintiffs' tardiness." *Beauchamp v Collins* 500 So. 2d 294, 295 (Fla. 3d DCA 1986)(reversal of order striking plaintiff's pleadings where the record did not support a finding of "bad faith noncompliance or court orders that would warrant a finding of willful and flagrant disobedience."); *K&K World Enter. V. Union Spol, S.R.O.* 692 So. 2d 1000 (reversal of order striking pleadings where the record did not contain evidence of willful non-compliance); *Kinney v. R.H. Halt Assoc.* 927 So. 2d 920, 921 (Fla 2nd DCA 2006)(" [a] dismissal with prejudice for failure to comply with court orders consequently infringes upon this basic right in all but the most extreme and egregious circumstances" making explicit findings of willful or flagrant disregard essential); *Vento v. Balboa Ins. Co.* 261 So. 3d 576 (Fla. 4th DCA 2018)( dismissal of case was unsupported by the record and any delays caused by non-compliance did not create significant problems of judicial administration).

Before a Court can dismiss a cause as a sanction it must consider the *Kozel* factors, which are whether: (1) the attorney's disobedience was willful, deliberate, or contumacious, rather than an act of neglect or inexperience; (2) the attorney has been previously sanctioned; (3) the client was personally involved in the act of disobedience; (4) the delay prejudiced the opposing party

---

[2]  Undersigned counsel has attempted to confer with opposing counsel to specifically identify the alleged defects and non-compliance, however, no response has received as of the date of the filing this Memorandum.

through undue expense, loss of evidence, or in some other fashion; (5) the attorney offered reasonable justification for noncompliance; and (6) the delay created significant problems of judicial administration. *EMM Enters. Two, LLC v. Fromberg*, et. al. 202 So 3d 932, 934 (Fla. 4th DCA 2016)(the court must make requisite findings for each of the Kozel factors; furthermore "[d]ismissal is not generally appropriate sanction where the party has already remedied the disobedience at issue).

A.   *The Striking of Plaintiff's Pleadings is Not Warranted*

The striking of the Plaintiff's pleadings is not warranted or an appropriate penalty under the circumstances because Plaintiff's have not shown a deliberate or intentional disregard for the trial court's authority and acted in good faith to comply with its discovery obligations. *See Beauchamp, supra.  See also* Declaration of Cory Mauro, Esq. attached as **Exhibit D** (the "Mauro Declaration").

Plaintiff, in response to Defendants' broad, sweeping discovery requests have produced nearly 6,000 Bates Numbered pages of information, including emails (pdf and native)  and other documents ("Documents") responsive to Defendants claims and defenses. In searching for information to respond to Defendant's discovery requests Plaintiff (and its officers) searched its records, accounting software, CRM software and cell phones to locate emails, invoices, bank statements other responsive documents.  *See* Declaration of Ana Gajic filed and served on January 6, 2023 attached as **Exhibit E** (the "Gajic Declaration").

In addition to the above, Plaintiff and its representatives have sat for multiple days of depositions.  Mr. Gilling sat for two days of depositions: (a) September 8, 2021 for 9 hours and (b) December 1, 2021 for approximately 6 hours. Mr. Kato also sat for two days of depositions: (

c) September 9, 2021 for 8.5 hours and (d) December 2, 2021 for approximately 3 hours.  All in, Plaintiff's representatives were deposed for 4 days covering 26.5 hours.

Plaintiff has made a good faith attempt to comply with and participated in Defendant's discovery requests.  While Plaintiff's discovery responses may not have been performed or produced in the manner with which Defendant would have preferred the record does not support a finding of willful disobedience on the part of the Plaintiff with regard to the Court's Orders. Accordingly, Plaintiff respectfully requests that the Court deny Defendants Motion to Strike.

