

**THE LAW OFFICE OF AVRAM E. FRISCH LLC**

**New Jersey Office**
1 University Plaza
Suite 119
Hackensack, NJ 07601

**New York Office**
150 Broadway
Suite 900
New York, NY 10038

Avram E. Frisch Esq. – Admitted in NY and NJ.  Mail to NJ address.

November 3, 2023

Hon. Paul A. Engelmayer, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square, Room 2201
New York, NY 10007

**Via  Electronic Filing**

    Re:    Kitchen Winners NY Inc. v. Rock Fintek LLC, Case No. 22-cv-05276-PAE

Dear Judge Engelmayer:

    This firm represents JNS Capital Holdings LLC and Joel Stern.  I write to request a premotion conference to file a motion for summary judgment dismissing the claims against both of my clients.  This motion will rely on several bases, which shall be outlined below.

    As to the contract and warranty claims against Joel Stern:  At this time, the discovery has amply demonstrated that Mr. Stern was not a party to any contract with Rock Fintek, and never communicated any warranties to Rock Fintek personally.  Furthermore, the attempts to pierce the corporate veil are simply without any basis.  The testimony demonstrates that Rock Fintek located JNS through a broker retained by Rock Fintek, and that broker had communication with another broker, who was ultimately compensated by JNS.  Rock Fintek was represented by counsel, negotiated agreements and issued purchase orders to JNS alone.  Further, despite claims in the complaint to the contrary, Mr. Kato testified that he was not concerned with the finances of JNS and never requested any corporate documents to substantiate JNS' ability to follow through on the contract.

    In addition, it is now clear as well that JNS purchased and delivered the gloves as ordered, and that the gloves were sourced from Kitchen Winners who had a distributorship with the owner of the Medcare brand, Global Tooling Service. "[P]iercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury Morris v. State Dep't of Taxation & Fin., 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 810-11, 623 N.E.2d 1157, 1160-61 (1993).  "Evidence of domination alone does not suffice without an additional showing that it led to inequity, fraud or malfeasance




201.289.5352    866.883.9690    frischa@avifrischlaw.com    www.avifrischlaw.com

Page **2** of **3**

TNS Holdings Inc. v. MKI Sec. Corp., 92 N.Y.2d 335, 339, 680 N.Y.S.2d 891, 893, 703 N.E.2d 749, 751 (1998). The facts will demonstrate that Mr. Stern operated JNS for the legitimate purpose of selling gloves, in fact delivered millions of gloves that were delivered to his warehouse by boat from the manufacturer and was adequately capitalized for this purpose. There simply was no malfeasance at all, and Rock Fintek can demonstrate none.

As to all parties, it is now clear that he fraud claims are also defective. Aside from the fact that the Court already dismissed Rock Fintek's claims of bad faith on the basis of stickers being applied to boxes (see ECF #68), the claims should also be dismissed as they cannot constitute a fraud claim either. Furthermore, the other representations claimed to be false were never made by Mr. Stern, and thus summary judgment will be appropriate. The only bases for the fraud claims are based on the same conduct and the same damages that underlie the breach of contract claim. The only damages alleged as to JNS and Stern by Rock Fintek are a lost business claim arising out of the alleged failure to deliver the correct goods. This does not state an independent cause of action for fraud. (See ECF #68 at P.33)

The breach of contract and warranty claims against JNS also fail for several reasons. First, it is apparent from the record that Rock Fintek has no ability to track which gloves it purchased from JNS and which it purchased from other vendors, and the quality of the gloves. Rock Fintek can only succeed on its claim by pointing to all 200 million gloves sold by multiple vendors and saying there were quality issues. As such, Rock Fintek will not be able to prove that the gloves supplied by JNS were in breach of the relevant purchase orders. In addition, the elements of the complaint that allege JNS supplied counterfeit goods can be demonstrated as entirely false.

Similarly, JNS sold gloves from February 2021 until early May 2021. No complaint was ever made about the gloves until July 2021. "Where a seller has allegedly breached the contract, a buyer who has accepted the goods "must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy" UCC 2-607 Accent Commercial Furniture, Inc. v. P. Schneider & Assocs., PLLC, 2013 NY Slip Op 7106, ¶ 2, 110 A.D.3d 1415, 1416, 974 N.Y.S.2d 175, 176-77 (App. Div. 3rd Dept.) (internal quotations omitted). The record will demonstrate that Rock Fintek did in fact inspect goods, and had every opportunity to do so once it took possession of the goods. Whatever claim that Rock Fintek has made that it was prohibited from inspecting the goods is demonstrably without merit. Similarly, Rock Fintek's customer was in possession of the goods for months before conducting any inspection. As such, the failure to reject the goods within a reasonable time of acceptance bars Rock Fintek's claims. In fact, Kato on several occasions emailed that Ascension had utilized over 13 million gloves prior to discovering an issue and had rejected proposals to supply other brands of gloves.

Rock Fintek's damage claims are entirely predicated on lost future business. Rock Fintek admits it was paid in full by its customer for all gloves delivered by JNS, so that is not a measure of damages. This claim will also fail, for both legal and factual reasons that are not reasonably subject to dispute. First, Rock Fintek was a creature of the pandemic, got lucky to obtain a large customer and sold the gloves at a huge markup. Yet, Mr. Kato testified that Rock Fintek's business was unprofitable. Thus, when Rock Fintek claims lost future profits of $36 million, it has no basis to believe that would have been the case. It



will be demonstrated that the potential profit in this industry has declined with end of the pandemic emergencies.

This claim also is weak because Mr. Kato testified that while he had been invited to bid for future business, he had no details of the precise bid, the value of the bid in terms of potential profit, which he admitted was difficult to determine because of the decline in prices in the past two years, the fact that he promised a large portion of the profit to Global Tooling Service to replace gloves, and because it is clear that Ascension (Rock Fintek's customer) was returning to its ordinary suppliers by July 2021 and seeking to "burn down" the additional supplies purchased during the pandemic. As such, the claimed potential business is highly speculative and impossible to calculate with any certainty.

In any event, the lost business damages constitute consequential damages. Schonfeld v. Hilliard, 218 F.3d 164, 176 (2d Cir. 2000). First, Rock Fintek has no evidence to prove these damages, which are highly speculative, as described above. Furthermore, the damages alleged will be demonstrated to be well beyond the reasonable expectation of JNS at the time of contracting. "[D]amages must have been brought within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting" Kenford Co. v. Cty. of Erie, 73 N.Y.2d 312, 319, 540 N.Y.S.2d 1, 4, 537 N.E.2d 176, 178 (1989) (internal quotations omitted). JNS and Stern can demonstrate that the transaction was not one where they were contemplating anyone obtaining a long term deal; that the amount of damages claimed was not even remotely contemplated in selling a total of approximately $2.5 million worth of gloves over several months. Furthermore, Rock Fintek took no steps to mitigate any of its damages and refused to provide any replacement product or refunds to its customer, which is what caused the breakdown of its business relationship.

For these reasons, JNS and Mr. Stern request that the Court schedule a premotion conference to permit the filing of a motion for summary judgment. JNS and Stern wish to avoid the cost of expert discovery and believe that they will be successful in seeking summary judgment at this juncture.

Very truly yours,

*Avram E. Frisch*

Avram E. Frisch

Cc: All Counsel


THE LAW OFFICE OF AVRAM E. FRISCH LLC