

# LIPSIUS-BENHAIM LAW, LLP

80-02 Kew Gardens Road
Suite 1030
Kew Gardens, New York 11415
Telephone: 212-981-8440
Facsimile: 888-442-0284
www.lipsiuslaw.com

**ALEXANDER J. SPERBER**
DIRECT LINE: 212-981-8449
EMAIL: asperber@lipsiuslaw.com

November 30, 2023

**VIA ECF**
Honorable Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square, Room 2201
New York, NY 10007

      Re: ***Kitchen Winners NY Inc. v. Rock Fintek LLC***,
         Case No. 22-cv-05276-PAE
         <u>Our File No: 5529.0002</u>

Dear Judge Englemayer:

  This firm represents plaintiff and counterclaim-defendant Kitchen Winners NY Inc. ("Kitchen Winners"). Kitchen Winners respectfully submits this letter, in accordance with Rule (3)(H) of the Court's Individual Rules and Practices, to request a pre-motion conference for leave to file a motion for summary judgment on both its own claims against Rock Fintek LLC ("Rock Fintek"), and on Rock Fintek's counterclaims against it.

  As an initial matter, Kitchen Winners incorporates by reference all the arguments raised by JNS Capital Holdings LLC, Joel Stern, Adorama, and Mendlowitz in their own pre-motion letters.

  Kitchen Winners commenced this action alleging that Rock Fintek owed it money in connection with Kitchen Winners' sale of medical gloves to Rock Fintek. Kitchen Winners asserted claims for (a) breach of contract; and (b) unjust enrichment. Rock Fintek counterclaimed against Kitchen Winners for (a) breach of contract; (b) breach of the covenant of good faith and fair dealing; (c) unjust enrichment; and (d) breach of warranty.

  While the parties have contemplated expert discovery to determine whether the gloves at issue in this dispute complied with the parties' contract, summary judgment is appropriate even before expert discovery because—as explained below—the quality of the gloves is ultimately immaterial to the claims at issue.

**<u>Kitchen Winners' Affirmative Claims Against Rock Fintek</u>**

  Kitchen Winners and Rock Fintek entered into a Sales and Purchase Agreement (the "SPA"), pursuant to which Kitchen Winners agreed to sell 1,500,000 boxes of medical gloves to Rock Fintek at a price of $11.50 per box. The total contract price was therefore $17,250,000. Rock Fintek ultimately picked up 1,703,780 boxes of medical gloves from Kitchen Winners (the "Gloves"). The total price for the Gloves was therefore $19,593,470. Rock Fintek, however, only

Lipsius-BenHaim Law, LLP
November 30, 2023
Page **2** of **4**

paid $19,190,000. Accordingly, Rock Fintek owes Kitchen Winners an additional $403,470 for the gloves that it acquired.

Whether Kitchen Winners' claim for the unpaid gloves sounds in breach of contract or unjust enrichment, Kitchen Winners is entitled to summary judgment against Rock Fintek. Rock Fintek took the gloves, resold them to its customer, and never paid Kitchen Winners for them.

Under the SPA, Rock Fintek also agreed to "arrange for and pay the cost of ground transportation [for the gloves] after customs clearance." Rock Fintek did not do so, forcing Kitchen Winners to pay for shipping and associated storage costs in the amount of approximately $630,763.92. Rock Fintek is required to reimburse Kitchen Winners for those expenses.

Rock Fintek's assertion that the Gloves did not meet the agreed-upon specifications, even if true, would still not absolve it from its obligation to pay. "A party's obligation to perform under a contract is only excused where the other party's breach of the contract is so substantial that it defeats the object of the parties in making the contract." *Robert Cohn Assoc., Inc. v. Kosich*, 63 A.D.3d 1388, 1389 (3d Dep't 2009); *see also Nadeau v. Equity Residential Props. Mgmt. Corp.*, 251 F. Supp. 3d 637, 641 (S.D.N.Y. 2017). Here, it is undisputed that Rock Fintek successfully resold the Gloves to its customer, at the exact price it had agreed upon with that customer before entering into the SPA with Kitchen Winners. Rock Fintek made all of the profit that it was expecting to make on the transaction. As such, any potential breach by Kitchen Winners was immaterial as a matter of law, as it did not defeat Rock Fintek's object in making the contract.

