

NEW YORK    BOSTON
www.psdfirm.com

**POLLACK SOLOMON DUFFY LLP**
48 Wall Street, 31st Floor New York, NY 10005
617-439-9800
prakhunov@psdfirm.com

December 7, 2023

**VIA ECF**

Honorable Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square, Room 2201
New York, NY 10007

      Re:   *Kitchen Winners NY Inc. v. Rock Fintek LLC*, Case No. 22-cv-05276-PAE
            **Objection to KW Request to File Summary Judgment Motion (ECF 125)**

Dear Judge Engelmayer:

    Pursuant to Paragraph 3(H) of Your Honor's individual practices, Rock Fintek LLC respectfully objects to the request for leave to file a summary judgment motion by Kitchen Winners NY Inc. As the other parties have done in their letters, Rock Fintek incorporates by reference the arguments set forth in Rock Fintek's responses to the letters submitted by Adorama, Inc., JNS Capital Holdings LLC and Joel Stern, and does not repeat duplicative arguments herein.

    Discovery has established to a near certainty that Kitchen Winners knowingly breached its contracts with Rock Fintek, which at all times required delivery of only Medcare brand *medical grade examination nitrile gloves with an FDA 510K certification* that met ASTM D6319 Standard Specifications. The record is clear that the sellers instead delivered polyvinyl chloride "protection" gloves with no detectible nitrogen levels that did not meet the specifications.[1] Packing slips and emails between Kitchen Winners, its agents, and logistics providers demonstrate that Kitchen Winners knew that the gloves it sold to Rock Fintek did not meet the specifications required by Rock Fintek and its hospital client. In an unguarded moment of truth, Hershey Weiner (of Kitchen Winners) revealed his intentions, when writing to the Medcare glove manufacturer:

> 1) it does not say exam on the box, this is unacceptable
> 2) the factory in back of the box is different than the 510k
> These 2 issues are major, I don't know how to solve this, my customer is throwing me back the merchandise, I don't have where to sell it now.
> If I would have known this I wouldn't sell it to a government account ***I would give it to someone that doesn't look***.

In fact, Kitchen Winners then sold the non-conforming gloves to Rock Fintek who could not "look" due to COVID restrictions before the gloves were delivered to its hospital client, Ascension.

---

[1] Rock Fintek also expects to produce expert reports from a statistician and from a testing laboratory confirming this.

**A Jury Should Determine the Damages Suffered by Rock Fintek**

The record supports Rock Fintek's damages claims of (1) massive losses incurred from the destruction of Rock Fintek's lucrative business relationship with Ascension; (2) ongoing exposure to Ascension; (3) an unpaid contractual rebate of $750,000; and (4) Rock Fintek's overpayment to for approximately $2 million of gloves for which Rock Fintek did not get paid.

<u>Potential Liability to Ascension</u>: Kitchen Winners (and other parties) do not address significant recoverable damages by Rock Fintek in the form of its exposure to Ascension. The record reflects that Ascension has asserted a claim against Rock Fintek for more than $30 million that Ascension paid to Rock Fintek for the non-conforming gloves. Under New York law, Rock Fintek's potential liability to Ascension is a proper measure of damages directly stemming from the Adorama Parties' sale of non-conforming gloves. *See Gen. Aniline & Film Corp. v. A. Schrader & Son, Inc.*, 12 N.Y.2d 366 (1963). The recoverable value of Rock Fintek's exposure to Ascension is a determination for the trier of fact.

<u>Destruction of Ascension Relationship</u>: In New York, a party may recover lost profits from the destruction of a collateral business relationship if (1) it is demonstrated with certainty that the damages have been caused by the breach, (2) the extent of the loss is capable of proof with reasonable certainty, and (3) it is established that the damages were fairly within the contemplation of the parties." *Cargo Logistics Int'l, LLC v. Overseas Moving Specialists, Inc.*, 557 F. Supp. 3d 381, 401 (E.D.N.Y. 2021). On this record at least a question of fact exists on each element.

First, the SPA does not limit in any way the damages recoverable from the Sellers' breach and nothing in the record suggests any such limitation. Ambiguity created by this silence cannot be resolved on summary judgment and must be construed against the drafter – Kitchen Winners or Adorama. *See Credit Suisse First Bos. v. Utrecht Am. Fin. Co.*, 30 Misc. 3d 879, 883, 914 N.Y.S.2d 600, 603 (Sup. Ct. 2010), aff'd, 84 A.D.3d 579 (2011) (determination of what liability defendant may fairly be supposed to have assumed consciously is a question of fact).

