IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KITCHEN WINNERS NY INC.,<br><br>       *Plaintiff*,<br><br>-against-<br><br>ROCK FINTEK LLC,<br><br>       *Defendant.*<br><br>ROCK FINTEK LLC,<br><br>       *Counterclaim and Third-*<br>       *Party Plaintiff,*<br><br>-against-<br><br>KITCHEN WINNERS NY INC.,<br><br>       *Counterclaim Defendant,*<br><br>and<br><br>ADORAMA INC., HERSHEY WEINER, JOSEPH MENDLOWITZ, JNS CAPITAL HOLDINGS LLC and JOEL STERN<br><br>       *Third-Party Defendants.* | Civil Action No. 22-cv-05276-PAE |

**JOINT STIPULATION OF UNDISPUTED FACTS**

Pursuant to the Court's December 20, 2023 Order, Kitchen Winners NY Inc. ("Kitchen Winners"), Adorama Inc. ("Adorama"), Joseph Mendlowitz ("Mendlowitz"; together with Adorama, the "Adorama Parties"), JNS Capital Holdings LLC ("JNS"), Joel Stern ("Stern"; together with JNS, the "JNS Parties"), and Rock Fintek LLC ("Rock Fintek") (collectively, the

"Parties"), respectfully submit the following joint statement of undisputed facts. The Parties acknowledge that there are additional facts that are not included herein that are relevant to this action. Additionally, the Parties stipulate that not all facts contained herein are relevant or material to this action and reserve all rights to argue relevance and materiality in their motion papers and at trial.

## THE PARTIES

1. Kitchen Winners NY Inc. ("Kitchen Winners") is a corporation formed under the laws of the State of New York.

2. The sole president and sole shareholder of Kitchen Winners is Yitty Weiner.

3. Kitchen Winners was originally formed for the purpose of selling kitchen accessories online.

4. At the onset of the Covid-19 pandemic, Kitchen Winners expanded its business to focus on the sale of Personal Protective Equipment ("PPE").

5. Joseph Weiner, also known as Hershey Weiner, is the husband of Yitty Weiner and runs the day-to-day operations of Kitchen Winners.

6. Adorama Inc. ("Adorama") is a corporation formed under the laws of the State of New York.

7. Joseph Mendlowitz is a director of multiple departments at Adorama.

8. Rock Fintek LLC ("Rock Fintek") is a Limited Liability Company.

9. Thomas Kato is the sole member of Rock Fintek.

10. Bradley Gilling was the Chief Operating Officer at Rock Fintek at relevant times.

11. JNS Capital Holdings LLC ("JNS") was formed for the purpose of selling PPE during the pandemic.

12. The only product JNS bought and sold as part of its PPE business was MedCare brand gloves.

13. Joel Stern is the sole member of JNS.

14. JNS does not have an operating agreement.

15. JNS had no funds in its bank account as of October 2023.

**COMMUNICATIONS BETWEEN ROCK FINTEK AND ADORAMA**

16. Thomas Kato never met in person, texted, emailed, or exchanged WhatsApp communications with anyone at Adorama.

17. Thomas Kato never met in person, texted, emailed, or exchanged WhatsApp communications with Joseph Mendlowitz.

18. Bradley Gilling never met in person, texted, emailed, or exchanged WhatsApp communications with anyone at Adorama.

19. Bradley Gilling never met in person, texted, emailed, or exchanged WhatsApp communications with Joseph Mendlowitz.

20. Rock Fintek has not produced any text messages, emails, or WhatsApp communications between any Rock Fintek employee or representative, on the one hand, and any Adorama employee, on the other hand.

21. Rock Fintek has not produced any text messages, emails, or WhatsApp communications between any Rock Fintek employee or representative, on the one hand, and Joseph Mendlowitz, on the other hand.

22. Rock Fintek has not produced any records of Zoom meetings with any Adorama employees or representatives.

23. Rock Fintek has not produced any records of Zoom meetings with Joseph Mendlowitz.

24. Rock Fintek has not produced any records of WhatsApp calls with any Adorama employees.

25. Rock Fintek has not produced any records of WhatsApp calls with Joseph Mendlowitz.

26. Rock Fintek has not produced any record that it had contact information for Joseph Mendlowitz.

**JNS TRANSACTIONS**

27. JNS entered into contracts for the supply of MedCare nitrile examination gloves from Kitchen Winners in January 2021 and a subsequent additional contract.

28. In early February 2021, an individual that had worked as a consultant or broker for Rock Fintek, Ms. Chunron Li communicated with an individual named Bruno Azra.

29. Mr. Azra was acquainted with Joel Stern and passed along to Ms. Li an offer to sell MedCare Nitrile Exam Gloves for $15 a box.

