**From:** Michael Elstro <michael.elstro@theresourcegroup.com>
**Sent:** Monday, December 07, 2020 6:35 PM EST
**To:** Bradley Gilling <bg@rockfintek.com>
**CC:** Thomas Kato <tk@rockfintek.com>; Rader, Dewayne <Dewayne.Rader@theresourcegroup.com>; Vincent Moccio <vincent.moccio@theresourcegroup.com>
**Subject:** Re: [EXTERNAL] INV 200m Nitrile Gloves revised.
**Attachment(s):** "P0019_0000040075_0.pdf"

Brad,

Attached you will find the PO for 200M nitrile exam gloves. The PO actually shows 150M units due to us cutting a 25% down payment today for $9.25M. In total, we are ordering 200M total gloves. The $9.25M down payment was wired today and should be in your account very shortly. Here are some details around our order.

- All gloves delivered need to be FDA approved and ASTM D6319 rated.
- Right now Medline is stating they want the gloves to go into their Jeffersonville, IN distribution center (address in PO). We'll keep you posted along the way as we review the delivery schedule together and monitor Medline's space availability.
- Full payment will be made on gloves as they are delivered and slotted at Medline.
- As previously discussed, Ascension's down payment of $9.25M will be refunded if Rock Fintek cannot end up delivering the gloves for any reason.
- Right now the plan is to deliver 40M gloves per month for 5 consecutive months. Rock Fintek is going to look into the possibility of airing some of the initial shipments, in coordination with The Resource Group, and then the balance of the orders will go by ocean freight.

Let me know if you have any questions. Thanks!

**Mike Elstro**
Director, Sourcing, Critical Products & Rapid Design
The Resource Group
t: 314-304-4454


On Mon, Dec 7, 2020 at 8:57 AM Bradley Gilling <bg@rockfintek.com> wrote:
> Hey Mike,
>
> Changes made accordingly.
>
> Thank you.
>
>
>
> Kind Regards,
>
> Brad Gilling
> Director of Operations
>
> Rock Fintek
> Trading Company
> Direct: 248-891-6060
> bg@rockfintek.com
>
> **Miami, USA**
> 1680 Michigan Ave, Suite 800, Miami Beach, FL 33139
>
> **Phone**
>
> +1 305 501 3000

**London, UK**
40-42 Parker Street, 1st Floor, London WC2B 5PQ

**Phone**

+44 207 952 2154

CONFIDENTIALITY NOTICE:
This email message and any accompanying data or files is confidential and may contain privileged information intended only for the named recipient(s). If you are not the intended recipient(s), you are hereby notified that the dissemination, distribution, and or copying of this message is strictly prohibited. If you receive this message in error, or are not the named recipient(s), please notify the sender at the email address above, delete this email from your computer, and destroy any copies in any form immediately. Receipt by anyone other than the named recipient(s) is not a waiver of any attorney-client, work product, or other applicable privilege.

**CONFIDENTIAL**                                                                                                                                                                  RF_001280

Terms and Conditions

1. Priority and Conflicts. The terms and conditions ("Terms and Conditions") listed herein shall be in effect unless superseded by a fully executed binding written agreement active and in force on date of the purchase order ("PO") between (a) the parties listed on this PO; (b) the Buyer's health ministry and Vendor; (c) Ascension Health Resource and Supply Management Group, LLC, in its capacity as a group purchasing organization in which Buyer is a participant, and Vendor; or (d) Ascension Health Alliance or Ascension Health - IS, Inc. d/b/a Ascension Information Services, contracting on behalf of its affiliates of which Buyer is one, and Vendor for the products and services listed on this PO; in such cases the terms and conditions of such written agreement shall take precedence and these Terms and Conditions shall not apply. Vendor's additional or different terms, including any "shrink wrap license" bundled with the products and services or any "disclaimers" or "click to approve" contained in or provided in connection with the products or services, or any attempt by Vendor to vary any of these Terms and Conditions is objected to and rejected and shall be deemed a material alteration. These Terms and Conditions shall be deemed accepted by the Vendor without any additional or different terms unless agreed to otherwise in writing by Buyer.

