**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KITCHEN WINNERS NY INC.,<br><br>*Plaintiff*,<br><br>-against-<br><br>ROCK FINTEK LLC,<br><br>*Defendant*. | Civil Action No. 22-cv-05276-PAE |
| ROCK FINTEK LLC,<br><br>*Counterclaim and Third-Party Plaintiff*,<br><br>-against-<br><br>KITCHEN WINNERS NY INC.,<br><br>*Counterclaim Defendant*,<br><br>and<br><br>ADORAMA INC., HERSHEY WEINER, JOSEPH MENDLOWITZ, JNS CAPITAL HOLDINGS LLC and JOEL STERN<br><br>*Third-Party Defendants*. | **CERTIFICATION OF JOEL STERN IN SUPPORT OF THE MOTION** |

Pursuant to 28 U.S.C. § 1746, I, Joel Stern, declare under penalty of perjury that the following is true and correct to the best of my knowledge:

1. I am one of the Third Party Defendants in this action and member of JNS Capital Holdings LLC ("JNS" and together with myself, the "JNS Parties") and make this certification Support of our motion for summary judgment.

2. I never met Ms. Chunron Li, and did not deal with her. I had never heard her name until this lawsuit was commenced. Apparently, she was a contact of Bruno Azra and working for Rock Fintek to locate supplies of gloves to fulfill their obligations to Ascension.

3. I gave some documents to Bruno Azra to help acquire customers for JNS. Those documents were given to me by Kitchen Winners, who had told me they were obtained from Medcare.

4. As far as I know, those documents were accurate and obtained from Medcare.

5. I never made any representations or provided any written documents to Rock Fintek in regard to the characteristics or quality of the Medcare gloves. Bruno Azra worked independently to drum up business to earn a commission on my sales. Anything he provided to Rock Fintek was his decision.

6. JNS never purchased any gloves from Kitchen Winners that were not intended to be Nitrile Examination Gloves.

7. JNS had contracted with Kitchen Winners for the gloves, and they were to be Medcare Nitrile Examination Gloves. The gloves were delivered from China directly to warehouse space that I rented on behalf of JNS and were promptly picked up by Rock Fintek. I had limited opportunity to inspect, and if any issue appeared with the gloves, I reached out to Mr. Wiener who promised that the gloves were correct.

8. I was never aware of any issue with the gloves that were supplied to Rock Fintek, but there was a shipment here and there where the gloves were labeled as Protection Gloves.

    When I checked with Mr. Wiener, he told me that the paperwork was incorrect or the gloves would be replaced.

9. It is without a doubt that the goods were shipped from Medcare to our warehouses. The claims of Rock Fintek in their complaint that the gloves were "fake" is simply without merit.

10. At no point, did Rock Fintek inform me that Ascension was their customer.

11. In February 2021, JNS was selling to Rock Fintek at 15.00 a box, and in April and May 2021, JNS was selling to Rock Fintek at 11.50 a box.

12. My total sales (through JNS) to Rock Fintek were approximately $3.5 million. I never had notice that Rock Fintek had a customer for $37,000,000, the exact nature of that customer or anything else that would put me or JNS on notice of a claim for over $100 million in lost profits.

13. The transactions occurred from February 2021 - May 9, 2021.

14. At one point, a supplier other than Kitchen Winners offered me boxes of gloves with misprinted boxes that had stickers applied to correct the misprint. I offered these gloves (on behalf of JNS) to Rock Fintek at a lower price, as JNS was able to obtain them at a lower price. When they rejected the gloves, JNS did not purchase them from the other supplier, and certainly never shipped any such gloves to Rock Fintek.

15. At no point did I cause any stickers to be applied to any boxes of gloves. I had no reason to do so, and did not have the manpower to undertake such a task on hundreds of thousands of boxes.

16. I formed JNS for the purpose of selling PPE during the pandemic, seeing this as a strong business opportunity (which it turned out not to be). I obtained investors from my Hassidic community to purchase product and resell it.

17. As can be seen from the JNS bank statements, the business was well capitalized and operating well during the time frame of the transactions at issue in this case.

18. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 15, 2024.

*Joel Stern*
Joel Stern (Feb 15, 2024 16:46 EST)

Joel Stern

# Stern decl

Final Audit Report                                                                 2024-02-15

| | |
|---|---|
| Created: | 2024-02-15 |
| By: | Avi Frisch (frischa@avifrischlaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA_ziqAkLk9sozPTE9P3KP-17FEvdc3nwZ |

## "Stern decl" History

- Document created by Avi Frisch (frischa@avifrischlaw.com)
  2024-02-15 - 8:58:29 PM GMT- IP address: 20.36.220.138

- Document emailed to Joel Stern (9070854@gmail.com) for signature
  2024-02-15 - 8:59:07 PM GMT

- Email viewed by Joel Stern (9070854@gmail.com)
  2024-02-15 - 9:05:16 PM GMT- IP address: 74.125.210.192

- Document e-signed by Joel Stern (9070854@gmail.com)
  Signature Date: 2024-02-15 - 9:46:05 PM GMT - Time Source: server- IP address: 71.167.189.202

- Agreement completed.
  2024-02-15 - 9:46:05 PM GMT

THE LAW OFFICE OF AVRAM E. FRISCH LLC    Powered by Adobe Acrobat Sign