**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| KITCHEN WINNERS NY INC., *Plaintiff*, <br><br> vs. <br><br> ROCK FINTEK LLC, *Defendant*. | Civil Action No. 22-cv-05276-PAE |

ROCK FINTEK LLC,
                    *Counterclaim and Third-Party Plaintiff*,

            vs.

KITCHEN WINNERS NY INC,
                    *Counterclaim Defendant*,

        and

ADORAMA INC., HERSHEY WEINER, JOSEPH MENDLOWITZ, JNS CAPITAL HOLDINGS LLC and JOEL STERN,
                    *Third-Party Defendants*.

---

## MEMORANDUM OF LAW IN SUPPORT OF ADORAMA INC. AND JOSEPH MENDLOWITZ'S MOTION FOR SUMMARY JUDGMENT

---

**LIPSIUS BENHAIM LAW LLP**
*Attorneys for Third-Party Defendants*
*Adorama Inc. and Joseph Mendlowitz*

Alexander J. Sperber
Yisroel Steinberg
Meir Z. Goldberg.
80-02 Kew Gardens Road
Suite 1030
Kew Gardens, New York 11415
Telephone: (212) 981-8440

**Table of Contents**

PRELIMINARY STATEMENT ……………………………………………… 1

PROCEDURAL HISTORY …………………………………………………... 3

STATEMENT OF FACTS ………………………………………………… 4

   1.  The Relationship Between Adorama and Kitchen Winners …………………... 4

   2.  Adorama's Role Under the Sales and Purchase Agreement …………………... 5

ARGUMENT ……………………………………………………………… 7

   I.  Standard of Review ………………………………………………… 7

   II. Adorama is Entitled to Summary Judgment Dismissing Rock Fintek's
      Claims for Breach of Contract and Breach of the Covenant of Good Faith
      and Fair Dealing ……………………………………………………… 8

       1.  Adorama Did Not Breach the SPA …………………………….…… 8

       2.  Adorama is not an Alter Ego of Kitchen Winners …………………… 12

   III. Breach of the Covenant of Good Faith and Fair Dealing ……………………… 15

   IV. Adorama is Entitled to Summary Judgment Dismissing Rock Fintek's Claim for Unjust
       Enrichment ……………………………………………………… 17

   V.  Adorama and Mendlowitz are Entitled to Summary Judgment Dismissing Rock Fintek's
      Claim for Breach of Written Warranty ………………………………………. 18

   VI. Rock Fintek's Claims Against the Adorama Parties Fail for Lack of Damages … 19

CONCLUSION ………………………………………………………… 19

## Table of Authorities

*Am. Federated Title Corp. v. GFI Mgmt. Servs.*,
 716 Fed. Appx. 23 (2d Cir. 2017) ……………………………………………… 12, 14

*Amcan Holdings, Inc. v. Canadian Imperial Bank of Com.*,
 70 A.D.3d 423 (N.Y. App. Div. 2010) ………………………………………… 17

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) …………………………………………………………… 7

*Atari, Inc. v. Games, Inc.*,
 04 Civ. 3723 (JSR), 2005 U.S. Dist. LEXIS 2868 (S.D.N.Y. Feb. 23, 2005) ……. 15

*Bartle v. Home Owners Cooperative, Inc.*,
 309 N.Y. 103 (1955) …………………………………………………………14

*Brkic v. Dumbo Moving & Storage, Inc.*,
 22-cv-07029 (CM), 2023 U.S. Dist. LEXIS 3810 (S.D.N.Y. Jan. 9, 2023) ……… 11

*Busrel Inc. v. Dotton*,
 1:20-cv-1767, 2021 U.S. Dist. LEXIS 132316 (W.D.N.Y. July 15, 2021) ………. 18

*Cary Oil Co. v. MG Ref & Mktg., Inc.*,
 257 F. Supp. 2d 751 (S.D.N.Y. 2003) ………………………………………… 14

*Capax Discovery, Inc. v. AEP RSD Inv'rs*,
 285 F. Supp. 3d 579 (W.D.N.Y. 2018) …………………………………………8

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) …………………………………………………………… 7

*Deer Park Enters., LLC v. Ail Sys., Inc.*,
 57 A.D.3d 711 (2d Dep't 2018) …………………………………………….. 17

*Demand Elec., Inc. v. Innovative Tech. Holdings, LLC*,
 20-CV-02127 (VF), 2023 U.S. Dist. LEXIS 55743 (S.D.N.Y. March 30, 2023) … 8

*Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*,
 810 F.3d 861 (2d Cir. 2015) …………………………………………………… 16

*Ehag Eisenbahnwerte Holding Aktiengesellschaft v. Banca Nationala A Romaniei*,
 306 N.Y. 242 (1954) …………………………………………………………… 10

*First Nat'l Bank of Arizona v. Cities Service Co.*,

391 U.S. 253 (1968) ……………………………………………………… 7

*Hadami, S.A. v. Xerox Corp.*,
    272 F. Supp. 3d 587 (S.D.N.Y. 2017) ……………………………………  8, 15

