# EXHIBIT 2

**IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN
AND FOR MIAMI-DADE COUNTY, FLORIDA**

ARIK MAIMON

     Plaintiff,                      CASE NO.  **2023-023843-CA-01**

v.

ROCK FINTEK, LLC,
a Florida limited liability company

     Defendant.

_____/

**<u>ANSWER AND AFFIRMATIVE DEFENSES AND COUNTERCLAIM</u>**

COMES NOW, the Defendant, ROCK FINTEK, LLC, a Florida limited liability company,

(the "Defendant"), by and through the undersigned counsel, and hereby makes this its Answer and

Affirmative Defenses and Counterclaim, and in support thereof, states the following:

**<u>ANSWER</u>**

1.  DEFENDANT denies the allegations contained in paragraph one (1) and demands strict

proof thereof.

2.  DEFENDANT is without knowledge and therefore denies the allegations contained in

paragraph two (2).

3.  DEFENDANT admits the allegations contained in paragraph three (3).

4.  DEFENDANT admits the allegations contained in paragraph four (4).

5.  DEFENDANT is without knowledge and therefore denies the allegations contained in

paragraph five (5).

6.  DEFENDANT is without knowledge and therefore denies the allegations contained in

paragraph six (6) and demands strict proof thereof.

## COUNT I – BREACH OF CONTRACT

7.  DEFENDANT reincorporates the responses to the allegations in paragraph one (1) through six (6) as if stated herein.

8.  DEFENDANT is without knowledge and therefore denies the allegations contained in paragraph eight (8) and demands strict proof thereof.

9.  DEFENDANT admits the allegations contained in paragraph nine (9) and demands strict proof thereof.

10. DEFENDANT is without knowledge and therefore denies the allegations contained in paragraph ten (10) and demands strict proof thereof.

11. DEFENDANT is without knowledge and therefore denies the allegations contained in paragraph eleven (11) and demands strict proof thereof.

12.  DEFENDANT denies the allegations contained in paragraph twelve (12).

13. DEFENDANT denies the allegations contained in paragraph thirteen (13).

14. DEFENDANT denies the allegations contained in paragraph fourteen (14).

## COUNT II – UNJUST ENRICHMENT

16. DEFENDANT reincorporates the responses to the allegations in paragraph one (1) through six (6) as if stated herein.

17. DEFENDANT denies the allegations contained in paragraph seventeen (17).

18. DEFENDANT denies the allegations contained in paragraph eighteen (18).

19. DEFENDANT denies the allegations contained in paragraph nineteen (19).

20. DEFENDANT denies the allegations contained in paragraph twenty (20).

## AFFIRMATIVE DEFENSES

### First Affirmative Defense: Ambiguity

Defendant asserts that the LOI's terms are ambiguous, and thus it cannot be enforced

against it. Paragraph 9 of the LOI states:

> Compensation. Arik Maimon has introduced Rock Fintek to KWNY for the current
> and future purchase of medical gloves and will receive commissions of US$0.15
> per box purchased **from** KWNY for the first 1 million boxes sold to Rock Fintek
> for its customers. If product is sold to Maimon's Customers, he will receive 50%
> of the gross profit for those transactions and Rock Fintek will receive 50% of gross
> profit. **If Rock Fintek exercises the option to purchase the 2nd lot of 1 million
> boxes from KWNY, Rock Fintek will pay Maimon $0.25 per box additional
> for the first 1 million boxes transacted ($250,000) and $0.40 per box for the
> second 1 million boxes**. (emphasis added).

Paragraph 9 is patently ambiguous as to who will owe the commissions to Plaintiff of

US$0.15 per box purchased for the first 1 million boxes, which is an essential term of the LOI.

The word "from" bolded above can reasonably be interpreted to mean that Plaintiff will receive

the commission of US$0.15 *from Kitchen Winners* (KWNY). Further, in the very same paragraph,

the provision related to the commission owed upon Defendant's exercise of its option to purchase

additional boxes states that "if [Defendant] exercises the option to purchase the 2nd lot of 1 million

boxes from KWNY, **Rock Fintek will pay Maimon** $0.25 per box additional for the first 1 million

boxes transacted ($250,000) and $0.40 per box for the second 1 million boxes." (emphasis added).

The drafter's omission of who will pay the commission on the Defendant's purchase of the first

one million boxes and the drafter's inclusion of express language just a few sentences later that

"Rock Fintek will pay Maimon" the commission if Defendant exercises its option to purchase

additional boxes creates an ambiguity within the four corners of the LOI as to who owed the

commission on the purchase of the first one million boxes. "As a general proposition, the use of

different language in different contractual provisions strongly implies that a different meaning was

3

intended." *Holmes v. Florida A & M Univ. by & Through Bd. of Trustees*, 260 So. 3d 400, 406 (Fla. 1st DCA 2018) (citing *Kel Homes, LLC v. Burris*, 933 So.2d 699, 703 (Fla. 2d DCA 2006)).

