UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KITCHEN WINNERS NY INC., *Plaintiff*, <br><br> vs. <br><br> ROCK FINTEK LLC, *Defendant*. <br><br><br> ROCK FINTEK LLC, *Counterclaim and Third-Party Plaintiff*, <br><br> vs. <br><br> KITCHEN WINNERS NY INC, *Counterclaim Defendant*, <br><br> and <br><br> ADORAMA INC., HERSHEY WEINER, JOSEPH MENDLOWITZ, JNS CAPITAL HOLDINGS LLC and JOEL STERN, *Third-Party Defendants*. | Civil Action No. 22-cv-05276-PAE |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF ADORAMA INC. AND JOSEPH MENDLOWITZ'S MOTION FOR SUMMARY JUDGMENT**

**LIPSIUS BENHAIM LAW LLP**
*Attorneys for Third-Party Defendants*
*Adorama Inc. and Joseph Mendlowitz*
Alexander J. Sperber
Yisroel Steinberg
Meir Z. Goldberg.
80-02 Kew Gardens Road
Suite 1030
Kew Gardens, New York 11415
Telephone: (212) 981-8440

**PRELIMINARY STATEMENT**

Third-Party Defendants Joseph Mendlowitz ("Mendlowitz") and Adorama Inc. ("Adorama") (collectively "the Adorama Parties") respectfully submit this memorandum of law in further support of their motion for summary judgment dismissing each and every claim asserted against them by Third-Party Plaintiff Rock Fintek LLC ("Rock Fintek").

The Adorama Parties rely on many of the same arguments as Plaintiff and Counterclaim-Defendant Kitchen Winners NY Inc., as well as the arguments of Third-Party Defendants JNS Capital Holdings LLC and Joel Stern, and adopt their arguments in full herein by reference.

At the outset, Rock Fintek does not contest Mendlowitz's motion for summary judgment on the individual claim against him. (Rock Fintek's Memorandum of Law at p. 50 n. 8.) Accordingly, Mendlowtiz is entitled to summary judgment dismissing Rock Fintek's claim against him.

Rock Fintek, in the Memorandum of Law filed in opposition to the instant motion ("RF MOL"), extensively referenced the quality of the gloves that it purchased from Kitchen Winners NY Inc. ("Kitchen Winners"). (RF MOL at pp. 1-2, 9-18.) Adorama does not concede that the gloves did not meet the contractual specifications. However, despite the fact that (a) Rock Fintek cannot establish that the gloves did not meet the contractual specifications; and (b) Rock Fintek's own expert testified that it failed to test a statistically representative sample of gloves, Adorama does not raise those arguments in the instant motion as those facts are clearly in dispute. Indeed, the entire premise of Adorama's motion is that it is entitled to summary judgment ***even if*** the gloves did not conform with the specifications set forth in the Sales and Purchase Agreement ("SPA").

1

Adorama had no obligations under the SPA and, therefore, could not have breached the SPA. Any obligations imposed on the "Seller" were imposed solely on Kitchen Winners – by the express terms of the SPA.

## ARGUMENT

### I. ADORAMA WAS NOT A SELLER UNDER THE SPA

Adorama was not a seller under the SPA. The SPA explicitly defines Kitchen Winners as the singular Seller and, thus, imposes all of the duties and obligations under the SPA solely upon Kitchen Winners.

Rock Fintek raises four arguments why Adorama should nevertheless be considered a Seller, despite the unambiguous definition in the SPA – none of which have any merit.

*First*, Rock Fintek argues that (i) the SPA required that "Buyer shall pay Seller," and (ii) Rock Fintek made all of its payments to Adorama.

However, the SPA did not require Rock Fintek to make all payments to Adorama. Rather, according to Paragraph 2 b. of the SPA, only "[t]he Deposit shall be paid to Adorama Inc." All future payments were governed by Paragraph 2 c. of the SPA, which required Rock Fintek to "pay *Seller* in full by wire transfer of funds for each container Delivered to the Seller's warehouse in Los Angeles, California." (Emphasis added.)

