**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KITCHEN WINNERS NY INC.,
*Plaintiff,*

vs.

ROCK FINTEK LLC,
*Defendant.*

ROCK FINTEK LLC,
*Counterclaim and Third-Party Plaintiff,*

vs.

KITCHEN WINNERS NY INC,
*Counterclaim Defendant,*

and

ADORAMA INC., HERSHEY WEINER, JOSEPH MENDLOWITZ, JNS CAPITAL HOLDINGS LLC and JOEL STERN,
*Third-Party Defendants.*

Civil Action No.
22-cv-05276-PAE

# REPLY MEMORANDUM OF LAW IN SUPPORT OF KITCHEN WINNERS NY INC.'S MOTION FOR SUMMARY JUDGMENT

**LIPSIUS BENHAIM LAW LLP**
*Attorneys for Plaintiff and Counterclaim Defendant Kitchen Winners NY Inc.*
Alexander J. Sperber
Yisroel Steinberg
Meir Z. Goldberg.
80-02 Kew Gardens Road
Suite 1030
Kew Gardens, New York 11415
Telephone: (212) 981-8440

# Table of Contents


PRELIMINARY STATEMENT ........................................................................ 1

ARGUMENT .................................................................................. 2

I. ROCK FINTEK'S COUNTERCLAIMS FAIL FOR LACK OF DAMAGES .................................................... 2

1. Rock Fintek Cannot Show Damages Based on Future Lost Profits .................................................. 2

2. Rock Fintek Cannot Recover Based on Potential Liability to Ascension .................................................. 5

3. Rock Fintek is not Entitled to the Rebate ................................... 5

4. Rock Fintek Needed all Gloves Sold in Excess of SPA ................ 6

II. KITCHEN WINNERS IS ENTITLED TO SUMMARY JUDGMENT ON ITS AFFIRMATIVE CAUSES OF ACTION AGAINST ROCK FINTEK ........................................... 7

1. There is no Material Dispute as to the Number of Gloves Sold by Kitchen Winners to Rock Fintek ....................... 7

2. Rock Fintek Has No Excuse for its Failure to Pay Rock Fintek ....... 9

CONCLUSION .................................................................................. 11

**Table of Authorities**

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*,
757 F.2d 523 (2d Cir. 1985) .......................................................... 8

*Billion Tower Int'l, LLC v. MDCT Corp.*,
08 Civ. 4185 (LAK) (JLC), 2010 U.S. Dist. LEXIS 138874 (S.D.N.Y. Dec. 10, 2010), *report and recommendation adopted*, 08 Civ. 4185 (LAK), 2011 U.S. Dist. LEXIS 1185 (S.D.N.Y. Jan. 5, 2011) .............................................................. 4

*Hadden v. Consolidated Edison Co.*,
34 N.Y.2d 88 (1974) ............................................................ 9

*Holland Loader Co., LLC v. FlSmidth A/S*,
313 F. Supp. 3d 447 (S.D.N.Y. 2018) ............................................... 3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ............................................................ 6

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
500 F.3d 171 (2d Cir. 2007) .......................................................... 9

*Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
322 F.3d 147 (2d Cir. 2003) .......................................................... 8

*Pauwels v. Deloitte LLP*,
83 F.4th 171 (2d Cir. 2023) .......................................................... 10

*Schonfeld v. Hilliard*,
218 F.3d 164 (2d Cir. 2000) .......................................................... 2

*SG Blocks, Inc. v. Osang Healthcare Co. Ltd.*,
21-CV-1990 (WFK) (SIB), 2022 U.S. Dist. LEXIS 205097
(E.D.N.Y. Sep. 22, 2022) ............................................................ 4

**PRELIMINARY STATEMENT**

Plaintiff and counterclaim-defendant Kitchen Winners NY Inc. ("Kitchen Winners") respectfully submits this memorandum of law in further support of its motion for summary judgment against defendant and counterclaim-plaintiff Rock Fintek LLC ("Rock Fintek").

