**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KITCHEN WINNERS NY INC.,
*Plaintiff,*

vs.

ROCK FINTEK LLC,
*Defendant.*

ROCK FINTEK LLC,
*Counterclaim and Third-Party Plaintiff,*

vs.

KITCHEN WINNERS NY INC,
*Counterclaim Defendant,*

and

ADORAMA INC., HERSHEY WEINER, JOSEPH MENDLOWITZ, JNS CAPITAL HOLDINGS LLC and JOEL STERN,
*Third-Party Defendants.*

Civil Action No.
22-cv-05276-PAE

# MEMORANDUM OF LAW IN SUPPORT OF KITCHEN WINNERS NY INC. AND ADORAMA INC.'S MOTION *IN LIMINE*

**LIPSIUS BENHAIM LAW LLP**
80-02 Kew Gardens Road
Suite 1030
Kew Gardens, New York 11415
Telephone: (212) 981-8440

*Of Counsel*:
Alexander J. Sperber
Yisroel Steinberg

# Table of Contents

PRELIMINARY STATEMENT ........................................................ 1

ARGUMENT ........................................................ 2

I. ROCK FINTEK SHOULD BE PRECLUDED FROM INTRODUCING INADMISSIBLE HEARSAY EVIDENCE ........................ 2

1) Any Statements by Non-Party Mendel Banon are Inadmissible Hearsay and Must be Precluded ........................................................ 3

2) Rock Fintek Should be Precluded from Introducing the Medline Audit as Inadmissible Hearsay ............................................... 4

II. THOMAS KATO SHOULD BE PRECLUDED FROM RETRACTING UNAMBIGUOUS DEPOSITION TESTIMONY THAT DEFENDANTS RELIED UPON DURING DISCOVERY ............................ 7

III. ROCK FINTEK SHOULD BE PRECLUDED FROM CONTESTING THAT IT PURCHASED 3,000,000 LEVMED GLOVES ........................................................ 11

IV. ALL OF THE FACTS STIPULATED TO IN THE JOINT STIPULATION OF UNDISPUTED FACTS ARE BINDING THROUGH TRIAL AND ROCK FINTEK CANNOT CONTEST THEM ........................................................ 12

CONCLUSION ........................................................ 13

# Table of Authorities


**CASES** **PAGE(S)**

*Abascal v Fleckenstein*,
820 F.3d 561 (2d Cir. 2016) .......... 6

*Bellefonte Re Ins. Co. v Argonaut Ins. Co.*,
757 F.2d 523 (2d Cir. 1985) .......... 11

*Boren v. Sable*,
887 F.2d 1032 (10th Cir. 1989) .......... 4

*Condus v Howard Sav. Bank*,
986 F. Supp. 914 (D.N.J. 1997) .......... 4

*D.R. v Santos Bakery, Inc.*,
675 F.Supp.3d 355(S.D.N.Y. 2023) .......... 3

*Dakus v KLM*,
No. 22-CV-7962 (RA), 2024 US Dist LEXIS 171421
(S.D.N.Y. Sep. 23, 2024) .......... 11

*Dora Homes, Inc. v. Epperson*,
344 F. Supp. 2d 875 (E.D.N.Y. 2004) .......... 4

*Grant v Lockett*,
Nos. 19-469, 19-738, 19-1558, 2021 U.S. App. LEXIS 36164
(2d Cir. Dec. 8, 2021) .......... 6

*Highland Capital Mgmt., L.P. v. Schneider*,
379 F. Supp. 2d 461(S.D.N.Y. 2005) .......... 2

*Mechanical Plastics Corp. v. Rawlplug Co.*,
119 A.D.2d 641 (2d Dep't 1986) .......... 4

*New World Trading Co. v 2 Feet Prods.*,
11 Civ. 6219 (SAS); 13 Civ. 1251 (SAS), 2014 US Dist LEXIS 37865
(S.D.N.Y. Mar. 13, 2014) .......... 6

*Palmieri v. Defaria*,
88 F.3d 136 (2d Cir. 1996) .......... 2

*Pappas v Middle Earth Condominium Assn.*,
963 F2d 534 (2d Cir. 1992) .......... 3

*Picard v Jaba Assoc. LP*,
49 F.4th 170 (2d Cir. 2022) .......... 7

*Potamkin Cadillac Corp. v B.R.I. Coverage Corp.*,
38 F.3d 627 (2d Cir. 1994) .......... 6

