# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| KITCHEN WINNERS NY INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROCK FINTEK LLC, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | Civil Action No. 22-cv-05276-PAE |
| | ) | |
| ROCK FINTEK LLC, | ) | |
| | ) | |
| Counterclaim and Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KITCHEN WINNERS NY INC, | ) | |
| | ) | |
| Counterclaim Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ADORAMA INC., HERSHEY WEINER, JOSEPH MENDLOWITZ, JNS CAPITAL HOLDINGS LLC and JOEL STERN, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

## PROPOSED JURY INSTRUCTIONS

Plaintiff, Kitchen Winners NY Inc. ("Kitchen Winners"), and Third-Party Defendant Adorama Inc. ("Adorama"), and Defendant and Third-Party/Counterclaim Plaintiff Rock Fintek LLC jointly submit the following proposed jury instructions to be given to the jury in this action.

Where the parties have not agreed on a particular instruction, competing proposed instructions are set forth consecutively for the Court's convenience. The parties reserve the right to object to their respective proposed instructions pursuant to the briefing schedule set forth in the Court's Individual Practices.

Rock Fintek, Kitchen Winners and Adorama respectfully request leave to submit revised or additional requested jury instructions based upon the evidence adduced at trial. In addition, Rock Fintek, Kitchen Winners and Adorama request leave to submit revised or additional requested instructions to conform to any rulings of law the Court may render during the course of these proceedings.

Rock Fintek, Kitchen Winners and Adorama reserve their right to propose modifications to the sequence and/or substance of the charges at or before the charging conference.

## REQUESTED INSTRUCTION NO. 1
### (Juror Use of Technology, to be Given Before Trial)

You, as jurors, must decide this case based solely on the evidence presented here within the four walls of this courtroom. This means that during the trial you must not conduct any independent research about this case, the matters in the case, and the individuals or institutions involved in the case. In other words, you should not consult dictionaries or reference materials, search the internet, websites, blogs, or use any other electronic tools to obtain information about this case or to help you decide the case. Please do not try to find out information from any source outside the confines of this courtroom.

Until you retire to deliberate, you may not discuss this case with anyone, even your fellow jurors. After you retire to deliberate, you may begin discussing the case with your fellow jurors, but you cannot discuss the case with anyone else until you have returned a verdict and the case is at an end.

I know that many of you use cell phones, the internet and other tools of technology. You also must not talk to anyone at any time about this case or use these tools to communicate electronically with anyone about the case. This includes your family and friends. You may not communicate with anyone about the case on your cell phone, through e-mail, iPhone, text messaging, on Twitter, through any blog or website, including Facebook, Instagram, Tik Tok, Google+, My Space, Linkedln, YouTube, or any podcast. You may not use any similar technology of social media, even if I have not specifically mentioned it here. I expect you will inform me as soon as you become aware of another juror's violation of these instructions.

> **Source**: Kevin F. O'Malley et al., Federal Jury Practice and Instructions-Civil § 101:13 (6th ed.), Westlaw (database updated February 2021) (hereinafter referred to as "FJIP")

## REQUESTED INSTRUCTION NO. 2
### (Jury Instructions, General Introduction)

Members of the jury, we have now reached that point where you are about to begin your final function as jurors, which, as you all appreciate, is one of the most important duties of citizenship in this country.

Now that you have heard the evidence and the argument, it is my duty to instruct you about the applicable law. My instructions will be in five parts:

**First**, I will provide you with general introductory instructions on the role of the Court and the jury, and the burden of proof.

**Second**, I will describe the law to be applied to the facts as you find them based on the evidence.

**Third**, I will instruct you on damages.

**Fourth**, I will give you instruction on how to evaluate evidence.

**Fifth**, and finally, I will instruct you on the deliberations.

I will provide each of you with a copy of these instructions before you deliberate.

It is your duty to follow the law as I will state it. You must apply the law to the facts as you find them from the evidence in the case. Do not single out one instruction as stating the law, but rather consider these instructions as a whole when you retire to deliberate.

If an attorney has stated a legal principle that is different from any that I state to you in my instructions, you must follow my instructions.

You should not be concerned about the wisdom of any rule that I state. Regardless of any opinion you have about what the law may be or ought to be, it would be a violation of your oath to base your verdict on any view of the law other than that which I give you.

Nothing I say in these instructions indicates that I have any opinion about the facts. You, not I, have the duty to determine the facts.

**Source**: FJIP § 103:01.

## REQUESTED INSTRUCTION NO. 3
### (Impartiality)

A lawsuit is a civilized method of determining differences between parties. It is basic to the administration of any system of justice that the decision on both the law and the facts is made fairly and honestly. You, as jurors, and I, as the Judge, have a heavy responsibility—to ensure that a just result is reached in deciding the differences between the Plaintiff and the Defendants in this case. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict.

> **Source**: Hon. David Demarest et al., New York Pattern Jury Instructions-Civil § 1:36 (3rd ed.), Westlaw (database updated December 2020) (hereinafter referred to as "PJI"); FJIP § 103:01.

## REQUESTED INSTRUCTION NO. 4
### (All Persons Equal Before Law)

This case should be decided by you as an action between parties of equal standing in the community, of equal worth, regardless of their ethnic backgrounds, religion, or immigration status. Neither the officers or employees of Rock Fintek, nor the officers or employees of Kitchen Winners, nor the officers or employees of Adorama should be favored or disfavored because of their race, ethnicity, gender, or nationality. The parties are entitled to the same fair trial at your hands. They stand equal before the law, and are to be dealt with as equals in this Court.

As a fair and impartial juror you must guard against the application of any stereotypes or attitudes about people or groups that might lead you to render a biased decision based on those stereotypes or attitudes. Keep in mind that bias, based upon stereotypes or attitudes, is not always obvious or conscious. In assessing the testimony and other evidence in the case, you must not be swayed by those stereotypes or attitudes.

> **Authority:** U.S. Const. Amend. XIV, § 1; Bolling v. Sharpe, 347 U.S. (1954) (applying the Equal Protection Clause to the federal government); PJI 1:27A.

## REQUESTED INSTRUCTION NO. 4
### (Multiple Claims)

You must give separate consideration to each claim and each party in this case. In doing so, you must follow the law as to each claim and determine whether the party asserting the claim has met their burden of proof.

**Authority:** Fed. Jury Prac. & Inst. § 103:14 (6th ed.)

## REQUESTED INSTRUCTION NO. 4
### (Jury Function)

As jurors, your fundamental duty is to decide, from all the testimony you have heard and other evidence that has been presented, what the facts are. You are the sole and exclusive judges of the facts.

You make determinations about the weight and importance of the evidence; you determine the credibility of the witnesses; you resolve any conflicts as there may be in the testimony; and you draw whatever reasonable inferences you decide to draw from the facts as you have determined. In that field you are supreme, and neither I nor anyone else may invade your job to determine the facts.

As the sole judges of the facts, you must decide which of the witnesses you believed, what portion of their testimony you accepted, and what weight you give to it.

The law permits me to comment on the evidence in the case during the trial or while instructing the jury. You, however, may disregard these comments entirely, because you are to determine for yourself the weight of the evidence and the credibility of each of the witnesses.

**Source**: PJI § 1:37; FJIP §§ 101:10, 103:33.

**REQUESTED INSTRUCTION NO. 5**
**(Burden of Proof)**

This is a civil case. In a civil case, the plaintiff generally has the burden of proving its claims by a "preponderance of the evidence." In this case, both Kitchen Winners and Rock Fintek are in a sense the plaintiff. In other words, for some portions of the case, Kitchen Winners is the Plaintiff and Rock Fintek is the Defendant while for other portions of the case Rock Fintek is the Plaintiff and Kitchen Winners is the Defendant. The following instructions relating to the burden of proof pertains generally to the claims that each party has against the other. There will be times, however, where the burden of proof is applied differently and I will specifically instruct you accordingly.

In sum, if the plaintiff (whichever it might be) proves each element of its claim by a preponderance of the evidence, you should find for that party on that claim. In certain instances, the Defendant bears this burden of proof for establishing certain defenses.

