UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KITCHEN WINNERS NY INC., *Plaintiff*, vs. ROCK FINTEK LLC, *Defendant*. | Civil Action No. 22-cv-05276-PAE |
| ROCK FINTEK LLC, *Counterclaim and Third-Party Plaintiff*, vs. KITCHEN WINNERS NY INC, *Counterclaim Defendant*, and ADORAMA INC., HERSHEY WEINER, JOSEPH MENDLOWITZ, JNS CAPITAL HOLDINGS LLC and JOEL STERN, *Third-Party Defendants*. | |

**MEMORANDUM OF LAW IN OPPOSITION TO ROCK FINTEK LLC'S MOTIONS *IN LIMINE***

**LIPSIUS BENHAIM LAW LLP**
80-02 Kew Gardens Road
Suite 1030
Kew Gardens, New York 11415
Telephone: (212) 981-8440

*Of Counsel*:
　　Alexander J. Sperber
　　Yisroel Steinberg

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................. 1

ARGUMENT .............................................................................................................. 2

    I.      ROCK FINTEK CANNOT MOVE FOR
           SUMMARY JUDGMENT IN THE GUISE OF A
           MOTION *IN LIMINE* ....................................................................... 2

    II.     RULE 37 DOES NOT APPLY BECAUSE RULE 26
           WAS NOT VIOLATED ..................................................................... 3

           1.  There is no Basis to Preclude the Wenzy Invoices ................ 5

           2.  There is no Basis to Preclude the Wenzy Payments .............. 5

           3.  There is no Basis to Preclude Testimony from
               a Wenzy Principal .................................................................. 7

    III.    THERE IS NO BASIS TO PRECLUDE KITCHEN WINNERS
           FROM CALLING JOEL STERN TO TESTIFY ............................... 11

CONCLUSION ......................................................................................................... 13

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                                                              **PAGES(S)**

*Am. Stock Exch., LLC v. Mopex, Inc.*,
    215 F.R.D. 87 (S.D.N.Y. 2002) ....................................................................  4

*Doe v Socy. of the Missionaries of the Sacred Heart*,
    No. 11-cv-2518, 2014 US Dist LEXIS 695
    (N.D. Ill. Jan. 3, 2014) ...................................................................................  6

*Johnson Electric North America v. Mabuchi Motor America Corp.*,
    77 F. Supp. 2d 446 (S.D.N.Y. 1999) ............................................................  4

*Kuntsler v. City of New York*,
    242 F.R.D. 261 (SDNY 2007) .......................................................................  4

*United States v Abu-Jihaad*,
    630 F.3d 102 (2d Cir. 2010) ............................................................................  12

*United States v White*,
    692 F.3d 235 (2d Cir. 2012) ...........................................................................  11

*United States v. Al-Moayad*,
    545 F.3d 139 (2d Cir. 2008) ...........................................................................  11

**STATUTES**

Fed. R. Civ. P. § 26 ................................................................................... 1, 3, 4, 5, 6, 8, 9

Fed. R. Civ. P. § 37 ......................................................................................3, 4

Fed. R. Civ. P. § 45 .......................................................................................10

Fed. R. Evid. § 401 .......................................................................................2, 11

Fed. R. Evid. § 404 .......................................................................................13

Fed. R. Evid. § 901 .......................................................................................8

**PRELIMINARY STATEMENT**

Plaintiff and counterclaim defendant Kitchen Winners NY Inc. ("Kitchen Winners") and third-party defendant Adorama Inc. ("Adorama") (together with Kitchen Winners, "Defendants") respectfully submit this memorandum of law in opposition to the two motions *in limine* filed by Rock Fintek LLC ("Rock Fintek").

One of the categories of damages that Kitchen Winners seeks to recover from Rock Fintek in the instant litigation is the cost that Kitchen Winners incurred for trucking and storing many of the gloves that Rock Fintek purchased from Kitchen Winners.

In support of these claims, Kitchen Winners intends to introduce at trial invoices from Wenzy Inc. ("Wenzy") – the trucking company that transported a portion of the gloves. The parties stipulated, in their Joint Statement of Undisputed Facts, to the authenticity of the invoices. In further support, Kitchen Winners intends to introduce pay stubs that prove that it paid the Wenzy invoices. Finally, Kitchen Winners intends to call a principal of Wenzy to testify regarding the Wenzy invoices and potentially the trucking more broadly.

