

NEW YORK    BOSTON
www.psdfirm.com

**POLLACK SOLOMON DUFFY LLP**
48 Wall Street, 31st Floor, New York, NY 10005
617-439-9800
prakhunov@psdfirm.com

December 16, 2024

**VIA ECF**
Honorable Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square, Room 2201
New York, NY 10007

Re:   *Kitchen Winners NY Inc. v. Rock Fintek LLC*, Case No. 22-cv-05276-PAE
      **Supplemental Opposition to Motion *in Limine* Regarding Damages**

Dear Judge Engelmayer:

Pursuant to the Court's leave from the bench, I write on behalf of Rock Fintek LLC to supplement the record and ask the Court to reconsider its ruling on the motion *in limine* excluding trial evidence inconsistent with Mr. Kato's October 3, 2023 deposition testimony where he mistakenly testified that the payments from Ascension Health to Rock Fintek that post-dated December 7, 2020 (the date of the purchase order from Ascension) were *all* for the gloves at issue in this lawsuit. As the Court explained on the record, the primary concern and reasoning underlying the ruling was a perception that Rock Fintek did not correct Mr. Kato's testimony until summary judgment motion practice, potentially depriving Kitchen Winners NY Inc. and Adorama Inc. (the "Adorama Parties") of the ability to examine Mr. Kato regarding the nature of the payments. As detailed below, this letter and attached exhibits demonstrate unequivocally that Rock Fintek corrected Mr. Kato's testimony before summary judgment practice, disclosing on multiple occasions that Rock Fintek received payments from Ascension *through February 2021* for items other than the gloves at issue.

### Introduction

The Adorama Parties received clear and unequivocal notice that Mr. Kato's October 3, 2023 testimony was inaccurate, including from (i) Rock Fintek's October 31, 2023 Second Amended Rule 26 Disclosures, (ii) follow up communications among counsel, (iii) Ascension's November 13, 2023 deposition testimony, (iv) Rock Fintek's December 18, 2023 disclosure of Mr. Kato as a percipient expert on damages,  and (v) *a second deposition of Mr. Kato* on February 1, 2024, which included questioning on the precise issue about which the Adorama Parties complained in their motion. In other words, the Adorama Parties received timely notice of Rock Fintek's damages calculations and had full and fair opportunity to question Mr. Kato regarding the payments from Ascension. Rock Fintek respectfully requests that the Court revisit and reconsider

its ruling based on evidence that was not before the Court during underlying motion practice.[1]

## Discussion

The Adorama Parties purport to rely on Mr. Kato's October 3, 2023 testimony regarding the timing of payments, to argue that Rock Fintek did not suffer any damages because it got paid by Ascension for all of the gloves that the Adorama Parties sold to Rock Fintek. Under Adorama Parties' theory, however, adding up the payments from Ascension to Rock Fintek after December 7, 2020, totals approximately **$38,860,293.50**. Nothing in the record has ever supported such a calculation and the Adorama Parties could not have reasonably relied on it in litigating this case.

First, on October 31, 2023, after Mr. Kato's first deposition, Rock Fintek submitted an amended damages disclosure. *See* Exhibit 1. In that disclosure, Rock Fintek explained that

> The Adorama Parties are also liable to Rock Fintek for 178,270 boxes of gloves beyond the contractually called for amount for which Rock Fintek overpaid at $11.50 per box. The amount owed by Adorama to Rock Fintek for this overage is $2,050,105. Adorama has admitted this overage. *See* Adorama INC. and Kitchen Winners NY INC000065. The calculations supporting this damages figure are further detailed in RF_000925, Adorama INC. and Kitchen Winners NY INC000065, and AKW000658.

