

# LIPSIUS-BENHAIM LAW, LLP

80-02 Kew Gardens Road
Suite 1030
Kew Gardens, New York 11415
Telephone: 212-981-8440
Facsimile: 888-442-0284
www.lipsiuslaw.com

**ALEXANDER J. SPERBER**
DIRECT LINE: 212-981-8449
EMAIL: asperber@lipsiuslaw.com

<u>**VIA ECF**</u>
Honorable Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square, Room 2201
New York, NY 10007

December 30, 2024

      Re: *Kitchen Winners NY Inc. v. Rock Fintek LLC*,
        Case No. 22-cv-05276-PAE
        <u>Our File No: 5529.0002</u>

Dear Judge Englemayer:

  This firm represents plaintiff and counterclaim-defendant Kitchen Winners NY Inc., ("Kitchen Winners") as well as third-party defendant Adorama Inc., (collectively "Defendants"). Defendants respectfully submit this letter in response to the supplemental letter filed by Rock Fintek LLC ("Rock Fintek"), dated December 16, 2024.

  On December 12, 2024, the Court ruled from the bench and precluded Rock Fintek from introducing any evidence that contradicts the unambiguous testimony of its 30(b)(6) designee – Thomas Kato.  As Kato testified, **twice**, that *all* of the payments that Rock Fintek received from December 7, 2020 were for the gloves at issue, the Court held that Rock Fintek could not now – after fact-discovery ended – claim that some of the payments were actually for 3-ply masks.

  The Court provided Rock Fintek with limited leave to file a supplemental letter identifying testimony from Kato during his 30(b)(6) deposition where he recanted his previous testimony.  In the Court's words:

> If you can point to something in a subsequent -- subsequently testified to by Kato during the Rule 30(b)(6) deposition that takes back the quoted statement at issue, yes. Although, it would be

>mystifying to me why, given that this issue was just litigated, you didn't catch that.

(Dec. 12, 2024 Tr. [Ex. "A"] at 33:8-12.)

The Court was also crystal clear that Rock Fintek's supplemental damages disclosures would not suffice to allow Rock Fintek to walk back its deposition testimony. (Ex. "A" at 30:7-22.) The Court also clarified that the fact that a tranche of discovery included invoices that purportedly contradict Kato's testimony was irrelevant. (*Id*. 32:2-24.) Finally, the Court was explicit – repeating the point at least five times – that Rock Fintek would need to show that Kato somehow changed his testimony during **fact** discovery. (*Id*. 20:17-21:8, 34:11-13.)

In its supplemental letter, Rock Fintek fails to identify a single instance where it unequivocally corrected the testimony from Thomas Kato – its designated 30(b)(6) witness. Instead, Rock Fintek raises a host of theories and communications that, upon some further analysis, *might* somewhat contradict Kato's unambiguous and binding testimony. None of Rock Fintek's post-hoc explanations were sufficient to clearly advise Kitchen Winners and Adorama that Kato's testimony was wrong, as detailed below.

## I. Rock Fintek's Supplemental Disclosures Are Irrelevant

Despite the Court's explicit directive that supplemental disclosures would not suffice to apprise Kitchen Winners that Kato's testimony was wrong, Rock Fintek attempts to do just that. Rock Fintek points to its amended Rule 26 Disclosures and the fact that Rock Fintek identified that it sought recompense for alleged overages as "by definition, inconsistent with Mr. Kato's earlier testimony because Rock Fintek could not assert such damages if all post-December 7 payments were for the gloves at issue in this lawsuit."

As the Court already held, Rock Fintek's theory of its damages is inadequate. As an initial matter, they are not binding in the same way as sworn testimony by a 30(b)(6) designee; the disclosures are signed by counsel and set forth legal theories not factual admissions by a principal. Further, Kitchen Winners is not required to engage in mental gymnastics to see whether Rock Fintek's disclosures were consistent with its testimony.

Moreover, the related emails between counsel regarding whether Rock Fintek's disclosures made sense are likewise irrelevant. As is evident from Rock Fintek's disclosure that referenced various documents produced in discovery, Rock Fintek's disclosures were far from clear. In *that* vein, I advised Mr. Rakhunov that it made no sense, and Mr. Rakhunov's response in no way indicated that Rock Fintek was retracting its testimony that all post-December 7th payments were for the gloves at issue in this lawsuit.

Finally, I do not recall the conversation referenced by Mr. Rakhunov in his letter. The first time that I learned that Mr. Kato was retracting his earlier testimony was upon reading the affirmation that he submitted in connection with the motions for summary judgment. This is evident from my questioning of Mr. Kato at his expert deposition (discussed below), after the close

of fact discovery, where my questions clearly show my understanding that – based upon his prior testimony – all payments received by Rock Fintek from Ascension after December 7, 2020 were for the gloves at issue in this lawsuit. (Feb. 1, 2024 Kato Expert Deposition [Ex. "B"] at pp. 15:8-9, 22:14-19, 23:3-8.)

