
NEW YORK    BOSTON
www.psdfirm.com

**POLLACK SOLOMON DUFFY LLP**
48 Wall Street, 31st Floor, New York, NY 10005
617-439-9800
prakhunov@psdfirm.com

January 2, 2025

<u>**VIA ECF**</u>
Honorable Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square, Room 2201
New York, NY 10007

   Re: *Kitchen Winners NY Inc. v. Rock Fintek LLC*, Case No. 22-cv-05276-PAE
     <u>**Response to Supplemental Letter Regarding Wenzy Inc. and LevMed**</u>

Dear Judge Engelmayer:

  Pursuant to the Court's rulings from the bench, I write on behalf of Rock Fintek LLC in response to the letter (ECF 190) of Adorama, Inc. and Kitchen Winners NY Inc. ("Adorama Parties") supplementing certain arguments on parties' motions *in limine*.

**I. Adorama Parties Should Be Precluded from Introducing Records of Purported Payments to Wenzy Inc. and Testimony from a Purported Wenzy Inc. Principal.[1]**

  In the supplemental letter, Kitchen Winners does not present any new arguments or information to support its effort to use at trial screenshots of the barely legible unauthenticated documents that Kitchen Winners produced after depositions were completed on the *last day* of discovery that it claims constitute proof of payment by it for the purported Wenzy trucking services. Kitchen Winners' argument that Rock Fintek did not request those records until Mr. Weiner's deposition is disingenuous.

  First, the purported Wenzy payments constitute a significant aspect of Kitchen Winners' damages claim against Rock Fintek. As any plaintiff would be required to do, Kitchen Winners

---

[1] With respect to the purported Wenzy invoices that Kitchen Winners provided to Rock Fintek during the course of the parties' dealings and produced in discovery, Rock Fintek does not object to the introduction of those invoices for the limited purpose of showing the jury that Kitchen Winners sent those invoices to Rock Fintek, but continues to object to any argument to the jury that those invoices were actually *from Wenzy* because Kitchen Winners has never produced any evidence suggesting that to be true and is unable to authenticate those invoices as Wenzy business records.

had an affirmative obligation under Rule 26 to identify pertinent witnesses and to produce documents substantiating the exorbitant trucking costs reflected in the Wenzy invoices that Kitchen Winners seeks to recover, including support for Kitchen Winners' contention that it actually paid the invoices that underlie more than half of Kitchen Winners' alleged damages. Kitchen Winners' claim of mere oversight is neither credible nor excusable under the circumstances. Second, Rock Fintek actually sought this information in discovery and Kitchen Winners agreed to produce it in written discovery responses. *See* ECF 173-10.

Indeed, it was not surprising to Rock Fintek that Kitchen Winners failed to produce any documents concerning Wenzy or records of payments to Wenzy in discovery because – as Rock Fintek has claimed all along and will prove at trial – no such documents exist. Instead, shipments for which Kitchen Winners submitted Wenzy invoices were in fact made by other carriers such as Uber Freight or Del Express, not some entity called Wenzy for which Kitchen Winners speciously billed exorbitant amounts. *Compare* ECF 173-2 at pp. 4-12 (purported Wenzy invoices for shipments on Friday, May 14, 2021)*, with* AKW0000843 (Exh. 1 hereto) (May 16, 2021 email from logistics provided to Weiner regarding "putting together bills shipped on Friday [May 14] with Uber freight."); *compare also* ECF 173-2 (purported Wenzy invoices identifying load numbers MC018 – MC025) with AKW001043 (Exh. 2 hereto) (May 20, 2021 email from Weiner to logistics provider identifying loads MC018-MC020 as going with Del Express and loads MC021-MC025 "with Uber"); *see also* AKW001277 (Exh. 3 hereto) (Uber Freight Bill of Lading for May 14, 2021 shipments).

Accordingly, Adorama Parties should be precluded from using at trial the purported records of payments to "Wenzy Inc."

## II.    Adorama Parties Should Be Precluded from Introducing Testimony from a Purported Wenzy Principal.

Kitchen Winners' supplemental letter confirms precisely what Rock Fintek argued in its underlying motion – that it would be patently unfair for Kitchen Winners to call an individual, identified now for the first time as David Wertzberger, to supposedly authenticate Wenzy invoices. Kitchen Winners acknowledges that it did not identify Wenzy or David Wertzberger by name as potential parties with discoverable information in its Rule 26 disclosures. Indeed, Mr. Wertzberger was not even disclosed by name as a potential witness in Adorama Parties' pretrial filings. Ktichen Winners also acknowledges in its supplemental letter that the address for Wenzy identified on the purported invoices produced in discovery and listed with the New York Secretary of State is not a legitimate address and now claims for the first time that "we have located Mr. Wertzberger's personal address" at two potential addresses in Monroe, New York. This is exactly the type of disclosure that Kitchen Winners was required to make in discovery, particularly where it was indisputably aware of Rock Fintek's effort in discovery to subpoena Wenzy at the *wrong* address yet remained silent until the eve of trial.