B.    *Defendant's Claims of Alleged Non-Compliance Have Been Cured*

(i)    *The June 28 Affidavit*

In the Second Sanctions Motion, Defendants claim that the Affidavit submitted by Plaintiff failed to comply with the June 28 Order because it did not "describe the efforts" that were made to gather responsive documents (*see* section B(1) of the Second Sanctions Motion) and sought this violation as basis to strike Plaintiff's pleadings.  As set forth in the Gajic Declaration the omission of the description of efforts was not an intentional act. *See* **Ex. E**.  This alleged violation of the June 28 Order is a harmless error, from which Defendants have failed to articulate any prejudice. Moreover, the Gajic Declaration has been filed and served which cures the alleged defect in the June 28 Affidavit and also further describes the additional efforts made by Plaintiff to respond to discovery. *See* **Ex. E**.  Additionally, the Mauro Declaration which, among other things, explains the reasoning behind the "description of efforts" was not included in the June 28 Affidavit. In short, Mr. Mauro in an effort to get the affidavit signed and filed by 5:00 pm that day as required by the Court inadvertently failed to include the required language.  *See* **Ex. D**.

*(ii)    Plaintiff Cured the Issue Regarding Document RF30794*

In the Second Sanctions Motion Defendants claim that document, RF30794, produced by Plaintiff on June 28, 2022, evinces that that Plaintiff was hiding payments in the amount of $4,454,012.18 from customers procured by First Holdings.

Document RF30794 is a document prepared by Rock Fintek to show all of the payments made by the Defendants' customers.  This document was produced with unredacted bank statements from Rock Fintek's Wells Fargo Account ending in 7633 from May 31, 2020 and June 30, 2020. Unfortunately, the dates on RF30794 did not coincide with the bank statements produced and all of the supporting bank statements were inadvertently not produced.  However, on August 31, 2022 Plaintiff produced documents RF 30819-30849 which contained a corrected list of payments made by Defendants customers (RF 30819) and all of the bank statements identifying the transactions which coincide with said payments. Furthermore, on December 23, 2022, unredacted bank statements for the period of March, 2020 through July 31, 2020 from Wells Fargo Account 7633 have been produced to the Defendants.

Similar to the claim that Plaintiff was hiding information about payments to customers, Defendants also claimed that because document RF 043 was produced with a redaction in the middle of the page it was hiding information in that document as well.   After investigating this issue it was determined that RF043 was received by Plaintiff from a third party with the redaction, which was done in order to protect an individual's driver's license. Plaintiff has produced the un-redacted version of this document in its possession.  *See* RF 041951.

*(iii)    Rock Fintek's Redaction of its Bank Records was Done in Good Faith to Protect its Confidential Information*

In the First and Second Motions for Sanctions, Defendants claim that Plaintiff improperly redacted bank records in order to hide payments.  As set forth in greater detail in Plaintiff's

Objection to Defendants' Notice of Intent to Subpoena Wells Fargo *and* its Reply to Defendant's Motion for Ruling on said objection, Plaintiff, in an attempt to protect its' confidential and proprietary information redacted information and did not intentionally redact relevant transactions. *See* Declaration of Rock Fintek, LLC attached as **Exhibit F** (the "RF Declaration"). Notwithstanding, Plaintiff has produced its bank records from March 2020 to July 2020 in un-redacted format. *See* RF 40208 – 40243.   The other bank records that Defendants are seeking are still subject to a ruling by the Special Magistrate from the hearing on January 4, 2023.

      (iv)   <u>*Plaintiff Produced Documentation from its Invoicing Software*</u>

In the First and Second Sanctions Motion Defendants claim that Plaintiff failed to produce documentation from its invoicing software that would show data about the PPE it sold. In its initial productions produced documents from its invoicing software.  Additionally, on December 23, 2022  in response to First Holdings and Boback's first set of interrogatories, Plaintiff produced additional records from its invoicing software as well as re-produced RF040166 -71, RF040174 – RF040179, RF040182-87, RF040194 – RF040204 which were included in Plaintiff's prior productions.   It seems that Defendants' counsel may have been in possession, or part of this information, when it took Mr. Gilling's deposition:

> Q: The information that was contained in the email from Ana
> to you, is that what software you mean?
>
> A: There's an invoicing software ***that you saw*** where you
> scrolled down that has the invoices that were sent.
>
>                \*\*\*
>
> Q. Did you mean ***this invoice***?
>
> A. Yes.

*See* Dec. 1, 2021 Gilling Depo. pg 350; ln 8 – 12; pg 351; ln 2-3  attached as **Exhibit**

**G.**  (**Emphasis added**).

Furthermore, the Defendants' characterization of Mr. Gilling's testimony on this issue is imprecise. Mr. Gilling does not specifically testify that Plaintiff separate documentation for each phase of the delivery process, but rather that Plaintiff has software that produces an invoice which contains all of the necessary data and information. *See* pg 351 – 352; ln 12 - 4 of **Ex**. **G** .  As stated above, this information has been produced to Defendants.