**Rock Fintek's Counterclaims Fail for Lack of Damages**

All of Rock Fintek's counterclaims arise from the same underlying allegation – namely, that the Gloves sold to it by Kitchen Winners purportedly did not comport with the specifications in the SPA. It is axiomatic, however, that damages are an essential element of each of those counterclaims. *See e.g.*, *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (damages is an element of a breach of contract claim); *Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 598 (S.D.N.Y. 2017) (damages is an element of a breach of the covenant of good faith and fair dealing claim); *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018) (defendants benefitting at plaintiff's expense is an element of unjust enrichment claim); *Housey v. P&G*, 2022 U.S. Dist. LEXIS 53603, at *7 (S.D.N.Y. Mar. 24, 2022) ("injury to the buyer caused by the breach" is an element of a breach of warranty claim). As Rock Fintek resold the Gloves and suffered no damages, its counterclaims must be dismissed.

Rock Fintek nevertheless alleges that it suffered over $100 million lost in future profits, because the alleged poor quality of the Gloves destroyed its relationship with its customer, Ascension Health Alliance ("Ascension"). Under New York law, however, recovery of lost profits for breach of contract is subject to stringent requirements:

> First, it must be demonstrated with certainty that such damages have been caused by the breach and, second, the alleged loss must be capable of proof with reasonable certainty. In other words, the damages may not be merely speculative, possible or imaginary . . . . In addition, there must be a showing that the particular damages were fairly within the contemplation of the parties to the contract at the time it was made.

*Lovely Peoples Fashion v. Magna Fabrics*, 95 Civ. 8450 (AGS)(THK), 1998 U.S. Dist. LEXIS 11197, at *15 (S.D.N.Y. July 22, 1998) (quoting *United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 161-62 (2d Cir. 1996)).

Here, Rock Fintek cannot meet any of these requirements. Rock Fintek cannot prove with any certainty whether, and on what terms, Ascension might have continued to do business with it. Rock Fintek was entirely a creature of the Covid-19 pandemic, and when the pandemic ended there was no reason for Ascension to continue purchasing PPE from Rock Fintek. Rock Fintek did not do any business with Ascension prior to the onset of the Pandemic, and there is no reason to assume that Ascension would have continued doing business with Rock Fintek post-pandemic.

Additionally, while lost profits need not "be determined with mathematical precision," they must "be capable of measurement based upon known reliable factors without undue speculation." *Holland Loader Co., LLC v. FlSmidth A/S*, 313 F. Supp. 3d 447, 480 – 81 (S.D.N.Y. 2018). Moreover, "[a] plaintiff must provide a 'stable foundation for a reasonable estimate' of lost profits, or the claim 'falls for uncertainty.'" *Id*. Here, Rock Fintek's claim that it lost the opportunity to bid on a potential future contract with Ascension is speculative on multiple levels. Even if Rock Fintek could have bid, it may not have won the contract. And even if it had won the contract, it is unknown what its profit margins would have been. Indeed, the price for PPE plummeted post-pandemic, rendering any calculations based on pandemic prices pure speculation.

Finally, Rock Fintek cannot show that Kitchen Winners – which had no idea as to the identity of Rock Fintek's client – fairly contemplated the lost profits at issue. Moreover, New York law requires proof that *liability* for lost profits was within the contemplation of the parties. *EPN Ingenieria S.A. de C.V. v. GE*, 1996 U.S. Dist. LEXIS 13687, at n. 5 (S.D.N.Y. Sep. 17, 1996). Here, the SPA does not mention liability for lost profits at all. *See e.g., Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 334 (2d Cir. 1993) ("The Declaration of Intent, the only executed writing governing the database project, does not mention damages.").

As such, Rock Fintek cannot prove entitlement to any consequential damages based on its alleged lost profits.

Rock Fintek has also asserted that Kitchen Winners breached the SPA by refusing to pay it a contractually-owed rebate under the SPA. However, the SPA is clear that the rebate was contingent upon "all payments due hereunder are timely made, and only after the Second Deposit has been funded..." As Rock Fintek consistently failed to make timely payments, it is not entitled to the rebate.

Rock Fintek has additionally asserted that it only contracted to purchase 1,500,000 boxes of medical gloves, and is therefore actually entitled to a refund of the amounts that it paid for gloves in excess of that amount. Rock Fintek, however, picked those additional gloves up from the warehouses being rented by Kitchen Winners, delivered them to its customer, and was paid for them by its customer in full. Rock Fintek cannot now claim that Kitchen Winners owes it money for gloves that it voluntarily picked up and resold at a profit.

Accordingly, Kitchen Winners respectfully requests that the Court grant it leave to file a motion for summary judgment on both its own claims as against Rock Fintek and on Rock Fintek's counterclaims against it. We thank the Court for its continued attention to this action.

Lipsius-BenHaim Law, LLP
November 30, 2023
Page **4** of **4**

                                                  Respectfully submitted,

                                                  **LIPSIUS-BENHAIM LAW, LLP**

                                                  Alexander J. Sperber, Esq.