Second, Kitchen Winners ignores evidence that: Rock Fintek had a significant preexisting business relationship with Ascension selling tens of millions of dollars of medical gowns, masks, boots and gloves; Ascension testimony that but for the bad gloves Ascension would have "highly likely" continued doing business with Rock Fintek; that the bad gloves caused Ascension to stop doing business with Rock Fintek; that other suppliers similarly situated to Rock Fintek are continuing to sell products to Ascension through the present; and that Rock Fintek's preexisting business relationship with Ascension better positioned it to become an approved long-term vendor for Ascension, which Rock Fintek was taking steps to do.

Third, Kitchen Winners ignores evidence that all sellers knew prior to entering into glove transactions and during their course of business dealings that gloves would immediately be re-sold by Rock Fintek to its hospital client and that the hospital client required particular specifications, short of which the hospital would not accept the gloves. The record is replete with communications that create at least a question of fact as to whether liability for issues related to Rock Fintek's client was fairly within contemplation of the parties. For example, chat message exchanges between the parties put sellers on notice that Rock Fintek was providing their purported FDA 510K letter and representations about gloves to its hospital client on which it relied and that the hospital "buyer"

would not accept protection gloves or mislabeled boxes. Indeed, when wrong brand (LevMed) gloves were delivered in April 2021, Rock Fintek immediately notified sellers that this caused "a major issue with our client" that was "causing us serious damages" and "this has created great tension with our client." At no time did sellers seek to disclaim responsibility for such liability but took steps (albeit by using fraudulently altered documents) to remedy the issue.

Thus, drawing all reasonable inferences in Rock Fintek's favor, a jury can reasonably find that it was in the fair contemplation of the parties that delivering fake gloves to a hospital for use in the middle of a global pandemic would destroy Rock Fintek's relationship with that hospital, for which Rock Fintek would seek to hold the sellers responsible. *See Marine Steel Transp. Line, LLC v. E. Metal Recyling, LLC*, No. 19-CV-2275-FB-SJB, 2023 WL 3603489, at *2 (E.D.N.Y. May 23, 2023) ("[w]hether or not Thornton's alleged lost profits were foreseeable and within the contemplation of the parties is a question of fact." (internal citations and quotation marks omitted)); *Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 403 (1993) ("The breaching party need not have foreseen the breach itself, however, or the particular way the loss came about. It is only necessary that loss from a breach is foreseeable and probable."); *Aramony v. United Way of Am.*, No. 96 CIV. 3962 (SAS), 1998 WL 205331, at *6 (S.D.N.Y. Apr. 27, 1998) (which injuries were contemplated by the parties at the time of the agreement "present questions of fact that will be resolved at trial."). Each of the cases cited by Kitchen Winners is distinguishable.

<u>Rebates and Overpayment</u>. Claiming that untimeliness of payments by Rock Fintek excuses payment of a $750,000 rebate under the SPA, Kitchen Winners ignores evidence that any such delay was the result of its own delivery of incorrect brand (LevMed) gloves, which caused Ascension to delay corresponding payments to Rock Fintek while the issue was sorted out.[2] Thus, any delays were caused by Kitchen Winners, which excuses Rock Fintek's obligations and requires that the rebate be paid. Similarly, the argument regarding the $2 million in gloves that Adorama Parties admitted overdelivering is just that, an argument. The record shows that Kitchen Winners delivered and charged for far more gloves than the SPA required. The precise amount of those gloves for which Rock Fintek did not get paid is a question of fact to be resolved at trial.

**Kitchen Winners' Affirmative Claims Fail Due to Its Own Breaches**

Finally, Kitchen Winners cannot obtain summary judgment on its affirmative claims because it materially breached the parties' contractual relationship by delivering an entirely wrong product for which Ascension has asserted claims against Rock Fintek. *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007) (question of fact whether "a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach…."). Each of the cases cited by Kitchen Winners in its letter is either easily distinguishable or supports Rock Fintek's position.

Accordingly, Kitchen Winners' request to file a summary judgment motion should be denied as futile.

---

[2] Whether intentional misconduct or mere negligence by Kitchen Winners' warehouse staff, there is no dispute that LevMed gloves were in fact wrongly delivered to Ascension and that payment was delayed at no fault of Rock Fintek.

Respectfully submitted,

*/s/Phillip Rakhunov*
Phillip Rakhunov

cc: All counsel (via ECF)

4