30. Eventually, JNS received a Purchase Order from Rock Fintek that was accepted by JNS.

31. The individual seen in the February 9, 2021 video clip identified in the WhatsApp chat with Ms. Li as "00001175-VIDEO-2021-02-09-13-07-31.mp4" is Ms. Li.

32. Mr. Azra passed some paperwork about the gloves to Ms. Li for her review.

33. The JNS Purchase Order was for FDA 510(K) certified MedCare Nitrile Exam Gloves.

34. Rock Fintek did not seek Mr. Stern's personal guarantee for the transaction.

35. Rock Fintek did not get any financial information from JNS prior to entering into the transaction.

36. Rock Fintek eventually purchased more gloves from JNS during April and May 2021.

37. All gloves purchased by Rock Fintek from JNS were immediately resold to Ascension Health Alliance through The Resource Group at the price contracted between Rock Fintek and Ascension Health Alliance and The Resource Group.

.

**THE ONE-OFF TRANSACTIONS**

38. In March 2021, Kitchen Winners sold Rock Fintek approximately 90,000 boxes of gloves in one-off transactions ("Kitchen Winners' One-Off Transactions").

39. Rock Fintek paid $14 per box for the Gloves during the Kitchen Winners' One-Off Transactions.

40. Adorama Inc. ("Adorama") was not a party to the Kitchen Winners' One-Off Transactions.

**THE SALES AND PURCHASE AGREEMENT**

41. In April 2021, certain parties entered into a Sales and Purchase Agreement ("SPA") with Rock Fintek. A true and correct copy of the signed SPA is attached as Exhibit A hereto.

42. The SPA did not expressly reference ASTM D6319 standards.

43. Pursuant to the SPA, Rock Fintek was to immediately wire Adorama $1,250,000.00 as a first deposit and an additional $600,000.00 at a later date as a second deposit. The deposits would be applied as payment in full for the last approximately 5.6 containers.

44. Stern and JNS were not a party to the SPA.

**PAYMENT AND PURCHASE HISTORY WITH ADORAMA/KITCHEN WINNERS**

45. Rock Fintek made the following payments to Adorama and/or Kitchen Winners:

| Date of Payment | Amount of Payment |
| --- | --- |
| March 5, 2021 | $470,000 |
| March 18, 2021 | $420,000 |
| March 19, 2021 | $370,000 |
| April 8, 2021 | $1,250,000 |
| April 20, 2021 | $690,000 |
| April 26, 2021 | $690,000 |
| April 27, 2021 | $345,000 |
| May 3, 2021 | $690,000 |
| May 5, 2021 | $690,000 |
| May 10, 2021 | $690,000 |
| May 11, 2021 | $690,000 |
| May 12, 2021 | $690,000 |
| May 19, 2021 | $1,380,000 |
| May 20, 2021 | $345,000 |
| May 21, 2021 | $1,035,000 |
| May 24, 2021 | $1,725,000 |
| May 25, 2021 | $1,035,000 |
| May 27, 2021 | $2,070,000 |
| May 27, 2021 | $198,435 |
| June 1, 2021 | $1,725,000 |
| June 3, 2021 | $1,380,000 |
| June 8, 2021 | $690,000 |

| June 10, 2021 | $1,035,000 |
| June 14, 2021 | $345,000 |

46. Other than the payments listed above, Rock Fintek has not made any other payments to either Adorama or Kitchen Winners.