2. Price. Except as set forth herein, Vendor agrees to hold firm throughout the term of these Terms and Conditions the pricing set forth on the PO. Vendor warrants that the price for the products or services including discounts and rebates is no less favorable than those prices extended to any other customer. In the event more favorable pricing is made available to another customer, Vendor will also reduce its prices offered to Buyer. Vendor warrants that prices are complete and that no additional charges of any type shall be added without Buyer's prior written consent including, but not limited to charges for shipping, packaging, labeling, storage, cartage, insurance, taxes, brokerage fees, custom duties, and surcharges of any type.

3. Delivery. Products to be shipped by Vendor shall be shipped FOB Destination. "FOB Destination" shall mean that (a) title and risk of loss to the products shall not pass to the Buyer until the products are delivered and signed for at the designated shipping destination; and (b) the Vendor will be responsible for paying all applicable freight charges of the commercial carrier. Vendor shall remain responsible for the condition of products in transit, insurance, and filing claims with the commercial carrier. Vendor shall also be responsible for placing the assigned PO number of the Buyer in the customer reference field of the shipping manifest. Buyer shall not incur, or otherwise be liable for transit-related fees, including, but not limited to freight charges and handling fees, unless the Vendor receives prior written authorization from the Buyer to incur such fees, and, in such instance, Vendor shall use Buyer's designated carrier and applicable shipping number. Shipping charges for all freight-included products shall be negotiated between the Buyer and the Vendor. If shipping charges do not apply to this order, please ship via Vendor's preferred method. If prepay and add shipping charges contractually apply to this order, please use the following instructions:

If this PO would ordinarily be shipped via small package carrier, ship via FedEx and bill third party to FedEx #531979281, FOB Destination. If this is a non-expedited order, ship via FedEx Ground. If this is an expedited order, ship via FedEx Express using the service level required to meet the delivery date. Insert Buyer's PO# in Recipient Address Line 2 Field (or) the Attention Field. If the PO is for product with a combined weight exceeding 150lbs or is for products not ordinarily shipped via small package carrier call 844-875-7444 or email LTL@vantagepointlogistics.com to schedule the pick-up and delivery of the items.

4. Cancellation, Acceptance and Returns. Buyer may, upon written notice to Vendor, change shipping and delivery instructions, cancel or reschedule this PO, with or without cause, in whole or in part, at any time upon written notice to Vendor. Buyer's sole liability upon any such termination shall be limited to: (a) the unpaid purchase price of the products (otherwise conforming to the requirements of this PO) that have been delivered or shipped to Buyer on or before the date of cancellation and (b) any services that have been performed by Vendor prior to the date of cancellation notice. Any other modifications must be in writing signed by Buyer and Vendor. Following performance of any services, Vendor shall certify in writing that the services are ready for acceptance review. With Vendor's assistance, Buyer shall, within thirty (30) days after receipt of such certification, conduct acceptance review, which means to review the work product of the services and/or any software provided to determine whether the services and/or software, as applicable, provided meet the specifications and perform the functions identified in the applicable PO or other document defining the services and/or software to be rendered. In the event the services and/or software fail to fulfill the specifications, Vendor shall re-perform the services or correct, modify or improve the software, as applicable, without additional cost to Buyer. Buyer shall have thirty (30) calendar days from the date of delivery within which to inspect products delivered hereunder. During such thirty (30) day inspection period, the Buyer may, in its sole discretion, reject such products based on shipping damage or any inconsistency with these Terms and Conditions, failure to comply with law or failure to meet the quality or safety rules or procedures of the Buyer. In the event the Buyer rejects such product, the Buyer shall have the right to return the product to Vendor. Vendor agrees to absorb all costs of shipping and Buyer shall receive a full credit of purchase price or a replacement product shall be shipped to Buyer with any applicable shipping fees waived. Buyer is not obligated to pay and Vendor shall not attempt to charge for any ancillary fees including, but not limited to handling, packaging or dunnage. Nothing contained in this section shall preclude the Buyer from pursuing any other remedies available at law or in equity. Delivery of products shall not constitute the acceptance of the Products.