*Jennings v. Hunt Cos.*,
    367 F. Supp. 3d 66 (S.D.N.Y. 2019) ………………………………………….
    8

*JN Contemp. Art LLC v. Phillips Auctioneers LLC*,
    29 F.4th 118 (2d Cir. 2022) ……………………………………………  16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ……………………………………………………… 8

*Morris v. N.Y.S. Dep't of Taxation & Fin.*,
    82 N.Y.2d 135 (1993) …………………………………………………….. 12, 14

*Murray v. Miner*,
    74 F.3d 402 (2d Cir. 1996) …………………………………………………  13

*Sheridan Broad. Corp. v. Small*,
    19 A.D.3d 331 (1st Dep't 2005) …………………………………………  15

*Stifel, Nicolaus & Co., Inc. v. Shift Techs., Inc.*,
    21 Civ. 4135 (NRB), 2022 U.S. Dist. LEXIS 153434 (S.D.N.Y. Aug. 23, 2022) …
    10

*TNS Holdings Inc. v. MKI Sec. Corp.*,
    92 N.Y.2d 335, 703 N.E.2d 749, 680 N.Y.S.2d 891 (1998) ………………………12

*Vogel v. TakeOne Network Corp.*,
    22-cv-3991 (ER), 2023 U.S. Dist. LEXIS 144922 (S.D.N.Y. Aug. 16, 2023) …….8

*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*,
    933 F.2d 131 (2d Cir. 1991) ………………………………………………  12

*Wolff v. Rare Medium*,
    No. 02-7821, 2003 U.S. App. LEXIS 5465 (2d Cir. Mar. 14, 2003) ……………  9

## PRELIMINARY STATEMENT

Third-Party Defendants Joseph Mendlowitz ("Mendlowitz") and Adorama Inc. ("Adorama") (collectively "the Adorama Parties") respectfully submit this memorandum of law in support of their motion for summary judgment dismissing each and every claim asserted against them by Third-Party Plaintiff Rock Fintek LLC ("Rock Fintek").

The Adorama Parties rely on many of the same arguments as Plaintiff and Counterclaim-Defendant Kitchen Winners NY Inc., as well as the arguments of Third-Party Defendants JNS Capital Holdings LLC and Joel Stern, and adopt their arguments in full herein by reference.

Adorama is a longstanding e-commerce company specializing in photography and video equipment.  During the Covid-19 pandemic, Adorama saw a business opportunity at a time when business was slow and agreed to loan money to a company called Kitchen Winners NY Inc. ("Kitchen Winners") so that Kitchen Winners could expand its pandemic-related business selling personal protective equipment ("PPE").  The relationship was entirely arms-length.  Kitchen Winners and Adorama do not share owners, officers, employees, offices, or bank accounts.

As the principals involved knew one another, Adorama agreed to lend its money without taking collateral.  To ensure that the money would be paid back, however, Adorama required that a portion of the funds paid by Kitchen Winners' customer be paid directly to Adorama.  That customer was Rock Fintek.

Accordingly, when Kitchen Winners entered into a sales and purchase agreement ("SPA") with Rock Fintek, the agreement required that Rock Fintek direct payment of its deposit to Adorama's bank account.  Adorama, however, had absolutely no obligation to take any kind of action under the agreement.  The seller was Kitchen Winners and the buyer was Rock Fintek; Adorama was only a party to the agreement in connection with the payment it was to receive.

1

Rock Fintek knew about Adorama's role in the transaction.  When Rock Fintek entered into a contemporaneous Letter of Intent with an individual named Arik Maimon, whom it was hiring to help facilitate its purchase of the gloves, the Letter of Intent clearly and unambiguously explained Adorama's role under the SPA as "Adorama is financing these transactions for Kitchen Winners NY."

Yet Rock Fintek has attempted to drag Adorama and one of its executives, Joseph Mendlowitz, into its current dispute with Kitchen Winners.  Rock Fintek maintains that the gloves sold to it by Kitchen Winners somehow failed to conform to the terms of the SPA.  Rather than just sue Kitchen Winners for breach of contract, however, Rock Fintek has also asserted claims against Adorama for (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) unjust enrichment; and (4) breach of written warranty.  Rock Fintek has also asserted a claim against Mr. Mendlowitz, in his personal capacity, for breach of written warranty.

Adorama and Mendlowitz are entitled to summary judgment dismissing each of those claims.  The claims against Adorama for breach of contract and breach of the covenant of fair dealing each fail, because Adorama had no obligations under the SPA.  The claim for unjust enrichment against Adorama likewise fails because Rock Fintek was able to resell all of the gloves at issue to its customer, Ascension Health Alliance, and was paid in full.  Accordingly, Rock Fintek cannot show that Adorama was somehow enriched at its expense.

The claim for breach of written warranty against Mendlowitz and Adorama must be dismissed because the only document that Rock Fintek could ever point to as containing a written warranty is the SPA itself.  Mendlowitz, however, is not personally a party to the SPA and Adorama – on whose behalf he signed that agreement – did not make any warranties in it

2

whatsoever. Rather, as explained above, Adorama signed the SPA merely as the party to whom the initial deposit would be paid.