## Second Affirmative Defense: Waiver

Plaintiff waived his alleged right to collect any commission on the Defendant's purchase of the first one million boxes of gloves when he improperly authorized KWNY and Adorama (the Adorama Sellers) to deliver to Defendant non-conforming "Protection" vinyl gloves when Defendant never authorized Maimon to do so. Maimon knew that the contract required the Adorama Sellers to deliver MedCare brand medical grade Nitrile Examination grade gloves, bearing an FDA 510(k) certification and meeting ASTM D-6319 standards, the Adorama Sellers delivered nonconforming goods,  the Plaintiff, at a minimum, knew that the Adorama Sellers were delivering nonconforming goods, the Plaintiff knew or should have known that he had the right and the obligations to require the Adorama Sellers to fully perform under Fintek's sale and purchase agreement, and he freely and intentionally gave up his alleged right to the commission on when he breached his obligation to require the Adorama Sellers' performance and protect Rock Fintek's interests.

## Third Affirmative Defense: Estoppel

Plaintiff is estopped from collecting any commission on the Defendant's purchase of the first one million boxes of gloves because he represented that he was acting as Rock Fintek's agent and in Rock Fintek's best interest in his dealings with the Adarama Sellers, and the Defendant relied on Plaintiff's representations to its detriment. In fact, Plaintiff was not acting in Rock Fintek's best interest. He forged a letter purportedly between Adorama and Kitchen Winners, on what appeared to be Adorama letterhead and appeared to be signed by Adorama's CEO Joseph Mendlowitz, that contained an authorization by Adorama to its "related company" Kitchen

4

Winners to procure "Nitrile" gloves and committing for Adorama to fully fund the gloves transaction to induce Rock Fintek to enter into the glove transaction, and Plaintiff improperly authorized the Adorama Sellers to deliver to Defendant non-conforming "Protection" vinyl gloves when Defendant never authorized the Plaintiff to do so.

### Fourth Affirmative Defense: Fraudulent Inducement

Plaintiff fraudulently induced Defendant into entering into the glove transaction by forging a letter purportedly between Adorama and Kitchen Winners, on what appeared to be Adorama letterhead and appeared to be signed by Adorama's CEO Joseph Mendlowitz, that contained an authorization by Adorama to its "related company" Kitchen Winners to procure "Nitrile" gloves and committing for Adorama to fully fund the gloves transaction in order to induce Rock Fintek to enter into the glove transaction. The party with whom Defendant was transacting was a material fact of the glove transaction. But for Plaintiff forging the letter and representing that Adorama was fully funding the transaction, Defendant would not have entered into the transaction and suffered the losses resulting from its spoiled relationship with its hospital client.

### Fifth Affirmative Defense: Unclean Hands

Plaintiff's Complaint is barred, in whole or in part, by the doctrine of unclean hands. The Plaintiff brought a claim in equity, the Plaintiff committed fraud or wrongdoing in procuring the contract as detailed in the Defendant's fourth affirmative defense, which is incorporated herein by reference, the Defendant relied on the Plaintiff's misconduct, and the Plaintiff's misconduct caused harm to the Defendant.

### Sixth Affirmative Defense: Failure of a Condition precedent.

The LOI provides that Plaintiff "introduced Rock Fintek to [Kitchen Winners] for the purchase and current and future purchase of medical gloves and will receive commissions of

US$0.15 per box purchased from [Kitchen Winners] for the first 1 million boxes sold to Rock Fintek for its customers." The Defendant did not receive one million boxes of *medical* gloves from Kitchen Winners, the receipt of which was a condition to Plaintiff's entitlement to a commission on the glove transaction.

### Seventh Affirmative Defense: Failure of consideration.

The Plaintiff is barred from recovering damages in this action because the Plaintiff failed to furnish his contractual obligations – representing Fintek's best interest with respect to the transaction.

### Eighth Affirmative Defense: Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff may not prevail on its claims because the Plaintiff breached the Implied Covenant of Good Faith and Fair Dealing. The parties have an enforceable contract. The Plaintiff breached the implied obligation of the contract that thwarted the Defendant's reasonable contractual expectations; involved the plaintiff's performance of an express contractual provision; and did not contradict or vary the express terms of the contract. The Plaintiff's breach was "a conscious and deliberate act" that was not the result of an honest mistake, bad judgement, or negligence.

### Ninth Affirmative Defense: Existence of Contract

The Plaintiff's unjust enrichment count is barred because an express contract governing the subject matter of the dispute exists.