Under basic tenets of contract interpretation, "[w]here . . . the contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence." *British Int'l Ins. Co. v. Seguros la Republica, S.A.*, 342 F.3d 78, 82 (2d Cir. 2003); *Morefun Co. v. Mario Badescu Skin Care Inc.*, 588 Fed. Appx. 54, 55 (2d Cir. 2014) ("Parol evidence 'is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face.'")

In this case, the term "Seller" is a defined term in the SPA. It unambiguously refers only to "Kitchen Winners NY Inc." Thus, the clear and unambiguous language of the SPA required Rock Fintek to send only the initial deposit to Adorama. All remaining payments were to be made to the "Seller," *i.e.*, Kitchen Winners. Rock Fintek cannot rely on extrinsic evidence of its unilateral decision to make all of the payments to Adorama – and not to the Seller – to somehow redefine the unambiguously defined term "Seller" to include Adorama. (*See* RF MOL at p. 21-23.)

Moreover, even if courts would consider parol evidence, Mendlowitz testified that Adorama never instructed Rock Fintek to make the payments to Adorama. (Sperber Dec., Exh. E [Mendlowitz Tr.] at 147:4-7.) Rock Fintek has not provided any evidence to the contrary. Accordingly, Rock Fintek cannot redefine "Seller" to include Adorama through its unilateral decision to remit all payment to Adorama *after* the SPA was signed. *See e.g., RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.*, 10 Civ. 0025 (PGG), 2013 U.S. Dist. LEXIS 47535, *23 (S.D.N.Y. Mar. 13, 2013) ("unilateral expression[s] of one party's postcontractual subjective understanding of the terms of the agreement . . . [are] not probative as an aid to the interpretation of the contract") (citations omitted); *Doe v. Nat'l Bd. of Podiatric Med. Examiners*, 2004 U.S. Dist. LEXIS 7409, *22 (extrinsic evidence not probative where "[b]oth of these items post-date the formation of the agreements at issue here); *Nielsen Consumer LLC v. Circana Grp. L.P.*, 22-CV-3235 (JPO), 2023 U.S. Dist. LEXIS 160410, *14 (S.D.N.Y. Aug. 28, 2023) ("'a court interpreting a contract is to give effect to the intent of the parties as revealed by the language of the agreement,' not based on one party's post-hoc representations regarding its subjective beliefs at formation") (citations omitted).

*Second*, Rock Fintek argues that, while admittedly the SPA defines the term "Seller" to mean only Kitchen Winners, "that initially-defined term is used inconsistently in the contract." (RF MOL at p. 23.)

However, Rock Fintek does not point to anywhere in the SPA where the term "Seller" has a different definition. Instead, Rock Fintek again relies on Paragraph 2 of the SPA, saying that "Paragraphs 2.c & 2.d of the SPA refer to Seller in a different way – as the party to whom Rock Fintek was required to and did make all payments under the SPA – *i.e.* Adorama." As explained above, Paragraph 2 of the SPA clearly required Rock Fintek to send only the initial deposit to "Adorama Inc." The remaining payments were to be made to the "Seller," *i.e.*, Kitchen Winners. Once again, Rock Fintek cannot rely on its unilateral decision to make payments to Adorama to fabricate a supposed inconsistency.

*Third*, Rock Fintek argues that the heading in the signature block redefines "Seller" to include Adorama. In support, Rock Fintek cites to a few cases for the proposition that "title or heading of a contract may be considered to provide context." (RF MOL at p. 23.) Those cases, however, are unavailing. Here, the SPA specifically states that "[h]eadings of parts and sub-parts under this Agreement are for convenience and organization, only. Headings shall not affect the meaning of any provisions of this Agreement." (SPA at ¶ 10(f).) "This disclaimer limits the substantive impact of the heading in the Court's analysis." *Delta Air Lines, Inc. v. Bombardier, Inc.*, 1:20-cv-3025-GHW, 2021 U.S. Dist. LEXIS 58181, *43 (S.D.N.Y. Mar. 25, 2021); *see also Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, 04 Civ. 10014 (PKL), 2005 U.S. Dist. LEXIS 16788, *16 (S.D.N.Y. Aug. 12, 2005) (interpreting contract without reference to headings because "the parties contractually agreed that the Indenture's paragraph headings 'are for convenience only' . . . Accordingly, they do not factor into this Court's analysis").