Kitchen Winners relies on many of the same arguments as the Adorama Parties, as well as the arguments of Third-Party Defendants JNS Capital Holdings LLC and Joel Stern, and adopts their arguments in full herein by reference. (Adorama, Kitchen Winners, Stern, and JNS are collectively referred to herein as "Defendants.")

Rock Fintek's counterclaims suffer from a fatal defect – namely, even if all its allegations are true, Rock Fintek has not been harmed. That should have been the end of the story. Instead, Rock Fintek is attempting to manufacture a multi-million dollar lost-profits claim. Yet that claim is utterly baseless. Simply put, there is no way to calculate Rock Fintek's purported lost profits. There is no evidence as to: (a) what products Rock Fintek might have sold to Ascension; (b) what quantity of those products Rock Fintek might have sold to Ascension; or (c) what Rock Fintek's profit margin might have been on those products. Unless prophecy suddenly returns to the masses, Rock Fintek cannot prove the amount of its unquantifiable damages.

Additionally, Kitchen Winners is entitled to summary judgment on its affirmative claims. Rock Fintek failed to raise any real dispute as to the amount of gloves for which it failed to pay. The math is crystal clear and cannot be disputed by Rock Finjtek's conjectures. Similarly, Rock Fintek failed to provide any explanation for its failure to pay the trucking costs associated with the transport of the gloves, falsely stating that Kitchen Winners never provided proof that Kitchen Winners paid these costs. Finally, Rock Fintek cannot rely on its claims that the gloves did not meet the specifications set forth in the SPA as an excuse for its failure to pay because it fully

enjoyed the fruits of the deal.

## ARGUMENT

### I. ROCK FINTEK'S COUNTERCLAIMS FAIL FOR LACK OF DAMAGES

Rock Fintek argues that it suffered damages under four theories. As those theories are baseless, Kitchen Winners is entitled to summary judgment dismissing Rock Fintek's counterclaims.

#### 1. Rock Fintek Cannot Show Damages Based on Future Lost Profits

Rock Fintek cannot prove its entitlement to lost future profits as a basis for damages, as it cannot prove any of the requisite elements.

To recover lost profits (1) it must be demonstrated with certainty that such damages have been caused by the breach; (2) the alleged loss must be capable of proof with reasonable certainty; and (3) there must be a showing that the particular damages were fairly within the contemplation of the parties to the contract at the time it was made. *See Schonfeld v. Hilliard*, 218 F.3d 164, 172 (2d Cir. 2000).

As to the first element, Rock Fintek cannot prove "with certainty" that Ascension would have continued any relationship with Rock Fintek.[1]

Rock Fintek argues without any basis that "the moving parties do not appear to contest that the destruction of the Ascension relationship was caused by the sale to Rock Fintek of non-conforming gloves." (RF MOL at p. 31.) With this fallacy in mind, Rock Fintek fails to address altogether the first element of a lost profits claim. However, Rock Fintek's assertion is

---

[1] Importantly, Rock Fintek has dropped its claims of a $1 billion glove deal and a Covid-test kit deal that it was going to enter into with Ascension, which Kitchen Winners allegedly destroyed. (RF MOL at p. 37, Kato Dec. at ¶ 20.) Instead, Rock Fintek merely argues that it had a "strong commercial relationship" and the reasonable likelihood of future business." (RF MOL at p. 37.)

disingenuous as it ignores the totality of Defendants' arguments. On the contrary, there is absolutely no reason to believe Rock Fintek would have had a continuing relationship with Ascension. The only products that Rock Fintek ever sold to Ascension were masks, gloves and gowns. (ASOF at ¶ 150.) Ascension testified that as of June 2021, it was not thinking of purchasing any additional gloves. (SUMF at ¶ 133.) While Ascension testified that it might have bought wheelchairs and walkers crutches and canes in the future (SUMF at ¶ 129), it later clarified that its needs changed day-to-day, week-to-week, and characterized its response to Covid-19 as "playing Whac-A-Mole." (Sperber Dec., Exh. M [Elstro Tr.] at 37:18-19.) Rock Fintek has not claimed that it could have supplied Ascension with wheelchairs, walkers, crutches, or canes. Nor is there any evidence as to what other products (a) Rock Fintek could procure; that (b) Ascension would have bought from it. Accordingly, Rock Fintek cannot prove with any degree of certainty that Ascension would have actually continued *any* relationship with Rock Fintek.