*Shatkin v. McDonnell Douglas Corp.*,
727 F.2d 202 (2d Cir. 1984) .......... 2

*Tartaglione v Shaw's Express, Inc.*,
790 F. Supp. 438 (S.D.N.Y. 1992) .......... 4

*United States v. Corr*,
543 F.2d 1042 (2d Cir. 1976) .......... 2

*United States v. Tokash*,
282 F.3d 962 (7th Cir. 2002) .......... 2

*United States v. Velissaris*,
22cr105 (DLC), 2022 U.S. Dist. LEXIS 209656
(S.D.N.Y. Nov. 18, 2022) .......... 7

*ValveTech, Inc. v Aerojet Rocketdyne, Inc.*,
No. 17-CV-6788-FPG, 2023 US Dist LEXIS 197114
(W.D.N.Y. Nov. 2, 2023) .......... 7

**STATUTES**

FED. R. EVID. § 104 .......... 2
FED. R. EVID. § 802 .......... 2, 4
FED. R. EVID. § 801(C) .......... 2
FED. R. EVID. § 801(d)(2)(D) .......... 3, 4
FED. R. EVID. § 803(6) .......... 5

**PRELIMINARY STATEMENT**

Plaintiff and counterclaim defendant Kitchen Winners NY Inc. ("Kitchen Winners") and third-party defendant Adorama Inc. ("Adorama") (together with Kitchen Winners "Defendants") respectfully submit this memorandum of law in support of their omnibus motion *in limine* on several issues prior to trial.

First, Defendants seek to preclude Rock Fintek LLC ("Rock Fintek") from introducing certain categories of testimony or evidence that are hearsay. Specifically, Defendants seek to preclude a WhatAapp chat between non-party Mendel Banon, on the one hand, and Thomas Kato and Bradley Gilling, on the other hand, as well as any testimony regarding statements that Banon allegedly made. Additionally, Defendants seek to preclude an audit that non-party Medline Industries allegedly conducted.

Second, Defendants seek to preclude Thomas Kato from retracting his prior sworn deposition testimony that all payments received by Rock Fintek from its customer, Ascension Health Alliance, from December 2020 and onwards were for the gloves transaction at issue in this lawsuit. Mr. Kato unambiguously testified twice at his deposition to that assertion, and Defendants relied upon that testimony in deciding what evidence to pursue in discovery. Now that discovery is complete, and Defendants have no way of probing his new claims to the contrary, Mr. Kato should not be allowed to change his testimony.

Third, Rock Fintek should be precluded from contesting the assertion – explicitly pled as a fact in its Third-Party Complaint – that it purchased at least 3,000,000 LevMed brand gloves from Kitchen Winners.

Finally, Rock Fintek should be bound by the facts stipulated to by the parties in their Joint Statement of Undisputed Facts. The Court was clear that the facts agreed to in that document

would bind the parties throughout the remainder of this litigation – including at trial. Accordingly, Defendants respectfully request that the Court direct the jury that those facts have been stipulated to by the parties, and that Defendants be permitted to represent to the jury that the facts in the JSUF have been agreed to by the parties.

Accordingly, Defendants respectfully request that the Court grant their motion *in limine* in its entirety.

**ARGUMENT**

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks omitted); *see also Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 467 (S.D.N.Y. 2005); *see generally* Fed. R. Evid. 104. *In limine* motions therefore serve the salutary goal of "streamlin[ing] trials and settl[ing] evidentiary disputes in advance." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002).

It is well settled that the Court may rely on the Federal Rules of Evidence ("Rules") and its own broad discretion in determining whether or not to exclude certain evidence at trial. *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 207 (2d Cir. 1984); *United States v. Corr*, 543 F.2d 1042, 1051 (2d Cir. 1976).

**I. ROCK FINTEK SHOULD BE PRECLUDED FROM INTRODUCING INADMISSIBLE HEARSAY EVIDENCE**

Under Fed. R. Evid. 802, hearsay is inadmissible unless otherwise allowed under statute, the Federal Rules, or as otherwise prescribed by the Supreme Court. Federal Rule of Evidence 801(c) defines hearsay as "an out-of-court statement offered for the truth of the matter asserted."

"[T]he rule against hearsay is fundamentally designed to ensure that only reliable evidence goes in front of the jury . . ." *D.R. v Santos Bakery, Inc.*, 675 F.Supp.3d 355, 359 (S.D.N.Y. 2023).

The following categories of evidence are all inadmissible hearsay, with no relevant exception, and should accordingly be precluded.