So, what does "preponderance of the evidence" mean? A fact is established by a "preponderance of the evidence" when the evidence, taken as a whole, shows that the fact is more likely true than not true. A preponderance means the greater weight of the evidence. This inquiry depends on the quality and persuasiveness of the evidence, not to the number of witnesses or exhibits. This standard does not require proof to an absolute certainty, because proof of an absolute certainty is seldom possible in any case.

If you find that the credible evidence on a given issue is evenly divided between the parties - that it is as equally probable that one side is right as it is that the other side is right -then you must decide that issue against the party having this burden of proof. That is because the party bearing this burden of proof must prove more than simple equality of evidence - she/he must prove each

element of the claim by a preponderance of the evidence. On the other hand, the party with this burden of proof need prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of the party with this burden - that what she/he claims is more likely true than not - then the element will have been proven by a preponderance of evidence.

In determining whether a claim has been proved by a preponderance of the evidence in this case, you may—unless otherwise instructed—consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have introduced them.

Some of you may have heard of proof "beyond a reasonable doubt," which is the proper standard of proof only in a criminal trial. That requirement does not apply to a civil case such as this, and you should put it out of your mind. The proper standard by which to consider the parties' claims is the preponderance of the evidence standard.

**Source**: FJIP §§ 104:01, 104:03, 104:04.

**REQUESTED INSTRUCTION NO. 6**
**(Charge on the Substantive Law- Introduction)**

I am now going to instruct you on the substantive law to be applied to the parties' specific claims. You should consider each claim separately and determine whether the plaintiff has proved the elements of that claim by a preponderance of the evidence.

**Source**: FJIP § 104:01.

**KITCHEN WINNERS' REQUESTED INSTRUCTION NO. 7**
**(Kitchen Winners' Breach of Contract Claim - Elements)**

The parties have asserted breach of contract claims against each other. I will first instruct you on Kitchen Winner's breach of contract claim against Rock Fintek. A contract is, in its simplest form, a legally binding promise.

Kitchen Winners seeks to recover damages for breach of contract from Rock Fintek. Kitchen Winners contends that it entered into a binding contract with Rock Fintek, which the parties called the "Sales and Purchase Agreement" or the "SPA." Kitchen Winners further contends that, pursuant to the SPA, Rock Fintek was required to "arrange for and pay the cost of ground transportation after customs clearance," but that Rock Fintek breached that contractual obligation. Kitchen Winners is seeking damages for this alleged breach of contract.

To prevail on its claim for breach of contract, Kitchen Winners must establish, by a preponderance of the evidence, the following four elements:

> (1) that it had a contract with Rock Fintek that required Rock Fintek to arrange for and pay the cost of the trucking;

> (2) that Rock Fintek breached the SPA by failing to arrange for and pay the cost of the trucking; and

> (3) that Kitchen Winners did not also breach the SPA, or that if it did any breach by Kitchen Winners was immaterial;

> (4) that Kitchen Winners was damaged as a result of Rock Fintek's breach of the SPA.

In this case, the parties agree that they entered into a legally binding agreement, namely, the SPA. There are four issues left for you to determine. First, you must determine whether Rock Fintek failed to do what it promised to do under the contract. Second, you must determine whether Kitchen Winners did what it promised to do under the contract. Third, you must determine if Kitchen Winners was damaged by Rock Fintek's failure to do what it promised to do under the

contract and, if so, how much it was damaged.  Lastly, you must determine if Rock Fintek has a defense to Kitchen Winners' claim.

> **Authority:** New York Pattern Jury Instruction PJI 4:1 (2020); *Riccio v. Genworth Fin.*, 124 N.Y.S.3d 370 (App. Div. 2020) (elements of breach of contract action).

### ROCK FINTEK'S REQUESTED INSTRUCTION NO. 7
### (Kitchen Winners' Breach of Contract Claim - Elements)

Rock Fintek proposes the following modifications to Kitchen Winners' proposed instruction:

> (3) that Kitchen Winners did not materially breach the SPA, excusing performance by Rock Fintek;

> (4) that Kitchen Winners was damaged as a result of Rock Fintek's breach of the SPA.

In this case, the parties agree that they entered into a legally binding agreement, namely, the SPA.  There are four issues left for you to determine.  First, you must determine whether Rock Fintek failed to do what it promised to do under the contract.  Second, you must determine whether Kitchen Winners materially breached its obligations under the SPA, excusing performance by Rock Fintek.  Third, you must determine if Kitchen Winners was damaged by Rock Fintek's failure to do what it promised to do under the contract and, if so, how much it was damaged.  Lastly, you must determine if Rock Fintek has a defense to Kitchen Winners' claim. A party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach.

**Authority:**

*Kitchen Winners NY Inc. v. Rock Fintek LLC et al.*, Case No. 1:22-cv-05276, Opinion and Order (ECF 164) at 32.

14

**REQUESTED INSTRUCTION NO. 8**
**(Kitchen Winners' Breach of Contract Claim - Breach)**

Kitchen Winners must establish, by a preponderance of the evidence, that Rock Fintek failed to keep its promise under the SPA.  Kitchen Winners contends that Rock Fintek promised to pay for the cost of ground transportation after the gloves it imported cleared customs, but that Rock Fintek did not keep this promise.

You must determine whether Kitchen Winners has proven that Rock Fintek had an obligation to pay for the cost of ground transportation after the gloves it imported cleared customs. You must also determine whether Kitchen Winners has proven that Rock Fintek failed to do so.

**Authority:**  New York Pattern Jury Instruction PJI 4:1 (2020); Riccio v. Genworth Fin., 124 N.Y.S.3d 370 (App. Div. 2020)(elements of breach of contract action).

**KITCHEN WINNERS' REQUESTED INSTRUCTION NO. 9**
**(Kitchen Winners' Breach of Contract Claim - Burden of Proof for Adequate Performance)**

As a general matter, Kitchen Winners must prove, by a preponderance of the evidence, that it did what it promised to do under the contract.

However, if you find that Rock Fintek accepted the gloves that Kitchen Winners provided, then Kitchen Winners is not required to demonstrate that those gloves met the SPA's specifications. Rather, it is Rock Fintek who bears the burden of proving, by a preponderance of the evidence, that the gloves did not meet the specifications set forth in the SPA.

Rock Fintek asserts that Kitchen Winners failed to provide gloves that met the specifications set forth in the SPA. You must therefore first determine whether Rock Fintek accepted the gloves that Kitchen Winners provided to it under the SPA.

A buyer is deemed to have accepted goods when the buyer:

(1) After a reasonable opportunity to inspect the goods, signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or

(2) Fails to make an effective rejection of the goods, but such acceptance does not occur until the buyer had a reasonable opportunity to inspect them; or

(3) Does any act inconsistent with the seller's ownership of the goods.

The law is that, if a buyer resells goods, that is an act that is inconsistent with the seller's ownership. Accordingly, if you find that Rock Fintek resold the gloves that it received from Kitchen Winners, then you must find that Rock Fintek accepted the gloves.

If you determine that Rock Fintek did accept the gloves that Kitchen Winners provided to it under the SPA, then you must determine whether Rock Fintek has established, by a preponderance of the evidence, that the gloves did not meet the contract's specifications.

If you determine that Rock Fintek did not accept the gloves that Kitchen Winners provided, then you must determine whether Kitchen Winners established, by a preponderance of the evidence, that the gloves that it provided to Rock Fintek met the SPA's specifications.

> **Authority:**  New York Pattern Jury Instruction PJI 4:1 (2020); Riccio v. Genworth Fin., 124 N.Y.S.3d 370 (App. Div. 2020)(elements of breach of contract action);  N.Y. U.C.C. § 2-607(4) ("The burden is on the buyer to establish any breach with respect to the goods accepted."); N.Y. UCC § 2-606 ("Acceptance of goods occurs when the buyer . . . does any act inconsistent with the seller's ownership. . .").  *Rienzi & Sons, Inc. v I Buonatavola Sini S.R.L.*, No. 20-cv-5704 (ERK) (SJB), 2021 US Dist LEXIS 208503, at *15 (E.D.N.Y. Oct. 28, 2021) ("A buyer's 'resale of [goods is] inconsistent with [the seller's] 'ownership' of goods, thus constituting acceptance under UCC 2-606(1)(c)'".)