There is no basis to categorically preclude Kitchen Winners from introducing any of these at trial. Kitchen Winners identified the Wenzy invoices on its Rule 26 disclosures and timely produced them. Kitchen Winners produced the paystubs – as evidence that it paid Wenzy for the invoiced amounts – immediately upon Rock Fintek's request. Finally, the Wenzy invoices identified the address for Wenzy and supplemented Kitchen Winners' disclosures. Indeed, Rock Fintek knew that Wenzy was an important part of Kitchen Winners' damages – that is why it sent Wenzy a subpoena. As Kitchen Winners does not control Wenzy, Rock Fintek's difficulties in serving that subpoena cannot be attributed to Kitchen Winners – especially because Rock Fintek never even notified Kitchen Winners that it was unable to serve Wenzy.

1

Finally, there is no basis to preclude Kitchen Winners from calling Joel Stern to testify at trial. Joel Stern sold millions of gloves to Rock Fintek. Rock Fintek impleaded Mr. Stern in this lawsuit. Mr. Stern has pertinent and relevant evidence that Defendants may seek to introduce at trial. Accordingly, Joel Stern's testimony is clearly relevant under the relaxed standard of Fed. R. Evid. § 401.

Accordingly, this Court should deny Rock Fintek's motions *in limine* in their entirety.

### ARGUMENT

I. **ROCK FINTEK CANNOT MOVE FOR SUMMARY JUDGMENT IN THE GUISE OF A MOTION *IN LIMINE***

Rock Fintek's motion should be denied because it is a motion for summary judgment pretending to be a motion *in limine*.

Rock Fintek moved to preclude the Wenzy invoices because (1) they purportedly look similar to Kitchen Winners' invoices (ECF Entry 173, ("MOL1") at ¶ 8), (2) Rock Fintek was unsuccessful in serving a subpoena on Wenzy (MOL1 at ¶ 7), and (3) on the basis of cherry picked selections of Joseph Weiner's deposition testimony. (MOL1 at ¶ 6.)

Rock Fintek could have moved for summary judgment against Kitchen Winners' claims for unpaid trucking, on the aforementioned bases. It chose not to do so. Rock Fintek can also seek to raise those arguments at trial. A motion *in limine*, however, seeking to categorically preclude Kitchen Winners from publishing the invoices to the jury is the improper procedural mechanism.

That said, Kitchen Winners strenuously contests Rock Fintek's insinuation that Kitchen Winners somehow created the Wenzy invoices. (MOL1 at ¶ 8.)

As Joseph Weiner testified at his deposition, there are two separate companies called Wenzy. One Wenzy is owned by his wife and did not provide trucking services. The other Wenzy

2

– the one that is relevant to this action – provided trucking for the gloves at issue in this lawsuit and is owned by Mr. Wertzberger and/or his wife.

> Q. Have you ever billed Rock Fintek for trucking services in the name of Wenzy, Inc.?
>
> A. I never billed -- Wenzy originally is -- there's two Wenzy, Inc.s. I don't know which one you're talking about. The trucking company, Wenzy Limited, is somebody -- Mr. -- Mr. Wertzberger, and I think his name is -- the company is owned by his wife, Mrs. Weiss. I would have to exactly -- there's a different company that I dealt with. His name is Wenzy, but similar to our company but it's a trucking company.

(Declaration of Alexander J. Sperber dated November 27, 2024 ("Sperber Decl.") at Exhibit "A" [Joseph Weiner Transcripts November 16, 2023] at 56:9 - 21.)

Indeed, a cursory investigation into publicly available records corroborates Mr. Weiner's testimony. According to the New York State Department of State, Division of Corporations' website, Wenzy Inc. was incorporated in 2014 – years before the transactions at issue in this litigation. (Sperber Decl. at Exhibit "B.") Its CEO is Breindy Werzberger and its address is 26 Seven Springs Rd., Monroe, NY, United States, 10950 (*id*.) – exactly as it appears on the Wenzy invoices that Rock Fintek insinuates Kitchen Winners fabricated. Further, according to the Department of State's website, Wenzy Trading Inc. was created in 2019 and its address is 1134 53rd Street, Brooklyn, NY, United States, 11219 (Sperber Decl. at Exhibit "C") – *i.e.*, the same address as appears on Kitchen Winners' invoices.