Rock Fintek's disclosure was, by definition, inconsistent with Mr. Kato's earlier testimony because Rock Fintek could not assert such damages if all post-December 7 payments were for the gloves at issue in this lawsuit. In fact, the damages disclosure did not go unnoticed. That same day, counsel for Adorama Parties specifically raised the discrepancy between the disclosure and Mr. Kato's earlier testimony, asserting in an email that the damages disclosure "makes absolutely no sense" and asking for a supplemental deposition of Mr. Kato. *See* Exhibit 2 (excerpts of email exchange among counsel). In a telephone conversation that same day, undersigned counsel recalls specifically discussing with Mr. Sperber that contrary to Mr. Kato's earlier deposition, several of the post-December 7 payments from Ascension were for products other than gloves.[2]

Second, on November 13, 2023, Ascension's representative Michael Elstro was deposed and testified repeatedly and consistently that Ascension paid Rock Fintek "close to $37 million" for the gloves at issue. (*See* Exhibit 3 at 28:22, 35:16, 35:24, 37:5; *see also id.* at 36:20-22 ("we paid Rock Fintek what we had been invoiced for, so it was close to … 196 million at the 18-and-a-half cents per gloves" [i.e. $36,260,000])). That testimony – by the party that made the payments at issue – was also inconsistent with Mr. Kato's October 3 deposition. As set forth above, the simple math based on Mr. Kato's mistake would have resulted in Ascension paying Rock Fintek more than $38.8 million for the gloves, not "close to $37 million." Following Ascension's

---

[1] Rock Fintek has been transparent in its discovery efforts and did not fathom when opposing the Adorama Parties' motion *in limine* that the Court would be left with the impression that Rock Fintek somehow failed to correct Mr. Kato's testimony regarding its damages calculations prior to summary judgment. Rock Fintek appreciates the Court's leave to submit this letter to supplement the record to ensure a fair trial.

[2] Counsel for Rock Fintek would submit a declaration attesting to that discussion if requested by the Court.

deposition Adorama Parties thus had unequivocal notice of the discrepancy.

Third, on December 18, 2023, Rock Fintek served an expert disclosure *of Mr. Kato* as a non-retained expert in Rock Fintek's damages (attached as Exhibit 4), where it expressly corrected his prior testimony and clarified unequivocally that:

> Mr. Kato expects to further base his opinion on the fact that between March 2020 ***and February 2021***, Rock Fintek sold to Ascension Health various personal protective equipment, including gloves, gowns ***and masks***, in an amount of approximately $32 million ***that is unrelated to any of the Medcare gloves transactions at issue in this lawsuit***. Mr. Kato is further expected to rely on ***Rock Fintek bank account statements, invoices and purchase orders with Ascension Health*** and records of transactions with pertinent suppliers that Rock Fintek was able to locate upon a reasonable search, and has produced concerning these transactions.

Exhibit 4 (emphases added).

Fourth, and perhaps most importantly, on February 1, 2024, prior to summary judgment motion practice, Adorama Parties *took a second deposition of Mr. Kato as a percipient damages expert*. By the time of the second deposition, Adorama Parties were unquestionably on notice of Rock Fintek's damages theories and the corrections to Mr. Kato's earlier testimony, which was reflected in the questioning. The following testimony was elicited:

> Q. So I think you're referring to a line here where it says that, "Mr. Kato expects to further base his opinion on the fact that ***between March 2020 and February 2021***, Rock Fintek sold to Ascension Health various personal protection equipment including gloves, gowns ***and masks in the amount of approximately $32 million as unrelated to any of the Medcare glove transactions at issue in this lawsuit***."
> Is that what you are referring to?
> A. Correct.

Exhibit 5 (2/1/2024 Dep. Tr. Excerpts) at 11:10-21 (emphases added). The questioning continued:

> Q. … ***between March 2020 and February 2021***, Rock Fintek had revenue of $32 million…
>            \* \* \*
> Q. You said the $32 million is ***unrelated to Medcare***, right?
> A. Only $32 million -- ***yeah. It's unrelated***.
> Q. And that's revenue?
> A. Correct.
>            \* \* \*
> Q. Am I correct that Rock Fintek had approximately $24 million in revenue with Ascension prior to the purchase order at issue in this lawsuit?
> A. ***"$24 million"? We had $32 million unrelated***.