The only conversation I recall having with Mr. Rakhunov regarding Mr. Kato's purportedly mistaken testimony was on or about August 13, 2024 – after the Court's August 6, 2024 summary judgment decision. Mr. Rakhunov was aware that I was blindsided by the affidavit that Kato submitted in opposition to Kitchen Winners' motion for summary judgment. On August 20, 2024, Mr. Rakhunov wrote that "your clients believe that Rock Fintek got paid about $2.5 million more than it did by Ascension for the gloves." He then directed me to Kato's affidavit and wrote that he was "happy to go through these with [me]." My further follow-up communications – evidencing confusion about the supporting documentation – make clear that I had no idea that Kato had supposedly retracted his testimony. (Ex. "C.")

## II. Ascension's Testimony does not Bind Rock Fintek and was Ambiguous

Rock Fintek then seeks to rely on the testimony from other non-parties to somehow show that Rock Fintek withdrew Kato's testimony. According to Rock Fintek, because Ascension testified that it paid Rock Fintek "close to 37 million," Rock Fintek should not be bound by its 30(b)(6) designee's testimony.

At the outset, Ascension's testimony is not binding on any party and Rock Fintek cannot rely on Ascension's testimony to obfuscate the fact that Rock Fintek's own testimony – to which it is bound – differs from that of Ascension. Further, Ascension's designated witness was clear that he did not actually know exactly how much Ascension paid Rock Fintek. (Nov. 13, 2023 Ascension Deposition [Ex. "D"] at p. 37:2-5.) Kato himself testified that Michael Elstro (Ascension's designated witness) was not reliable when it came to the accounting. ("Mr. Elstro is not an expert in accounting at Ascension. He doesn't work in accounting. . . . The accounting department would. So, Mr. Elstro is not in accounting. I don't know what numbers he has or doesn't have, but he's not the accounting department at Ascension, so this --.") (Ex. "B" at pp. 22:20-23:2.)

Additionally, Ascension gave an approximation of close to $37 million – which does not necessarily contradict Kato's deposition testimony of more than $38 million. An approximation, by definition, is not an exact amount. On that note, it bears mention that Rock Fintek now claims that it was only paid a little more than $36 million – which is not consistent with Ascensions' testimony either.

Finally, the primary reason for the Court's decision – which Rock Fintek does not address at all – was that Kitchen Winners would be prejudiced after the close of discovery if Rock Fintek would be allowed to introduce evidence that contradicts its sworn and binding testimony. Ascension's testimony does not change that calculus. As the Court noted, it is not Kitchen Winners' obligation to carry Rock Fintek's water and to try to disprove Rock Fintek's binding

testimony – not based on supplemental productions and not because of non-party testimony. (Ex. "A" at p. 32:16-24.) The only relevant question is whether *Rock Fintek* – and not some unrelated non-party with its own separate interests – corrected the record during fact discovery. The only possible answer is, no.

The problem of relying on Ascension's testimony as the lode star of the inquiry is highlighted by testing it against some of the documents produced during discovery – whereupon significant questions arise, which cannot be properly answered after the close of fact discovery. Specifically, Ascension testified that it paid Rock Fintek close to $37 million. Ascension also testified that it paid Rock Fintek for all the gloves for which Rock Fintek sent an invoice. (Ex. "D" at p. 36:20-37:1.) A brief review of invoices that Rock Fintek sent to Ascension for gloves shows that Rock Fintek invoiced at least $41,828,130 for gloves after December 7, 2020. (Ex. "E.") Perhaps some of the invoices were for other gloves. Perhaps not. As discovery has long closed, Kitchen Winners has no way of knowing. The only definite is Rock Fintek's clear and unambiguous testimony – to which it should be held.

### III.   Kato's Expert Deposition was After the Conclusion of Fact Discovery

Rock Fintek then cites Kato's expert testimony as if that testimony – after the close of fact discovery – is sufficient to change Kato's previous testimony in his capacity as a fact witness. It is not.

***First***, fact discovery ended on November 16, 2023 (ECF Nos. 107, 117) – two and a half months before Kato's deposition as an expert witness. As the Court explicitly held, Rock Fintek would need to show that Kato retracted his testimony during fact discovery, when Kitchen Winners had the opportunity to probe further. Kato's subsequent expert deposition testimony came after the close of fact discovery and is therefore irrelevant.

***Second***, context matters. The focus of Kato's fact deposition differed immensely from that of his expert deposition. Rock Fintek initially sought damages of more than a hundred million dollars based on its theory of future lost profits that it might have received from Ascension. The purpose of Kato's expert deposition was to question the validity of Rock Fintek's calculations pertaining to its future potential business with Ascension. On that complicated issue – *i.e.*, figuring out (i) which products Rock Fintek might have sold to Ascension; (ii) what quantity of those products; and (iii) at what profit margin – Kitchen Winners deposed Kato as an expert. Kitchen Winners did not depose Kato to figure which of Ascension's payments went towards the gloves. Kitchen Winners already did that months earlier at Kato's 30(b)(6) deposition.