Assuming for the moment that Wenzy is in fact a real company with whom Kitchen Winners had a business relationship for shipping gloves to Rock Fintek, then Kitchen Winners undoubtedly had superior access to Wenzy and had the obligation to disclose in its Rule 26 disclosures, "the name and, if known, the address and telephone number of each individual likely

2

to have discoverable information." Fed. R. Civ. P. 26(a)(1)(A)(i). With the purported Wenzy trucking costs comprising a significant portion of the damages that Kitchen Winners seeks (approximately $800,000), and "critically important" in Kitchen Winners' own words, it is not credible or excusable for Kitchen Winners to claim that it was a mere oversight to identify Wenzy or Mr. Wertzberger by name in discovery.

Kitchen Winners' effort to minimize the harm and prejudice to Rock Fintek from the lack of disclosure falls flat. As Kitchen Winners knows, Rock Fintek firmly believed before this litigation began and throughout this case that Wenzy is a sham. Had Kitchen Winners identified Wenzy or Mr. Wertzberger in its Rule 26 disclosures, Rock Fintek would have sought and obtained from Kitchen Winners in discovery (or through ordinary cooperation among counsel) contact information for Wenzy and would have been able to seek Court intervention in the event there was a dispute over discovery from an *identified* witness. As the Court may recall, Rock Fintek's subpoena to Wenzy sought, in relevant part:

> 2. All records of transactions between you and Adorama Inc., Kitchen Winners NY Inc., Hershey Weiner, Mendel Banon or Joseph Mendlowitz ("Adorama Parties") involving logistics or shipping of products between January 1, 2021 and July 30, 2021.
>
> 5. All records, documents and communications concerning "Medcare" brand protection or examination gloves between January 1, 2021 and July 30, 2021.
>
> 6. All records, documents and communications reflecting gloves received for the benefit of Adorama Parties, JNS Parties, or Rock Fintek LLC from January 1, 2021 to July 30, 2021, including but not limited to documentation of the origin of gloves.
>
> 7. All bills of lading, proofs of deliveries or other documents concerning products for which logistics or shipping services were provided for the JNS Parties, the Adorama Parties, or Rock Fintek, between January 1, 2021 and July 30, 2021.

ECF 173-6 at p. 4.

In other words, had Kitchen Winners timely disclosed Mr. Wertzberger or Wenzy in discovery as a witness on whom Kitchen Winners intended to rely at trial, Rock Fintek would have had an opportunity to obtain legitimate contact information for Wenzy from Kitchen Winners, would have sought and obtained in discovery detailed information from Wenzy about its purported involvement in the underlying business relationship, and would have taken Mr. Wertzberger's deposition. Instead, Rock Fintek's process server arrived with a subpoena at an empty house while Kitchen Winners silently stood by. This conduct is the definition of sandbagging. It would be unduly prejudicial and harmful for Rock Fintek to have Mr. Wertzberger or any Wenzy representative to testify at trial as to the authenticity of purported invoices or other supposed business dealings between Kitchen Winners and Wenzy without Rock Fintek having had an ability to test such evidence through discovery.

3

The authorities cited by Kitchen Winners in their supplemental letter are either distinguishable or support the preclusion of testimony from any Wenzy witness at trial. In *Cajero Torres v. Sushi Sushi Holdings Inc.*, No. 19CIV2532PAERWL, 2021 WL 2158017, at *3 (S.D.N.Y. May 27, 2021), this Court *precluded* trial testimony from two defense witnesses who were not disclosed in discovery. The Court explained in *Torres* that even through there was an "*unlikelihood*" that plaintiffs in that case would have deposed the witnesses even if they were disclosed, plaintiffs "would be prejudiced by the admission of these witnesses' testimony." Here, there is virtually no doubt that Rock Fintek would have deposed Mr. Wertzberger or another Wenzy representative had they been identified in discovery, including because Rock Fintek *attempted to subpoena Wenzy*, as detailed above and in the underlying motion papers. This Court's decision in *Torres* therefore supports preclusion. *See also Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 95 (S.D.N.Y. 2002) (affirming a preclusion order because "Mopex's failure to amend seasonably was not harmless. The AMEX was prejudiced by Mopex's late disclosure of its claim regarding patent claim 34 because the AMEX was: (1) deprived of the opportunity to pursue needed fact discovery unless it was willing to accept a substantial delay in the case, and (2) compelled to have its expert assess the issue at the last minute without the benefit of fact discovery."); *Olutosin v. Gunsett*, No. 14-CV-00685 (NSR), 2019 WL 5616889, at *5 (S.D.N.Y. Oct. 31, 2019) (limiting testimony to be provided by an undisclosed witness for the defendants and rejecting a "rigid" application of the rules to preclude undisclosed witnesses by a *pro se* plaintiff where *pro bono* counsel was only appointed after the close of discovery and where the delayed disclosure was plainly harmless to the defendants); *Matter of Manhattan by Sail, Inc.*, 436 F. Supp. 3d 803, 811 (S.D.N.Y. 2020) (no exclusion of *expert* testimony that went beyond the expert report at a *bench trial* where respondent was "minimally prejudiced, if at all" and the court gave "no weight" to the contested testimony).