    *(v)*    *Plaintiff* ***Did Not*** *Fail to Produce Documentation of Additional Charges from* <u>*Suppliers*</u>

    In the First and Second Sanctions Motion Defendants claim that Plaintiff failed to produce documentation regarding additional amounts above invoice that Mr. Kato testified existed. *See* pg 6 of Second Sanctions Motion.   This claim is a mischaracterization of Mr. Kato's testimony. Specifically when Mr. Kato was asked about the existence of documentation regarding additional amounts he paid, he testified that he "did not know".

    Q. What documentation would you have of those additional
    charges, if any, relating to the masks?

    A. **I don't know**. I wasn't really involved in that, so **I
    don't know** what documentation, where it would be.

*See* Dec. 2, 2021 Depo. of Mr. Kato pg 197; ln 16-20 attached as **Exhibit H.**
                           * * *

    Q. But there would be some sort of record in your system
    that would show that you paid some additional amount on top
    of the Bomgogo charge for masks. Correct? Some accounting
    entry of some sort?

    A. I would think there would be. I hope there would be. I
    didn't handle any of the payments. Anything with the pay-
    ments, I'm just going to say **I don't know**. And I don't know
    how they are documented, so **I don't know**.

*See* Dec. 2, 2021 Depo. of Mr. Kato pg 198; ln 2-10 attached as **Exhibit H**.

Additionally, Defendants claim that because Mr. Kato's testified that "some" of the masks that were the subject of the Prisma order were still in China, is not supported by any documentation, does not serve as a basis to strike Plaintiff's pleadings. It is unclear if this request for documentation of masks in China was the subject of a specific request for production that was not complied with or if it was an issue that arose at Mr. Kato's deposition. Notwithstanding, this point, an inconsistency between Mr. Kato's testimony that he "might" have records (*see* pg 183; ln 5 – 17 of **Ex. H**), compared to the actual production of records is not a basis to strike Plaintiff's pleadings..

*(vi) Plaintiff Has Attempted in Good Faith to Respond to Defendants' Broad Discovery* <u>*Requests*</u>

Many of Defendants complaints or issues discussed above surround broad discovery requests. Rather than object on the basis of over breadth or vagueness, Plaintiff, in an effort to move the case forward agreed to produce responsive documents.

Specifically, Defendants' assert that Plaintiff: (a) failed to produce any "internal communications relating to any of the Defendants", (b) it failed to produce documentation of "any payments" by Rock Fintek to any of the Defendants, (c) "documents reflecting and/or relating to professional standards" as alleged in the Complaint, (d) failed to produce documents that support allegations in paragraphs 1 and 13 of the Complaint, (e) failed to produce documents that evidence the oral contract alleged in Counts II-III, S*ee* pg 2-3 of First Motion for Sanctions.

In response to (a) and (b) above, documents bates labeled RF 20038-41; RF 20056; RF 20058 – 60; RF20070-79; RF 20083, which were produced on or about March 1, 2022 are emails between the Defendants and Plaintiff and would satisfy the discovery request of "internal communications" relating to any of the Defendants; on June 28, 2022 Plaintiff produced bank statements that showed payments to First Holdings on May 5, 2020 in the amount of $129,143.00

(*see* RF 30799), and   on August 31, 2022, Plaintiff produced RF 30819 – 30849 which inadvertently redacted the payments to Defendants on April, 2, 2020 and April 28, 2022. However, those documents have since been produced in un-redacted format and can be found at RF 40215 and RF 40219.

Next, with regard to (d) above, i.e. the amount of Plaintiff's damages and Defendants conduct that was the catalyst for this lawsuit, i.e. the changing of the size of the order from Prisma, Defendant produced its bank records, invoices and other documents previously and recently re-produced in documents RF 4000 – 4207, all of which relate to Plaintiff's damages. With regard to (e ) above, the documents obtained as a result from a subpoena to Primsa, labeled PRISMA 69 and 104 -106 (that were also previously produced) relate to the changing of the order.  Regarding, Defendants' complaint of a lack of records regarding the "professional standards" as alleged in the Complaint, Plaintiff has amended its response to this request to "none".