47. All three March payments were for the gloves sold during the Kitchen Winners' One-Off Transactions.

48. On April 8, 2021 Rock Fintek paid $1,250,000 as an initial deposit, pursuant to the SPA.

49. On April 20, 2021 Kitchen Winners invoiced Rock Fintek $622,725.

50. On April 26, 2021 Kitchen Winners invoiced Rock Fintek $671,600.

51. On April 27, 2021 Kitchen Winners invoiced Rock Fintek $345,000.

52. On May 3, 2021 Kitchen Winners invoiced Rock Fintek $690,000.

53. On May 5, 2021 Kitchen Winners invoiced Rock Fintek $690,000.

54. On May 10, 2021 Kitchen Winners invoiced Rock Fintek $690,000.

55. On May 11, 2021 Kitchen Winners invoiced Rock Fintek $1,020,510.

56. On May 12, 2021 Kitchen Winners invoiced Rock Fintek $1,035,000.

57. On May 13, 2021 Kitchen Winners invoiced Rock Fintek $666,770.

58. On May 16, 2021 Kitchen Winners invoiced Rock Fintek $198,435.

59. On May 19, 2021 Kitchen Winners invoiced Rock Fintek $2,070,000.

60. On May 20, 2021 Kitchen Winners invoiced Rock Fintek $690,000.

61. On May 21, 2021 Kitchen Winners invoiced Rock Fintek $345,000.

62. On May 24, 2021 Kitchen Winners invoiced Rock Fintek $2,392,000.

63. On May 25, 2021 Kitchen Winners invoiced Rock Fintek $2,703,535.

64. On May 28, 2021 Kitchen Winners invoiced Rock Fintek $1,860,700.

65. On June 2, 2021 Kitchen Winners invoiced Rock Fintek $342,125.

66. On June 3, 2021 Kitchen Winners invoiced Rock Fintek $661,710.

67. On June 4, 2021 Kitchen Winners invoiced Rock Fintek $634,340.

68. On June 8, 2021 Kitchen Winners invoiced Rock Fintek $392,405.

69. On June 11, 2021 Kitchen Winners invoiced Rock Fintek $1,327,675.

**ROCK FINTEK RESELLS THE GLOVES TO ASCENSION HEALTH ALLIANCE**

70. The Resource Group is the purchasing entity for Ascension Health Alliance. The Resource Group and Ascension Health Alliance are referred to collectively, herein, as "Ascension."

71. On December 7, 2020, Ascension gave Rock Fintek a purchase order for 200 million nitrile exam gloves bearing FDA 510(k) certification and meeting ASTM D6319 specifications (the "Ascension Purchase Order"). A true and correct copy of the Ascension Purchase Order is attached as Exhibit B hereto.

72. Pursuant to the Ascension Purchase Order, Ascension agreed to pay Rock Fintek $37 million for 200 million nitrile exam gloves, at a price of 18.5 cents per glove.

73. Ascension testified that Rock Fintek fulfilled its purchase order for 200 million gloves solely with MedCare and LevMed brand gloves.

74. Ascension testified that Rock Fintek delivered approximately 196,000,000 MedCare brand gloves.

75. Rock Fintek claims that it delivered approximately 3,000,000 LevMed brand gloves to Ascension.

76. Ascension testified that it paid Rock Fintek for all gloves that Rock Fintek invoiced it for.

77. According to Rock Fintek, it only purchased MedCare gloves from the following individuals and companies: Joel Stern, JNS Capital Holdings, Kitchen Winners, and Adorama.

78. According to Rock Fintek, it only purchased LevMed gloves from the following companies: Kitchen Winners and Adorama.

79. Rock Fintek has not returned, to Ascension, any of the money that Ascension paid it for the gloves.

80. Ascension has not commenced any lawsuit or legal action to recover any portion of the funds that it paid Rock Fintek, but has sent Rock Fintek a demand letter and has demanded that Rock Fintek make Ascension whole.

81. Ascension testified that Rock Fintek did not meet the specifications for gloves that were laid out in the Purchase Order.

**DAMAGES**

82. Rock Fintek did not make a profit on the gloves that it sold to Ascension.

83. In fact, Rock Fintek lost money on the gloves' transactions.

84. After Rock Fintek delivered all the gloves to Ascension, Ascension was not thinking about purchasing any additional gloves at that moment.

85. Mr. Kato and Mr. Gilling had no relevant experience selling PPE prior to COVID.

86. During the relationship between Rock Fintek and Ascension, Rock Fintek only sold gloves, masks, and gowns to Ascension.

87. Ascension testified that–had it not been dissatisfied with the gloves delivered by Rock Fintek–it would have been willing to engage in additional business with Rock Fintek. However, it distinguished between business in the "short term" and business in the "long term."

88. In order to qualify for any "long-term potential business" with Ascension, Ascension testified that Rock Fintek would have needed to overcome "major hurdles."

89. First, Rock Fintek would need to obtain all necessary the FDA approvals, which Ascension described as "no small hurdle."

90. Second, in order to sell Ascension gloves, PPE, and masks, Rock Fintek would need to be competitively priced in order to compete with "ginormous companies and organizations."

91. The gloves were delivered from China directly to warehouse space rented by Kitchen Winners and JNS.

**STORAGE OF GLOVES**

92. Rock Fintek asserts that it delivered the gloves to warehouses owned by Medline.

93. Medline stated that it possessed MedCare gloves in warehouses for Ascension, Rock Fintek's ultimate customer.

94. Medline had moved some gloves between its distribution centers at client request.

95. JNS received gloves from the manufacturer by boat, and placed them in rented space in third party warehouses.

96. JNS hired the warehouses to palletize and shrinkwrap goods for JNS.

97. The pallets were then placed on Rock Fintek's hired trucks when their drivers arrived.

**AUTHENTICATION OF DOCUMENTS**

10

98. The parties stipulate to the authenticity of the following documents. The parties reserve the right to challenge the admissibility of these documents on any and all other grounds including, without limitation, hearsay.

99. Attached hereto as Exhibit "A" is a true and correct copy of the SPA.

100. Attached hereto as Exhibit "B" is a true and correct copy of the Purchase Order between Ascension and/or The Resource Group and Rock Fintek.