5. License Grant. In accordance with these Terms and Conditions, Vendor grants to Buyer and Buyer's Affiliates a nonexclusive, sublicensable, irrevocable, world-wide license to the software and documentation for access and use by the Authorized Users. The term of the license shall be the license term identified on the Vendor invoice associated with this PO or if none, perpetual. "Affiliate" means, with respect to any specified entity, any entity that directly or indirectly controls, is controlled by or is under common control with such specified entity. An entity shall be deemed to control another entity if such first entity has the power, directly or indirectly, to direct or cause the direction of the management or policies of such other entity, whether through ownership of voting securities, by contract, or otherwise. "Authorized Users" means individuals designated as authorized to access and use the software and documentation on behalf of Buyer and Buyer's Affiliates.

6. Warranties and Recalls. Vendor represents and warrants that it has and shall continue to have for the term of these Terms and Conditions, good title to the products (which for purposes of this Section 6 shall include software) delivered to Buyer and without violating the property rights or interests of any third party inclusive of the intellectual property contained therein. Vendor warrants that each of the products shall be free from defects in material and workmanship and shall conform to the published specifications for such product and Vendor's representations regarding the functions and uses for which the product is marketed, including without limitation fitness for the particular purposes for which Buyer has purchased the products or services. Throughout the term of these Terms and Conditions Vendor warrants and represents to Buyer that services performed by Vendor or by a permitted subcontractor or agent of Vendor shall be performed on a professional basis, consistent with the best practices in the industry and in a diligent, workmanlike, and expeditious manner. Vendor represents and warrants that: (i) no product or service will include or transmit any Malicious Code; (ii) no product or service will include any Disabling Code; and (iii) Vendor shall not invoke or cause to be invoked Disabling Code at any time, including upon expiration or termination of these Terms and Conditions or any PO for any reason, or upon any dispute, without Buyer's prior written consent. "Malicious Code" means any feature, routine, software code, script, item or device, including any computer virus, worm, trap door, back door, or time bomb, that is intended or designed to, either automatically upon the occurrence of a certain event or upon the taking of or failure to take a certain action, or at the direction or control of any person or entity: (i) disrupt the operation of any products or services; (ii) cause any data to be destroyed, altered, erased, damaged, or otherwise rendered inoperable; (iii) permit any person or entity to take control of, or destroy, alter, erase, damage, or otherwise render inoperable computers or computer networks; (iv) transmit, without knowledge and consent, audible, visual, or other data regarding activities occurring in the room in which the products or services are used or installed (other than metadata customarily recorded by products such as the products or services), (v) hinder Buyer's freedom to fully exercise its rights in connection with the products or services, or (vi) constitutes a cyber threat indicator, as that term is defined in the Cybersecurity Information Sharing Act of 2015. Malicious Code does not include any Disabling Code or functionality that is described in the documentation and that is consistent with the intended use of the products and services. "Disabling Code" means any software lock or routine for password checking, CPU serial number checking, time dependency, or similar code, in each case that (i) could disable or

otherwise disrupt Buyer's full and uninterrupted use of all or any portion of the software or services, and (ii) is designed to be invoked by Vendor. All of the warranties referenced or set forth in this section shall be in addition to all other warranties which may be prescribed by law. In addition to all other remedies available at law or in equity, in the event Vendor is deemed not to have good title to the product set forth in these Terms and Conditions, any and all purchase commitments contemplated herein shall be deemed met. If a governmental entity recalls or subjects a good to any corrective action ("Governmental Recall"), Vendor will reimburse Buyer for any costs it incurs as a result of the Government Recall. If Vendor voluntarily recalls an item for any reason ("Voluntary Recall"), Vendor shall (a) immediately notify Buyer; (b) within a reasonable time frame of the Voluntary Recall, provide a written proposal of the corrective action to be taken by Vendor as a result of the Voluntary Recall, which corrective action is subject to Buyer's review and approval; (c) perform the corrective action approved by Buyer. Additionally, within seventy-two (72) hours, Vendor shall notify Buyer if Vendor receives correspondence or notification from any governmental authority regarding the products or services, records related to services, Vendor's quality system, and/or possible audit or any other matter relating to the products or services purchased hereunder.