Finally, Rock Fintek's claims must all be dismissed because discovery has shown that Rock Fintek has absolutely no cognizable damages.

Accordingly, Adorama and Mendlowitz respectively request that the Court grant their motion for summary judgment dismissing each and every one of the causes of action asserted by Rock Fintek against them.

## PROCEDURAL HISTORY

Kitchen Winners NY Inc. ("Kitchen Winners") commenced this action by Summons and Complaint filed on May 17, 2022 in the Supreme Court, New York County. Kitchen Winners asserted claims for breach of contract and unjust enrichment against Rock Fintek LLC ("Rock Fintek"). *See* (Statement of Undisputed Material Facts ("SUMF") at ¶ 1.)

Rock Fintek subsequently removed this action to the United States District Court for the Southern District of New York and filed its Counterclaim and Third-Party Complaint, wherein it impleaded a number of third-parties, including Adorama Inc. and Joseph Mendlowitz (the "Adorama Parties"). On August 5, 2022, Rock Fintek then filed its First Amended Counterclaim and Third-Party Complaint ("TPC"). *See* (SUMF at ¶ 2.) .

On August 26, 2022, Kitchen Winners and the Adorama Parties moved to dismiss all claims against them. By Opinion & Order dated March 31, 2023, this Court partially granted and partially denied the motion. The Court, accepting all the allegations in the TPC as true, permitted Rock Fintek to move forward with its causes of action sounding in (1) breach of contract; (2) breach of the covenant of good faith and fair dealings; (3) unjust enrichment; and (4) breach of warranty.

## STATEMENT OF FACTS

The Adorama Parties incorporate by reference the section titled "Statement of Facts" in the memorandum of law submitted by Kitchen Winners.  In addition, the Adorama Parties add the following relevant facts:

**1.    The Relationship Between Adorama and Kitchen Winners**

During the Covid-19 pandemic, Mendlowitz began looking to obtain personal protective equipment ("PPE") for the use of Adorama's employees, so that the employees would feel comfortable coming into work both in its offices and warehouses.  (SUMF at ¶ 21.)  Mendlowitz quickly found that it was extremely difficult to source products like gloves and masks.  The only entity that he found able to actually supply PPE was Kitchen Winners.  (SUMF at ¶ 22.)

Mendlowitz knew Joseph Weiner, the person running the day-to-day operations of Kitchen Winners, from around his community.  (SUMF at ¶ 23.)  Before Covid-19, however, neither he nor Adorama had ever had any business dealings with Weiner or Kitchen Winners.  (SUMF at ¶ 24.)

While Kitchen Winners had started out as an online kitchen accessories business, during the COVID-19 pandemic, Kitchen Winners was also engaged in the business of importing and selling personal protective equipment (PPE), including medical gloves and KN95 masks. (SUMF at ¶ 25.)

Realizing the business opportunity in the PPE market, Adorama agreed to lend Kitchen Winners funds to support its Covid-19 related business operations.  (SUMF at ¶ 26.)  As lender, Adorama's profit came from the interest on its loan.  (SUMF at ¶ 27.)  Given the lack of security to collateralize its loan, however, Adorama required that a portion of the funds paid by Kitchen Winners' customer be paid directly to Adorama.  (SUMF at ¶ 28.)

Initially Adorama and Kitchen Winners operated on the basis of a handshake agreement. During that time period, Adorama's loans to Kitchen Winners were small and short-term. (SUMF at ¶ 29.)  Kitchen Winners' agreement with Rock Fintek, however, was much larger than any of the prior transactions for which Adorama had provided financing.  Accordingly, on or about March 26, 2021, Adorama and Kitchen Winners memorialized their agreement in a written Hebrew-language loan agreement.  (SUMF at ¶ 30.)

## 2. Adorama's Role Under the Sales and Purchase Agreement

Rock Fintek asserts in its TPC that Adorama is somehow a seller under the SPA.  (SUMF at ¶ 53.)  That assertion is plainly untrue.

The singular noun "Seller" in the SPA is a defined term, unambiguously referring only to Kitchen Winners. (SUMF at ¶ 54.) When the SPA discusses Adorama's role, it refers to Adorama by name.  (SUMF at ¶ 55.)

The "Seller" (i.e., Kitchen Winners) has the sole responsibility for procuring the gloves that Rock Fintek was buying.  (SUMF at ¶ 56.)  In contrast, Adorama has no responsibility for procuring any gloves.  It appears in the agreement solely as the agreed-upon entity to whom Rock Fintek's initial deposit would be paid.  (SUMF at ¶ 57.)