### Reservation of Rights

Defendant reserves its right to amend its Answer and Affirmative Defenses upon discovery of additional facts to address any additional allegations brought forth by Plaintiff.

## COUNTERCLAIM

Defendant and counterclaim plaintiff Rock Fintek LLC as and for its Counterclaim against Arik Maimon ("Maimon"), alleges as follows:

### Preliminary Statement

1.      Between in or about March and June 2021, amid personal protective equipment shortages brought on by the global COVID-19 pandemic, Maimon conspired with Adorama, Inc. ("Adorama") and Kitchen Winners NY Inc. ("Kitchen Winners" and, together, the "Adorama Sellers") to induce Rock Fintek into buying more than $19 million worth of what co-conspirators represented and warranted to be MedCare brand medical grade Nitrile Examination grade gloves, bearing an FDA 510(k) certification and meeting ASTM D-6319 standards. In blatant violation of his contractual and fiduciary duties to Rock Fintek, Maimon facilitated the Adorama Sellers in delivering to Rock Fintek more than $19 million in non-conforming gloves, knowing that Rock Fintek would be delivering those gloves to its client – Ascension Health, a major hospital group in the United States – to be used by medical providers in the middle of the COVID-19 pandemic.

2.      Maimon brought this action seeking unearned commissions under a Letter of Intent ("LOI") between him and Rock Fintek in retaliation for having been served with a subpoena in a related litigation concerning the glove sales in Southern District of New York between Rock Fintek and the Adorama Sellers[1] and as a preemptive strike, with his own misconduct having now been exposed through Kitchen Winners' testimony in the NY Action.

3.      As it turns out, contrary to his duties to Rock Fintek, Maimon shifted his loyalties

---

[1] *Kitchen Winners NY Inc. v. Rock Fintek LLC et al.*, Civil Action No. 22-cv-05276-PAE (S.D.N.Y.) (the "NY Action").

to the Adorama Sellers while purporting to act as Rock Fintek's agent, and actively assisted the Adorama Sellers in delivering to Rock Fintek a substantial number of gloves that were not the required "Examination" gloves but were non-conforming synthetic "Protection" gloves that are not designed for medical use, that did not bear the required FDA 510(k) certification, that failed to comply with the required ASTM D6319 standards, and, as laboratory testing has revealed, were not even "Nitrile/NBR" examination gloves, but instead cheap polyvinylchloride gloves with no detectible levels of nitrile.

4.      As a direct and proximate result of his violation of contractual and common law duties to Rock Fintek, Maimon is liable jointly and severally with the Adorama Sellers for the tens of millions of dollars in damages caused to Rock Fintek.

### Parties and Jurisdiction

5.      This is a civil action for damages in excess of $50,000, exclusive of attorneys' fees and costs.

6.      Rock Fintek LLC is a Delaware limited liability company with its principal business address in Miami Beach, Florida. The sole member of Rock Fintek is an individual who is a citizen of the State of Florida.

7.      Maimon is a citizen of the State of Florida who resides, upon information and belief, at 520 West Ave., Suite 1405, Miami Beach, Florida.

8.      Venue is proper in Miami-Dade County, Florida, as acts giving rise to this action occurred in this County.

9.      Plaintiff has retained the undersigned law firm and agreed to pay them a reasonable fee and costs.

10.     All conditions necessary to initiate this action have been performed, occurred, or otherwise excused.

## FACTUAL BACKGROUND

### *Maimon's Relationship with Rock Fintek*

11.     Rock Fintek is a trading company that had been engaged, among other things, in the business of buying and selling hospital and medical supplies, including personal protective equipment ("PPE") to medical providers in the United States, such as protective gowns, face masks and gloves.

12.     Since the start of the global COVID-19 pandemic, the demand and prices for PPE skyrocketed, while supplies were limited.

13.     In late 2020 and early 2021, Rock Fintek was engaged in PPE transactions with various parties, including purchasing and selling gloves, masks, and gowns.

14.     Maimon, who was a personal acquaintance of Rock Fintek's principal, sought to insert himself into Rock Fintek's PPE business, including by seeking business opportunities and otherwise acting as Rock Fintek's consultant and agent with respect to PPE transactions. Maimon held himself out as having the ability to protect Rock Fintek's interests with respect to PPE transactions.

15.     In early 2021, Rock Fintek identified an opportunity to purchase a large quantity of nitrile examination gloves from the Adorama Sellers who purportedly had a connection to a new nitrile glove manufacturer in China that manufactured "MedCare" brand medical grade nitrile (also referred to as NBR) Examination gloves.

16.     Maimon had *no role* in identifying the potential opportunity with the Adorama Sellers, but was introduced by Rock Fintek to Mendel Banon who was holding himself out as part of the Adorama Sellers.

17.     At all relevant times, Banon was acting as an agent and broker of the Adorama

Sellers.