***Fourth***, Rock Fintek argues that discovery revealed that Adorama was involved in the negotiations of the SPA and stayed informed regarding the delivery of the gloves. (RF MOL at p. 22.) Be that as it may, Rock Fintek does not provide any legal authority for the proposition that one's role under a contract is changed by merely keeping apprised of performance thereunder. As argued in Adorama's opening brief, Adorama lent Kitchen Winners the necessary funds to finance the transactions. Adorama, therefore, kept itself informed of Rock Fintek's performance under the SPA.[1]

In sum, there is no genuine dispute of material fact as the term "Seller" in the SPA clearly and unambiguously means only Kitchen Winners, not Adorama. Accordingly, Adorama did not have any obligations under the SPA and cannot be held liable for any alleged breach thereof.

## II. ADORAMA HAS NOT BEEN UNJUSTLY ENRICHED AT ROCK FINTEK'S EXPENSE

Regardless of whether Rock Fintek can prevail on its breach of contract claim, Rock Fintek cannot prevail under an unjust enrichment theory. In a nutshell, Adorama has not been enriched at Rock Fintek's expense, as Rock Fintek was paid for all of the gloves that it sold to Ascension.

Under an unjust enrichment theory, Rock Finrek cannot recover the $750,000 that it claims it is owed as rebate, because the rebate exists solely as a contractual term in the SPA. Similarly, Rock Fintek cannot recover for "the overage of gloves for which Rock Fintek paid Adorama" (RF

---

[1] Rock Fintek argues that the Court has already rejected Adorama's argument that the Preamble conclusively defines "Seller" as referring to only Kitchen Winners. (RF MOL at p. 23.) However, at the motion to dismiss stage, the Court was required to accept all of Rock Fintek's allegations as true and did not have the benefit of discovery. At the summary judgment stage, however, discovery has disproved many of the allegations that the Court specifically relied upon in its earlier decision. For example, the Court held that Adorama might be bound as an alter ego of Kitchen Winners. (ECF No. 68 at p. 22.) Rock Fintek has admitted that there is no evidence that Adorama and Kitchen Winners are related entities. (RF MOL at p. 25, n. 3.) The Court also relied upon various allegations concerning interactions that Mendlowitz allegedly had with Rock Fintek prior to signing the SPA. (ECF No. 68 at p. 26.) Those have all been disproven.

MOL at p. 26), because Rock Fintek resold all of those gloves to Ascension, and therefore has no damages.

Rock Fintek also cannot recover, under unjust enrichment, for any potential future liability it might have to Ascension as "no cause of action for unjust enrichment lies for hypothetical future liabilities." *Axel Johnson, Inc. v. Arthur Andersen & Co.*, 830 F. Supp. 204, 212 (S.D.N.Y. 1993); *Dealer Servs. 2.0, LLC v. Keena Staffing, Inc.*, 2023 N.Y. Misc. LEXIS 2476, *11 (Sup. Ct. Warren C'ty May 22, 2023) (unjust enrichment does not allow recovery of "hypothetical future occurrences").

Similarly, Rock Fintek cannot recover its alleged future lost business profits under an unjust enrichment theory. *Medidata Solutions v. Veeva Sys.*, 17 Civ. 589 (LGS), 2021 U.S. Dist. LEXIS 160919, *10 (S.D.N.Y. Aug. 25, 2021) ("Permitting Medidata to recover for Veeva's hypothetical future profits under an unjust enrichment theory would contravene th[e] well-established definition" of unjust enrichment).

Accordingly, the Court should grant summary judgment dismissing Rock Fintek's unjust enrichment cause of action against Adorama.

## III. ROCK FINTEK CANNOT PREVAIL ON ITS BREACH OF WARRANTY CLAIM

Adorama is likewise entitled to summary judgment dismissing Rock Fintek's breach of warranty claim.