Furthermore, even if Rock Fintek could prove that Kitchen Winners somehow caused the destruction of its relationship with Ascension, it is impossible to calculate the value of that lost business. While lost profits need not "be determined with mathematical precision," they must "be capable of measurement based upon known reliable factors without undue speculation." *Holland Loader Co., LLC v. FlSmidth A/S*, 313 F. Supp. 3d 447, 480 – 81 (S.D.N.Y. 2018).

Perilously, Rock Fintek cannot prove (i) which products it would have sold to Ascension; (ii) what quantity of those products it would have sold to Ascension; or (iii) at what profit margin. Hence, Rock Fintek will not be able to prove that it is entitled to claim lost future profits as a model of damages. Not at the summary judgment stage and not at trial.

Rock Fintek argues that this argument concedes the existence of the damages and only disputes the amount – the determination of which should go to the jury. (RF MOL at p. 29, 38.)

Plainly put, without a crystal ball, there is no methodology that can ever be used to assess the amount of profit Rock Fintek might have made in the future. Rock Fintek had no future purchase orders. Rock Fintek never sold Ascension the products that Ascension identified that it might have needed. Rock Fintek cannot just guess what Ascension would buy, in what quantities, at what price, and at what profit margin. Given these gaping holes in its case, Rock Fintek will never be able to quantify its alleged lost profits. *See e.g., Billion Tower Int'l, LLC v. MDCT Corp.*, 08 Civ. 4185 (LAK) (JLC), 2010 U.S. Dist. LEXIS 138874, *31 (S.D.N.Y. Dec. 10, 2010), *report and recommendation adopted*, 08 Civ. 4185 (LAK), 2011 U.S. Dist. LEXIS 1185 (S.D.N.Y. Jan. 5, 2011) (denying request for lost profits where "the Court would be forced to make speculative, if not erroneous, assumptions, including that all projected sales, expenses, and profits provided for in Billion Tower's lost profits summary proved correct"); *SG Blocks, Inc. v. Osang Healthcare Co. Ltd.*, 21-CV-1990 (WFK) (SIB), 2022 U.S. Dist. LEXIS 205097, *9-10 (E.D.N.Y. Sep. 22, 2022) (denying request for lost profits where "there is no reliable way to determine *how many* test kits the parties would have sold and at what price. These determinations require the Court to rely upon a multitude of assumptions regarding how many of the test kits would have been sold, in which territory, to whom, and at what price—all of which require speculation and conjecture").

Moreover, Rock Fintek's profit margins from its alleged future performance with Ascension cannot be extrapolated from its past transactions with Ascension.

Rock Fintek argues that it made a 50% profit on its PPE transactions with Ascension. (ASOF at ¶¶ 261, 286.)[2] According to Rock Fintek, Ascension paid $25,924,116.25 for PPE unrelated to the gloves transactions, and another $36,318,177.25 for the gloves transactions – for

[2] Notably, Rock Fintek is using a sleight of hand to calculate this 50%. Rock Fintek is amalgamating its sales to Ascension – which are at issue – with its sales to various other entities – which are not at issue, and, thereby, including a whopping $39.936 (irrelevant) million dollars to the calculations.

a total of $62,242,293.50. At 50% profit, Rock Fintek supposedly earned $31,121,146.75 on the Ascension transactions. Yet, Rock Fintek testified that it lost money on the transactions at issue in this lawsuit. (Sperber Dec. at Exhibit "D" [T. Kato Non-Expert Transcript] at 129:2-15; Exhibit "C" [JSUF] at ¶¶ 82-83.) It is simply impossible for Rock Fintek to have made a profit of $31,121,146.75 on the remaining transactions – worth $25,924,116.25.