**1) Any Statements by Non-Party Mendel Banon are Inadmissible Hearsay and Must be Precluded**

Rock Fintek should be precluded from introducing the WhatsApp chat between non-party Mendel Banon ("Banon"), on the one hand, and Thomas Kato and Bradley Gilling, on the other hand, in its entirety as inadmissible hearsay. Similarly, Kato and Gilling should be precluded from testifying as to any statements that Banon allegedly made to them.

The entire Banon chat as well as any other alleged Banon statements are paradigmatic out-of -court statements and cannot be offered for the truth of any statements contained therein.

Rock Fintek may attempt to argue that Banon's hearsay statements are admissible as representations "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). In order to rely on the agency-exception, Rock Fintek would be required to prove "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Pappas v Middle Earth Condominium Assn.*, 963 F2d 534, 537 (2d Cir. 1992). Importantly, "the statement to be introduced may not itself be relied upon to establish the alleged agency relationship." *Id.*

Here, there is no admissible evidence that Banon was an agent of either Kitchen Winners or Adorama. At his deposition, Weiner testified that Banon was an independent broker and not an agent of Kitchen Winners. (Sperber Dec. Ex. "A" [Weiner Tr. Day I a.m.] at 33:20-34:14; 61:8-

11.) Mendlowitz similarly testified that his understanding was that Banon was self-employed and worked for himself and was a broker. (Sperber Dec., Exh. "B" [Mendlowitz Tr.] at 19:10-17.)

Accordingly, as the record is entirely devoid of evidence that Kitchen Winners or Adorama retained or exerted any control over the manner in which Banon conducted his work, statements made by Banon are not subject to the F.R.E. 802(d)(2)(D) hearsay exception. *Tartaglione v Shaw's Express, Inc.*, 790 F. Supp. 438, 441 (S.D.N.Y. 1992) quoting *Mechanical Plastics Corp. v. Rawlplug Co.,* 119 A.D.2d 641 (2d Dep't 1986); *Boren v. Sable*, 887 F.2d 1032,1041 (10th Cir. 1989) (Rule 801(d)(2)(D) inapplicable where party, although in superior position to Declarant, did not "control[] the daily performance of [the declarant] at the time he made the alleged 'admissions'"); *Condus v Howard Sav. Bank*, 986 F. Supp. 914 (D.N.J. 1997) ("focus of this assessment is . . . the level of control that is exercised over the manner in which the representative accomplishes its assigned task").

Here, all of Banon's actions are consistent with his role as an independent broker. Accordingly, Rock Fintek cannot establish the predicate existence of an agency relationship and cannot utilize the agency exception. *See* Weinstein, *Federal Evidence* § 801.33 [2][b] ("independent contractors typically do not come within rule 801(d)(2)(D)"); *Dora Homes, Inc. v. Epperson*, 344 F. Supp. 2d 875, 885 (E.D.N.Y. 2004) (statements of demolition firm hired by party).

Any statements by Banon are therefore hearsay, and should be precluded from trial.

**2) Rock Fintek Should be Precluded from Introducing the Medline Audit as Inadmissible Hearsay**

Rock Fintek should also be precluded from introducing the results of an "audit" conducted by non-party Medline Industries, as that audit constitutes inadmissible hearsay. The two

documents at issue, which Rock Fintek has included on its exhibit list, are attached to the Declaration of Alexander J. Sperber at Exhibits "C" and "D."

As noted above, the purported "audit" was conducted by a non-party; introducing it for the truth of the matter asserted therein constitutes paradigmatic hearsay. Further, the Medline audit does not fall under Fed. R. Evid. § 803(6)'s business records exception. Under Fed. R. Evid. § 803(6), records of a regularly conducted business activity are admissible only if they meet the following conditions: (i) the record was made at or near the time by someone with knowledge, (ii) the record was kept in the course of a regularly conducted activity of a business, (iii) making the record was a regular practice of that activity, (iv) all these conditions are shown by the testimony of the custodian or another qualified witness . . ., and (v) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Here, the Medline "audit" does not fall within the ambit of the business records exception for three independent reasons.

***First***, Medline did not conduct the audit as part of the regular practice of its business. Indeed, Brad Jaeger – Medline's Fed. R. Civ. P. 30(b)(6) deponent – explicitly testified that Medline does **<u>not</u>** conduct any audits in the usual course of its business. (Sperber Decl. at Exh. "E" [Medline Tr.] at 59:7-18) ("Q. Does Medline ordinarily conduct these kinds of audits on behalf of Ascension? A. I wouldn't say ordinarily. It's when requested. Q. How many other audits has Medline conducted on behalf of Ascension in the last let's say five years? . . . A. Maybe one or two that I can recall."); (Medline Tr. at 59:19-60:6) ("Q. So it's not the kind of thing that you would ordinarily -- that you would undertake in the ordinary course of business unless asked specifically to do so, correct? . . . A. Yes. it's not something that we do ordinarily.").