### ROCK FINTEK'S REQUESTED INSTRUCTION NO. 9
### (Kitchen Winners' Breach of Contract Claim  - Burden of Proof for Adequate Performance)

As a general matter, Kitchen Winners must prove, by a preponderance of the evidence, that it did what it promised to do under the contract.

However, if you find that Rock Fintek accepted the gloves that Kitchen Winners provided, then Kitchen Winners does not bear the burden to demonstrate that those gloves met the SPA's specifications.  Rather, Rock Fintek bears the burden of proving, by a preponderance of the evidence, that Kitchen Winners materially breached the SPA by delivering gloves that did not meet the specifications set forth in the SPA.

Rock Fintek asserts that Kitchen Winners failed to provide gloves that met the specifications set forth in the SPA. You must therefore first determine whether Rock Fintek

accepted the gloves that Kitchen Winners provided to it under the SPA. A buyer accepts goods when it, among other things, after a reasonable opportunity to inspect the goods, signifies to the seller that the goods are conforming or that it will take or retain them in spite of their non-conformity or fails to make an effective rejection. Such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them. Once a buyer accepts a tender offer, the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach.

Here, you will have to decide whether Rock Fintek's notice to Kitchen Winners and Adorama of the non-conforming nature of the gloves was timely.

If you determine that Rock Fintek did accept the gloves that Kitchen Winners provided to it under the SPA, then you must determine whether Rock Fintek has established, by a preponderance of the evidence, that the gloves did not meet the contract's specifications.

If you determine that Rock Fintek did not accept the gloves that Kitchen Winners provided to it under the SPA, then you must determine whether Kitchen Winners established, by a preponderance of the evidence, that the gloves that it provided to Rock Fintek under the SPA did meet the contract's specifications.

**Authority:**

New York Pattern Jury Instruction PJI 4:1 (2020); N.Y. U.C.C. §§ 2-606(l)(a)-(b); *Kitchen Winners NY Inc. v. Rock Fintek LLC et al*, Case No. 1:22-cv-05276, Opinion and Order (ECF 164) at 62-63. *Riccio v. Genworth Fin.*, 124 N.Y.S.3d 370 (App. Div. 2020)(elements of breach of contract action);  N.Y. U.C.C. § 2-607(4) ("The burden is on the buyer to establish any breach with respect to the goods accepted."); N.Y. UCC § 2-606 ("Acceptance of goods occurs when the buyer . . . does any act inconsistent with the seller's ownership. . .").

**KITCHEN WINNERS' REQUESTED INSTRUCTION NO. 10**
**(Kitchen Winners' Breach of Contract Claim - Adequate Performance)**

Even if you find that the gloves that Kitchen Winners sold to Rock Fintek under the SPA did not meet the specifications set forth in that agreement, you must then determine if that breach was "material" because only a material breach by Kitchen Winners would excuse Rock Fintek from fulfilling its own obligations under the contract.

A material breach of a contract is one that was so substantial that it defeated the object of the parties in making the contract. In deciding whether Kitchen Winners' alleged breach of the SPA was of the sort that defeated the object of the parties in making the contract, you should consider the ratio of the performance already rendered to that unperformed, the quantitative character of the default, the degree to which the purpose behind the contract has been frustrated, the willfulness of the default, and the extent to which Rock Fintek has already received the substantial benefit of the promised performance.

If you find that Kitchen Winners breached the SPA and that the breach was material, then you must find in favor of Rock Fintek on Kitchen Winners' claim of breach of contract.

> **Authority:** New York Pattern Jury Instruction PJI 4:1 (2020); Riccio v. Genworth Fin., 124 N.Y.S.3d 370 (App. Div. 2020)(elements of breach of contract action); *Septembertide Pub., B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 678 (2d Cir. 1989)

**ROCK FINTEK REQUESTED INSTRUCTION NO. 10**
**(Kitchen Winners' Breach of Contract Claim  - Adequate Performance)**

Rock Fintek requests that the final paragraph of Kitchen Winners' Proposed Instruction No. 10 be

modified as follows:


  If you find that Kitchen Winners delivered protection-grade gloves that did not conform to

the SPA's specifications and which were unfit for their intended purpose of hospital use, and that

this breach went to the heart of the parties' contract, then you must find in favor of Rock Fintek

on Kitchen Winners' claim of breach of contract.

**Authority:** *Kitchen Winners NY Inc. v. Rock Fintek LLC et al*, Case No. 1:22-cv-05276, Opinion

and Order (ECF 164) at 32-33.

**REQUESTED INSTRUCTION NO. 11**
**(Kitchen Winners' Breach of Contract Claim - Damages)**

My charge to you on the law of damages concerning Kitchen Winners' breach of contract claim must not be taken as an indication that you should find for it. First, you will decide on the evidence presented and the rules of law that I have given you whether Kitchen Winners is entitled to recover on its breach of contract claim against Rock Fintek. Only if you decide that Rock Fintek has breached the SPA will you consider the measure of damages.

The basic principle of damages in a contract action is to leave the injured party in as good a position as he or she would have been if the contract had been fully performed. It is equally fundamental that the injured party should not recover more from the breach than the party would have gained had the contract been fully performed.

Damages, if any, must be based upon evidence and not upon speculation, guesswork or conjecture. Additionally, damages must also be directly traceable to the breach and cannot be not remote or the result of other intervening causes.

With respect to Kitchen Winners' claims, the burden of proof is on Kitchen Winners to establish damages.

In this case, Kitchen Winners claims that it is entitled to actual damages stemming from its claim that Rock Fintek failed to arrange for transportation of the gloves once they cleared customs. Specifically, Kitchen Winners asserts that it incurred damages storing and transporting the gloves that Rock Fintek did not collect after they cleared customs.

If you find that Kitchen Winners proved its breach of contract claim, you must enter an award of damages to fairly compensate it for any losses that it suffered as a result of Rock Fintek's breach of contract.

**Authority:** New York Pattern Jury Instructions – Civil (December 2021 Update) Committee on Pattern Jury Instructions Association of Supreme Court Justices PJI 4:20 Contracts – Damages – Generally

## KITCHEN WINNERS' REQUESTED INSTRUCTION NO. 12
### (Kitchen Winners' claim for Unjust Enrichment)

Kitchen Winners has also asserted a claim against Rock Fintek for unjust enrichment. Kitchen Winners claims that Rock Fintek was unjustly enriched at its expense in that Kitchen Winners provided gloves to Rock Fintek for which it was not paid.

Unlike Kitchen Winner's breach of contract claim, Kitchen Winners' unjust enrichment claim does not arise out of the SPA.

Instead, Kitchen Winners asks to be compensated for gloves that it claims to have delivered to Rock Fintek, in excess of the gloves that Kitchen Winners agreed to sell under the SPA, and for which Rock Fintek never paid Kitchen Winners.

Unjust enrichment occurs when the defendant has obtained a benefit, such as money or goods, at the expense of the plaintiff, and it would be unfair for the defendant to keep the benefit without compensating the plaintiff. In those circumstances, the law requires the defendant to compensate the plaintiff for the benefit it has received.

Kitchen Winners has the burden of proving, by a preponderance of the evidence, the following elements:

> (1) that it delivered gloves to Rock Fintek;
>
> (2) that Rock Fintek never paid Kitchen Winners for those gloves; and
>
> (3) that it would be unfair for Rock Fintek not to pay Kitchen Winners for the value of those gloves.

Kitchen Winners claims that it provided gloves to Rock Fintek in excess of the gloves required by the SPA, for which Rock Fintek never paid. Kitchen Winners further contends that, despite failing to pay Kitchen Winners for these gloves, Rock Fintek resold the gloves to its

customer, Ascension, and was paid in full. Rock Fintek disputes that it was paid for these gloves by Ascension.