Quite simply, there is no basis – definitely not on a motion *in limine* – to argue that the Wenzy invoices were not "legitimate." (MOL1 at ¶ 8.)

## II.  RULE 37 DOES NOT APPLY BECAUSE RULE 26 WAS NOT VIOLATED

There is no basis under Rule 37 to preclude the (i) invoices that Kitchen Winners received from Wenzy for trucking costs; (ii) record payments that Kitchen Winners paid to Wezny for those

3

trucking costs; or (iii) testimony from a principal of Wenzy who can authenticate the invoices that Wezny issued to Kitchen Winners.

Under Rule 37(c)(1), if "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." In other words, Rule 37 is only triggered if a party violates its disclosure obligations under Rule 26.

Rule 26(a)(1)(A) requires a party to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Rule 26(e)(1)(A) requires a party who has made a Rule 26(a) disclosure to supplement if the party learns that the initial disclosure was incomplete or incorrect, "*and if additional or corrective information has not otherwise been made known to the other parties during the discovery process*." (Emphasis added).

The purpose of Rule 37 is to prevent the practice of "sandbagging" an adversary with new evidence. *Johnson Electric North America v. Mabuchi Motor America Corp.*, 77 F. Supp. 2d 446, 458 (S.D.N.Y. 1999). The rule is designed "to avoid 'surprise' or 'trial by ambush.'" *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002). The imposition of sanctions under the rule is a matter within the trial court's discretion. *Kuntsler v. City of New York*, 242 F.R.D. 261 (SDNY 2007). The preclusion of evidence not disclosed in discovery is a "drastic remedy and will apply only in situations where the failure to disclose represents . . . flagrant bad faith and callous disregard of the rules." *Kuntsler*, 242 F.R.D. 261 at 265.

Applying these principles, there is no reason to preclude any of the Wenzy evidence.

4

### 1. There is no Basis to Preclude the Wenzy Invoices

There is no basis to preclude the Wenzy invoices because they were properly disclosed and timely produced.

On Kitchen Winners' Rule 26 Disclosures it identified "documents relating to Kitchen Winners' delivery of the gloves to Rock Fintek" as documents that it may use to support its claims or defenses, as required by Rule 26.

In further compliance with its discovery obligations, Kitchen Winners produced all of the Wenzy invoices. There is no basis whatsoever to preclude the Wenzy invoices. They were disclosed and timely produced.

Rock Fintek oddly suggests that "Kitchen Winners failed to produce any documents to substantiate the legitimacy or even authenticity of wenzy invoices during the parties' business relationship and during this litigation." (MOL1 at p. 5.) That is a peculiar argument because ***Rock Fintek*** itself stipulated to the authenticity of the Wenzy invoices. (*See* JSUF at ¶ 103.) Additionally, on the Joint Pre-Trial Order, Rock Fintek inserted only one star next to the Wenzy invoices on Plaintiff's exhibit list, indicating that it does not object to the Wenzy invoices on grounds of authenticity, as per the Court's Rules. As such, there is simply no need for Kitchen Winners to authenticate the Wenzy invoices. Rock Fintek concedes – and cannot contest – their authenticity.

### 2. There is no Basis to Preclude the Wenzy Payments

Similarly, there is no basis to preclude the proof that Kitchen Winners actually paid Wenzy for the trucking costs that Kitchen Winners now seeks to collect from Rock Fintek. As set forth above, Kitchen Winners disclosed the existence of "documents relating to Kitchen Winners'

delivery of the gloves to Rock Fintek." Kitchen Winners also produced the proof of payment immediately after Rock Fintek requested them.

Rock Fintke asserts that it "questioned the legitimacy of the wenzy inc. [sic] invoices and charges . . . well before this litigation." (MOL1 at ¶ 3.) Yet Rock Fintek never requested the production of any documents specifically relating to Wenzy. Nor did Rock Fintek ever request any documents specifically relating to Kitchen Winners' payment of the trucking costs.

Despite knowing that it had concerns with Wenzy and its invoices, Rock Fintek – presumably, for strategic reasons – chose to never request corroborating documents. The closest that Rock Fintek ever came to seeking relevant discovery was its request for **"documents and communications concerning or reflecting shipping records for the gloves sold to Rock Fintek, including but not limited to bills of lading, invoices and proofs of delivery."** (ECF Entry No. 173-10 at ¶ 51.) This request does not request anything specific concerning Wenzy, nor does it request proof of payment. To the contrary, this request only mentions "bills of lading, invoices, and proofs of delivery" – all of which Kitchen Winners produced.