*Id.* at 15:8-9, 19:5-9, 21:12-15 (emphasis added). To the extent any doubt could remain, Mr. Kato

3

unequivocally corrected his testimony from October 3 at his second deposition and counsel for the Adorama Parties acknowledged this when he asked multiple times whether Rock Fintek had "24 million in revenue" which number was based on Mr. Kato's earlier (mistaken) testimony. The questioning did not stop there:

> Q. So am I correct in understanding that prior to the purchase order for 200 million gloves at issue in this lawsuit, **Rock Fintek had only actually done $24 million in revenue from Ascension**?
> A. No.
> Q. "No"?
> A. No. ….
> Q. So are you telling me that *if I were to go through Rock Fintek's bank statements* and add up the payments it received prior to entering into the purchase order in this lawsuit, I would find an excess of $24 million in revenue from Ascension?
> A. That's what I believe.
> **Q. I can tell you I've done that**, and I did not find an excess of $24 million in revenue from Ascension.
> ATTORNEY RAKHUNOV: Objection.
>
> \* \* \*
>
> Q. And you claim to have reviewed Rock Fintek's finances and business records in preparing your expert opinion?
> A. Yes, I did.
> Q. So how is it that you don't know how much revenue Rock Fintek was bringing in relation to its business with Ascension?
> A. I reviewed hundreds of pages of documents. So *if you want to refer to a document, then I can tell you what it says*. I don't have a photographic memory. I'm not claiming to have a photographic memory either. So show me the document, I can tell you. I reviewed them.
>
> \* \* \*
>
> A. I sold them three products … We sold them KN-95s, 3-ply mask, gowns and gloves.
>
> \* \* \*
>
> Q. Do you have any evidence that Ascension was willing to purchase those products from you in 2021?
> A. Yeah. **Banks records from the past history**.
> Q. That was prior purchases. I'm talking about future purchases.
> A. Well, they wanted to keep working with us. Every time they ordered, they ordered the same product with us over and over again. It wasn't a one time order of masks or gowns. It was multiple times.
> Q. Again, do you have any purchase orders that --
> A. Yes.
> Q. -- that --
> A. Yes.
> (Simultaneous colloquy.)
> ATTORNEY RAKHUNOV: One at a time.
> **THE WITNESS: Yes, I do. They bought it in 2021. They bought masks in 2021. It's in the bank records.**

4

*Id.* at 22:14-24:2, 35:7-13, 43:6-22 (emphases added). Despite Adorama Parties' counsel's acknowledgment that *he* went through Rock Fintek's bank statements, counsel did not "go through Rock Fintek's bank statements" with Mr. Kato at the deposition to have Mr. Kato simply identify each of the (less than 40) entries post-dating December 7, 2020, and chose not to introduce bank statements as an exhibit despite being put on unequivocal notice of the discrepancy with prior testimony.

The Adorama Parties chose not to introduce Rock Fintek's bank records as exhibits, chose not to ask Mr. Kato to identify specific payments from Ascension in Rock Fintek's bank records between December 2020 and February 2021, and chose not to ask Mr. Kato about the Ascension purchase orders that post-dated December 7, 2020, *all of which were timely produced in discovery* well in advance of depositions. Having made disclosures correcting Mr. Kato's earlier testimony, Rock Fintek had no obligation to question its own witness at his deposition to develop *its adversary's case*. Rock Fintek should not be punished by the extreme sanction of preclusion of evidence at trial because Adorama Parties strategically chose not to question Mr. Kato regarding the very documents that Rock Fintek identified as formulating the basis for its assertion that Ascension made payments to it for non-glove products **through February 2021**. Overwhelming authority in this Circuit supports the proposition that a party should not be punished by an adversary's strategic decision not to ask certain questions at a deposition. For example, in *Dash v. Seagate Tech. (US) Holdings, Inc.*, No. CV 13-6329 LDW AKT, 2015 WL 4257329, at *6 (E.D.N.Y. July 14, 2015), the Eastern District refused to allow a party to re-open a deposition where the party had an opportunity to, but did not, ask follow-up questions at a deposition regarding a topic that the witness had disclosed. The Eastern District aptly explained:

> Defendant's counsel had the opportunity to examine Dash with follow-up questions regarding the other drives that he testified he purchased and used during the relevant period. Although Plaintiff made reference to a number of external drives during his deposition, Seagate's counsel apparently did not probe further into these responses…. The information Seagate seeks to explore now could have been ascertained and further examined during Plaintiff's deposition.