***Third***, Kato's expert testimony was consistent with his earlier testimony. To wit, the relevant time frame on Rock Fintek's expert disclosures as well as during the expert deposition was "between March 2020 and February 2021." That broad range encompasses December 7, 2020. Kato did not explicitly take back his earlier testimony and testify that Ascension paid Rock Fintek for masks after December 7, 2020. Instead, Kato spoke in vague and unspecified terms about a period of eleven months. That is insufficient to retract Kato's clear prior testimony.

*Fourth*, the cited portions from Kato's expert deposition do not reference which payments from Ascension went towards which products. Instead, all of the excerpted portions seem to relate to confusion as to whether the transactions that were unrelated to the gloves were worth twenty-four million dollars or thirty-two. It is entirely unclear where Rock Fintek sees that Kato withdrew his earlier testimony by insisting that the unrelated transactions were worth thirty-two million dollars and not twenty-four.

At best, Rock Fintek seems to be arguing that if Rock Fintek engaged in unrelated transactions worth thirty-two million dollars then some portion of the payments after December 7, 2020 must have been for masks. Again, subsequent testimony that forces Kitchen Winners to analyze whether and how it somehow contradicts earlier testimony is not sufficient to apprise Kitchen Winners that Kato was withdrawing his prior testimony. The proper method would have been for Kato to say some version of "I made a mistake during my prior deposition and actually some payments after December 7, 2020 were for masks, specifically the payments on . . ." – similar to the clear affidavit that he submitted at the summary judgment stage. Providing a confusing colloquy that is vaguely inconsistent with earlier testimony simply does not cut it.

In any event, Kato's testimony (to the extent that it comports with the actual bank records) is limited to the time before December 7, 2020.

> Q. Am I correct that Rock Fintek had approximately $24 million in revenue with Ascension *prior to the purchase order at issue in this lawsuit*?
> A. $24 million? We had $32 million unrelated.
>
> * * * * *
>
> Q. So am I correct in understanding that *prior to the purchase order for 200 million gloves* at issue in this lawsuit, Rock Fintek had only actually done $24 million in revenue from Ascension?
> A. No.
> Q. No?
>
> * * * * *
>
> Q. So are you telling me that if I were to go through Rock Fintek's bank statements and add up the payments it received *prior to entering into the purchase order in this lawsuit*, I would find an excess of $24 million in revenue from Ascension?
> A. That's what I believe.

(Ex. "B" at pp. 15:8-9, 22:14-19, 23:3-8.) (Emphases added.)

Accordingly, regardless of the amount that Ascension paid Rock Fintek in unrelated transactions, the unrelated transactions being discussed were specifically limited to transactions that occurred before December 7, 2020 – exactly as Kato testified at his 30(b)(6) deposition.

Lipsius-BenHaim Law, LLP
December 30, 2024
Page **6** of **6**

At bottom, Kato did not withdraw his earlier testimony during his expert deposition. He merely said a lot of words and created a lot of confusion – none of which unambiguously apprised Kitchen Winners that he had misspoke earlier.

## IV. ROCK FINTEK'S CITED CASELAW IS IRRELEVANT

Rock Fintek then seeks to shift the blame for its designated 30(b)(6) witness's testimony and for its utter failure to correct that testimony on Kitchen Winners. Rock Fintek suggests that Kitchen Winners was, for some reason, required to introduce Rock Fintek's bank records as exhibits and to go through those with Kato. Rock Fintek then asserts that it "should not be punished . . . because Adorama Parties strategically chose not to question Mr. Kato regarding the very documents that Rock Fintek identified . . ." That assertion is followed by a string of citations for the proposition that one party should not be punished for another's strategic decisions.

As the Court already noted "it's not well taken now, for the second time, both in the written argument as well as today, to throw it on your adversary." (Ex. "A" at p. 32:22-24.) Despite that admonition, Rock Fintek attempts to blame Kitchen Winners for a *third* time for Rock Fintek's mistakes (or lies). Moreover, Rock Fintek's citations miss the point. Rock Fintek is being precluded not because Kitchen Winners did not ask additional questions. Rather, Rock Fintek is being precluded from changing its testimony long after the close of discovery because **Rock Fintek** provided misleading testimony and then never corrected it.

As Rock Fintek recognizes, "the fundamental premise of the federal rules is that a trial is an orderly search for the truth in the interest of justice rather than a contest between two gladiators with surprise and technicalities as their chief weapons." Indeed. For that very reason – minimizing the chance for surprise – the Federal Rules prescribe for an orderly discovery process and specifically Rule 30(b)(6). Allowing Rock Fintek to suddenly change key testimony long after the close of fact discovery would be the epitome of surprise. Respectfully, this Court should not countenance the attempt.

I thank the Court for its continued attention to this matter.

Respectfully submitted,

*/s/ Alexander J. Sperber*

Alexander J. Sperber

cc:   All Counsel (via ECF)