Kitchen Winners has proffered no legitimate excuse for its failure to disclose Wenzy or Mr. Wertzberger as fact witnesses in discovery, particularly in light of Rock Fintek's efforts to subpoena Wenzy and Kitchen Winners' superior access to Wenzy. For the reasons stated above and in Rock Fintek's underlying motion, significant harm and prejudice would befall Rock Fintek in the event that Mr. Wertzberger is allowed to testify at trial.

### III.  The Precise Quantity of LevMed Gloves Sold by Adorama Parties to Rock Fintek Is a Triable Question of Fact.

With respect to the Adorama Parties' contention that Rock Fintek should be bound by the allegation in its amended complaint, before any discovery, that they sold Rock Fintek *approximately* 3 million mis-branded LevMed gloves, that argument presents nothing new but merely repeats the argument that the Court has already rejected and should continue to reject. *See Rodriguez–Suris v. Montesinos*, 123 F.3d 10, 20 (1st Cir. 1997) (Rule 8(e)(2) allows inconsistent positions in the pleadings, and "[e]specially at the early stages of litigation, a party's pleading will not be treated as an admission precluding another, inconsistent pleading").

The Adorama Parties also omit from their papers that in their answer to Rock Fintek's First Amended Complaint, they did not admit the purported fact that they now argue is binding for trial but oddly pled that they "deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph '95' of the FAC" even through that allegation

4

was directed to their own conduct. ECF 75 at ¶ 95. Naturally, the parties conducted thorough discovery regarding the number of various gloves delivered, which remains a hotly disputed topic. The Adorama Parties did not resist discovery regarding the number of LevMed gloves they sold to Rock Fintek, which unsurprisingly revealed numbers somewhat different (*e.g.,* 2.495 million versus 3 million LevMed gloves) from what Rock Fintek believed at the pleading stage.

The cases on which Adorama Parties rely in their letter are readily distinguishable from the circumstances here. In *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 524 (2d Cir. 1985), the Second Circuit affirmed the District Court's dismissal of a complaint on *pre-discovery* cross-motions for summary judgment based on contractual language in a release that the District Court found unambiguous and taking as true an allegation in the complaint by which Plaintiff was bound as the pleading stage. *See also Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 581 F. Supp. 241, 242 (S.D.N.Y. 1984), *aff'd*, 757 F.2d 523 (2d Cir. 1985). There is no indication in the Second Circuit's or the District Court's opinions in *Bellefonte* that any discovery was conducted. Instead, the evidence that the District Court and Second Circuit rejected in the *Bellefonte* case were affidavits that plaintiff submitted in opposition to the summary judgment motion "stating that the validity of the Universal reinsurance contract had not been in dispute" which directly contradicted plaintiff's allegation that the parties "had become involved in a dispute regarding, *inter alia*, the 'validity' of the reinsurance contract." *Bellafonte Re Ins. Co.,* 757 F.2d at 528.

In *Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*, No. 22-CV-7962 (RA), 2024 WL 4265646, at *3 (S.D.N.Y. Sept. 23, 2024), this Court did not address any pertinent evidentiary issues but considered whether to impose sanctions on counsel who continued to pursue a case after defendants "provided evidence demonstrating the allegations necessary to establish standing were false" on a motion to dismiss. *See also Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand*, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (rejecting plaintiff's Rule 54(b) challenge to a dismissal of a *third* amended complaint pre-discovery and finding that "there was no 'new evidence'" to support a challenge to the dismissal).

Accordingly, the Court's ruling regarding the quantity of LevMed gloves should stand.

Respectfully submitted,

*/s/Phillip Rakhunov*
Phillip Rakhunov

cc:     All counsel (via ECF)