These alleged discovery violations do not rise to the level of 'a deliberate or intentional disregard for the trial court's authority" and the striking of Plaintiff's pleadings based on Defendants dissatisfaction with Plaintiff's discovery responses is not supported by Florida law. *See Beauchamp, supra.*

(vii)    *Plaintiff Has Complied with its Discovery Obligations Required by the August 26 Order*

On December 23, 2022, Plaintiff filed and served Verified answers to the First Set of Interrogatories from First Holdings and Boback, along with supporting documents, RF 4000 – 40207 and native excel files which corresponded to documents RF 4000 – 40004.  On January 6, 2023, Plaintiff filed and served its Supplemental Responses to Defendants Second Request for Production, specifically identifying the documents responsive to each request, as well as an accompanying privilege log. On January 9, 2023, Plaintiff filed and served its Second

Supplemental Response to Defendants Second Request for Production to produce additional documents RF41959 – 42339.  Plaintiff also filed and served the RF Declaration regarding the redactions pursuant to paragraph 12 of the Special Magistrate August 10, 2022 Report. *See* **Ex. F**.

> **C.**    **Based on the Record *All* of the *Kozel* Factors are Not Present**

Based on the record and each of the *Kozel* factors are not present and Plaintiff respectfully requests the Court deny Defendants Motion.

The six Kozel factors are whether: (1) the attorney's disobedience was willful, deliberate, or contumacious, rather than an act of neglect or inexperience; (2) the attorney has been previously sanctioned; (3) the client was personally involved in the act of disobedience; (4) the delay prejudiced the opposing party through undue expense, loss of evidence, or in some other fashion; (5) the attorney offered reasonable justification for noncompliance; and (6) the delay created significant problems of judicial administration. *EMM Enters. Two, LLC v. Fromberg, et.al.* 202 So. 3d 932 (Fla. 4th DCA 2016).

Mr. Mauro did not intentionally or willfully disobey the Court and was not sanctioned by the Court.  *See* **Ex. D**. As set forth in the Gajic Declaration and the RF Declaration Plaintiff did not intentionally violate and/or disobey the Court's Orders. *See* **Ex.'s E** and **F**.   Rather, Plaintiff made a good faith attempt to comply with its discovery obligations including, but not limited to sitting for depositions for four (4) days, and producing documents that were relevant to the case, while at the same time attempting to keep its proprietary information safe.   Moreover, any discrepancy between what was requested and what was produced was the result of honest error. *See* **Ex. D**.  Furthermore, the Defendants have not alleged that Plaintiff's alleged non-compliance has caused the continuance of a trial or other proceedings.

**D.** <u>**Conclusion**</u>

Under Florida law, Plaintiff's alleged non-compliance does not rise to the level of having its pleadings stricken.  Plaintiff has acted in good faith and has made significant efforts to comply and/or cure any alleged defects with Defendants' discovery requests.

WHEREFORE, Plaintiff Rock Fintek, LLC, respectfully requests this Court enter an Order quashing the Subpoena and/or narrowly limiting the requests or in the alternative conduct an *in camera* inspection ; award Rock Fintek, LLC its reasonable attorneys' fees and costs; and for such other and further relief as this Court deems just and proper.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this <u>28th</u> day of February, 2023, that a true and correct copy of the foregoing was served on the parties in accordance with rule 2.516, Florida Rules of Judicial Administration.

KRINZMAN HUSS LUBETSKY
 FELDMAN & HOTTE
Alfred I. duPont Building
169 E. Flagler Street, Suite 500
Miami, Florida 33131
Telephone:  (305) 854-9700
Facsimile:   (305) 854-0508
Primary email:   mif@khllaw.com
                          shf@khllaw.com
                          mschneider@khllaw.com
Secondary email: eservicemia@khllaw.com

By:_____
       Michael I. Feldman, Esq.
       Florida Bar No. 665541

**<u>Service List</u>**

Lapin & Leichtling, LLP
Counsel for Defendants/Counterclaimants
255 Alhambra Circle, Suite 600
Coral Gables, FL 33134
aleichtling@ll-lawfirm.com
eservice@ll-lawfirm.com

The Honorable Rosa Rodriguez (Ret.)
Special Master
judgerosa@aol.com