101. Attached hereto as Exhibit "C" is a true and correct copy of the Letter of Intent dated April 1, 2021, between Arik Maimon and Rock Fintek, Bates labelled RF_000962-963.

102. The parties stipulate that the WhatsApp Chats with the following Bates numbers, along with their attachments, are true and correct copies thereof:

   a. RF_002990.
   b. RF_002991.
   c. RF_002992.
   d. RF_002993.
   e. RF_002994.
   f. RF_002995.
   g. RF_002996.
   h. RF_002997.
   i. RF_002998.
   j. RF_002999.
   k. RF_003000.
   l. RF_003001.
   m. RF_003002.

       n.   RF_004276.

       o.   RF_004277.

       p.   RF_004278.

103. Attached hereto as Exhibit "D" is a true and correct copy of the trucking invoices from Wenzy, Bates labelled Adorama and Kitchen Winners 000270-319.

104. Attached hereto as Exhibit "E" is a true and correct copy of the trucking invoices from ACL America, Bates labelled Adorama & Kitchen Winners 238-241; 258-264.

105. Attached hereto as Exhibit "F" is a true and correct copy of the trucking invoices from Del Express, Bates labelled Adorama & Kitchen Winners _000242-245; 240, 247-257.

106. Attached hereto as Exhibit "G" is a true and correct copy of the storage invoices from MD 3PL, Bates labelled Adorama & Kitchen Winners 000547-559; 618-630.

107. Attached hereto as Exhibit "H" is a true and correct copy of the invoices from Kitchen Winners, Bates labelled Adorama & Kitchen Winners 000456-461; 514-516; 561-562.

108. Attached hereto as Exhibit "I" are true and correct copies of certain Bills of Lading from DelExpress, Bates labelled Adorama & Kitchen Winners 000360-369; 371, 373, 375, 377, 379, 381, 383, 385, 387, 389, 391, 393, 395, 397, 399, 401-414, 416-417, 420, 423-424.

109. Attached hereto as Exhibit "J" is a true and correct copy of the initial Irrevocable Corporate Purchase Order dated February 2, 2021.

110. Annexed hereto as Exhibit "K" are true copies of JNS' bank statements during the period in which the sales of goods occurred. These records are redacted per Fed. R. Civ. P. 5.2.

111. Attached hereto as Exhibit "L" is a true copy of a document produced in discovery by Kitchen Winners Bates labelled AKW-003061-3063.

112. Attached hereto as Exhibit "M" is a true copy of a document produced in discovery by Kitchen Winners Bates labelled AKW-003067-3069.

113. Attached hereto as Exhibit "N" is a true copy of a document produced in discovery by Kitchen Winners Bates labelled AKW_004204-4216.

114. Attached hereto as Exhibit "O is a true copy of a document produced in discovery by Kitchen Winners Bates labelled AKW_003368-3372.

115. Attached hereto as Exhibit "P" is a true and correct copy of a document produced in discovery by Rock Fintek Bates labelled as RF_001034-001035.

116. Attached hereto as Exhibit "Q" is a true and correct copy of a document produced in discovery by Rock Fintek Bates labelled at RF_003483-003486.

117. Attached hereto as Exhibit "R" are true copies of the contracts between JNS and Kitchen Winners.

118. The parties reserve the right to reference and rely in briefing upon additional documents produced in discovery that are not attached hereto.

| | |
|---|---|
| Dated: January 16, 2024 | Dated: January 16, 2024 |
| **LIPSIUS-BENHAIM LAW, LLP** | **POLLACK SOLOMON DUFFY LLP** |
| By: /s/ Alexander J. Sperber | By: /s/ Phillip Rakhunov |
| Alexander J. Sperber | Phillip Rakhunov |
| Ira S. Lipsius | Lauren Riddle (pro hac vice) |
| 80-02 Kew Gardens Road, Suite 1030 | 485 Madison Avenue, Suite 1301 |
| Kew Gardens, NY 11415 | New York, NY 10022 |
| (212) 981-8440 | (212) 493-3100 |
| asperber@lipsiuslaw.com | prakhunov@psdfirm.com |
| iral@lipsiuslaw.com | lriddle@psdfirm.com |
| *Attorneys for Kitchen Winners NY Inc., Adorama Inc., and Joseph Mendlowitz* | *Attorneys for Rock Fintek LLC* |

Dated: January 16, 2024

**THE LAW OFFICE OF AVRAM E. FRISCH LLC**

By: /s/ Avram E. Frisch
Avram E. Frisch
1 University Plaza, Suite 119
Hackensack, NJ 07601
(201) 289-5352
Frischa@avifrischlaw.com
*Attorneys for JNS Capital Holdings LLC and Joel Stern*