7. Indemnification. If a claim is made or an action brought alleging that products (which for purposes of this Section 7 shall include software) or services infringe a U.S. patent, or any copyright, trademark, trade secret or other proprietary right, Vendor shall indemnify, defend and hold harmless Buyer against such claim and will pay resulting costs and damages, and attorney's fees. Vendor shall indemnify, defend, and hold harmless, Buyer from any and all injuries, loss, damage, costs, or expense that Buyer may incur by reason of or arising out of any claim alleging that the products were defective or gave rise to the harm caused, and from the willful, reckless and/or negligent acts or omissions of Vendor, its employees, agents or representatives; provided that (a) Buyer promptly notifies Vendor in writing of the claim; (b) Vendor has primary control of the defense and all related settlement negotiations; and (c) Buyer cooperates in such defense at no expense to Buyer.

8. Insurance. Vendor shall maintain commercially reasonable product liability, general liability and property damage insurance against any claim or claims which might or could arise regarding the products and services purchased by Buyer under these Terms and Conditions. The minimum limit of liability shall be $3 million per occurrence and annual aggregate for product liability, and $1 million per occurrence and annual aggregate for commercial general liability. In addition, Vendor shall maintain insurance that will protect it from claims under workers compensation statutes and regulations and other employee benefits statutes and regulations. When requested by Buyer, an insurance certificate evidencing the foregoing coverage and naming Buyer as an additionally insured, issued by an insurance company licensed to do business in the relevant state or states and signed by an authorized agent, shall be furnished to Buyer. Each of the certificates shall provide that the coverage will not be cancelled until at least thirty (30) days after written notice has been given to Buyer.

9. Payment. Payment of undisputed invoices shall be net sixty (60) days from receipt of invoice. Vendor will accept payment in the following forms: ePayables, cash, check, credit card, and electronic funds transfer. Buyer is exempt from most sales and use taxes and will not be responsible for the payment of any such taxes to Vendor if Buyer timely provides Vendor with a valid exemption certificate. If Buyer is subject to taxation, the Buyer shall pay for taxes imposed in conjunction with these Terms and Conditions, excluding foreign, federal, state and local taxes based upon Vendor's revenues, net income, number of employees, or corporate existence. Notwithstanding anything to the contrary, Vendor represents and warrants that it shall not directly or indirectly pass through any excise or similar taxes for products purchased under these Terms and Conditions subject to 26 U.S. C. 4191. Additionally, Buyer shall not be liable for any taxes related to the Vendor's income, revenues, corporate characteristics, or other supplier-related excise or similar taxes.

10. Audit. Buyer and its designated agents shall have the right to audit Vendor's provision of products or services: (a) any time that Buyer has reason to believe the amounts charged for products or services provided hereunder are not proper; (b) if it suspects or has knowledge of Vendor's non- compliance with this Agreement, any policies as required herein, or any applicable laws or regulations; and (c) without cause, not more than once annually. Vendor shall provide Buyer and its designated agents with access to Vendor systems, operations, books, records, and supporting documentation sufficient to allow Buyer to audit Vendor as set forth in this Section. If Vendor has overcharged Buyer, Vendor shall promptly pay to Buyer the amount of the overcharge.

11. Term and Termination. These Terms and Conditions will remain in effect until terminated pursuant to the terms set forth herein. Buyer may terminate these Terms and Conditions without cause or penalty upon thirty (30) days prior written notice.