While Adorama signed the SPA, it did so solely in its capacity as Kitchen Winners' lender. (SUMF at ¶ 58.)  Indeed, Rock Fintek knew that Adorama's sole role in this transaction was as lender to Kitchen Winners.  In order to facilitate the sale of the gloves, Rock Fintek hired non-party Arik Maimon.  (SUMF at ¶ 59.)    Rock Fintek and Arik Maimon entered into a Letter of Intent governing their relationship. ("LOI").  (SUMF at ¶ 60.) The LOI – signed April 1, 2021, less than a week before Rock Fintek signed the SPA – clearly and unambiguously explains

Adorama's role under the SPA as "Adorama is financing these transactions for Kitchen Winners NY." (SUMF at ¶ 61.)

The SPA mentions Adorama only once, as the party to whom the initial deposit should be paid. (SUMF at ¶ 62.) While Rock Fintek asserts in the TPC that Rock Fintek was somehow required to make all payments to Adorama, the SPA explicitly differentiates between the initial deposit which is payable to Adorama – identified by name – and all subsequent payments made payable to "Seller." (SUMF at ¶ 63.)

Adorama was not involved and had no direct input when Rock Fintek and Kitchen Winners were negotiating the terms of the SPA. (SUMF at ¶ 64.) Neither Kato nor Gilling ever met in person, texted, emailed, or exchanged WhatsApp communications with Mendlowitz or anyone else at Adorama. (SUMF at ¶ 64.) Similarly, Rock Fintek has not produced any text messages, emails, WhatsApp communications, records of Zoom meetings, or records of WhatsApp calls between any Rock Fintek employee or representative, on the one hand, and any Adorama employee including Mendlowitz, on the other hand. (SUMF at ¶ 65.) Rock Fintek was unable to produce any records showing that it even had contact information for Mendlowitz. (SUMF at ¶ 66.)

Gilling could not recall whether Mendlowitz or anyone else at Adorama provided any written materials to Rock Fintek describing the gloves that would be sold. (SUMF at ¶ 67.) Kato testified that Rock Fintek did not get anything in writing from Adorama describing the gloves besides for the SPA. (SUMF at ¶ 68.)

At most, Rock Fintek alleges that it may have had oral conversations with Adorama prior to signing the SPA. (SUMF at ¶ 69.) However, neither Kato nor Gilling could describe any detail regarding these alleged phone calls. Gilling testified that he was on a single call with someone from Adorama, but could not be sure which specific principal of Adorama was on the call, or the

date on which the call took place. (SUMF at ¶ 70.)  He also could not recall what the Adorama

principal even said, except vaguely to claim that they discussed "doing a deal to buy gloves."

(SUMF at ¶ 71.)  Likewise, the only description that Kato could provide of his alleged calls with

Mendlowitz, was that Mendlowitz purportedly told him that "[t]hey're going to give [Rock Fintek]

the proper gloves." (SUMF at ¶ 72.)  Mendlowitz denies these alleged phone calls ever took place.

(SUMF at ¶ 73.)[1]

## ARGUMENT

### I.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment

if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *See also Celotex Corp. v. Catrett*,

477 U.S. 317, 322-23 (1986).

A dispute as to a material fact is "genuine . . . if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).  Although the initial burden is on the moving party to demonstrate the absence of a

material factual issue, once that burden is met, the non-moving party cannot simply rest on its

pleadings. *See First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-289 (1968).

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial,"

---

[1] Kato initially claimed that his calls with Mendlowitz took place on his cell phone.  When asked
for his cell phone number and told that his cell phone records would be subpoenaed, Kato changed
his story to assert that the call would have taken place over either Zoom or WhatsApp.  (SUMF at
¶ 74.)  Defendants requested WhatsApp or Zoom records reflecting those purported calls.  (Third
RFPS.)  Rock Fintek agreed to produce any responsive records that might exist.  (RF Responses
to Third RFPS.)  Evidently no such records were ever found, as they certainly were not produced.
(SUMF at ¶¶ 75-77.)

and there must be more than merely "some metaphysical doubt as to [those] material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted).

Applying those standards, the Adorama Parties are entitled to Summary Judgment dismissing Rock Fintek's claims against them.

## II.   ADORAMA IS ENTITLED TO SUMMARY JUDGMENT DISMISSING ROCK FINTEK'S CLAIMS FOR BREACH OF CONTRACT AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

### 1.   Adorama Did Not Breach the SPA

Rock Fintek cannot prevail on its breach of contract and breach of the covenant of good faith and fair dealing claims against Adorama, because Adorama had no contractual obligations under the SPA.  Accordingly, there were no contractual obligations for Adorama to breach.

Under New York law, a claim for breach of contract requires: (i) the existence of an enforceable agreement; (ii) adequate performance of the contract by the plaintiff; (iii) a breach of that agreement by the defendant; and (iv) damages resulting from the breach.  *Demand Elec., Inc. v. Innovative Tech. Holdings, LLC*, 20-CV-02127 (VF), 2023 U.S. Dist. LEXIS 55743, *8 (S.D.N.Y. March 30, 2023).  Accordingly, a breach of contract claim can only be maintained against a party that is subject to contractual obligations that it might have breached.  *See Jennings v. Hunt Cos.*, 367 F. Supp. 3d 66, 71 (S.D.N.Y. 2019); *Capax Discovery, Inc. v. AEP RSD Inv'rs*, 285 F. Supp. 3d 579, 593 (W.D.N.Y. 2018) (dismissing cause of action for breach of contract against non-parties).