18.     By early 2021, Maimon expressly undertook the responsibility to act as Rock Fintek's consultant and agent in dealing with the Adorama Sellers with respect to certain one-off glove transactions and the negotiations of a Sales and Purchase Agreement ("SPA") for purchase of up to 1.7 million additional boxes of gloves. Maimon insisted to Rock Fintek that his cultural and religious similarities with the Adorama Sellers put him in a unique position to protect Rock Fintek in Rock Fintek's business dealings with the Adorama Sellers. Based on Maimon's representations and promises, Rock Fintek agreed to work with Maimon as its agent and consultant with respect to its dealings with the Adorama Sellers.

19.     As Rock Fitnek's representative and agent with respect to the SPA and other dealings with the Adorama Parties, Maimon owed Rock Fintek strict fiduciary duties of loyalty and care.

20.     As part of SPA negotiations, Maimon knew that Rock Fintek would not enter into the SPA with just Kitchen Winners, which was an unknown entity. Rather, Rock Fintek required that Adorama be involved in the transaction and execute the SPA as a seller, which Adorama did.

21.     On March 31, 2021, Maimon sent to Rock Fintek a letter purporting to be a letter between Adorama and Kitchen Winners, on what appeared to be Adorama letterhead and appeared to be signed by Adorama's CEO Joseph Mendlowitz, that contained an authorization by Adorama to its "related company" Kitchen Winners to procure "Nitrile" gloves and committing for Adorama to fully fund the gloves transactions.

22.     Mr. Mendlowitz testified in the NY Action that the letter sent by Maimon was forged and that the signature on that letter was not in fact his.

23.     Maimon sent the fraudulent letter to Rock Fintek in order to induce Rock Fintek to

enter into a large love purchase transaction with the Adorama Sellers from which he personally stood to profit.

24.     Rock Fintek relied on Maimon to act in Rock Fintek's best interests when dealing with the Adorama Sellers.

25.     Maimon expressly instructed Rock Fintek orally and in writing to go through him in dealing with the Adorama Sellers, and repeatedly assured Rock Fintek to relax, to not worry, to trust him and to trust the Adorama Sellers because Maimon was involved and purportedly was protecting Rock Fintek's best interests.

26.     Rock Fintek reasonably relied on Maimon to deal with the Adorama Sellers as a loyal representative of Rock Fintek, including in negotiating the SPA between Rock Fintek and the Adorama Sellers.

27.     Throughout the negotiations, Maimon exerted significant pressure on Rock Fintek to execute the SPA or risk losing the deal.

28.     On or about April 1, 2021, just days before the SPA was executed, Maimon and Rock Fintek executed the LOI concerning certain aspects of the Rock Fintek/Maimon relationship. A copy of the LOI is attached to Maimon's complaint as Exhibit A.

29.     The LOI expressly contemplated that Maimon would be paid a commission in connection with a successful transaction by which Rock Fintek would purchase 1 million boxes of MedCare brand "nitrile medical gloves … from Kitchen Winners NY Inc (KWNY) / Adorama."

30.     Maimon knew at all times when dealing with Rock Fintek that all gloves that Rock Fintek contracted to buy had to be Nitrile Medical Examination Gloves meeting ASTM D-6319 standards and bearing an FDA 510(k) registration, and that those gloves would immediately be re-

sold to Rock Fintek's client Ascension Health, a major hospital group.

31.     The designation of a glove as a medical "Examination" glove is an industry term of art that carries specific chemical and physical specifications, including compliance with ASTM D-6319 standards, which render such gloves fit for medical examination purposes as opposed to what are known as "Protection" gloves, which are of a different composition, lower cost and typically used for household and other non-medical purposes.

32.     Maimon knew that all gloves that Rock Fintek would purchase from the Adorama Sellers would be immediately sold to Rock Fintek's hospital group client in the United States for use by medical professionals. Rock Fintek expressly told Maimon that its hospital client required that all gloves had to be medical Examination grade and had to comply with ASTM D6319 standards. Indeed, Maimon provided Rock Fintek with written materials purporting to substantiate the nature and quality of the gloves.

33.     Maimon knew at all pertinent times that due to COVID-19 related safety restrictions, Rock Fintek and its contracted logistics providers and truck drivers were not permitted to unseal the pallets and cartons of gloves delivered by the Adorama Sellers and could not open and inspect the packaging or contents of the boxes of gloves prior to the gloves being shipped to warehouses around the United States.

34.     The LOI was not integrated and expressly contemplated that the parties to it would "agree to final terms and conditions of compensation for current and future purchases."