Rock Fintek relies upon purported written representations made by Mendel Banon. (RF MOL at p. 49.) Banon made those purported representations, however, on March 4, 2021 (*see* Rakhunov Dec., Exh. 4 [Mendel Rock Gloves Chat highlighted] at 1) in connection with the one-off transactions that preceded the SPA. It is undisputed that Adorama was not a party to those one-off transactions. (Sperber Dec. at Exhibit "C" [JSUF] at ¶ at 40.) Accordingly, any claim that

Banon made those representations on Adorama's behalf is absolutely baseless. Indeed, Mendlowitz specifically testified that Bannon was not a broker on Adorama's behalf. (Sperber Dec., Exh. E [Mendlowitz Tr.] at 19:10-17; Declaration of Joseph Mendlowitz, dated April 5, 2024, at ¶¶ 4-7.)

Rock Fintek *does* contend that Adorama was a "seller" under the SPA. As explained above, that assertion is false. In any event, the SPA explicitly contains a disclaimer that "Seller does not make any warranties as to the Products except that they conform to the specifications provided." (SPA at ¶ 6.) As such, the only warranties that existed were those contained in the SPA itself – and the SPA does not include "purported testing reports and FDA 510(k) letters." (*See* RF MOL at p. 49.)

It is axiomatic that where, as here, a "cause of action for breach of the express warranty is based on the same . . . defects as the breach of contract cause of action, and seeks the same relief[, the] warranty cause of action will accordingly be dismissed as duplicative." *See Bd. of Managers of 266 W. 115th St. Condo. v. 266 W. 115th St., LLC*, Index No. 159552/2013, 2014 N.Y. Misc. LEXIS 5153 (Sup. Ct. N.Y. C'ty Dec. 2, 2014).

Additionally, as argued above, Rock Fintek did not suffer any damages. Therefore, Rock Fintek cannot prevail on its breach of warranty cause of action. *See Housey v. P&G*, 21 Civ. 2286 (NRB), 2022 U.S. Dist. LEXIS 53603, *7 (S.D.N.Y. March 24, 2022) (damages are an element of a breach of warranty claim).

Accordingly, Rock Fintek's cause of action for breach of warranty against Adorama must be dismissed.

## IV. ROCK FINTEK CANNOT PREVAIL ON ITS BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALINGS CLAIM

The Court should also grant Adorama's motion for summary judgment and dismiss Rock Fintek's cause of action for breach of the covenant of good faith and fair dealing.

Even if Rock Fintek can somehow prevail on any of its theories of damages discussed above, none of those are applicable to the alleged "extra-contractual extortionate conduct" that is the predicate of Rock Fintek's breach of the covenant of good faith and fair dealing cause of action. (RF MOL at pp. 25-26.) Rock Fintek fails to explain how it was damaged by any of the alleged threats or extortionate conduct.

Moreover, as to Adorama, Adorama did not make any of the alleged threats or communications. At most, Rock Fintek claims that Adorama was bcc'd on communications. (RF MOL at p. 26.) Rock Fintek does not cite any caselaw for the novel proposition that one who is bcc'd on a communication is construed as having sent that communication.

## V. ROCK FINTEK'S COUNTERCLAIMS FAIL FOR LACK OF DAMAGES

The Adorama Parties specifically incorporate herein by reference the section of the reply memorandum of law submitted by Kitchen Winners NY Inc. titled "Rock Fintek's Counterclaims Fail for Lack of Damages."

## CONCLUSION

For all of the above-mentioned reasons, the Adorama Parties respectfully request that the Court grant their motion for summary judgment dismissing Rock Fintek's claims against them.

Dated: Kew Gardens, New York
April 5, 2024

                        **LIPSIUS-BENHAIM LAW LLP**
                        *Attorneys for Third-Party Defendants Adorama Inc.*
                        *and Joseph Mendlowitz*

By: _____
                Alexander J. Sperber
                Yisroel Steinberg
                Meir Z. Goldberg
80-02 Kew Gardens Road, Suite 1030
Kew Gardens, New York 11415
Telephone: 212-981-8440
Facsimile: 888-442-0284
asperber@lipsiuslaw.com
ysteinberg@lipsiuslaw.com
mzgoldberg@lipsiuslaw.com

9