Aware of the fatal lacunae in its mathematical calculations, Rock Fintek conflates other unrelated transactions. The additional approximately $39,000,000 that Rock Fintek purportedly sold to other buyers of PPE (*see* ASOF at ¶ 155) is wholly irrelevant to Kitchen Winners as that money had nothing to do with the gloves at issue in this lawsuit.

Rock Fintek then attempts to construct an alternate reality, arguing that *if* Rock Fintek had not lost $6,200,000 on a prior deal in Thailand and *if* Rock Fintek could have purchased medical gloves for between $7.90 and $10 per box from the Thai swindlers, it would have made a profit. (RF MOL at 35-36.) In the real world, none of those hypotheticals came to pass.

**2. Rock Fintek Cannot Recover Based on Potential Liability to Ascension**

Kitchen Winners incorporates by reference the section titled "Rock Fintek Cannot Maintain a Claim for Potential Damages to Ascension" in the Reply Memorandum of Law (ECF No. 154 at p. 9) filed by the Stern Defendants.

**3. Rock Fintek is not Entitled to the Rebate**

Rock Fintek has failed to establish any basis for its entitlement to a rebate of $750,000 under the SPA. The SPA is clear that Rock Fintek was only entitled to a rebate if it "timely" made all payments due. (Sperber Dec., Exh. K [SPA] at ¶ 8.) As set forth in Kitchen Winners' opening papers, Rock Fintek failed to make timely payments.

Rock Fintek argues that its untimeliness was caused by the LevMed gloves that Rock

Fintek mistakenly picked up in April 2021, which supposedly "crippled [its] cash flow." (RF MOL at p. 41; ASOF at ¶ 278.) Even crediting that theory, Rock Fintek never became current in its payments and still owed significant monies months later.

Rock Fintek picked up the LevMed gloves in late April. (Sperber Dec. at Exh. "B" [TPC] at ¶ 95.) Rock Fintek's TPC claims that it bought 90,000 boxes of LevMed gloves from Kitchen Winners. (*Id.*) The total value of those gloves was accordingly $1,035,000 (90,000 *$11.50/box). In opposition to this motion, Rock Fintek contradicts its TPC and claims that only 24,950 boxes contained LevMed gloves. (Response to SUMF at ¶¶ 92, 93, and 96.) According to those calculations, the total value of the LevMed gloves was only $286,925 (24,950 *$11.50/box).

As set forth in the SUMF, by May 19, 2021, Rock Fintek had an outstanding balance of $2,546,605. (SUMF at ¶ 81.) Applying a credit of either $1,035,000 or $286,925 to the amount of money that Rock Fintek owed in May, for example, would only *postpone* the date that Rock Fintek's payments became untimely. Rock Fintek, therefore, is not entitled to the rebate.

**4. Rock Fintek Needed all Gloves Sold in Excess of SPA**

As outlined in Kitchen Winners' opening papers, Rock Fintek (a) needed all of the "excess" gloves that it picked up to fulfill the 200 million that it was contractually obligated to source for Ascension; and (b) was paid for all of those gloves by Ascension. Accordingly, Rock Fintek has not been damaged by any purported "overage."

In response, Rock Fintek failed to raise any material dispute. In its 52-page opposition to the instant motion, Rock Fintek dedicated four lines to this issue – countering by claiming that it was "just … an argument." (RF MOL at p. 43.) As the party opposing the motion, Rock Fintek "must set forth specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Characterizing Adorma's clearly-

established lack of material dispute as "just … an argument" does not meet this standard.

## II. KITCHEN WINNERS IS ENTITLED TO SUMMARY JUDGMENT ON ITS AFFIRMATIVE CAUSES OF ACTION AGAINST ROCK FINTEK

Kitchen Winners is entitled to summary judgment on its affirmative causes of actions as there is no material dispute that Rock Fintek owes it $967,165.42, plus prejudgment interest.