Accordingly, the audit is not subject to the business records exception. *See New World Trading Co. v 2 Feet Prods.*, 11 Civ. 6219 (SAS); 13 Civ. 1251 (SAS), 2014 US Dist LEXIS 37865, at *2 (S.D.N.Y. Mar. 13, 2014) (emails fell outside the business records exception because they "contain[ed] unique and sporadic communications" and were not created "as a record of any 'regularly conducted business activity'").

***Second***, the type of regularly conducted activity envisioned by the business records exception was the simple act of recording observable information. *Abascal v Fleckenstein*, 820 F.3d 561, 565-566 (2d Cir. 2016). However, where the creation of a record requires interpreting survey results or other interpretation of data and then creating a summary of the findings, it is not included in the business records hearsay exception. *Id.*; *Potamkin Cadillac Corp. v B.R.I. Coverage Corp.*, 38 F.3d 627 (2d Cir. 1994) (business records exception inapplicable where creating the record "required significant selection and interpretation of data, not simply a downloading of information previously computerized in the regular course of business") *Grant v Lockett*, Nos. 19-469, 19-738, 19-1558, 2021 U.S. App. LEXIS 36164, at *6 (2d Cir. Dec. 8, 2021) (limiting the business records exception to documents created from recording observable information as opposed to those that result from the subjective interpretation of interview results, or the selection and interpretation of data).

Here, the Medline audit was not created by simply downloading existing data. Instead, numerous Medline employees spent approximately one hundred hours to create the audit. (Sperber Decl. at Exh. "E" [Jaeger Tr.] at 58:10-14, 64:5-10) That is lightyears away from simply "downloading of information previously computerized in the regular course of business." *Grant*, 2021 U.S. App. LEXIS 36164, at *6.

***Third***, the business records exception does not apply to documents created in anticipation of litigation. *Picard v Jaba Assoc. LP*, 49 F.4th 170, 182 (2d Cir. 2022). Indeed, the aim of the rule is specifically to exclude documents prepared in anticipation of any litigation where the creator of the document had a motive to falsify the record in question. *Id.*; *United States v. Velissaris*, 22cr105 (DLC), 2022 U.S. Dist. LEXIS 209656, *9 (S.D.N.Y. Nov. 18, 2022); *ValveTech, Inc. v Aerojet Rocketdyne, Inc.*, No. 17-CV-6788-FPG, 2023 US Dist LEXIS 197114, at *10 (W.D.N.Y. Nov. 2, 2023) ("documents made in anticipation of litigation are inadmissible under the business records exception").

Here, by July 2021, the dispute between the parties had already begun. (*See* Sperber Decl. at Exh. "F.") The Medline audit was completed in November 2021 – approximately four months after the onset of the dispute. (*See* Sperber Decl. at Exh. "D.") Additionally, as Medline testified, it does not usually conduct these audits and did so only upon the explicit request. Put differently, the audit was expressly prepared not as a routine business record, but in advance of litigation pertaining to an ongoing dispute.

Accordingly, the business records hearsay exception is inapplicable.

## II. THOMAS KATO SHOULD BE PRECLUDED FROM RETRACTING UNAMBIGUOUS DEPOSITION TESTIMONY THAT DEFENDANTS RELIED UPON DURING DISCOVERY

Thomas Kato should be precluded from retracting his unambiguous deposition testimony that Defendants relied upon in deciding what evidence to pursue in discovery. Further, because the evidence that Kato now proffers to support his revised testimony is highly opaque – yet Defendants had no opportunity to explore his new testimony during discovery – Kato should be bound to his deposition testimony.

As the Court is aware, one of the primary issues in this action is the amount of money that Ascension paid Rock Fintek, which is directly relevant to the question of whether Rock Fintek lost any money because of the allegedly non-conforming gloves.

Accordingly, at Rock Fintek's 30(b)(6) deposition on October 3, 2023, Kato was asked – twice – how one could tell from looking at Rock Fintek's bank records which payments from Ascension went towards paying for the gloves at issue in this lawsuit. In response, Kato clearly and unequivocally testified – under oath – that all of the payments received from Ascension after December 2020 were for the gloves at issue in this lawsuit.