If you find (1) that Kitchen Winners indeed delivered gloves to Rock Fintek in excess of what Kitchen Winners had agreed to provide under the SPA, (2) that Rock Fintek was enriched by those gloves, (3) that Rock Fintek's enrichment came at Kitchen Winners' expense because it failed to pay for those gloves, and (4) that it would be unfair to allow Rock Fintek to retain the benefit of the gloves without compensating Kitchen Winners, you must hold Rock Fintek liable to pay Kitchen Winners for those gloves.

You will determine the value of the benefit conferred on Rock Fintek by its retaining and reselling Kitchen Winners' gloves, based on the evidence you have heard.

> **Source**: New York Pattern Jury Instructions – Civil (December 2021 Update) Committee on Pattern Jury Instructions Association of Supreme Court Justices PJI 4:2 Contracts – Quasi Contract – Restitution – Unjust Enrichment

**ROCK FINTEK'S REQUESTED INSTRUCTION NO. 12**
**(Kitchen Winners' claim for Unjust Enrichment)**

Rock Fintek requests that the word "unfair" in each place it appears in Kitchen Winners' proposed instruction 12 be replaced with "unfair, and against equity and good conscience."

Rock Fintek also requests the addition of the following instruction:

Rock Fintek also contends that it is not liable on Kitchen Winners' equitable claim for unjust enrichment because Kitchen Winners had unclean cleans in connection with the gloves transactions by knowingly delivering non-confirming gloves. Recovery for unjust enrichment to which an innocent claimant would be entitled may be limited or denied because of the claimant's inequitable conduct in the transaction that is the source of the asserted liability. The doctrine of unclean hands is based on the principle that since equity tries to enforce good faith in defendants, it no less stringently demands the same good faith from the plaintiff. The application of unclean hands is appropriate where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party.

**Source**: New York Pattern Jury Instructions – Civil (December 2021 Update) Committee on Pattern Jury Instructions Association of Supreme Court Justices PJI 4:2 Contracts – Quasi Contract – Restitution – Unjust Enrichment; *Caro Cap., LLC v. Koch*, 653 F. Supp. 3d 108, 131–32 (S.D.N.Y. 2023) (citing *Restatement (Third) of Restitution and Unjust Enrichment* § 63 (2011); *Dunlop-McCullen v. Loc. 1-S, AFL-CIO-CLC*, 149 F.3d 85, 90 (2d Cir. 1998); *William Penn Life Ins. Co. of New York v. Viscuso*, 569 F. Supp. 2d 355, 362 (S.D.N.Y. 2008).

**REQUESTED INSTRUCTION NO. 13[1]**
**(Rock Fintek's Breach of Contract Claim Against Kitchen Winners - Elements)**

Rock Fintek has also asserted a breach of contract claim against Kitchen Winners.  Rock Fintek alleges that the SPA required Kitchen Winners to pay it a rebate, but that Kitchen Winners did not do so.  To prevail on this claim, Rock Fintek must prove, by a preponderance of the evidence, the following four elements:

(1) that it had a contract with Kitchen Winners that required Kitchen Winners to pay it a rebate;

(2) that Kitchen Winners breached the SPA by failing to pay Rock Fintek a rebate; and

(3) that Rock Fintek did not breach the SPA, or that any potential breach by it was immaterial;

(4) that Rock Fintek was damaged as a result of Kitchen Winners breach of the SPA.

In this case, Kitchen Winners agrees that it entered into a legally binding agreement with Rock Fintek, namely, the SPA.  There are four issues left for you to determine.  First, you must determine whether Kitchen Winners failed to do what it promised to do under the contract.  Second, you must determine whether Rock Fintek did what it promised to do under the contract.  Third, you must determine if Rock Fintek was damaged by Kitchen Winners' failure to do what it promised to do under the contract and, if so, how much it was damaged.  Lastly, you must determine if Kitchen Winners has a defense to Rock Fintek's claim.

> **Authority**: New York Pattern Jury Instruction PJI 4:1 (2020); Riccio v. Genworth Fin., 124 N.Y.S.3d 370 (App. Div. 2020)(elements of breach of contract action)

---

[1] Rock Fintek respectfully submits that the jury instructions that the Court adopts with respect Proposed Instructions 7 through 12 should be mirrored for Rock Fintek's breach of contract and unjust enrichment claims against Kitchen Winners, and therefore does not repeat its contentions with respect to legal elements of Proposed Instructions 13, 16, 17, 18, and 21 *infra*.

**REQUESTED INSTRUCTION NO. 14**
**(Rock Fintek's Breach of Contract Claim - Breach)**

Rock Fintek must establish, by a preponderance of the evidence, that Kitchen Winners failed to keep its promise under the SPA. Rock Fintek contends that Kitchen Winners failed to pay it a rebate under paragraph 8 of the SPA. The paragraph in question reads as follows:

> **Rebate.** Provided that all payments due hereunder are timely made, and only after the Second Deposit has been funded, Seller shall provide Buyer a rebate of $0.50 per box for the first five (5) containers Delivered, for a total of $75,000.00 (the "Rebate"). The Rebate shall be applied as a credit to the next container to be paid for by Buyer following Buyer funding the Second Deposit. Upon application of the Rebate, the Purchase Price for the Products shall be reduced to $11.00 per box for the remainder of the Agreement. The rebate and reduction of the purchase price are contingent upon completion of the entire Agreement.

Kitchen Winners contends that Rock Fintek was not entitled to the rebate discussed in that paragraph, because it maintains that Rock Fintek did not timely make all of its payments due under the SPA.

Rock Fintek contends that the reason it did not timely make all of its payments due under the SPA, was because Kitchen Winners provided it with a shipment of the wrong brand of gloves. According to Rock Fintek, that action affected its cash flow and prevented it from making timely payment. In other words, Rock Fintek contends that it was Kitchen Winners' own fault that Rock Fintek could not make timely payments.

You must resolve this dispute. You must determine whether Rock Fintek timely made all of its payments under the SPA and, if not, whether Rock Fintek was prevented from doing so by the actions of Kitchen Winners.

If you find that Rock Fintek did not timely make all of its payments under the SPA, and that Rock Fintek's failure to do so was not the fault of Kitchen Winners, then you must find in favor of Kitchen Winners on Rock Fintek's breach of contract claim against it.

> **Authority**: New York Pattern Jury Instruction PJI 4:1 (2020); Riccio v. Genworth Fin., 124 N.Y.S.3d 370 (App. Div. 2020)(elements of breach of contract action)

**KITCHEN WINNERS' REQUESTED INSTRUCTION NO. 15**
**(Rock Fintek's Breach of Contract Claim - Adequate Performance)**

Rock Fintek must prove, by a preponderance of the evidence, that it performed its obligations under the agreement.

Kitchen Winners asserts that Rock Fintek failed to perform its obligations in two ways: (1) by failing to pay for ground transportation for the gloves once they cleared customs; and (2) by failing to make timely payment for the gloves it received under the SPA.

If you find that Rock Fintek failed to perform its obligations under the SPA, you must find in favor of Kitchen Winners on Rock Fintek's breach of contract claim against it.

> **Authority:** New York Pattern Jury Instruction PJI 4:1 (2020); Riccio v. Genworth Fin., 124 N.Y.S.3d 370 (App. Div. 2020)(elements of breach of contract action)

**ROCK FINTEK'S REQUESTED INSTRUCTION NO. 15**
**(Rock Fintek's Breach of Contract Claim - Adequate Performance)**

Rock Fintek contends that Kitchen Winners' Proposed Instruction 15 should be stricken for the reasons that will be provided in accordance with the briefing schedule set by the Court.

**KITCHEN WINNERS' REQUESTED INSTRUCTION NO. 16**
**(Rock Fintek's Breach of Contract Claim - Damages)**

As I stated before with Kitchen Winner's breach of contract claim against Rock Fintek, my charge to you on the law of damages concerning Rock Fintek's breach of contract claim against Kitchen Winners must not be taken as an indication that you should find for it. First, you will decide on the evidence presented and the rules of law that I have given you whether Rock Fintek is entitled to recover on its breach of contract claim against Kitchen Winners. Only if you decide that Kitchen Winners breached the SPA will you consider the measure of damages.