Rock Fintek cites its request for "Documents sufficient to identify the full names and last known contact information for any individuals directly or indirectly employed with or contracted by Kitchen Winners or Adorama in connection with the glove transactions at issue, including but not limited to warehouse workers and truck drivers" (ECF Entry No. 173-10 at ¶ 53), as proof that Kitchen Winners was somehow in "violation of its Rule 26 Obligations." (MOL1 at ¶ 9.) Not so. Kitchen Winners timely produced the Wenzy invoices which identified the full names and last known contact information for Wenzy.

Rock Fintek cannot lay the blame for its decisions regarding which documents to seek and how to conduct discovery at Kitchen Winners' feet. *See e.g., Doe v Socy. of the Missionaries of*

6

*the Sacred Heart*, No. 11-cv-2518, 2014 US Dist LEXIS 695, at *13 (N.D. Ill. Jan. 3, 2014) ("Defendants were aware that the entities had relevant information but chose not to pursue it prior to the close of discovery. In the latter circumstance, Defendants were not prejudiced by any act or omission by Doe, but rather made their own strategic choices to forgo discovery with respect to these entities.").

The first time that Rock Fintek requested proof of payment from Kitchen Winners was during the deposition of Joseph Weiner on November 16, 2023. At Weiner's deposition, Rock Fintek requested – for the very first time – that Kitchen Winners produce proof that it paid the Wenzy invoices. (Sperber Decl. at Exhibit "A" [Joseph Weiner Transcripts November 16, 2023] at 69:11 - 16.) As per Rock Fintek's request, Kitchen Winners produced the proof of payment that very night.

Rock Fintek is disingenuous when it argues that Kitchen Winners produced proof of payment "the day *discovery closed* and a day *after the completion of* the deposition questioning of Kitchen Winners' corporate representative." (MOL1 at ¶ 10.) (Emphasis in original.) Rock Fintek chose to depose Joseph Weiner on the last day of discovery and chose to request proof of payment at that time. Kitchen Winners produced it immediately upon Rock Fintek's request. Kitchen Winners should not be precluded from introducing its proof of payment because Rock Fintek requested it at the very last possible moment.

Finally, Rock Fintek makes an odd passing reference that the payments cannot be authenticated. (MOL1 at p. 4.) Joseph Weiner can – and will – authenticate the proof of payments at trial and can also testify that he made the referenced payments. There is plainly no basis to preclude the exhibit or the testimony.

### 3. There is no Basis to Preclude Testimony from a Wenzy Principal

Finally, there is no basis to preclude a Wenzy principal from authenticating the invoices at trial.

As stated above, Rock Fintek has stipulated to the authenticity of the Wenzy invoices. (*See* JSUF at ¶ 103.) As such, it is highly probable that Kitchen Winners does not even need to authenticate the Wenzy invoices because Rock Fintek cannot contest their authenticity. In other words, there is no need for a Wenzy principal to testify "to support a finding that the item is what the proponent claims it is," *see* Fed. R. Evid. § 901, because Rock Fintek concedes that the Wenzy invoices are precisely what Kitchen Winners claims they are – invoices from Wenzy.

Moreover, even if Kitchen Winners decides to call a principal of Wenzy to testify regarding whether Wenzy provided trucking on behalf of Kitchen Winners, at what price, and whether Kitchen Winners paid Wenzy for the trucking, there is no basis to preclude it from doing so. Although Kitchen Winners inadvertently omitted Wenzy from its Rule 26 disclosures, the discovery that was produced and the depositions that were taken, served as supplemental disclosures under Rule 26(e) insofar as Kitchen Winners produced the invoices that identified the address of Wenzy – allowing Rock Fintek to serve a subpoena and seek discovery. Joseph Weiner also identified the identity of the Wenzy principal at his deposition – either Mr. Werzberger or his wife. ("Sperber Decl." at Exhibit "A" [Joseph Weiner Transcripts November 16, 2023] at 56:9 - 21.) Accordingly, Kitchen Winners complied with Rule 26 in that the relevant information has "otherwise been made known to [Rock Fintek] during the discovery process." Rule 26(e)(1)(A).