*Id.*; *see also Sportvision, Inc. v. MLB Advanced Media, LP*, No. 18CV03025PGGVF, 2023 WL 6633556, at *3 (S.D.N.Y. Oct. 12, 2023) ("But, MLBAM did not ask Deutmeyer a single question about that topic, despite the information it had before the deposition about the calibration process. The fact that MLBAM chose not to ask any questions on the topic undermines its argument now that it was prejudiced by its inability to question Deutmeyer about the three withheld documents."); *Ramchandani v. CitiBank Nat'l Ass'n*, No. 119CV09124VMSDA, 2022 WL 2156225, at *6 (S.D.N.Y. June 15, 2022) (denying follow up discovery where "Plaintiff had the opportunity to ask Syme at the deposition questions regarding the notes taken by DOJ and regarding what CGSH said about Plaintiff and his chats, but chose not to ask any questions."); *Thompson v. Spota*, No. CV142473JMAAKT, 2017 WL 1155799, at *4 (E.D.N.Y. Mar. 27, 2017) (denying motion to re-open discovery where a party was aware about the general facts surrounding the contested topic yet "abandoned a more granular line of questioning" during depositions); *Miller v. Massad-Zion Motor Sales Co.*, No. 3:12 CV 1363, 2014 WL 4979349, at *3 (D. Conn. Oct. 6, 2014) ("[P]laintiff is not entitled to reopen the deposition with respect to the handwritten notes, in that she already was in possession of them prior to defendant Zion's deposition and thus could have inquired about

5

them had she chosen to do so."); *Savor Health, LLC v. Day*, No. 19-CV-9798 (RA) (JW), 2022 WL 2866429, at *5 (S.D.N.Y. July 21, 2022) (explaining in the context of a motion to reopen discovery that a party's "decision to ask certain questions and not others" at deposition regarding a disputed document "was a strategic decision by Savor's counsel that does not warrant the reopening of discovery.").

Consistent with Mr. Kato's February 1, 2024 testimony, Rock Fintek introduced evidence of payments from Ascension in a chart that it submitted on summary judgment, where it identified payments that were for the gloves at issue and those for other products, which Mr. Kato would have done at his deposition had counsel asked follow up questions on bank records and invoices that Mr. Kato expressly referenced and that counsel acknowledged having reviewed. In response to Rock Fintek's aversions regarding these payments at summary judgment, the Adorama Parties naturally denied that those aversions were undisputed but did not move to strike the charts or those aversions. Nor did the Adorama Parties move for summary judgment on Rock Fintek's damages theory involving the post-December 2020 Ascension payments.

## Conclusion

"Our system of justice is founded on the principle that litigation is to be a search for the truth; it is not some type of intellectual game that is circumscribed by the inflexible rules that define it." *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Properties LLC*, No. 01 CIV. 9291(JSM), 2002 WL 1163577, at *3 (S.D.N.Y. June 3, 2002) (citing Arthur T. Vanderbilt, Cases and Materials on Modern Procedure 10 (1952) ("The fundamental premise of the federal rules is that a trial is an orderly search for the truth in the interest of justice rather than a contest between two gladiators with surprise and technicalities as their chief weapons....")).

Here, the Adorama Parties not only had notice of the mistake in Mr. Kato's October 3, 2023 deposition but actually questioned Mr. Kato for the second time regarding the timing of Ascension payments. The fact that Adorama Parties decided not to question Mr. Kato on bank records that they had received and reviewed (presumably so that they could rely on a defunct soundbite from his first deposition) is a strategic decision for which Rock Fintek should not be unfairly punished. Any inconsistencies between Mr. Kato's first and second deposition are properly handled on cross examination. *See Advanced Fiber Techs. Tr. v. J & L Fiber Servs., Inc.*, No. 107-CV-1191 LEK/DRH, 2010 WL 1930569, at *6 (N.D.N.Y. May 11, 2010) (refusing exclusion of expert testimony on grounds of inconsistence between report and later deposition testimony because "[a]ny perceived inconsistencies should be addressed through cross-examination, and it is for the jury to decide the relative weight his testimony should be given.").

Thus, the extreme remedy of preclusion of evidence at trial is improper, unduly prejudicial to Rock Fintek, would result in a miscarriage of justice and would unfairly obscure from the jury the fundamental truth regarding the payments between Ascension and Rock Fintek.

Respectfully submitted,

*/s/Phillip Rakhunov*
Phillip Rakhunov

cc:   All counsel (via ECF)