12. Force Majeure. The obligations of either party to perform under these Terms and Conditions may be excused during a period of delay caused by acts of God or by shortages of power or government orders which are beyond the reasonable control of the party obligated to perform ("Force Majeure Event"). In the event that either party ceases to perform its obligations under these Terms and Conditions due to the occurrence of a Force Majeure Event, such party shall: (1) immediately notify the other party in writing of such Force Majeure Event and its expected duration; and (2) take all reasonable steps to recommence performance of its obligations under these Terms and Conditions as soon as possible. For the term of any Force Majeure Event declared by Vendor, Buyer shall be released from these Terms and Conditions in order to procure the products and/or services from any other available source. In the event that any Force Majeure Event delays a party's performance for more than thirty (30) days following notice by such party pursuant to these Terms and Conditions, the other party may terminate these Terms and Conditions immediately upon written notice to such party.

13. Confidentiality and Data. Each party shall keep strictly confidential all Confidential Information disclosed by the other party unless otherwise required under applicable law, regulation, stock exchange requirement or other legal process, including in any judicial or administrative proceeding. Vendor shall not access, maintain or transmit Data and Confidential Information outside of the geographic limits of the United States of America. Vendor shall use Buyer Data and Confidential Information only to fulfill its contractual obligations to Buyer under these Terms and Conditions. For the purposes of these Terms and Conditions "Confidential Information" shall mean any information furnished to one party by the other party that: (i) is marked "confidential" or "proprietary"; or (ii) which by its nature is reasonably understood to be confidential or proprietary, whether or not so marked, inclusive of Buyer's purchasing information and characteristics. The parties agree that Confidential Information shall not include; (a) information which at the time of disclosure is in the public domain, (b) information which, after disclosure, becomes part of the public domain by publication or otherwise, except by breach of these Terms and Conditions by the other party, (c) information that non disclosing party can establish was in its possession prior to the time of disclosure and was not acquired, directly or indirectly, from the disclosing party, (d) information that non-disclosing party lawfully receives from a third party without any obligation to keep such information confidential, or (e) information the non-disclosing party can establish was independently developed by persons in its employ or otherwise who did not use or access the disclosing party's Confidential Information. Vendor acknowledges that Buyer is an affiliate of Ascension Health Alliance. The parties further agree that Buyer may disclose, without Vendor's consent, Vendor's Confidential Information to its facilities, Ascension Health Alliance, Ascension Healthcare, The Resource Group and their respective affiliates, subsidiaries, business partners, consultants and those third-party entities with which Buyer has an agreement requiring the third-party entity to maintain the confidentiality of such Confidential Information and to only use such Confidential Information for the benefit of Buyer. "Data" means all data or information that is obtained, developed or produced by Vendor in connection with these Terms and Conditions. Vendor shall provide data restoration services and support to Buyer if a failure of the products or Vendor's negligence results in any data being lost, corrupted, or rendered inaccessible.

14. Health Care Regulations. The parties in good faith believe that these Terms and Conditions fully comply with the provisions of 42 U.S.C.1320a-7b (the Medicare/Medicaid "Anti- kickback Statute"). The parties are not, by virtue of these Terms and Conditions or otherwise, willfully offering, paying, soliciting, or receiving remuneration in return for referring an individual to or from each other for the furnishing of any item or service reimbursed under the Medicare or state health care programs. Pricing hereunder does not take into account the volume or value of any referrals or business otherwise generated between the parties for which payment may be made in whole or in part under Medicare or a state health care program. The parties shall utilize best efforts to comply with the reporting requirements of 42 C.F.R. §1001.952(h), regarding "safe harbor" protection for