Similarly, "a claim for breach of the implied covenant of good faith and fair dealing must be dismissed when there is no valid and enforceable contract between the parties."  *Hadami, S.A. v. Xerox Corp*., 272 F. Supp. 3d 587, 598 (S.D.N.Y. 2017); *see also Vogel v. TakeOne Network Corp.*, 22-cv-3991 (ER), 2023 U.S. Dist. LEXIS 144922, *17 (S.D.N.Y. Aug. 16, 2023) ("there is

no contract in which to imply a covenant of good faith and fair dealing, and his claim for breach of such implied covenant must also be dismissed.)

Here, Rock Fintek cannot overcome the fatal defect in its causes of action for breach of the SPA and the concomitant covenant of good faith and fair dealing.  Adorama, although it is a signatory to the SPA, has no obligations under its terms.  All obligations under the SPA are placed solely on the "Seller" (*e.g.* "Seller shall sell" and "Seller shall provide a rebate").  "Seller" is a defined term that explicitly and unambiguously refers only to Kitchen Winners.

The SPA begins as follows:

> **THIS SALES AND PURCHASE AGREEMENT** (this "Agreement") is entered into on April 7, 2021 (the "Effective Date"), **KITCHEN WINNERS NY INC**, a New York corporation having an address at 1134 53rd Street, Brooklyn, NY 11219 ( "Seller") and **ROCK FINTEK LLC** a _____ _____ Limited Liability Company having an address at 1680 Michigan Avenue, Miami Beach, Florida 33139 ("Buyer")  (each a "Party") and, collectively, the "Parties"). The Parties agree jointly, severally, mutually, and reciprocally to the terms and conditions stated herein and that this Agreement may be referenced from time to time in any documents or agreements with respect to the sale and purchase of:

The SPA, thus, clearly defines the term "Seller" as referring solely to Kitchen Winners. In contrast, the SPA – when it discusses Adorama's role – refers to Adorama by name.  Thus, the SPA explicitly provides that "[t]he Deposit shall be paid to Adorama."  (SPA at ¶ 2(b).)

Any provision requiring the "Seller" to take a specific action, obligates only Kitchen Winners.  The SPA nowhere makes Adorama responsible for Kitchen Winners' actions.  Adorama does not provide a guarantee of any kind.

Accordingly, Adorama cannot be held liable for breaching a provision that imposes no obligations upon it.  *See e.g. Wolff v. Rare Medium*, No. 02-7821, 2003 U.S. App. LEXIS 5465, *5  (2d Cir. Mar. 14, 2003) ("Although the Acquisition Agreement plainly satisfies the contract requirement, plaintiffs' identification of Article IV, section 4.4(a) as the provision breached by Rare Medium is deficient as a matter of law because the plain language of that section imposes no

obligations on Rare Medium") (citing *Ehag Eisenbahnwerte Holding Aktiengesellschaft v. Banca Nationala A Romaniei*, 306 N.Y. 242 (1954) (vacating attachment based on breach of contract where agreement "clearly established that no duty was imposed upon, or assumed by [defendants]")).

As only Kitchen Winners was obligated to procure gloves for Rock Fintek, Adorama cannot be liable if the gloves that Rock Fintek received were somehow non-compliant with the contractual specifications.

Rock Fintek has argued that the signature block identifies Adorama as a "Seller" and that, therefore, all of the duties of the "Seller" also apply to Adorama. That is untrue. The word "Seller" (again, in the singular) appears in connection with the signature of Kitchen Winners, just as the word "Buyer" appears in connection with the signature of Rock Fintek. No label at all appears next to Adorama, as Adorama had no defined title in the agreement.

The SPA's preamble is crystal clear that it is defining the terms to be used throughout the SPA. It placed the definitions in parentheses and quotation marks and capitalized the term, as is common in contractual agreements. (*See Stifel, Nicolaus & Co., Inc. v. Shift Techs., Inc.*, 21 Civ. 4135 (NRB), 2022 U.S. Dist. LEXIS 153434, at *12-13 (S.D.N.Y. Aug. 23, 2022) ("When defining terms, the Engagement Letter places the defined term in quotation marks, as is typical in legal contracts, to indicate a specific meaning is being given to a term"). The signature block does not provide any new definitions. At best the labels "Seller" and "Buyer" there might be construed as headings or sub-headings in connection with the signatures next to them, and the SPA is crystal clear that headings and subheadings are for convenience only and do not affect the meaning of any of the provisions of the SPA.

> **HEADINGS FOR CONVENIENCE ONLY:** Headings of parts and sub-parts under this Agreement are for convenience and

> organization, only. Headings shall not affect the meaning of any provisions of this Agreement.

(SPA at ¶ 10(f).)