### *Maimon Conspires with Adorama Sellers to Harm Rock Fintek*

35.     On or about April 7, 2021, Rock Fintek entered into the SPA with Kitchen Winners and Adorama, pursuant to which Kitchen Winners and Adorama agreed to sell to Rock Fintek 1,500,000 boxes of nitrile medical examination gloves (150,000,000 units) for $11.50/box, with

the following specifications:

| |
|---|
| Nitrile Gloves (Box 100) Color: Blue, Medical exam grade with FDA 510k |
| Brand: MedCare, examination glove |

36.     In the SPA, Adorama and Kitchen Winners expressly warranted that the nitrile gloves would conform to the specifications set forth in the SPA.

37.     Rock Fintek paid Adorama over $19 million for the gloves under the SPA.

38.     The Adorama Sellers' performance under the SPA was riddled with problems, including incorrect quantities, delays, delivery of wrong brand of gloves, inaccurate glove counts, and extortionate hidden charges. Maimon was obligated and undertook to deal with the Adorama Sellers on behalf of Rock Fintek regarding these performance issues. Maimon communicated with the Adorama Sellers on a weekly or daily basis, purportedly in Rock Fintek's best interests, as he was required to do under the LOI and otherwise as Rock Fintek's fiduciary.

39.     Starting in or about July 2021, Rock Fintek began receiving complaints from Ascension that medical care providers using the MedCare gloves from the Adorama Sellers were experiencing tearing and other performance issues that would not be expected from the gloves that the sellers were required to deliver.

40.     Rock Fintek immediately notified Maimon and the Adorama Sellers of these issues and demanded that steps be taken to resolve the situation.

41.     In fact, more than half of the gloves that Adorama Sellers sold to Rock Fintek were not the required NBR/Nitrile medical Examination grade gloves bearing FDA 510(k) certification and conforming to ASTM D6319 specifications, but were less expensive household use Protection gloves, contrary to the oral and written representations.

42.     During the course of the glove deliveries under the SPA, Maimon was in regular

communication with the Adorama Sellers and their representatives about all aspects of the glove transactions. Maimon's interactions with the Adorama Sellers were supposed to be on behalf of Rock Fintek and in the best interests of Rock Fintek.

43.     In fact, Maimon betrayed Rock Fintek as his loyalties shifted to the Adorama Sellers. For example, according to testimony of Kitchen Winners, Maimon authorized the Adorama Sellers to deliver non-conforming "Protection" gloves to Rock Fintek, despite Maimon knowing that those gloves were non-conforming to the SPA specifications and not suitable for medical use.

44.     Rock Fintek *never* authorized Maimon to agree to accept the delivery of any gloves other than the gloves expressly specified in the SPA – i.e. MedCare brand Nitrile/NBR Medical Examination gloves bearing FDA 510(k) certification and, therefore, compliant with ASTM D-6319 standards.

45.     In or about late July 2021, the parties held a telephone call on which Rock Fintek's representatives, Adorama Sellers' representatives and Maimon were present, during which the parties discussed the overpayments by Rock Fintek and the improper delivery of Protection gloves, as described above, among other issues. On that phone call, Kitchen Winners's principal Hershey Weiner became belligerent and threatened one of Rock Fintek's representatives, saying in substance that he would be coming over to his house with a "big fucking dump truck to bury him."

46.     Subsequently, the Adorama Sellers with, upon information and belief, Maimon's involvement, engaged in extortionate efforts to impose unbargained-for expenses on Rock Fintek and to condition resolution of breaches under the SPA on Rock Fintek agreeing to buy an *additional* $20 million worth of gloves and on paying Maimon's (unearned) commission.

47.     Following the discovery of the non-conforming gloves and the dispute between the

parties, Maimon openly revealed that his loyalties shifted from Rock Fintek to the Adorama Parties.

48.     For example, subsequent to the failed glove transactions, Maimon accepted a personal loan totaling hundreds of thousands of dollars from Kitchen Winners, has become close friends with Hershey Weiner and has been in regular communication with Weiner about other business and investment opportunities. Weiner and Maimon are in weekly contact including regarding Rock Fintek's claims in the NY Action.

***Co-Conspirators Have Interfered with Rock Fintek's Relationship with Ascensions***

49.     Maimon knew at all pertinent times, because Rock Fintek told him in writing and orally, that the gloves that the Adorama Sellers sold to Rock Fintek were being delivered directly to Ascension, Rock Fintek's client, a major hospital group in the United States, with whom Rock Fintek had a preexisting contractual and business relationship.

50.     Maimon knew at all pertinent times that Rock Fintek had a contract with Ascension for delivery of all of the gloves that Rock Fintek was buying from the Adorama Sellers.

51.     Maimon knew at all pertinent times that Rock Fintek's contract with Ascension required specifically that the gloves be MedCare brand medical grade nitrile/NBR Examination gloves bearing an FDA 510(k) certification and meeting ASTM D6319 standards.