### 1. There is no Material Dispute as to the Number of Gloves Sold by Kitchen Winners to Rock Fintek

Rock Fintek has attempted to create uncertainty as to the number of gloves that it purchased from Kitchen Winners. The math, however, is crystal clear.

Rock Fintek testified that it relied "one hundred percent" upon Ascension and its warehousing company, MedLine Industries, to keep track of the actual number of gloves that it purchased from Kitchen Winners. (Sperber Dec., Exh."G" [B. Gilling Tr.] at 89:20-90:17.) Ascension testified that Rock Fintek fulfilled the purchase order for 200 million gloves, and did so solely with MedCare and LevMed brand gloves. (SUMF at ¶ 91.) Ascension testified that Rock Fintek ultimately delivered approximately 196 million Medcare brand gloves. (SUMF at ¶ 92.) Any LevMed brand gloves were in excess of those Medcare gloves. (SUMF at ¶ 93.)

According to Rock Fintek, it only purchased Medcare gloves from JNS/Stern and Adorama/Kitchen Winners. (SUMF at ¶ 94.) Further, Rock Fintek maintains that it only purchased LevMed brand gloves from Adorama/Kitchen Winners. (SUMF at ¶ 95.)

The math, therefore, is straightforward. Rock Fintek purchased 26,193,100 Medcare gloves from JNS. (SUMF at ¶¶ 39, 40.) The remaining 169,806,900 Medcare gloves (196 million minus 26,193,100) must have come from Kitchen Winners. (SUMF at ¶ 96.) Further, Rock Fintek's own Third-Party Complaint asserts that it bought 90,000 boxes of LevMed gloves from Kitchen Winners and resold them to Ascension. (SUMF at ¶ 97.)

Rock Fintek has not submitted any evidence to meaningfully contest these facts. It claims,

without basis, that Ascension's witness was wrong and that the LevMed gloves were somehow encompassed in the 196 million MedCare gloves. (*See* Rock Fintek's Response to ¶ 92 of the SUMF.) Yet it provides nothing to back up this assertion, other than a communication from Gilling to Banon claiming that – before Ascension realized it had received the wrong brand gloves – it had initially shelved them as Medcare gloves. Yet Ascension's witness testified long after that initial issue had been resolved and it was clear how many gloves of each brand it had received. Indeed, Rock Fintek's assertion that the LevMed gloves were encompassed within the 196 million MedCare gloves, cannot be reconciled with Ascension's clear testimony that Rock Fintek fulfilled the purchase order for 200 million gloves. (SUMF at ¶ 91.) Simply put, Rock Fintek's rank speculation cannot undercut the clear and uncontradicted sworn testimony provided by Ascension.

Rock Fintek also claims that Kitchen Winners only delivered 24,950 boxes of LevMed gloves, rather than the 90,000 boxes of LevMed gloves that it claimed in its Third-Party Complaint. (Sperber Dec. at Exhibit "B" [TPC] at ¶ 95.) Yet "[a] party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985); *see also Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003). Rock Fintek cannot now dispute that it received 90,000 boxes of LevMed brand gloves. As such, there is no material dispute that Kitchen Winners sold Rock Fintek 169,806,900 Medcare gloves, and an additional 9,000,000 LevMed gloves.

Rock Fintek also claims that "Kitchen Winners has never produced any evidence that it actually paid those amounts to wenzy inc." (Response to SUMF at 101.) That is blatantly false. As explained in the Declaration of Alexander Sperber dated April 5, 2024, Kitchen Winners did produce evidence that it paid Wenzy Inc. for the trucking associated with the gloves.

**2. Rock Fintek Has No Excuse for its Failure to Pay Rock Fintek**

Rock Fintek does not contest that it owes Kitchen Winners money for the gloves and for trucking costs. Instead, Rock Fintek argues that it does not need to pay Kitchen Winners because "a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach." (RF MOL at p. 43 [quoting *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007)].) As such, according to Rock Fintek, it is not required to pay the outstanding invoices because it alleges that Kitchen Winners sold non-conforming gloves.