The first time, Kato testified as follows:

> Q. You made another -- so when I look at the bank statements, there's going to be way more revenue than relates specifically to this transaction.· How would I distinguish which ones have to do with this transaction?
>
> MR. RAKHUNOV:· I'm not sure – objection.
>
> THE WITNESS:· Yeah, I'm not sure how you're going to do that.
> MR. FRISCH:· Okay.
>
> MR. RAKHUNOV:· I'm not sure I understand the question because if -- if it's a document-related question, we can talk about it off –
>
> MR. FRISCH:· No, no, no.· It's a question of -- he said I'm going to see it on the bank statement.· So I'm asking him, how do I distinguish between the transactions relevant to this case and the ones that have nothing to do with this case? That's all.
>
> THE WITNESS:· Maybe to do with the date.
>
> BY MR. FRISCH:
>
> Q. Okay.· You're saying once this contract started, there were no other payments from Ascension?
>
> A. Correct.

(Sperber Decl. at Exh "G" [Kato Tr.] at 128:6-129:15.)

Later in his deposition, Kato testified again:

> Q. I want to figure out how much money Ascension paid Rock Fintek pursuant to purchase order ending 0075 with the date of December 7, 2020. How would I go about figuring that out?
>
> A. I believe you can look at the bank statements that came in, the funds that came from Ascension.
>
> Q. How would I distinguish those funds from other funds that Ascension paid to Rock Fintek?
>
> A. Anything done December and on was only for this order.

(Sperber Decl. at Exh "G" [Kato Tr.] at 187:17-188:16.)

Relying upon Kato's testimony, Defendants did not further pursue the issue and prepared for summary judgment and trial based on the belief (induced by Kato's testimony) that all the payments from December 2020 and onwards were for the gloves at issue. Defendants reviewed Rock Fintek's bank accounts and calculated the amount that Ascension paid at $38,842,608.75. Because the purchase order that Rock Fintek received from Ascension only called for the payment of $37,000,000, it was clear that (i) Rock Fintek did not suffer any damages, regardless of the quality of the gloves, and (ii) that Rock Fintek would be unjustly enriched if they refused to pay Kitchen Winners for the excess gloves, for which they were fully paid by Ascension.

Accordingly, when Defendants deposed Ascension, they did not pursue this issue in any depth.

When Defendants moved for summary judgment, however, Kato asserted for the first time – via affidavit – that his prior testimony was actually false. Kato asserted that "payments made to Rock Fintek by Ascension on 01/13/21, 02/23/21, 02/25/21, 03/03/21, 03/19/21, 03/22/21, and 04/08/21, totaling $2,542,116.25 were not for the gloves at issue in this lawsuit but were for 3PLY

Masks that Rock Fintek had sold to Ascension during this time frame." (Sperber Decl. at Exh "H" [Kato Declaration].)

In support of Kato's sudden retraction, Rock Fintek identified eight purchase orders from Ascension, an email from Ascension, and two invoices. Yet these purchase orders raise a host of questions that Defendants had no opportunity to pursue during discovery.

At the outset, adding up the dollar amount in the purchase orders does not equal $2,542,116.25. Rather, they add up to more than $6 million.

Additionally, Rock Fintek provided only two invoices for the eight alleged purchase orders. (*See* ECF 146-9 at 14-15, referencing the following Purchase Order Numbers: P00190000040507 and P00190000040508 corresponding to RF_004575 and RF_004579 respectively.) Defendants have no way of knowing (or pursuing any discovery to ascertain) whether these purchase orders were actually accepted by Rock Fintek. Had Defendants known this was an issue, they would have asked Ascension at its deposition.

Additionally, neither of Rock Fintek's invoices reflects the amount of gloves or the pricing on the corresponding purchase order. *Compare* RF_004575 [4,000,000 gloves at ¢10/glove = $400,000] *with* ECF 146-9 at 14 [1,800,000 gloves at ¢10/glove = $180,000] and RF_004579 [4,000,000 gloves at ¢10/glove = $400,000] *with* ECF 146-9 at 15 [2,264,000 gloves at ¢10 = $226,400].

Finally, email correspondence indicates that Ascension was unaware of these purchase orders. (*See* ECF 146-9 at 10 ("I am not familiar with those POs".) Yet, again, because of Kato's testimony, Defendants never even thought to ask Ascension about this at its deposition.