The basic principle of damages in a contract action is to leave the injured party in as good a position as he or she would have been if the contract had been fully performed. It is equally fundamental that the injured party should not recover more from the breach than the party would have gained had the contract been fully performed.

Damages, if any, must be based upon evidence and not upon speculation, guesswork or conjecture. Additionally, damages must also be directly traceable to the breach and cannot be not remote or the result of other intervening causes.

The burden of proof is on Rock Fintek to establish damages.

In this case, Rock Fintek claims that it is entitled to actual damages stemming from its claim that Kitchen Winners failed to pay it a rebate required by the SPA. Specifically, Rock Fintek claims that it is entitled to a rebate of $750,000 .

If you find that Rock Fintek proved its breach of contract claim, you must enter an award of damages to fairly compensate it for any losses that it suffered as a result of Kitchen Winners' breach of contract.

> **Authority:** New York Pattern Jury Instructions – Civil (December 2021 Update)

30

Committee on Pattern Jury Instructions Association of Supreme
Court Justices PJI 4:20 Contracts – Damages – Generally

**ROCK FINTEK'S REQUESTED INSTRUCTION NO. 16**
**(Rock Fintek's Breach of Contract Claim - Damages)**

Rock Fintek requests that the following be added to Proposed Instruction 16:

Rock Fintek also claims that it is owed damages for non-conforming gloves that it bought

from Kitchen Winners for which it has not been paid by its hospital client.

## REQUESTED INSTRUCTION NO. 17
### (Rock Fintek's Breach of Contract Claim Against Adorama - Elements)

Rock Fintek has also asserted a breach of contract claim against Adorama. Rock Fintek alleges that the SPA also required Adorama to pay it a rebate, but that Adorama did not do so. To prevail on this claim, Rock Fintek must prove, by a preponderance of the evidence, the following four elements:

(1) that it had a contract with Adorama that required Adorama to pay it a rebate;

(2) that Adorama breached the SPA by failing to pay Rock Fintek a rebate; and

(3) that Rock Fintek did not breach the SPA, or that any potential breach by it was immaterial;

(4) that Rock Fintek was damaged as a result of Adorama's breach of the SPA.

There are five issues for you to determine. First, you must determine whether there was a contract between Adorama and Rock Fintek. Second, you must determine whether Adorama failed to do what it promised to do under the contract. Third, you must determine whether Rock Fintek did what it promised to do under the contract. Fourth, you must determine if Rock Fintek was damaged by Adorama's failure to do what it promised to do under the contract and, if so, how much it was damaged. Lastly, you must determine if Adorama has a defense to Rock Fintek's claim.

> **Authority**: New York Pattern Jury Instruction PJI 4:1 (2020); *Riccio v. Genworth Fin.*, 124 N.Y.S.3d 370 (App. Div. 2020)(elements of breach of contract action)

### REQUESTED INSTRUCTION NO. 18
#### (Rock Fintek's Breach of Contract Claim - Breach)

Rock Fintek must establish, by a preponderance of the evidence, that Adorama failed to keep its promise under the SPA. Rock Fintek contends that Adorama failed to pay it a rebate under paragraph 8 of the SPA. The paragraph in question reads as follows:

> **Rebate.** Provided that all payments due hereunder are timely made, and only after the Second Deposit has been funded, Seller shall provide Buyer a rebate of $0.50 per box for the first five (5) containers Delivered, for a total of $75,000.00 (the "Rebate"). The Rebate shall be applied as a credit to the next container to be paid for by Buyer following Buyer funding the Second Deposit. Upon application of the Rebate, the Purchase Price for the Products shall be reduced to $11.00 per box for the remainder of the Agreement. The rebate and reduction of the purchase price are contingent upon completion of the entire Agreement.

Adorama contends that it was not a "Seller" under the SPA, and therefore had no obligation to do anything under this paragraph. I will discuss this contention in a moment.

Adorama also contends that Rock Fintek was not entitled to the rebate discussed in that paragraph, because it maintains that Rock Fintek did not timely make all of its payments due under the SPA.

Rock Fintek contends that the reason it did not timely make all of its payments due under the SPA, was because Adorama provided it with a shipment of the wrong brand of gloves. According to Rock Fintek, that action affected its cash flow and prevented it from making timely payment. In other words, Rock Fintek contends that it was Adorama's own fault that Rock Fintek could not make timely payments.

You must resolve this dispute. You must determine whether Rock Fintek timely made all of its payments under the SPA and, if not, whether Rock Fintek was prevented from doing so by the actions of Adorama.

If you find that Rock Fintek did not timely make all of its payments under the SPA, and that Rock Fintek's failure to do so was not the fault of Kitchen Winners, then you must find in favor of Adorama on Rock Fintek's breach of contract claim against it.

> **Authority:** New York Pattern Jury Instructions – Civil (December 2021 Update) Committee on Pattern Jury Instructions Association of Supreme Court Justices PJI 4:1 Contracts – Elements

## REQUESTED INSTRUCTION NO. 19
### (Charge on the Substantive Law- Rock Fintek's Breach of Contract Claim Against Adorama - Ambiguity)

I will now instruct you on Adorama's contention that it was not a "Seller" under the SPA, and regarding the law with respect to ambiguity.  The parties dispute the meaning of the SPA. Rock Fintek claims that Adorama is a Seller under the contract because it signed the SPA.  Rock Fintek further claims that Adorama signed the SPA under a heading titled "Seller."  Rock Fintek also claims that all of the payments required by the SPA were paid to Adorama.

Adorama claims that it merely lent money to Kitchen Winners to finance the transactions of gloves that Rock Fintek purchased and that it signed the SPA in its capacity as lender in order to protect its loan.  Adorama further contends that the SPA does not define it as the Seller in the preamble where the term "Seller" is defined.  Adorama also claims that it did not sign the SPA under the heading titled Seller because that heading refers only to Kitchen Winners.  As to the payments to Adorama, Adorama contends that Rock Fintek was only required to pay the initial deposit to Adorama and that all subsequent payments could – and should have – been paid to Kitchen Winners.

Rock Fitnek, as the plaintiff, bears the burden of proving by a preponderance of the evidence that Adorama was a Seller under the SPA.

Because the Court has determined that the contract is ambiguous as to whether Adorama is a seller under its terms, you must resolve the dispute.

You must resolve this dispute as to how to read the SPA.  In interpreting the contract, you must read the agreement as a whole and with consideration to how a person engaged in the same occupation and business as the parties would understand the terms.

You must read the SPA in a practical way with a view toward common speech and what was intended when the agreement was written and accepted.  You may consider any available extrinsic evidence to determine the parties' intent with respect to Adorama's role under the agreement.

The intent of the parties is determined by considering the relationship of all the parties, what they said and what they did and all of the surrounding circumstances.  You may consider customs, practices, usages, terminology as generally understood in the particular trade or business, prior negotiations and communicated expressions of intent.

After applying this law to the evidence, if you find that Rock Fintek failed to prove, by a preponderance of the evidence, that Adorama was a Seller under the SPA, then you must find for Adorama on Rock Fintek's breach of contract claim against it.

> **Authority:** New York Pattern Jury Instruction PJI 4:1.1 (2020); Alexander & Alexander Servs. v. Underwriters at Lloyd's, 136 F.3d 82, 86 (2d Cir. N.Y. 1998) (court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract); Morgan Stanley Group, Inc. v. New Eng. Ins. Co., 225 F.3d 270 (2d Cir. N.Y. 2000). See, e.g., SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC, 467 F.3d 107 (2d Cir. N.Y. 2006) (relevant evidence includes, inter alia, customs, practices, usages, terminology as generally understood in the particular trade or business, prior negotiations and communicated expressions of intent); New York Pattern Jury Instruction PJI 4:1 (2020); Riccio v. Genworth Fin., 124 N.Y.S.3d 370 (App. Div. 2020)(elements of breach of contract action); Innophos, Inc. v. Rhodia, S.A., 852 N.Y.S.2d 820, 882 (N.Y. 2008) (where contract is ambiguous it raises a jury question).