Further, Kitchen Winners' supplemental informal disclosure adequately apprised Rock Fintek that it intended to rely upon Wenzy at trial. In response to Kitchen Winners' disclosures, Rock Fintek attempted to serve a subpoena on Wenzy and sought documents and evidence. (MOL1 at ¶ 7.) Put differently, Rock Fintek will not be ambushed or sandbagged at trial. Rock

8

Fintek knew and expected that Wenzy would be a focal point of Kitchen Winners' claims and attempted – ultimately, unsuccessfully – to seek relevant discovery. Its failure to successfully obtain discovery from Wenzy is not Kitchen Winners' fault.

In short, while the existence of the Wenzy principals and the subjects upon which they had knowledge were not "formally" identified on Kitchen Winners Initial Disclosure Pursuant to Rule 26(a), they were all identified for Rock Fintek during discovery and, in fact, discussed at Joseph Weiner's depositions.

Moreover, Rock Fintek was well aware that Wenzy was of primary relevance to Kitchen Winners' claims as Kitchen Winners timely produced all of the invoices. Rock Fintek was also aware that it had concerns with the Wenzy invoices. (MOL1 at ¶ 3.) Put differently, Rock Fintek will not be "surprised" or "ambushed" at trial. (MOL1 at p. 4.) Rock Fintek will defend the exact claims and evidence that it expected throughout.

Notably, Rock Fintek's motion does not set forth any facts to indicate that the failure to specifically place the names of the witnesses on the initial disclosures (or a later piece of paper that had written across the top "Supplemental Rule 26(a) Disclosure") was anything other than a good-faith oversight.

Moreover, Rock Fintek failed to identify any additional steps that it would have taken if Kitchen Winners had more formally identified Wenzy, or if Kitchen Winners would have identified Wenzy earlier. Rock Fintek *cannot* identify any additional steps that it might have pursued as Rock Fintek served a subpoena on Wenzy attempting to gather relevant information. Put differently, Kitchen Winners' supplemental disclosures served their intended purpose – disclosing "the name and, if known, the address and telephone number of each individual likely to have discoverable information. Rule 26(a)(1)(A). "Failure to comply with the mandate of the

9

Rule is harmless when there is no prejudice to the party entitled to the disclosure." *AMEX*, 215 F.R.D. at 93 (citations omitted).

Finally, a word regarding Rock Fintek's inability to serve a subpoena on Wenzy and its misplaced attempt to apportion that blame on Kitchen Winners. (MOL1 at ¶ 7.) On July 24, 2023, counsel for Rock Fintek provided notice pursuant to Fed. R. Civ. P. § 45 that it intended to serve a subpoena on Wenzy. Thereafter, Rock Fintek never notified Kitchen Winners that it was unable to serve Wenzy or that the "address appeared to have been a private residence in the past but was vacant." (MOL1 at ¶ 7.) The first that Kitchen Winners learned of Rock Fintek's troubles was in opposition to its motion for summary judgment.

Further, Kitchen Winners and its principals do not control Wenzy, Mr. Wertzberger, or his wife. At his deposition, Joseph Weiner was asked and answered as follows:

> Q. Okay. Do you still keep in touch with Mr. Wertzberger?
> A. I didn't talk to him for a long time. He recently called me. I didn't respond to his call.
> Q. Did he leave you a message?
> A. No.
> Q. You don't know if he was calling you about a subpoena that was attempted to be served on him in this case?
> A. Not that I know of. Because he didn't leave me no messages, and I don't know.

("Sperber Decl." at Exhibit "A" [Joseph Weiner Transcripts November 16, 2023] at 56:9 - 21.Tr. 59:1 - 13.)

Not having ever notified Kitchen Winners that it was unable to serve a subpoena on Wenzy, Rock Fintek cannot blame Kitchen Winners. Rock Fintek has also failed to show that Wezny "evade[d] service yet at the same time expect[ed] to testify at trial." (MOL1 at p. 5.) Seemingly, Wenzy (like Kitchen Winners) has no idea that it was being sought by Rock Fintek for any testimony.

10

### III. THERE IS NO BASIS TO PRECLUDE KITCHEN WINNERS FROM CALLING JOEL STERN TO TESTIFY

There is plainly no basis to preclude Kitchen Winners from calling Joel Stern to testify at trial.