discounts under the Anti-kickback Statute. Vendor represents and warrants that any discount or rebate provided to Buyer satisfies the requirements of the Anti-kickback Statute Safe Harbor at 42 C.F.R. §1001.952(h). Vendor shall disclose on each invoice, or as otherwise agreed in writing, the amount of the discount or rebate. Vendor and Buyer shall each comply with all applicable laws and regulations in its performance of its obligations under these Terms and Conditions.  If at any time, as the result of the enactment of a new statute, the issuance of regulations, or otherwise, either party receives a written opinion of counsel that there is a substantial risk that, as a result of these Terms and Conditions, either party does not comply with applicable law, then the parties shall use good faith efforts to reform these Terms and Conditions in such a manner so that it complies with applicable law. If, after the exercise of such good faith efforts for a period of at least thirty (30) business days, the parties have not agreed on amendment(s) to these Terms and Conditions that resolve legal issues referred to above, then the party(s) whose receipt of a legal opinion triggered renegotiation may terminate these Terms and Conditions upon at least sixty (60) calendar days written notice to the other party. To the extent that Section 952 of the Omnibus Reconciliation Act of 1980 (the "Act") and the regulations promulgated there under are applicable to these Terms and Conditions, Vendor and the organizations related to it, if any, performing any of the duties pursuant to these Terms and Conditions valued at Ten Thousand Dollars ($10,000) or more in any twelve (12)-month period shall, until four (4) years after the furnishing of services pursuant to these Terms and Conditions, comply with requests by the Comptroller General, the Secretary of the Department of Health and Human Services, and their duly authorized representatives for access (in accordance with Section 952 of the Act) to any contract or agreement between Vendor and Buyer for products and services, and to any contract or agreement between Vendor and such related organizations, as well as the books, documents and records of Vendor and its related organizations, if any, which are necessary to verify the cost of the services provided. Vendor represents and warrants that neither it, nor any of its employees or other contracted staff has been or is about to be excluded from participation in any Health Care Program (as defined herein). The listing of Vendor or any of its employees on the Office of Inspector General's exclusion list (OIG website), the General Services Administration's Lists of Parties Excluded from Federal Procurement and Nonprocurement Programs (GSA website) for excluded individuals or entities, any state Medicaid exclusion list, or the Office of Foreign Assets Control's (OFAC's) blocked list shall constitute "exclusion" for purposes of this paragraph. For the purpose of this paragraph, the term "Health Care Program" means the Medicare program, the Medicaid program, TRICARE, any health care program of the Department of Veterans Affairs, the Maternal and Child Health Services Block Grant program, any state social services block grant program, any state children's health insurance program, or any similar program. Vendor represents and warrants that all products and services provided are in compliance with all applicable federal, state and local laws, ordinances, regulations and codes. Vendor warrants and covenants that it is not a Business Associate as defined by HIPAA and that in the provision of products and services, Vendor does not require and shall not request or attempt access to, any Protected Health Information of Buyer. The parties shall abide by the requirements of 41 C.F.R. §§ 60- 1.4(a), 60-300.5(a) and 60-741.5(a), and the posting requirements of 29 C.F.R. Part 471, appendix A to subpart A, if applicable. These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race, color, religion, sex, or national origin. Moreover, these regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, national origin, protected veteran status or disability.

15. Governing Law. These Terms and Conditions shall be governed by, and construed in accordance with, the laws of the State where Buyer is located. Each party irrevocably agrees that any claim brought by it in any way arising out of these Terms and Conditions must be brought solely and exclusively in state or federal courts located where the Buyer is located and each party irrevocably accepts and submits to the sole and exclusive jurisdiction of each of the aforesaid courts in personam, generally and unconditionally with respect to any action, suit, or proceeding brought by it or against it by the other party.  In the event any suit or other action is commenced to construe or enforce any provision of this PO, the prevailing party, in addition to all other amounts such party shall be entitled to receive from the other party, shall be paid by said party reasonable attorneys' fees and court costs.