At least one other court has rejected a similar argument where a party attempted to redefine explicit definitions contained in the preamble of a contract based on the signature block. In *Brkic v. Dumbo Moving & Storage, Inc.*, 22-cv-07029 (CM), 2023 U.S. Dist. LEXIS 3810 (S.D.N.Y. Jan. 9, 2023), the arbitration agreement at issue defined and identified the parties in the very first paragraph. *Id*. at *4-*5. Thereafter, in the signature block, one of the parties was defined in his corporate, rather than in his personal, capacity. *Id*. at *5-*6. The court held that the arbitration agreement binds the parties as they were defined in the preamble regardless of any arguable differences contained in the signature block. *Id*. at *9-*11.

Moreover, Rock Fintek's convoluted reading – conflating "Seller" with Adorama – is undermined by other provisions of the SPA. First, when the SPA refers to Adorama (as the party to whom the "Deposit" would be paid), it does so by name and does not refer to Adorma as "Seller" – a term solely reserved for Kitchen Winners. Second, the SPA provides that Buyer "shall wire to an account designated by Seller the sum of $1,250,000.00." (SPA at ¶ 2(a).) The SPA then designates Adorama's account as the account where the Buyer was to deposit the funds. If Adorama were the Seller under the SPA, the SPA would have read "Buyer shall wire Seller" instead of the formulation that the SPA actually used. Third, the SPA has a separate section for the payment of the deposit and for the payment for each subsequent payment. When referring to the payment of the deposit, the SPA directs payment to "an account designated by Seller" defined thereafter as Adorama. When referring to the subsequent payments, the SPA instead provides that "Buyer shall pay Seller." According to Rock Fintek, these separate provisions should have been collapsed into one section, simply stating "Buyer shall pay Seller."

Adorama, in fact, has no contractual obligations under the SPA at all.  Adorama concedes that it is a signatory to the SPA.  However, it is neither the "Buyer" nor the "Seller" under the SPA's provisions, and is not required to perform any contractual obligations.  Adorama is mentioned solely as the party to whom the "Deposit" would be paid. Accordingly, Rock Fintek cannot prevail on its allegation that Adorama somehow breached the SPA by failing to deliver gloves that complied with the SPA's specifications, as such allegations are belied by the terms of the SPA itself.

### 2.    Adorama is not an alter-ego of Kitchen Winners

Rock Fintek has also asserted that Kitchen Winners is an alter ego of Adorama and, thus, Adorama can be held liable for Kitchen Winners' breach of the SPA.  Discovery has conclusively disproved this theory.

Under New York law, "alter ego" and "piercing the corporate veil" theories are one and the same. *See Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 138 (2d Cir. 1991) (finding that the doctrine of piercing the corporate veil and the "alter ego theory" are indistinguishable and "should be treated as interchangeable").

The New York Court of Appeals' decision in *Morris v. N.Y.S. Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141 (1993), "establishes the applicable standard [for veil piercing and alter ego] under New York law." *Am. Federated Title Corp. v. GFI Mgmt. Servs.*, 716 Fed. Appx. 23, 27 (2d Cir. 2017). There are two parts to the *Morris* test for establishing a veil piercing claim: "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Morris*, 82 N.Y.2d at 141; *TNS Holdings Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335, 339, 703 N.E.2d 749, 680 N.Y.S.2d 891 (1998) ("Evidence of domination alone does not suffice

without an additional showing that it led to inequity, fraud or malfeasance."). As the Second Circuit has stated, veil piercing constitutes an exception to "the doctrine of limited liability" for corporate entities, and courts should permit veil-piercing only under "extraordinary circumstances." *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996).

Here, Rock Fintek cannot satisfy either prong of the test.  In support of the alter-ego theory, Rock Fintek alleged, *inter alia*, that (1) Adorama dominates and controls Kitchen Winners (TPC at ¶ 20); (2) Adorama and Kitchen Winners commingle funds, fail to observe corporate formalities, share officers, directors, and office space (*id.*); (3) "Mendlowitz, acting on behalf of Adorama, provided a document to Rock Fintek in which he stated that 'Kitchen Winners NY, Inc. are authorized to act on our [Adorama's] behalf to procure Nitrile gloves as discussed subject to contract'" (*id.* at ¶ 22); (4) "Adorama somehow guaranteed Kitchen Winners' performance under the SPA" (*id.* at ¶ 63); and (5) "Adorama ... had apparently agreed to refund the $1,035,000 overcharge" (*id.* at ¶ 79).

Extensive discovery has conclusively shown that these allegations are false.  Neither Adorama nor Mendlowitz own any shares in Kitchen Winners.  (SUMF at ¶ 17.)  The companies do not share owners, officers, employees, offices, or bank accounts.  (SUMF at ¶ 18.)  They are separate entities involved in an arms-length business relationship.  (SUMF at ¶ 19.)  Indeed, when asked, both Kato and Gilling admitted that they had no information to support the unsubstantiated allegations regarding Kitchen Winners being an alter ego of Adorama. (SUMF at ¶ 20.)  Further, Rock Fintek admitted that it never met in person, texted, emailed, or exchanged WhatsApp communications with either Mendlowitz or anyone else at Adorama.   Nor was Rock Fintek able to produce a single text message, email, WhatsApp communication, record of a Zoom meeting, or

record of a WhatsApp call between any Rock Fintek employee or representative, on the one hand, and any Adorama employee, on the other hand.