52.     Maimon knew that those gloves would be used by medical professionals to treat patients in the midst of an ongoing global COVID-19 pandemic and, therefore, knew that specifications and representation that the gloves at issue were MedCare brand medical grade

Nitrile/NBR Examination gloves bearing an FDA 510(k) certification and meeting ASTM D6319 standards were material to Rock Fintek's relationship with its client.

53.     In fact, Rock Fintek had an ongoing and profitable business relationship with Ascension that predated Rock Fintek's purchases of gloves from the Adorama Sellers, which relationship Rock Fintek reasonably expected to continue into the future.

54.     Through their intentional tortious conduct detailed above, Maimon and the Adorama Sellers have interfered with Rock Fintek's relationship with its hospital client.

55.     As a direct and proximate result of the conduct of Maimon and his co-conspirators, Rock Fintek's hospital client has refused to do further business with Rock Fintek costing Rock Fintek significant lost revenues and profits that it reasonably expected.

**COUNT I**
(Breach of Contract - LOI)

Rock Fintek repeats and incorporates allegations 1-55 as if repeated in full herein.

56.     The LOI is a valid and enforceable agreement between Rock Fintek and Maimon that provided a commission to Maimon only upon purchase by Rock Fintek from the Adorama Sellers of certain quantities of MedCare brand nitrile/NBR medical grade examination gloves bearing FDA 510(k) certification.

57.     Rock Fintek has fully or substantially performed its obligations under the LOI.

58.     All conditions precedent to Rock Fintek's obligations under the LOI have been satisfied or excused, including by Maimon's failure to perform.

59.     As detailed above, Maimon breached the LOI, including by knowingly conspiring with the Adorama Sellers to deliver polyvinylchloride gloves to Rock Fintek rather than nitrile/NBR gloves, by delivering gloves that lacked an FDA 510(k) certification, and by delivering Protection gloves rather than medical grade Examination gloves.

60.     Maimon's breach of the LOI has directly and proximately caused significant damages to Rock Fintek for which Maimon is liable jointly and severally with the Adorama Sellers in an amount to be proven at trial.

WHEREFORE, Counter Plaintiff, Rock Fintek LLC, prays for the following relief:

1.  That judgment be entered in favor of Rock Fintek on this Count and that Rock Fintek be awarded damages in an amount to be determined at trial;

2.  That the Court award Rock Fintek its attorneys' fees, costs, expenses, and pre-judgment and post-judgment interest;

3.  That the Court award to Rock Fintek any and all further and other relief to which it may be entitled at law or in equity.

## COUNT II
### (Breach of the Covenant of Good Faith and Fair Dealing)

Rock Fintek repeats and incorporates allegations 1-55 as if repeated in full herein.

61.     Rock Fintek and Maimon are parties to the contractual relationships described above, each of which is a valid and enforceable agreement.

62.     Each of the contractual relationships involving the parties implied a covenant of good faith and fair dealing.

63.     Maimon's misconduct described above, including extortionate efforts to impose unbargained-for expenses and to condition performance under the LOI on Rock Fintek agreeing to buy additional gloves and to pay Maimon an unearned commission, were designed to deprive Rock Fintek of the fruits of the deal to which the parties agreed, and constitutes a breach of the implied covenant of good faith and fair dealing.

64.     Maimon's breaches of the covenant of good faith and fair dealing have directly and proximately caused significant damages to Rock Fintek for which he and his co-conspirators are jointly and severally liable.

WHEREFORE, Counter Plaintiff, Rock Fintek LLC, prays for the following relief:

1.  That judgment be entered in favor of Rock Fintek on this Count and that Rock Fintek be awarded damages in an amount to be determined at trial;

2.  That the Court award Rock Fintek its attorneys' fees, costs, expenses, and pre-judgment and post-judgment interest;

3.  That the Court award to Rock Fintek any and all further and other relief to which it may be entitled at law or in equity.

**COUNT III**
(Breach of Fiduciary Duty)

Rock Fintek repeats and incorporates allegations 1-55 as if repeated in full herein.

65.     As Rock Fintek's agent with respect to the glove transactions at issue, Maimon owed Rock Fintek strict fiduciary duties of loyalty and care.

66.     As detailed above, Maimon knowingly breached those duties, including by improperly authorizing Adorama Sellers to deliver to Rock Fintek non-conforming "Protection" vinyl gloves. Rock Fintek never authorized Maimon to do so.

67.     Rock Fintek reasonably relied on Maimon to act in its best interests.

68.     As a direct and proximate result of Maimon's breaches of fiduciary duty to Rock Fintek,  Rock Fintek has sustained significant damages in an amount to be proven at trial.