As argued in Kitchen Winners' opening brief, even if the gloves did not meet the SPA specifications, that failure would not constitute a "material breach." As Rock Fintek concedes, the factors to be considered include whether "the degree to which the purpose behind the contract has been frustrated, and the extent to which the aggrieved party has already received the substantial benefit of the promised performance. (RF MOL at p. 43 [quoting *Hadden v. Consolidated Edison Co.*, 34 N.Y.2d 88, 96 (1974)].)

Here, Rock Fintek does not dispute that the primary purpose of the contract it entered into with Kitchen Winners was to resell the gloves to Ascension. Rock Fintek also does not contest that it resold all of the gloves to Ascension, and was paid in full. As such, even if the gloves did not conform with the SPA – which Kitchen Winners disputes – Rock Fintek was still paid by Ascension, thereby enjoying the "substantial benefit of the promised performance."

Rock Fintek has not provided any explanation for why – despite the fact that Ascension paid for all of the gloves – the purpose behind the contract was somehow frustrated. Instead, Rock Fintek argues that Ascension threatened suit and shut the door to future business. (RF MOL at p. 45.) Ascension has not, however, commenced any action in the years since the transaction. Hence,

those unrealized threats cannot excuse Rock Fintek's failure to pay Kitchen Winners.

Similarly, Ascension's refusal to conduct any future business with Rock Fintek is wholly irrelevant to the transactions at issue. The "substantial benefit of the promised performance" was reselling the gloves at issue – which Rock Fintek "received." The "purpose behind the contract" was also to resell the gloves – which was not "frustrated" as Rock Fintek resold the gloves. Even if Rock Fintek could prove that it lost future business dealings with Ascension – a dubious assumption – those have no bearing on the contract at issue and cannot excuse Rock Fintek's failure to pay Kitchen Winners.

Moreover, because that the gloves for which Kitchen Winners was not paid were gloves that it sold to Rock Fintek in excess of the the amount agreed to under the SPA, Kitchen Winners also asserted a cause of action for unjust enrichment.[3] "The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Pauwels v. Deloitte LLP*, 83 F.4th 171, 186 (2d Cir. 2023).

Rock Fintek fails to explain why it is not required to pay Kitchen Winners under an unjust enrichment theory. Rock Fintek has not cited any doctrine that would excuse its refusal to pay Kitchen Winners the outstanding $967,165.42, plus prejudgment interest thereon that it owes under an unjust enrichment cause of action.

[3] Rock Fintek claims that Kitchen Winners' motion papers do not contest that "all transactions … are subject to a then-existing contractual relationship." (MOL at p. 26, n. 4.) However, Kitchen Winners' opening brief explicitly raised unjust enrichment as an alternative basis for its motion for summary judgment on its affirmative causes of action. (ECF. No. 140 at p. 16.) Indeed, as Rock Fintek contests that it ever requested any gloves in excess of the 9,000,000 gloves in the One-Off Transactions and the 150,000,000 gloves required by the SPA (*see* RF MOL at p. 26 [claiming that Rock Fintek is entitled to recover "payment for the overage of gloves for which Rock Fintek paid Adorama"]), Kitchen Winners can only recover payment for those excess gloves, and the trucking costs associated therewith, under an unjust enrichment cause of action.

**CONCLUSION**

For all of the above-mentioned reasons, Kitchen Winners respectfully requests that the Court grant its motion for summary judgment in its entirety.

Dated: Kew Gardens, New York
February 16, 2024

**LIPSIUS-BENHAIM LAW LLP**
*Attorneys for Plaintiff and Counterclaim-Defendant Kitchen Winners NY Inc.*

By: ______________________________
Alexander J. Sperber
Yisroel Steinberg
Meir Z. Goldberg
80-02 Kew Gardens Road, Suite 1030
Kew Gardens, New York 11415
Telephone: 212-981-8440
Facsimile: 888-442-0284
asperber@lipsiuslaw.com
ysteinberg@lipsiuslaw.com
mzgoldberg@lipsiuslaw.com