At this point – after discovery is long closed – Defendants have no way to make sense of all these blatant discrepancies. Rock Fintek, having purposely sowed this confusion, should be

precluded from reaping the reward and should be bound by the clear unambiguous deposition testimony provided by its 30(b)(6) witness, Thomas Kato.

More importantly, however, even if Rock Fintek's proffered evidence would have been clear, Rock Fintek should be precluded from introducing it at trial. Having provided false testimony on this central critical issue, and thereby having prevented Defendants from engaging in additional discovery to suss out the relevant facts, Rock Fintek cannot now – long after the close of discovery, leaving Defendants with no recourse – suddenly seek to change its story.

## III. ROCK FINTEK SHOULD BE PRECLUDED FROM CONTESTING THAT IT PURCHASED 3,000,000 LEVMED GLOVES

Rock Fintek should be precluded from contesting that the amount of LevMed gloves that it purchased from Kitchen Winners was at least 3,000,000 gloves.

Rock Fintek's Third Party Complaint alleges that "in or about late April 2021, Kitchen Winners and Adorama shipped to Rock Fintek a container with 90,000 boxes (3 million units) of gloves that were not MedCare brand gloves as required by the SPA, but were gloves that were identified on their boxes as "LevMed" brand gloves – a brand unknown to Rock Fintek." (ECF No. 43 [TPC] at ¶ 95.) While not entirely clear what Rock Fintek is alleging (90,000 boxes equals 9,000,000 gloves at 100 gloves per box), Rock Fintek clarified its allegations in the Joint Statement of Undisputed Facts ("JSUF"). (*See* ECF No. 135.) According to the JSUF, "Rock Fintek claims that it delivered approximately 3,000,000 LevMed brand gloves to Ascension." (JSUF at ¶ 75.)

"A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Bellefonte Re Ins. Co. v Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985); *Dakus v KLM*, No. 22-CV-7962 (RA), 2024 US Dist LEXIS 171421, at *12 (S.D.N.Y. Sep. 23, 2024). Accordingly, Rock Fintek should be bound by its complaint and by the facts to which it stipulated and cannot walk those back at trial.

## IV. ALL OF THE FACTS STIPULATED TO IN THE JOINT STIPULATION OF UNDISPUTED FACTS ARE BINDING THROUGH TRIAL AND ROCK FINTEK CANNOT CONTEST THEM

Rock Fintek should not be permitted to walk back the facts to which it stipulated in the parties' Joint Statement of Undisputed Facts.

On December 20, 2023, the parties appeared before the Court for a conference in advance of the anticipated filing of motions for summary judgment. At that conference, the Court ordered the parties to collaborate and submit a joint statement of undisputed facts. The Court was explicit that the facts to which the parties stipulated would be binding through the entirety of the litigation – including at trial. In the Court's words "Your stipulation to it establishes the fact and binds you the rest of the way in this litigation." (ECF No. 161 [Tr. of 12/20/23 Hearing] at 18:20-21.) If there was any doubt, the Court then again clarified that

> Look, you're bound by the stipulations all the way through. If we wind up going to trial and you've stipulated that the following document is the parties' agreement, you can't get up in front of the jury and say, there was no such document or it's not the agreement.

(*Id.* at 19:16-20.)

The parties exchanged multiple drafts and met and conferred via zoom for a lengthy conversation to hammer out the stipulated facts – which was ultimately filed on January 16, 2024. (ECF No. 135.) Rock Fintek should be bound by each and every stipulated fact. Defendants further request that those facts be published to the jury as stipulated facts, and that they be permitted to represent to the jury that the facts in the JSUF have been agreed to by the parties.

The only grounds on which Rock Fintek should be allowed to challenge admissibility of the JSUF should be relevance or materiality – as to which the parties agreed to reserve their rights. Rock Fintek should not be able to contest, however, whether the facts contained in the JSUF actually occurred or on any other basis.

**CONCLUSION**

For all of the above mentioned reasons, Defendants respectfully request that the Court grant their motion *in limine* in its entirety.

Dated: Kew Gardens, New York
November 14, 2024

**LIPSIUS-BENHAIM LAW, LLP**
*Attorneys for Kitchen Winners NY Inc. Adorama Inc., and Joseph Mendlowitz*

By: ______________________________
Alexander J. Sperber, Esq.
Yisroel Steinberg, Esq.
80-02 Kew Gardens Road, Suite 1030
Kew Gardens, NY 11415
Tel: (212) 981-8440
asperber@lipsiuslaw.com
ysteinberg@lipsiuslaw.com