**ROCK FINTEK'S REQUESTED INSTRUCTION NO. 19**
**(Charge on the Substantive Law- Rock Fintek's Breach of Contract Claim Against Adorama - Ambiguity)**

Rock Fintek contends that Kitchen Winners' Proposed Instruction 19 should be stricken

for the reasons that will be provided in accordance with the briefing schedule set by the Court.

**KITCHEN WINNERS' REQUESTED INSTRUCTION NO. 20**
**(Rock Fintek's Breach of Contract Claim - Adequate Performance)**

Rock Fintek must prove, by a preponderance of the evidence, that it performed its obligations under the agreement.

Adorama asserts that Rock Fintek failed to perform its obligations in two ways: (1) by failing to pay for ground transportation for the gloves once they cleared customs; and (2) by failing to make timely payment for the gloves it received under the SPA.

If you find that Rock Fintek failed to perform its obligations under the SPA, you must find in favor of Adorama on Rock Fintek's breach of contract claim against it.

> **Authority:** New York Pattern Jury Instruction PJI 4:1 (2020); Riccio v. Genworth Fin., 124 N.Y.S.3d 370 (App. Div. 2020)(elements of breach of contract action)

**ROCK FINTEK'S REQUESTED INSTRUCTION NO. 20**
**(Rock Fintek's Breach of Contract Claim - Adequate Performance)**

Rock Fintek contends that Kitchen Winners' Proposed Instruction 20 should be stricken for the reasons that will be provided in accordance with the briefing schedule set by the Court.

**KITCHEN WINNERS' REQUESTED INSTRUCTION NO. 21**
**(Rock Fintek's Breach of Contract Claim - Damages)**

As I stated before with Kitchen Winner's breach of contract claim against Rock Fintek, my charge to you on the law of damages concerning Rock Fintek's breach of contract claim against Adorama must not be taken as an indication that you should find for it.  First, you will decide on the evidence presented and the rules of law that I have given you whether Rock Fintek is entitled to recover on its breach of contract claim against Adorama.  Only if you decide that Adorama breached the SPA will you consider the measure of damages.

The basic principle of damages in a contract action is to leave the injured party in as good a position as he or she would have been if the contract had been fully performed. It is equally fundamental that the injured party should not recover more from the breach than the party would have gained had the contract been fully performed.

Damages, if any, must be based upon evidence and not upon speculation, guesswork or conjecture.  Additionally, damages must also be directly traceable to the breach and cannot be not remote or the result of other intervening causes.

The burden of proof is on Rock Fintek to establish damages.

In this case, Rock Fintek claims that it is entitled to actual damages stemming from its claim that Adorama failed to pay it a rebate required by the SPA.  Specifically, Rock Fintek claims that it is entitled to a rebate of $750,000.

If you find that Rock Fintek proved its breach of contract claim, you must enter an award of damages to fairly compensate it for any losses that it suffered as a result of Adorama's breach of contract.

> **Authority:** New York Pattern Jury Instructions – Civil (December 2021 Update)

39

Committee on Pattern Jury Instructions Association of Supreme
Court Justices PJI 4:20 Contracts – Damages – Generally

**ROCK FINTEK'S REQUESTED INSTRUCTION NO. 21**
**(Rock Fintek's Breach of Contract Claim - Damages)**

Rock Fintek requests that the following be added to Proposed Instruction 16:

Rock Fintek also claims that it is owed damages for non-conforming gloves that it bought

from Kitchen Winners for which it has not been paid by its hospital client.

### REQUESTED INSTRUCTION NO. 22
**(Rock Fintek's claim for Unjust Enrichment Against Kitchen Winners and Adorama)**

Rock Fintek claims that Kitchen Winners and Adorama were unjustly enriched at its expense in that Rock Fintek mistakenly paid money to Kitchen Winners and Adorama in excess of the amount required by the SPARock Fintek has also asserted a claim against Kitchen Winners and Adorama for unjust enrichment.  Rock Fintek claims that Kitchen Winners and Adorama were unjustly enriched at its expense in that Rock Fintek mistakenly paid money to Kitchen Winners and Adorama in excess of the amount required by the SPA.

Unlike Rock Fintek's breach of contract claims, Rock Fintek's unjust enrichment claim does not arise out of the SPA.

Instead, Rock Fintek asks to be compensated for money that it claims to have mistakenly sent to Kitchen Winners and Adorama for gloves that it never requested.

Unjust enrichment occurs when the defendant has obtained a benefit, such as money or goods, at the expense of the plaintiff, and it would be unfair for the defendant to keep the benefit without compensating the plaintiff.  In those circumstances, the law requires the defendant to compensate the plaintiff for the benefit it has received.

Rock Fintek has the burden of proving, by a preponderance of the evidence, the following elements:

> (4) that it paid money to Kitchen Winners and Adorama;
>
> (5) that Kitchen Winners and Adorama were enriched at Rock Fintek's expense; and
>
> (6) that it would be unfair for Kitchen Winners and Adorama not to return that money to Rock Fintek.

Kitchen Winners and Adorama contend that, in return for Rock Fintek's payments in excess of the amount required by the SPA, Kitchen Winners provided Rock Fintek with additional

gloves.  Kitchen Winners and Adorama further contend that Rock Fintek was paid in full for every glove that it received when it resold the gloves to its customer, Ascension.  Kitchen Winners and Adorama further contend that it is fair for them to keep the money that they received from Rock Fintek, in return for which Rock Fintek received – and resold – the gloves.

If you find (1) that Rock Fintek mistakenly paid Kitchen Winners and Adorama more money than was required under the SPA; (2) that Kitchen Winners and Adorama were enriched by that extra money at Rock Fintek's expense, and (3) that it would be unfair to allow Kitchen Winners and Adorama to retain the benefit of that extra money, then you must hold Kitchen Winners and Adorama liable to repay Rock Fintek for those mistaken payments.

You will determine the value of the benefit conferred on Kitchen Winners and Adorama, based on the evidence you have heard.

> **Source**: New York Pattern Jury Instructions – Civil (December 2021 Update) Committee on Pattern Jury Instructions Association of Supreme Court Justices PJI 4:2 Contracts – Quasi Contract – Restitution – Unjust Enrichment

## REQUESTED INSTRUCTION NO. 23
### (Rock Fintek's claim for Breach of Covenant of Good Faith and Fair Dealing Against Kitchen Winners)

Rock Fintek has also asserted a claim against Kitchen Winners for breach of the covenant of good faith and fair dealing.

Within every contract is an implied covenant of good faith and fair dealing. The implied covenant embraces a pledge that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. The covenant of good faith and fair dealing is breached when a party acts in a manner that deprives the other party of the benefits of the agreement. To prevail on this claim, Rock Fintek must prove, by a preponderance of the evidence, the following three elements:

1) Kitchen Winners owed Rock Fintek a duty to act in good faith and conduct fair dealing;

2) Kitchen Winners breached that duty by acting in bad faith or failing to conduct fair dealing; and

3) Kitchen Winners' breach of duty caused Rock Fintek some measure of damages

Rock Fintek has the burden of proving, by a preponderance of the evidence, that Kitchen Winners breached the covenant of good faith and fair dealing. If you find that Rock Fintek proved that Kitchen Winners breached the covenant, then you must find for Rock Fintek on its claim for breach of the covenant of good faith and fair dealing against Kitchen Winners.

If you find that Kitchen Winners breached the covenant of good faith and fair dealing, you will reward Rock Fintek $1.00 in damages. I have already determined that Rock Fintek can only recover nominal damages on its claim for this claim. Simply put, $1.00 is the most that Rock

Fintek can recover if you find that Kitchen Winners breached the covenant of good faith and fair

dealing.  That determination is conclusive and you must not question it.

> **Sources**:  *SING for Serv., LLC v DOWC Admin. Servs., LLC*, No.
> 1:20-cv-5617-GHW, 2022 US Dist LEXIS 771 (S.D.N.Y. Jan. 3,
> 2022, ); New York Pattern Jury Instructions – Civil (December 2021
> Update) Committee on Pattern Jury Instructions Association of
> Supreme Court Justices PJI 4:1 Contracts – Elements; Comment
> Section Z: Implied Covenant of Good Faith and Fair Dealing

## REQUESTED INSTRUCTION NO. 24
### (Evidence- General Instruction)

You are to consider only the evidence in the case. The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, and any stipulations of facts to which the parties have agreed.