Rock Fintek moved *in limine* to preclude Kitchen Winners from (1) calling Joel Stern as a witness, and (2) introducing the bank records of Joel Stern's company – JNS. (ECF Entry 172 ("MOL2") at ¶ 3, p. 2.) According to Rock Fintek, these "have no bearing on the remaining claims in the lawsuit. (MOL2 at p. 2.) Rock Fintek further asserts that "such evidence is plainly inadmissible as character evidence" and that "its minimal relevance is substantially outweighed by danger of prejudice." (MOL2 at p. 2.) Rock Fintek is wrong on all these counts.

Joel Stern sold millions of gloves to Rock Fintek during roughly the same period that Kitchen Winners sold gloves to Rock Fintek. Both Kitchen Winners' gloves and Joel Stern's gloves were resold by Rock Fintek to Ascension. Rock Fintek impleaded Joel Stern into the instant lawsuit and asserted many of the same causes of action that it alleged against Defendants.

Although Rock Fintek and Joel Stern seemingly reached some settlement agreement following Stern's motion for summary judgment, (MOL2 at ¶ 2), Stern plainly has much relevant information that he can provide at trial.

Under Fed. R. Evid. § 401, evidence is relevant if:

(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

(b) the fact is of consequence in determining the action.

The Second Circuit has characterized this standard as a "very low standard." *United States v White*, 692 F.3d 235, 246 (2d Cir. 2012) *quoting United States v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir. 2008). Moreover, "evidence need not be sufficient by itself to prove a fact in issue, much

11

less to prove it beyond a reasonable doubt." *United States v Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010).

Joel Stern clearly meets this easy-to-meet standard and Rock Fintek's motion should be denied. At minimum, Defendants can solicit testimony on two highly relevant issues from Joel Stern. First, how many gloves did Joel Stern sell to Rock Fintek. JNS's bank records will further show the amount of gloves that Joel Stern sold to Rock Fintek, based on the amount that he was paid. The amount of gloves that Joel Stern sold to Rock Fintek will, in turn, establish the amount that Kitchen Winner sold to Rock Fintek because Rock Fintek only received Medcare brand gloves from Joel Stern and Kitchen Winners.

Second, to the extent that Rock Fintek and Ascension had complaints regarding the quality of the gloves, Defendants can seek to establish that the faulty gloves (if any) came from Joel Stern and not from Kitchen Winners. Indeed, Rock Fintek has even acknowledged as much. Specifically, on July 19, 2021, Bradley Gilling messaged Joel Stern

> Good Morning Joel. We have identified the gloves that are failing tests and of poor quality (fake nitrile) are from you. When you approached us in the past to buy these gloves, we specifically said no. How you got these on out [sic] trucks and delivered to our client is unacceptable.
>
> Furthermore we have identified these gloves were being offered at $4.80 buy price, to move these fake gloves. Obviously you made a significant amount of margin to sell us these gloves.
>
> We are having a meeting with our client to discuss full return and replacement of these fake nitrile gloves. We need you to find and replace these gloves as they are not what we agreed to buy. We will be orchestrating the return of the goods to you with full credit and replacement immediately.

(Sperber Decl. at Exhibit "D" [Stern WhatsApp Chat] at p. 30.)

12

Indeed, *Rock Fintek* has included Joel Stern on its own witness list and evidently intends to call Joel Stern at trial to testify. Presumably, Rock Fintek considers Joel Stern to be a relevant witness.

Further, there is no basis to preclude Joel Stern from testifying under Fed. R. Evid. § 404(a). (MOL2 at p. 2.) Defendants should not be required to announce their trial strategy in advance of trial to defeat a baseless motion *in limine*. Defendants decline Rock Fintek's invitation to elaborate as to the intended topics of their questioning of Joel Stern.

## **CONCLUSION**

For all of the above mentioned reasons, Defendants respectfully request that the Court deny Rock Fintek's motions *in limine* in their entirety.

Dated: Kew Gardens, New York
       November 27, 2024

                                **LIPSIUS-BENHAIM LAW, LLP**
                                *Attorneys for Kitchen Winners NY Inc.*
                                *Adorama Inc., and Joseph Mendlowitz*

By: _____
      Alexander J. Sperber, Esq.
      Yisroel Steinberg, Esq.
      80-02 Kew Gardens Road, Suite 1030
      Kew Gardens, NY 11415
      Tel: (212) 981-8440
      asperber@lipsiuslaw.com
      ysteinberg@lipsiuslaw.com