16. General Contract Provisions. This PO and Terms and Conditions contain the entire agreement and understanding between the parties relating to the subject matter of this PO. Section headings used in these Terms and Conditions are for purposes of convenience or reference only and shall not be used to explain, limit, or extend the meaning of any part these Terms and Conditions. Nothing contained in these Terms and Conditions shall preclude Buyer from pursuing any other remedies available at law or in equity. These Terms and Conditions may only be amended by a written agreement bearing handwritten signatures of authorized agents of each of the parties and expressing an intent to be bound by the terms of such an amendment. Any waiver of a breach of any provision(s) of these Terms and Conditions shall not be deemed effective unless in writing and signed by the party against whom enforcement of the waiver is sought or operate as, or be construed to be, a waiver of any subsequent breach of the same or other provisions hereof. Neither party may assign, subcontract, delegate or otherwise transfer these Terms and Conditions or any of its rights or obligations hereunder, nor may it contract with third parties to perform any of its obligations hereunder except as contemplated in these Terms and Conditions, without the other party's prior written consent. These Terms and Conditions shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. If any part of these Terms and Conditions shall be determined to be invalid, illegal or unenforceable by any valid act of Congress or act of any state legislature or by any regulation duly promulgated by the United States or a state acting in accordance with the law, or declared null and void by any court of competent jurisdiction, then such part shall be reformed, if possible, to conform to the law and, in any event, the remaining parts of these Terms and Conditions shall be fully effective and operative insofar as reasonably possible. The parties' relationship hereunder is that of independent contractors. These Terms and Conditions do not create any employment, agency, franchise, joint venture, partnership or other similar legal relationship between Buyer and Vendor. Neither party has the authority to bind or act on behalf of the other party except as otherwise specifically stated herein.

17. Survival. The following Sections of these Terms and Conditions shall survive expiration or termination of these Terms and Conditions: license grant - Section 5; warranties and recalls - Section 6; indemnification - Section 7; audit - Section 10; confidentiality and data - Section 13; health care regulations - Section 14; governing law - Section 15; and general contract provisions - Section 16.

**CONFIDENTIAL**                                                                                                                                                                                          RF_001283



# Purchase Order

**Dispatch Via Email**

**Buyer: MOSTL Ascension Affiliate**
101 SOUTH HANLEY ROAD SUITE 200
CLAYTON MO 63105
United States

**Supplier:** 0000087127
ROCK FINTEK LLC
1680 MICHIGAN AVE # 800
MIAMI BEACH FL 33139

| Purchase Order | Date | Revision | Page |
|---|---|---|---|
| P00190000040075 | 12/7/2020 | | 1 |
| **Payment Terms** | **Freight Terms** | | **Ship Via** |
| Due Now | FEDEX 3rd Party Frt Collect | | Common Carrier |
| | **Phone** | | **Currency** |
| | 317/334-8363 | | USD |

**Ship To:** 62044JEFDC
251 HILTON DR
ATTN ASCENSION 3PL
JEFFERSONVILLE IN 47111
United States

**Bill To:** PO BOX 33902
INDIANAPOLIS IN 46203
United States

**Tax Exempt?** N     **Tax Exempt ID:**

| Line-Sch | Item/Description | Mfg Item ID | Quantity | UOM | PO Price | Extended Amt | Due Date |
|---|---|---|---|---|---|---|---|
| 1 - 1 | GLV006_SM<br>GLOVES NITRILE FDA 510K ASTM D6319 SMALL<br>Attn: ASCENSION 3PL | | 15000.00 | CA | 185.00 | 2,775,000.00 | 12/14/2020 |
| | | | **Schedule Total** | | | 2,775,000.00 | |
| <<INV # 2832990000000870083>> | | | | | | | |
| | | | **Item Total** | | | 2,775,000.00 | |
| 2 - 1 | GLV006_SM<br>GLOVES NITRILE FDA 510K ASTM D6319 SMALL NO COST LINE<br>Attn: ASCENSION 3PL | | 5000.00 | CA | 0.00 | 0.00 | 12/14/2020 |
| | | | **Schedule Total** | | | 0.00 | |
| <<25% PRE PAID LINE. INV # 2832990000000870083>> | | | | | | | |
| | | | **Item Total** | | | 0.00 | |
| 3 - 1 | GLV006_MD<br>GLOVES NITRILE FDA 510K ASTM D6319 MEDIUM<br>Attn: ASCENSION 3PL | | 60000.00 | CA | 185.00 | 11,100,000.00 | 12/14/2020 |
| | | | **Schedule Total** | | | 11,100,000.00 | |
| <<INV # 2832990000000870083>> | | | | | | | |
| | | | **Item Total** | | | 11,100,000.00 | |
| 4 - 1 | GLV006_MD<br>GLOVES NITRILE FDA 510K ASTM D6319 MEDIUM NO COST LINE<br>Attn: ASCENSION 3PL | | 20000.00 | CA | 0.00 | 0.00 | 12/14/2020 |
| | | | **Schedule Total** | | | 0.00 | |
| <<25% PRE PAID LINE. INV # 2832990000000870083>> | | | | | | | |
| | | | **Item Total** | | | 0.00 | |
| 5 - 1 | GLV006_LG<br>GLOVES NITRILE FDA 510K ASTM D6319 LARGE<br>Attn: ASCENSION 3PL | | 60000.00 | CA | 185.00 | 11,100,000.00 | 12/14/2020 |
| | | | **Schedule Total** | | | 11,100,000.00 | |