Finally, the document that Rock Fintek explicitly alleged it was provided by Mendlowitz confirming that Kitchen Winners was "authorized to act" on Adorama's behalf (*see* TPC at ¶ 22) was (a) never provided to it by Mendlowitz or anyone else at Adorama; (b) not drafted or signed by Mendlowitz; and (c) not even addressed to Rock Fintek.

Even if Rock Fintek could somehow prove that Adorama exercised complete domination over Kitchen Winners, it still cannot establish the second element of the *Morris* test, that such domination was used to commit a fraud or wrong against Rock Fintek that resulted in its injury.

In *Morris*, the Court looked for "evidence of an intent to defraud," *Morris*, 82 N.Y.2d at 143. The *Morris* court refused to pierce the corporate veil because the entity at issue in that case "had a legitimate business purpose in its formation and carried on its business of owning and chartering boats thereafter. There is no showing that it was set up as a sham or for the purpose of tax avoidance." *Id*. 144-145. As *Morris* explains, "it is perfectly legal to incorporate for the express purpose of limiting the liability of the corporate owners." *Id*. at 140. *See also Bartle v. Home Owners Cooperative, Inc.*, 309 N.Y. 103, 106 (1955) ("The law permits the incorporation of a business for the very purpose of escaping personal liability.").

Courts have repeatedly held that the fraud or wrong has to be sufficiently deceptive or intentionally unjust; otherwise, the mere failure to pay an unpaid judgment would lead to the piercing of the corporate veil. *Am. Federated Title Corp.*, 716 F. App'x at 28 ("If a controlling party could be held liable for any corporate transaction, regardless of the intent with which it was carried out, then proof of external control and causation alone could suffice to pierce the corporate veil."); *Cary Oil Co. v. MG Ref & Mktg., Inc.*, 257 F. Supp. 2d 751, 760 (S.D.N.Y. 2003) (piercing

14

available when actions are taken in furtherance of a deceitful or otherwise unjust purpose). Similarly, in *Sheridan Broad. Corp. v. Small*, 19 A.D.3d 331, 332 (1st Dep't 2005), the court required a showing of fraud or "corporate misconduct" and noted that "plain inference of abuse does not arise . . . where a corporation was formed for legal purposes or is engaged in legitimate business." *Id*.

Here, both Kitchen Winners and Adorama were set up for legitimate business purposes with no relationship to Rock Fintek or to the transactions at issue. Kitchen Winners was originally formed, prior to the Covid-19 pandemic, for the purpose of selling kitchen accessories online. (SUMF at ¶ 13.) Adorama is an e-commerce company, a specialty retailer in the photography and video space and also sells electronics as well as photo, photography, video, lighting, audio, and music products. (SUMF at ¶ 8.)

Accordingly, Adorama is not an alter ego of Kitchen Winners and thus cannot be held liable for Rock Fintek's claims against Kitchen Winners. *Atari, Inc. v. Games, Inc.*, 04 Civ. 3723 (JSR), 2005 U.S. Dist. LEXIS 2868, at *7 (S.D.N.Y. Feb. 23, 2005) ("Although a non-signatory can also be named as a defendant if it is the alter ego of the signatory, … the alter ego test is a stringent one, requiring, *inter alia,* that the non-signatory have no real identity independent of the signatory, not simply that the entities are closely related").

## III.  BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

Rock Fintek cannot prevail on its claim for breach of the covenant of good faith and fair dealing, as the claim is duplicative of its cause of action for breach of contract.

Under New York law, "when a plaintiff claims a breach of the implied covenant of good faith and fair dealing based on the same facts as a breach of contract claim, the claim for the breach of the implied covenant must be dismissed as duplicative of the breach of contract claim." *Hadami,*

*S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 598 (S.D.N.Y. 2017). "[C]laims are duplicative when both 'arise from the same facts and seek the identical damages for each alleged breach.'" *Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015) (quoting *Amcan Holdings, Inc. v. Canadian Imperial Bank of Com.*, 70 A.D.3d 423, 426 (N.Y. App. Div. 2010)); *see also, JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022).

Here, the TPC, in its breach of the covenant of good faith and fair dealing cause of action, first alleged that Adorama made "fraudulent omissions and misrepresentations about the nature and quantity of the gloves sold to Rock Fintek." (TPC ¶¶ 79–80, 136.) Rock Fintek then alleged that Adorama engaged in "extortionate efforts to impose unbargained-for expenses and to condition performance under the SPA on Rock Fintek agreeing to buy additional gloves." (*Id.* at ¶ 136.)

Extensive discovery has established that Adorama did not engage in extortion or condition performance of the SPA on anything. Rock Fintek has not produced a single solitary communication in any form between itself and Mendlowitz or anyone else at Adorama. Indeed, Rock Fintek has stipulated that neither Kato nor Gilling ever met in person, texted, emailed, or exchanged WhatsApp communications with anyone at Adorama or Mendlowitz. Nor has Rock Fintek identified any telephone conversation in which anyone at Adorama made such a threat. (*See* Kato 289:7-22 [testifying that only Weiner of Kitchen Winners made threats]).)