WHEREFORE, Counter Plaintiff, Rock Fintek LLC, prays for the following relief:

1.  That judgment be entered in favor of Rock Fintek on this Count and that Rock Fintek be awarded damages in an amount to be determined at trial;

18

2.  That the Court award Rock Fintek its attorneys' fees, costs, expenses, and pre-judgment and post-judgment interest;

3.  That the Court award to Rock Fintek any and all further and other relief to which it may be entitled at law or in equity.

**COUNT IV**

(Tortious Interference with an Advantageous Business Relationship)

Rock Fintek repeats and incorporates allegations 1-55 as if repeated in full herein.

69.    As detailed above, Maimon knew at all pertinent times that the gloves at issue were being immediately delivered by Rock Fintek to Ascension, a major hospital group in the United States, pursuant to a contract between Rock Fintek and Ascension. Maimon knew that those gloves would be used by medical professionals to treat patients in the midst of an ongoing global pandemic and, therefore, knew that the specifications under the SPA were material to Rock Fintek's relationship with its client.

70.    Rock Fintek had a preexisting, ongoing and continuing business relationship with its client that predated Rock Fintek's purchases of gloves at issue, which relationship Rock Fintek and Ascension reasonably expected to continue into the future.

71.    Through his intentional and deliberate conduct detailed above, Maimon interfered with Rock Fintek's existing and prospective relationship with its hospital client.

72.    The interference was intentional and malicious, as evidenced by Maimon knowingly authorizing the Adorama Sellers to deliver non-conforming gloves, his participation in the Adorama Sellers' extortionate efforts and his disloyalty.

73.    Maimon directed his conduct at Rock Fintek's client Ascension because he knew at all times that the gloves being sold to Rock Fintek were being immediately and directly shipped to Ascension to be used by medical professionals.

74.     The intentional and malicious interference materially injured the existing contractual and prospective relationship between Rock Fintek and Ascension, for which Maimon and his co-conspirators are jointly and severally liable in an amount to be proven at trial.

WHEREFORE, Counter Plaintiff, Rock Fintek LLC, prays for the following relief:

1.  That judgment be entered in favor of Rock Fintek on this Count and that Rock Fintek be awarded damages in an amount to be determined at trial;

2.  That the Court award Rock Fintek its attorneys' fees, costs, expenses, and pre-judgment and post-judgment interest;

3.  That the Court award to Rock Fintek any and all further and other relief to which it may be entitled at law or in equity.

## COUNT V
(Conspiracy)

Rock Fintek repeats and incorporates each of its prior allegations as if repeated in full herein.

75.     Maimon, Adorama, Kitchen Winners, Weiner and Banon combined, agreed, and conspired with each other and with others, including, upon information and belief, the non-party manufacturers and suppliers of gloves at issue, to defraud Rock Fintek and to unlawfully interfere with Rock Fintek's existing and prospective economic business relations with its hospital group client.

76.     Each of Maimon, Adorama, Kitchen Winners, Weiner and Banon, engaged in overt acts in furtherance of the conspiracy by, among other things, knowingly selling and delivering non-conforming gloves to Rock Fintek, by taking steps to conceal their misconduct by refusing to provide information when requested regarding these products, and by making extortionate demands and threats of violence when confronted with their wrongdoing.

77.     Each of Maimon, Adorama, Kitchen Winners, Weiner and Banon, acted willfully, intentionally, corruptly, recklessly, in bad faith, and with a criminal indifference for the rights of Rock Fintek and its client, with a desire to unlawfully obtain money from Rock Fintek through the fraudulent conduct alleged herein.

78.     By working together in ways that were concealed and hidden from Rock Fintek, Maimon, Adorama, Kitchen Winners, Weiner and Banon and their co-conspirators were able to cause harm to Rock Fintek in a manner that they would not have been able to do had they not acted in combination with one another.

79.     Maimon and his co-conspirators are jointly and severally liable to Rock Fintek for the damages directly caused by their and their co-conspirators' wrongdoing.

80.     The scheme alleged herein directly and proximately caused Rock Fintek to suffer significant damages alleged herein in an amount to be proven at trial.

WHEREFORE, Counter Plaintiff, Rock Fintek LLC, prays for the following relief:

1.  That judgment be entered in favor of Rock Fintek on this Count and that Rock Fintek be awarded damages in an amount to be determined at trial;

2.  That the Court award Rock Fintek its attorneys' fees, costs, expenses, and pre-judgment and post-judgment interest;

3.  That the Court award to Rock Fintek any and all further and other relief to which it may be entitled at law or in equity.

**COUNT VI**
(Fraudulent Inducement)

Rock Fintek repeats and incorporates each of its prior allegations as if repeated in full herein.

81.     Maimon falsely misrepresented that Adorama was a related company to Kitchen Winners and that Adorama committed to fully fund the transaction.