A stipulation is an agreement among the parties that certain facts are true. You must consider those facts to be true.

During the trial, certain deposition testimony was read to you. Like the testimony you have heard in court, deposition testimony is sworn testimony that was given in response to questions asked by attorneys for the parties to the case. Deposition testimony should be considered, to the extent possible, in the same way as testimony that was given at the witness stand and should be judged as to credibility and weight in the same way.

It is for you to decide the weight, if any, to give testimony you have heard or exhibits you have seen. Your consideration of the evidence is not limited to the statements of the witnesses. In other words, you are not limited solely to what you have heard from the witnesses or seen. Rather, you may draw from the facts that you find have been proven, any reasonable inferences or conclusions as you feel are justified in light of your experience.

Any testimony or other evidence that I have excluded, stricken, or told you to disregard, is not evidence and may not be considered by you in reaching your verdict.

Likewise, questions the parties' lawyers asked are not evidence. It is the witnesses' answers that are evidence, not the lawyers' questions. Arguments by the attorneys are not evidence because the attorneys are not witnesses. The arguments the lawyers have made in their opening statements, summations, and at other times, are intended only to help you understand the evidence and reach a verdict.

Finally, the statements or rulings that I have made are not evidence. Because you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to what the facts are or what the verdict should be. The rulings I have made during the trial are not indication of my views. Also, you should not draw any inferences from the fact that I may have, on occasion, asked certain questions to the witnesses. These questions were intended only to clarify or expedite proceedings, and they are not an indication of my view of the evidence. In short, if anything I have said or done seemed to you to indicate an opinion relating to any matter you need to consider, you must disregard it.

> **Source**: FJIP §§ 101:40, 101:44, 102:23, 102:45, 102:70, 102:71, 102:72, 102:73, 103:30, 103:33, 103:34, 104:20, 105:02.

## REQUESTED INSTRUCTION NO. 25
### (Evidence - Direct and Circumstantial Evidence)

There are two types of evidence that you may properly use in reaching your verdict: direct evidence and circumstantial evidence.

Direct evidence is a witness's testimony about something the witness knows by virtue of witness's senses—something the witness saw, felt, touched, or heard. Direct evidence may also be in the form of an exhibit, such as a written statement by one of the parties or its employees. For instance, let us suppose that a fact in dispute is whether I knocked over a water glass in the courtroom. If someone testifies that he saw me knock over the glass, that is direct evidence that I knocked over the glass. Direct evidence of retaliatory intent is rare and is not required.

The other type of evidence is circumstantial evidence. Circumstantial evidence is evidence that tends to prove one fact by proof of other facts. Here is a simple example of circumstantial evidence:

Assume that when you came to the courthouse this morning, the sun was shining, and it was a nice day. Assume that the courtroom blinds are drawn and you cannot see outside. As you are sitting here, someone walks in with an umbrella that is dripping wet and then someone else walks in with a raincoat that is also dripping wet.

You cannot look outside the courtroom and cannot see whether or not it is raining. You, therefore, have no direct evidence that it is raining. But, based on the combination of the facts I have asked you to assume, it would be reasonable and logical for you to conclude that between the time you arrived at the courthouse, and the time these people walked in, it had started to rain. This is all there is to circumstantial evidence. Based on an established fact, you infer based on reason, experience, and common sense, the existence or nonexistence of some other fact.

Many facts, such as a particular's person's state of mind, can only rarely be proven by direct evidence. However, circumstantial evidence, if believed, has no less value than direct evidence, and a party may use either direct or circumstantial evidence to prove his or her claim. You are to decide how much weight to give any evidence. The law makes no distinction between the two, but rather only requires that you, the members of the jury, decide the facts based on all the evidence, both direct and circumstantial. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

> **Source**: FJIP §§ 101:42, 104:05, 170:21, 171:26; Desert Palace, Inc. v. Costa, 539 U.S. 90, 100 (2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001); Dodd v. City Univ. of New York, 489 F. Supp. 3d 219, 247 (S.D.N.Y. 2020); Model Civ. Jury Instr. 3rd Cir. § 1.6 (2019).

## REQUESTED INSTRUCTION NO. 26
### (Evidence - Inferences)

In these instructions, I have used the word "infer," and the lawyers, in their arguments, have asked you to draw inferences. When you draw an inference, you conclude, from one or more established facts, that another fact exists or is true. You make inferences based on your reasoning, experience, and common sense.

The process of drawing inferences from facts in evidence is not a matter of guesswork, suspicion, or speculation. Rather, an inference is a reasoned, logical deduction or conclusion that you, the members of the jury, may draw—but are not required to draw—from the facts that have been established by direct or circumstantial evidence. In considering inferences, you should use your common sense and draw, from the facts that have been proven, whatever reasonable inferences you find to be justified in light of your experience.

**Source**: FJIP § 104:20.

**REQUESTED INSTRUCTION NO. 27**
**(Evidence – Professional Expertise)**

Although you are encouraged, as jurors, to use your life experiences in analyzing testimony and reaching a fair verdict, you may not communicate any professional expertise you might have or specialized information that is not in evidence to the other jurors during deliberations. You must base your discussions and decisions exclusively on the evidence presented to you during the trial and that evidence alone. You may not consider or speculate on matters not in evidence or matters outside the case.

**Source**: PJI § 1:37.

## REQUESTED INSTRUCTION NO. 28
### (Evidence – Credibility of Witnesses)

Now, the important subject of evaluating testimony. How do you evaluate the credibility or believability of the witnesses? The answer is that you use your common sense. There is no magic formula by which you can evaluate testimony.

You should use the same tests for truthfulness that you would use in determining matters of importance in your everyday lives. You should ask yourselves the following questions. Did the witness impress me as honest, open, and candid, or was the witness evasive and edgy, as if hiding something? How did the witness appear while testifying—that is, the witness's bearing, behavior, manner, and appearance? How responsive was the witness to the questions asked on direct examination and on cross-examination? Did the witness refuse to answer a question after being instructed by me to answer? You should consider whether the witness had the opportunity to see, hear, or know about the things about which the witness testified; the accuracy of the witness's memory; the witness's lack of candor; the witness's intelligence; the reasonableness or probability of the witness's testimony; the testimony's consistency of lack of consistency; and the whether the testimony's is supported or contradicted by other credible evidence.

In short, in assessing credibility you should evaluate the witness in light of the witness's demeanor, the explanations the witness has given, and all the other evidence in the case. Remember to use your common sense, good judgment, and life experience.

Few people recall every detail or every event precisely the same way. A witness may be inaccurate, contradictory, or even untruthful in some respects, yet the witness may be entirely believable and truthful in other respects. It is for you to determine whether any inconsistencies are significant or minor.

If you find that a witness intentionally testified falsely, that is always a matter of importance that you should weigh carefully. If you find that any witness willfully has testified falsely as to any a material fact—that is, about any important matter—the law permits you to disregard completely the entire testimony of that witness based on the principle that one who testified falsely about material fact is likely to testify falsely about everything. You are not required, however, to consider such a witness to be completely unbelievable. You may accept so much of that witness's testimony as you deem true and may disregard what you believe is false.

Also, the weight of the evidence is not necessarily determined by the number of witnesses testifying as to the existence or nonexistence of any fact. You may find that the testimony of a single witness as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

By the processes I have just described, you, the sole judges of the facts, decide which of the witnesses to believe, what portion of the any witness's testimony to accept, and what weight, if any, to give to any witness's testimony.

> **Source**: FJIP §§ 104:43, 104:54, 105:01, 105:04, 105:10; PJI § 1:41.

### REQUESTED INSTRUCTION NO. 29
#### (Evidence – Impeachment of Witnesses)

You have been presented evidence that at some earlier time a witness has said or done something that counsel suggested was inconsistent with the witness's trial testimony.

If the prior inconsistent statement was sworn testimony—for instance, deposition testimony or earlier testimony during trial—the earlier inconsistent statement is evidence by itself, and you may make a finding based only on the content of the earlier statement. Likewise, if the prior inconsistent statement was that of a party or the party's agents and employees, that statement is evidence against that party.