**If shipping charges contractually apply, ship bill third-party via FedEx #531 979 281.  Type our PO# in the Recipient Address Line 2.**
**For LTL shipments, call VPL 1-844-875-7444 or email LTL@vantagepointlogistics.com for delivery instructions.**



# Purchase Order

**Dispatch Via Email**

| Purchase Order | Date | Revision | Page |
|---|---|---|---|
| P00190000040075 | 12/7/2020 | | 2 |
| **Payment Terms** | **Freight Terms** | | **Ship Via** |
| Due Now | FEDEX 3rd Party Frt Collect | | Common Carrier |
| | | **Phone** | **Currency** |
| | | 317/334-8363 | USD |

**Buyer: MOSTL Ascension Affiliate**
101 SOUTH HANLEY ROAD SUITE 200
CLAYTON MO 63105
United States

**Ship To:** 62044JEFDC
251 HILTON DR
ATTN ASCENSION 3PL
JEFFERSONVILLE IN 47111
United States

**Supplier:** 0000087127
ROCK FINTEK LLC
1680 MICHIGAN AVE # 800
MIAMI BEACH FL 33139

**Bill To:** PO BOX 33902
INDIANAPOLIS IN 46203
United States

**Tax Exempt?** N    **Tax Exempt ID:**

| Line-Sch | Item/Description | Mfg Item ID | Quantity UOM | PO Price | Extended Amt | Due Date |
|---|---|---|---|---|---|---|
| | <<INV # 283299000000870083>> | | | | | |
| | | | **Item Total** | | 11,100,000.00 | |
| 6 - 1 | GLV006_LG<br>GLOVES NITRILE FDA 510K ASTM<br>D6319 LARGE NO COST LINE<br>Attn: ASCENSION 3PL | | 20000.0 CA | 0.00 | 0.00 | 12/14/2020 |
| | | | **Schedule Total** | | 0.00 | |
| | <<25% PRE PAID LINE. INV # 283299000000870083>> | | | | | |
| | | | **Item Total** | | 0.00 | |
| 7 - 1 | GLV006_XL<br>GLOVES NITRILE FDA 510K ASTM<br>D6319 X-LARGE<br>Attn: ASCENSION 3PL | | 15000.0 CA | 185.00 | 2,775,000.00 | 12/14/2020 |
| | | | **Schedule Total** | | 2,775,000.00 | |
| | <<INV # 283299000000870083>> | | | | | |
| | | | **Item Total** | | 2,775,000.00 | |
| 8 - 1 | GLV006_XL<br>GLOVES NITRILE FDA 510K ASTM<br>D6319 X-LARGE NO COST LINE<br>Attn: ASCENSION 3PL | | 5000.00 CA | 0.00 | 0.00 | 12/14/2020 |
| | | | **Schedule Total** | | 0.00 | |
| | <<25% PRE PAID LINE. INV # 283299000000870083>> | | | | | |
| | | | **Item Total** | | 0.00 | |
| | | | **Total PO Amount** | | 27,750,000.00 | |

If shipping charges contractually apply, ship bill third-party via FedEx #531 979 281.  Type our PO# in the Recipient Address Line 2.
For LTL shipments, call VPL 1-844-875-7444 or email LTL@vantagepointlogistics.com for delivery instructions.