In any event, Rock Fintek has not identified any damages whatsoever that it sustained associated with these supposed threats.

The only remaining allegations pertain to the "nature of and quantity of the gloves." However those allegations are clearly duplicative of Rock Fintek's breach of contract cause of action as they both 'arise from the same facts and seek the identical damages for each alleged

breach.' *Deutsche Bank Nat'l Tr. Co.*, 810 F.3d at 869. Specifically, in paragraph 119 of the TPC, Rock Fintek sought damages on its breach of contract claim for the same alleged breaches as to the quantity and quality of the gloves delivered pursuant to the SPA.

Accordingly, Adorama is entitled to summary judgment dismissing Rock Fintek's cause of action for breach of the covenant of good faith and fair dealing. *Deer Park Enters., LLC v. Ail Sys., Inc.*, 57 A.D.3d 711, 712 (2d Dep't 2018) ("A cause of action to recover damages for breach of the implied covenant of good faith and fair dealing cannot be maintained where the alleged breach is 'intrinsically tied to the damages allegedly resulting from a breach of the contract'") (citations omitted).

## IV.   ADORAMA IS ENTITLED TO SUMMARY JUDGMENT DISMISSING ROCK FINTEK'S CLAIM FOR UNJUST ENRICHMENT

Rock Fintek cannot prevail on its unjust enrichment claim. "The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Pauwels*, 83 F.4th at 186 (citations omitted).

Here, Adorama was not enriched at Rock Fintek's expense. Rock Fintek negotiated the terms of its agreement with Ascension prior to entering into the SPA. Rock Fintek sold the Gloves to Ascension at the price they agreed upon. Ascension paid Rock Fintek in full. Rock Fintek has not returned any of those monies to Ascension.

Accordingly, Rock Fintek cannot prove that Adorama was enriched at its expense.

Additionally, Rock Fintek is certainly not entitled to the massive damages it seeks as a result of the loss of its purported future business relationship with Ascension under its unjust enrichment theory, as "[u]njust enrichment is an equitable claim for which lost profits are not

available."  *See Busrel Inc. v. Dotton*, 1:20-cv-1767, 2021 U.S. Dist. LEXIS 132316, at *42 (W.D.N.Y. July 15, 2021).

As such, Adorama respectfully requests that the Court grant it summary judgment dismissing Rock Fintek's claim for unjust enrichment.

## V.   ADORAMA AND MENDLOWITZ ARE ENTITLED TO SUMMARY JUDGMENT DISMISSING ROCK FINTEK'S CLAIM FOR BREACH OF WRITTEN WARRANTY

Rock Fintek's tenth cause of action asserts a claim of breach of express written warranty against both Adorama and Mendlowitz.  Adorama and Mendlowitz are entitled to summary judgment dismissing that claim, as discovery has shown that neither made any such warranty.

Rock Fintek alleged in its TPC that Adorama and Mendlowitz "provided Rock Fintek with written express warranties."  (TPC at ¶ 179.)

Rock Fintek has since admitted, however, that it has no emails, text messages, or WhatsApp communications with Mendlowitz or anyone else at Adorama.  The only document that Kato and Gilling could ever point to in support of Rock Fintek's claim for breach of "written express warranty" is the SPA itself.  (*See* Gilling 168:1-169:5; Kato 291:1-11.)  Mendlowitz, however, is not personally a party to the SPA and Adorama – on whose behalf he signed that agreement – did not make any warranties in it whatsoever.  Rather, as explained above, Adorama signed the SPA merely as the party to whom the initial deposit would be paid.

As such, Adorama and Mendlowitz respectfully request that the Court grant them summary judgment dismissing Rock Fintek's claim for breach of written warranty.

## VI.   ROCK FINTEK'S CLAIMS AGAINST THE ADORAMA PARTIES FAIL FOR LACK OF DAMAGES

The Adorama Parties incorporate by reference the arguments in the section titled "Rock Fintek's Counterclaims Against Kitchen Winners Fail for Lack of Damages" in the memorandum of law submitted by Kitchen Winners.

## <u>CONCLUSION</u>

For all of the above-mentioned reasons, the Adorama Parties respectfully request that the Court grant their motion for summary judgment dismissing Rock Fintek's claims against them.

Dated:  Kew Gardens, New York
February 16, 2024

**LIPSIUS-BENHAIM LAW LLP**
*Attorneys for Third-Party Defendants Adorama Inc. and Joseph Mendlowitz*

By:   _____
        Alexander J. Sperber
        Yisroel Steinberg
        Meir Z. Goldberg
80-02 Kew Gardens Road, Suite 1030
Kew Gardens, New York 11415
Telephone: 212-981-8440
Facsimile: 888-442-0284
asperber@lipsiuslaw.com
ysteinberg@lipsiuslaw.com
mzgoldberg@lipsiuslaw.com