82.     Maimon did so by setting forth the forged letter purportedly between Adorama and Kitchen Winners, on what appeared to be Adorama letterhead and appeared to be signed by Adorama's CEO Joseph Mendlowitz, that contained an authorization by Adorama to its "related company" Kitchen Winners to procure "Nitrile" gloves and committing for Adorama to fully fund the gloves transaction.

83.     Maimon knew the letter was forged.

84.     Adorama's principal testified under oath that the letter was forged.

85.     Maimon intended that the forged letter induce Rock Fintek to enter into the glove transaction with Kitchen Winners, for which Maimon stood to benefit.

86.     Rock Fintek justifiably relied on the letter when it entered into the glove transaction.

87. Rock Fintek was injured as a result of being induced into entering into the glove transaction.

WHEREFORE, Counter Plaintiff, Rock Fintek LLC, prays for the following relief:

1.   That judgment be entered in favor of Rock Fintek on this Count and that Rock Fintek be awarded damages in an amount to be determined at trial;

2.   That the Court award Rock Fintek its attorneys' fees, costs, expenses, and pre-judgment and post-judgment interest;

3.  That the Court award to Rock Fintek any and all further and other relief to which it may be entitled at law or in equity.

## COUNT VII
### (Fraudulent Misrepresentation)

Rock Fintek repeats and incorporates allegations 1-55 as if repeated in full herein.

88.     Maimon falsely represented to Rock Fintek that he was acting in Rock Fintek's best interest in his dealings with the Adorama Sellers and that Rock Fintek should leave the communications with the Adorama Sellers to him.

89.     Maimon knew that he was not acting in Rock Fintek's best interest because he advised the Adorama Sellers to deliver gloves that did not conform to the specifications in the SPA to the detriment of Rock Fintek and to the benefit of the Adorama Sellers.

90.     Maimon intended that his representations to Rock Fintek, that it should trust him to handle communications with the Adorama Sellers concerning the glove transaction, would induce Rock Fintek to reduce its oversight over the glove transaction and fail to discover that the Adorama Sellers delivered nonconforming goods under the SPA.

91.     Rock Fintek was injured as a result of its reliance on Maimon's false representations.

WHEREFORE, Counter Plaintiff, Rock Fintek LLC, prays for the following relief:

1.  That judgment be entered in favor of Rock Fintek on this Count and that Rock Fintek be awarded damages in an amount to be determined at trial;

2.  That the Court award Rock Fintek its attorneys' fees, costs, expenses, and pre-judgment and post-judgment interest;

3.  That the Court award to Rock Fintek any and all further and other relief to which it may be entitled at law or in equity.

23

## COUNT VIII
### (Negligent Misrepresentation)

Rock Fintek repeats and incorporates allegations 1-55 as if repeated in full herein.

92.     Maimon falsely represented to Rock Fintek that he was acting in Rock Fintek's best interest in his dealings with the Adorama Sellers and that Rock Fintek should leave the communications with the Adorama Sellers to him.

93.     Maimon knew or should have known that he was not acting in Rock Fintek's best interest because he advised the Adorama Sellers to deliver gloves that did not conform to the specifications in the SPA to the detriment of Rock Fintek and to the benefit of the Adorama Sellers.

94.     Maimon intended that his representations to Rock Fintek, that it should trust him to handle communications with the Adorama Sellers concerning the glove transaction, would induce Rock Fintek to reduce its oversight over the glove transaction and fail to discover that the Adorama Sellers delivered nonconforming goods under the SPA.

95.     Rock Fintek was injured as a result of its reliance on Maimon's false representations.

WHEREFORE, Counter Plaintiff, Rock Fintek LLC, prays for the following relief:

1.   That judgment be entered in favor of Rock Fintek on this Count and that Rock Fintek be awarded damages in an amount to be determined at trial;

2.   That the Court award Rock Fintek its attorneys' fees, costs, expenses, and pre-judgment and post-judgment interest;

3.   That the Court award to Rock Fintek any and all further and other relief to which it may be entitled at law or in equity.

## <u>JURY TRIAL DEMAND</u>

**Rock Fintek Demands a Jury Trial on All Issues So Triable**

Dated this 23rd day of February, 2024.

Respectfully Submitted,
ERIC J. GRABOIS, P.L.
*Attorney for Defendant/Counter-Plaintiff*
1666 79th St Causeway, Suite 500
North Bay Village, Florida 33141
Telephone:    (305) 891-2029
Facsimile:    (305) 428-2607
Primary E-mail: eric@graboislaw.com
Secondary E-mail: service@graboislaw.com
By: s/ Eric J. Grabois
Eric J. Grabois, Esq.
Florida Bar No.: 10402

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via eService to all counsel of record on this 23rd day of February, 2024:

By: s/ Eric J. Grabois
Eric J. Grabois, Esq.