Even if a prior inconsistent statement is not evidence by itself—for example, an earlier statement from a witness that was not sworn testimony—the prior inconsistent statement is still relevant for the more limited purpose of helping you decide whether to believe the trial testimony of witnesses who contradicted themselves. If you find that a witness made an earlier statement that conflicts with that witness's trial testimony, you may consider that fact in deciding how much of the witness's testimony, if any, to believe.

In making this determination, you may consider, among other things: (1) whether the witness purposely made a false statement or whether it was an innocent mistake; (2) whether the inconsistency concerns an important fact or a minor detail; and (3) whether the witness had an explanation for the inconsistency and if that explanation appealed to your common sense.

It is exclusively your duty to determine, based upon all the evidence and your good judgment, whether the prior statement was inconsistent and, if so, how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

**Source**: FJIP §§ 103:31, 105:01, 105:02, 105:04, 105:09.

## REQUESTED INSTRUCTION NO. 30
### (Evidence – Bias of Witnesses)

In deciding whether to believe a witness, you also should specifically note any evidence of bias, hostility, or affection that the witness may have towards one of the parties. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating or not cooperating with a particular party. If you find any such bias, hostility, affection, interest, or motive, you must then consider whether or not it affected or colored the witness's testimony. For example, if a witness is employed by one of the parties, you may consider that fact and what effect, if any, it may have had on the witness's testimony.

You should also consider any evidence that a witness may benefit or suffer in some way form the outcome of the case. Such interest in the outcome may create a motive to testify falsely and may sway a witness to testify in a way that advances his or her own interests. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony.

Keep in mind though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved. There are people who, no matter what their interest in the outcome of the case may be, would not testify falsely. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, a witness's bias or interest has influenced or affected his or her testimony. You are not required to disbelieve an interested witness; you may accept as much of an interested witness's testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

**Source**: FJIP §§ 101:43, 105:01; PJI §§ 1:91, 1:92.

**REQUESTED INSTRUCTION NO. 31**
**(Evidence – Rulings on Evidence and Objections)**

It is the duty of the attorneys for each side of the case to object when the other side offers testimony or other evidence that the attorney believes is not admissible. Counsel also have the right and duty to ask the Court to make rulings of law, because only by making an objection can a lawyer request and obtain a ruling from me on the admissibility of the evidence. All those questions of law must be decided by me. You should not show any prejudice against an attorney, or the attorney's client, because the attorney objected to the admissibility of evidence, asked for a conference out the hearing of the jury, or asked the Court for a ruling on the law.

As I have already said, my rulings on the admissibility of evidence do not indicate any opinion about the weight or effect of such evidence. You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence. If, however, I sustained an objection to any evidence or I ordered evidence stricken or disregarded, that evidence must be entirely ignored.

**Source**: FJIP §§ 101:49, 102:45, 102:71, 102:73.

## REQUESTED INSTRUCTION NO. 32
### (Deliberations – Duty to Deliberate)

The most important part of this case, members of the jury, is the part that you as jurors are about to play as you deliberate on the issues of fact. It is for you, and you alone, to decide whether either party has proven the elements of its claim by a preponderance of the evidence. I know you will judge the issue that have been presented to you according to the oath that you have taken as jurors. In that oath, you promised that you would well and truly try the issues in this case and render a true verdict. Your function is to weigh the evidence in the case and reach your decisions based solely on the evidence. Your duty is to decide the issues before you fairly and impartially, and to see that justice is done.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for yourself, but you should do so only after consideration of the case with your fellow jurors. Your verdict, and the answers to each question on the verdict form, must be unanimous. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without prejudice or favor towards either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

As you deliberate, please listen to the opinions of your fellow jurors and ask for an opportunity to express your own views. Every juror should be heard. No one juror should hold center stage in the jury room or control or monopolize the deliberations. You should all listen to one another with courtesy and respect. If, after stating your own view and after listening to your fellow jurors, you become convinced that your view is wrong, do not hesitate because of stubbornness or pride to change your view. On the other hand, do not surrender your honest convictions and beliefs concerning the weight or effect of the evidence solely because of the opinions of your fellow jurors, because you are outnumbered or for the mere purpose of returning

a verdict. Your final vote must reflect your conscientious belief as to how the issues should be decided. Your verdict must be unanimous.

**Source**: FJIP §§ 101:01, 103:50, 106:01, 106:16.

**REQUESTED INSTRUCTION NO. 33**
**(Deliberations – All Jurors Required for Deliberation)**

You are not to discuss the case until all jurors are present. A collection of five, six, or even seven jurors together is only a gathering of individuals. Only when all eight jurors are present do you constitute a jury, and only then may you deliberate.

**Source**: FJIP § 101:11.

**REQUESTED INSTRUCTION NO. 34**
**(Deliberations – Duties of the Foreperson)**

I am going to ask that you select a foreperson when you begin your deliberations. You should all vote on who will be the foreperson. The foreperson does not have any more power or authority than any other juror, and foreperson's vote or opinion does not count for any more than any other juror's vote or opinion. The foreperson is merely your spokesperson to the Court. The foreperson will send out any notes for the Court, and when the jury has reached a verdict, he will notify _____, fill out and sign the verdict form, and give the verdict in open court.

**Source**: FJIP §§ 103:50; 106:05.

## REQUESTED INSTRUCTION NO. 35
### (Deliberations – Right to Exhibits and Testimony / Communications with the Court)

The exhibits will be sent to you in the jury room. If you want any of the testimony read back to you, that can be arranged. Keep in mind that we may not have a printed transcript and it is not always easy for the court reporter to locate the testimony that you might want, so be as specific as you can as to what witness and what portion of that witness's testimony you would like to hear.

Any communication with the Court should be made in writing, signed by your foreperson, and given to _____, who will be here in the courtroom while you deliberate. I will respond to any questions or requests you have as promptly as possible, either in writing or by having you return to the courtroom, so I can speak with you in person.

You are not to reveal the standing of the jurors—that is, the split of the vote—to anyone, including me, at any time during your deliberations. So do not ever indicate, in a note or otherwise, what the vote is or which way the majority is leaning or anything like that. Nobody outside the jury should know how the jury stands on any issue until a unanimous verdict is reached.

**Source**: FJIP §§ 101:20, 103:50, 104:55, 106:08.

**REQUESTED INSTRUCTION NO. 36**
**(Deliberations – Juror Notes)**

If any of you took notes during the course of the trial, you should not show your notes to, or discuss your notes with, any other juror during your deliberations. Any notes you have taken are to be used solely to assist you. The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror. Finally, your notes are not to substitute for your recollection of the evidence in the case. If you have any doubt as to any testimony, you may request that the testimony be read back to you, as I mentioned earlier.

Source: FJIP §§ 101:15, 103:02.

## REQUESTED INSTRUCTION NO. 37
### (Deliberations – Verdict Form)

As I said before, when you retire to deliberate, you should choose a foreperson. The foreperson will receive a verdict form on which to record your verdict. You will see that the verdict form has various questions for you to answer in the order in which they appear. When the foreperson has completed the verdict form, the foreperson must sign his or her name, and the verdict form will be marked as a Court Exhibit.

**Source**: FJIP §§ 103:50; 106:05.

Respectfully submitted,

**LIPSIUS-BENHAIM LAW, LLP**

/s/ Alexander J. Sperber
Alexander J. Sperber
Ira S. Lipsius
80-02 Kew Gardens Road, Suite 1030
Kew Gardens, NY 11415
(212) 981-8440
asperber@lipsiuslaw.com
iral@lipsiuslaw.com

*Attorneys for Kitchen Winners NY Inc.,
Adorama Inc.*

**POLLACK SOLOMON DUFFY LLP**

/s/ Phillip Rakhunov
Phillip Rakhunov
Lauren Riddle (pro hac vice)
48 Wall Street, 31st Floor
New York, NY 10005
(212) 493-3100
prakhunov@psdfirm.com
lriddle@psdfirm.com

*Attorneys for Rock Fintek LLC*