# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KITCHEN WINNERS NY INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ROCK FINTEK LLC, | ) |
| | ) |
| Defendant, | ) |
| | ) Civil Action No. 22-cv-05276-PAE |
| ROCK FINTEK LLC, | ) |
| | ) |
| Counterclaim and Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| KITCHEN WINNERS NY INC, | ) |
| | ) |
| Counterclaim Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| ADORAMA INC., HERSHEY WEINER, JOSEPH MENDLOWITZ, JNS CAPITAL HOLDINGS LLC and JOEL STERN, | ) |
| | ) |
| Third-Party Defendants. | ) |

## JOINT PRETRIAL ORDER

Defendant and third-party/counterclaim plaintiff Rock Fintek LLC ("Rock Fintek"), plaintiff/counterclaim defendant Kitchen Winners NY Inc. ("Kitchen Winners"), and third-party defendant Adorama, Inc. ("Adorama") respectfully submit this pretrial order.[1]

i.      **Full Caption of the Action.**

Set forth above.

ii.     **The names, law firms, addresses, and telephone and fax numbers of trial counsel.**

*Counsel for Rock Fintek:*

Phillip Rakhunov
John Yokow

POLLACK SOLOMON DUFFY LLP
48 Wall Street, 31st Floor
New York, NY 10005
Telephone: (212) 493-3100
Facsimile: (212) 434-0109
prakhunov@psdfirm.com
jyokow@psdfirm.com

*Counsel for Kitchen Winners:*

Alexander J. Sperber
David BenHaim
Yisroel Steinberg
LIPSIUS-BENHAIM LAW, LLP
80-02 Kew Gardens Road, Suite 1030
Kew Gardens, New York, 11415
Tel: 212-981-8440
Fax: 888-442-0284
Email:
asperber@lipsiuslaw.com
dbenhaim@lipsiuslaw.com
ysteinberg@lipsiuslaw.com

*Counsel for Adorama Inc:*

Avram E. Frisch
The Law Office of Avram E. Frisch, LLC
1 University Plaza, Suite 119 Hackensack, NJ 07601

---

[1] Rock Fintek has reached a settlement with JNS Capital Holdings LLC and Joel Stern.

Telephone: 201-289-5352
Facsimile: 866-883-9690
Frischa@avifrischlaw.com

### iii.    Subject Matter Jurisdiction.

On or about May 17, 2022, Kitchen Winners commenced an action in the Supreme Court State of New York, New York County, alleging that Rock Fintek failed to pay Kitchen Winners the full amount owed for gloves and associated shipping costs that Rock Fintek purchased at the height of the Covid-19 pandemic. Rock Fintek was served in the State Court Action on or about May 25, 2022.

Rock Fintek removed this case from the New York County Supreme Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332. Rock Fintek then impleaded Adorama and former defendants JNS Capital Holdings LLC and Stern.

Plaintiff Kitchen Winners is a New York corporation with its principal place of business in Brooklyn, New York. Third party defendant Adorama Inc. is a New York corporation with principal places of business located at 1134 53rd Street, Brooklyn, New York 11219 and 42 W 18th St, New York, NY 10011. Thus, Kitchen Winners and Adorama are citizens of New York for purposes of establishing diversity jurisdiction.[2]

Rock Fintek maintains that it is a Delaware limited liability company whose sole member is Thomas Kato, an individual domiciled in and a citizen of the State of Florida. Thus, Rock Fintek is a citizen of Florida for purposes of establishing diversity jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citizenship of a limited liability company is determined by the citizenship of its members). Accordingly, complete diversity exists. 28 U.S.C. §1332(a)(3).

---

[2] Former third-party defendants JNS Capital Holdings LLC and Joel Stern are citizens of New York.

The parties' claims and counterclaims expressly allege amounts that meet the amount in controversy requirement of 28 U.S.C. §1332(a). Kitchen Winners seeks approximately $1,000,000 in damages for alleged transportation costs and for unpaid gloves, and Rock Fintek seeks approximately $2.75 million in damages for an unpaid rebate and overpayments for glove overages.

All parties agree that subject matter jurisdiction is present in this Court.

iv. **A brief summary by each party of the claims and defenses that the party asserts remain to be tried.**

**<u>KITCHEN WINNERS STATES AS FOLLOWS:</u>**

At the height of the Covid-19 Pandemic, Kitchen Winners sold millions of gloves to Rock Fintek. Initially, Kitchen Winners sold gloves to Rock Fintek without a written agreement in what has been termed "one-off agreements." Thereafter, in April 2021, Kitchen Winners and Rock Fintek entered into a Sales and Purchase Agreement ("SPA"), pursuant to which Kitchen Winners agreed to sell Rock Fintek an additional 150,000,000 gloves. After Kitchen Winners delivered those 150,000,000 gloves to Rock Fintek, Rock Fintek requested that Kitchen Winners continue to provide it with even more gloves – which Kitchen Winners did.

Kitchen Winners maintains that Rock Fintek owes an outstanding bill of approximately one and a half million dollars for the gloves and associated trucking and storage costs. Rock Fintek is contractually obligated under the terms of the SPA to pay for the trucking and storage costs. Additionally, as to the gloves delivered in excess of the SPA, Rock Fintek was unjustly enriched – at Kitchen Winners' expense – when it refused to pay Kitchen Winners for the gloves for which Rock Fintek was fully paid by its customer.

Rock Fintek has asserted that Kitchen Winners owes it $750,000 as a rebate under

paragraph 8 of the SPA.  That paragraph, however, only required Kitchen Winners to pay a rebate to Rock Fintek if Rock Fintek timely made all payments due under the agreement.  Rock Fintek did not do so.  Further, Rock Fintek cannot assert a claim for breach of contract against Kitchen Winners, given that Rock Fintek itself is in breach of the SPA – namely, by failing to "arrange for and pay the cost of ground transportation after customs clearance" as required by paragraph 5 of the SPA.

Rock Fintek also claims that Kitchen Winners must refund the amounts that Rock Fintek paid it in excess of the SPA.  This appears to be a claim for unjust enrichment.  However, Kitchen Winners provided Rock Fintek gloves in return for that money – gloves that Rock Fintek resold to its customer, Ascension.  Further, Rock Fintek was paid in full for those gloves by its customer. Accordingly, any claim of unjust enrichment is wholly unfounded.

## ADORAMA STATES AS FOLLOWS

Joseph Weiner and Joseph Mendlowits knew each other as members of the same community.  Joseph Mendlowitz is a director of several departments at Adorama Inc.  Adorama was not related in any way to the "one-off" transactions between Kitchen Winners and Rock Fintek.  Those were for smaller orders and Kitchen Winners did not need outside funding in order to finance those.

Prior to entering into the SPA with Rock Fintek, however, Kitchen Winners reached out to Adorama and requested that Adorama loan Kitchen Winners the funds necessary to finance the purchase of the upcoming contemplated glove order.  In order to secure its loan, Adorama appeared on the SPA in its capacity as lender.  Accordingly, Rock Fintek was required to pay the initial deposit to Adorama.  Adorama had no other obligations under the SPA.  Neither Mendlowits nor anyone else at Adorama communicated with Rock Fintek or its principals.

Rock Fintek has asserted a claim against Adorama for breach of contract. Rock Fintek contends that Adorama is liable for Kitchen Winners' failure to pay it the rebate described above. However, in addition to the defenses that Kitchen Winners is asserting, Adorama also maintains paragraph 8 of the SPA only obligated the "Seller" to provide a rebate. "Seller" is defined to solely refer to Kitchen Winners. Accordingly, Adorama could not have breached that provision.

To the extent that Rock Fintek is also asserting a claim against Adorama arising from any breach of the SPA or any other claim it has asserted against Kitchen Winners, Adorama raises the same defenses as Kitchen Winners. Adorama also maintains that it had no role in connection with any post-contract transactions. Any money that it received from Rock Fintek in connection with that transaction was immediately passed on to Kitchen Winners. Accordingly, Adorama was not enriched – whether justly or unjustly – from those transactions at all.

## KITCHEN WINNERS AND ADORAMA PROVIDE THE FOLLOWING PROCEDURAL HISTORY

Kitchen Winners commenced this action via summons and complaint dated May 17, 2022, asserting claims of breach of contract and unjust enrichment against Rock Fintek.

Rock Fintek counterclaimed and brought third-party claims, impleading Hershey Weiner, Adorama, Joseph Mendlowitz, JNS, and Joel Stern. Rock Fintek alleged the following causes of action: (i) breach of contract, (ii) breach of the covenant of good faith and fair dealing, (iii) fraud in the inducement, (iv) negligent misrepresentation, (v) unjust enrichment, (vi) tortious interference with existing and prospective business relations, (vii) conspiracy, and (viii) breach of warranty – all arising out of Rock Fintek's allegations that the gloves failed to meet the required specifications.

By Memorandum and Order dated March 31, 2023, this Court dismissed Rock Fintek's causes of action against Kitchen Winners, Adorama, Weiner, and Mendlowitz for (i) fraud, (ii)

negligent misrepresentation, (iii) tortious interference with existing and prospective business relations, and (iv) fraud. By that same Order, the Court dismissed Rock Fintek's cause of action for breach of warranty against Joseph Weiner – thereby eliminating all claims against him.

Following discovery, Kitchen Winners and Adorama moved for summary judgment. By Memorandum and Order dated August 6, 2024, this Court dismissed Rock Fintek's causes of action for (i) breach of warranty against Kitchen Winners, Adorama, and Mendlowitz, eliminating this cause of action entirely, and (ii) covenant of good faith and fair dealing against Adorama.

Following the Courts' decisions on the motion to dismiss and summary judgment, the following causes of action remain to proceed to trial:

- Kitchen Winners cause of action against Rock Fintek for breach of the SPA, arising out of Rock Fintek's refusal to pay the trucking and associated storage costs;

- Kitchen Winners cause of action against Rock Fintek for unjust enrichment, arising out of Rock Fintek's refusal to pay for the gloves that it requested in excess of the SPA;

- Rock Fintek's cause of action against Kitchen Winners and Adorama for breach of the SPA;

- Rock Fintek's cause of action against Kitchen Winners and Adorama for unjust enrichment;

- Rock Fintek's cause of action against Kitchen Winners for breach of contract arising out of the one-off transactions – limited to nominal damages only. [Rock Fintek to drop claim for trial without prejudice to reinstating if the lost profits damages ruling is overturned on appeal]

- Rock Fintek's cause of action against Kitchen Winners for breach of covenant of good faith and fair dealing – limited to nominal damages only.

**ROCK FINTEK STATES AS FOLLOWS:**

Rock Fintek contends that Kitchen Winners and Adorama are liable to Rock Fintek as Sellers under a Sales and Purchase Agreement ("SPA") for an unpaid contractual rebate of $750,000; and under the SPA or, alternatively, under an unjust enrichment theory for Rock Fintek's overpayment for approximately $2 million of gloves that Adorama and Kitchen Winners delivered in excess of the amounts required by the SPA. Rock Fintek contends that Sellers breached the SPA by failing to provide the contractually required MedCare brand Nitrile medical examination gloves with FDA 510(k) clearance, but knowingly sold Rock Fintek low quality cheap Polyvinylchloride blend gloves with no detectible levels of Nitrile and failing ASTM D-6319 testing. Sellers knew that nearly half of the gloves at issue were not even labelled as required "examination" gloves but were labelled as cheaper "protection" gloves, which alone made those gloves unsuitable for their intended hospital use.

In addition, Rock Fintek maintains claims against Kitchen Winners for breach of the covenant of good faith and fair dealing and for breaches of contract regarding the one-off glove transactions that preceded the SPA.

Additionally, Rock Fintek contends that Kitchen Winners cannot succeed on its counterclaims for certain unpaid amounts for the non-conforming gloves and transportation costs because Kitchen Winners first materially breached its contractual obligations while Rock Fintek substantially complied with its obligations under the SPA by paying more than $20 million for gloves and transportation services, which excuses Rock Fintek's further performance. *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007) (citing *Hadden v. Consol. Edison Co. of N.Y.*, 34 N.Y.2d 88, 96 (1974)) ("a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or,

synonymously, where that party has committed a material breach."). Furthermore, Kitchen Winners' damages are inaccurate and contradicted by documentary evidence.

Rock Fintek has resolved its claims with JNS and Stern and therefore those claims will not proceed to trial. In addition, given the Court's rulings on summary judgment, Rock Fintek's damages theory of lost profits will not be tried. Rock Fintek reserves all appellate rights in connection in connection with the summary judgment rulings as they pertain to Adorama and Kitchen Winners.

Rock Fintek does not disagree with the procedural history outlined above.

v.      **Number of Trial Days; Jury.**

All parties seek a trial by jury. The parties estimate the trial to take 5 full trial days, which includes jury selection.

vi.     **Trial by Magistrate.**

The parties have not all consented to a trial by a magistrate judge.

vii.    **Stipulated Facts.**

**THE PARTIES**

1.      During the Covid-19 pandemic, Kitchen Winners NY Inc. engaged in the sale of Personal Protective Equipment ("PPE").

2.      Joseph Weiner, also known as Hershey Weiner, runs the day-to-day operations of Kitchen Winners.

3.      Adorama Inc. ("Adorama") is a New York City retail store specializing in photographic supplies and electronics.

4.      Joseph Mendlowitz is a director at Adorama.

5.      Rock Fintek LLC ("Rock Fintek") is a Limited Liability Company whose sole member is Thomas Kato.

6.      At all relevant times, Bradley Gilling was the Chief Operating Officer at Rock Fintek.

7.      Mr. Kato and Mr. Gilling had no relevant experience selling PPE prior to COVID.

8.      Thomas Kato never met in person, texted, emailed, or exchanged WhatsApp communications with anyone at Adorama.

9.      Thomas Kato never met in person, texted, emailed, or exchanged WhatsApp communications with Joseph Mendlowitz.

10.     Bradley Gilling never met in person, texted, emailed, or exchanged WhatsApp communications with anyone at Adorama.

11.     Bradley Gilling never met in person, texted, emailed, or exchanged WhatsApp communications with Joseph Mendlowitz.

12.     Rock Fintek has not produced any text messages, emails, or WhatsApp communications between any Rock Fintek employee or representative, on the one hand, and any Adorama employee, on the other hand.

13.     Rock Fintek has not produced any text messages, emails, or WhatsApp communications between any Rock Fintek employee or representative, on the one hand, and Joseph Mendlowitz, on the other hand.

14.     Rock Fintek has not produced any records of Zoom meetings with any Adorama employees or representatives.

15.     Rock Fintek has not produced any records of Zoom meetings with Joseph Mendlowitz.

16.     Rock Fintek has not produced any records of WhatsApp calls with any Adorama employees.

17.    Rock Fintek has not produced any records of WhatsApp calls with Joseph Mendlowitz.

18.    Rock Fintek has not produced any record that it had contact information for Joseph Mendlowitz.[3]

## THE ONE-OFF TRANSACTIONS

19.    In March 2021, Kitchen Winners sold Rock Fintek approximately 90,000 boxes of gloves in one-off transactions ("Kitchen Winners' One-Off Transactions").

20.    Rock Fintek paid $14 per box for the gloves during the Kitchen Winners' One-Off Transactions.

21.    Adorama was not a party to the Kitchen Winners' One-Off Transactions.

## THE SALES AND PURCHASE AGREEMENT

22.    Rock Fintek made the following payments to Adorama and/or Kitchen Winners:

| Date of Payment | Amount of Payment |
|---|---|
| March 5, 2021 | $470,000 |
| March 18, 2021 | $420,000 |
| March 19, 2021 | $370,000 |
| April 8, 2021 | $1,250,000 |
| April 20, 2021 | $690,000 |
| April 26, 2021 | $690,000 |
| April 27, 2021 | $345,000 |
| May 3, 2021 | $690,000 |
| May 5, 2021 | $690,000 |
| May 10, 2021 | $690,000 |

---

[3] RF would object to these being read to jury.

| | |
|---|---|
| May 11, 2021 | $690,000 |
| May 12, 2021 | $690,000 |
| May 19, 2021 | $1,380,000 |
| May 20, 2021 | $345,000 |
| May 21, 2021 | $1,035,000 |
| May 24, 2021 | $1,725,000 |
| May 25, 2021 | $1,035,000 |
| May 27, 2021 | $2,070,000 |
| May 27, 2021 | $198,435 |
| June 1, 2021 | $1,725,000 |
| June 3, 2021 | $1,380,000 |
| June 8, 2021 | $690,000 |
| June 10, 2021 | $1,035,000 |
| June 14, 2021 | $345,000 |

23.    Other than the payments listed above, Rock Fintek has not made any other payments to either Adorama or Kitchen Winners.

24.    All three March payments were for the gloves sold during the Kitchen Winners' One-Off Transactions.

25.    On April 8, 2021 Rock Fintek paid $1,250,000 as an initial deposit, pursuant to the SPA.

26.    On April 20, 2021 Kitchen Winners invoiced Rock Fintek $622,725.

27.    On April 26, 2021 Kitchen Winners invoiced Rock Fintek $671,600.

28.     On April 27, 2021 Kitchen Winners invoiced Rock Fintek $345,000.

29.     On May 3, 2021 Kitchen Winners invoiced Rock Fintek $690,000.

30.     On May 5, 2021 Kitchen Winners invoiced Rock Fintek $690,000.

31.     On May 10, 2021 Kitchen Winners invoiced Rock Fintek $690,000.

32.     On May 11, 2021 Kitchen Winners invoiced Rock Fintek $1,020,510.

33.     On May 12, 2021 Kitchen Winners invoiced Rock Fintek $1,035,000.

34.     On May 13, 2021 Kitchen Winners invoiced Rock Fintek $666,770.

35.     On May 16, 2021 Kitchen Winners invoiced Rock Fintek $198,435.

36.     On May 19, 2021 Kitchen Winners invoiced Rock Fintek $2,070,000.

37.     On May 20, 2021 Kitchen Winners invoiced Rock Fintek $690,000.

38.     On May 21, 2021 Kitchen Winners invoiced Rock Fintek $345,000.

39.     On May 24, 2021 Kitchen Winners invoiced Rock Fintek $2,392,000.

40.     On May 25, 2021 Kitchen Winners invoiced Rock Fintek $2,703,535.

41.     On May 28, 2021 Kitchen Winners invoiced Rock Fintek $1,860,700.

42.     On June 2, 2021 Kitchen Winners invoiced Rock Fintek $342,125.

43.     On June 3, 2021 Kitchen Winners invoiced Rock Fintek $661,710.

44.     On June 4, 2021 Kitchen Winners invoiced Rock Fintek $634,340.

45.     On June 8, 2021 Kitchen Winners invoiced Rock Fintek $392,405.

46.     On June 11, 2021 Kitchen Winners invoiced Rock Fintek $1,327,675.

**ROCK FINTEK'S ARRANGEMENT WITH ASCENSION HEALTH ALLIANCE**

47.     On December 7, 2020, Ascension gave Rock Fintek a purchase order for 200 million nitrile exam gloves bearing FDA 510(k) certification and meeting ASTM D6319 specifications (the "Ascension Purchase Order").

48.    Pursuant to the Ascension Purchase Order, Ascension agreed to pay Rock Fintek $37 million for 200 million nitrile exam gloves, at a price of 18.5 cents per glove.

49.    The gloves at issue in this lawsuit were delivered from China directly to warehouse space rented by Kitchen Winners.

### viii.    Trial Witnesses.

#### A.    KITCHEN WINNERS STATES AS FOLLOWS:

- <u>Hershey Weiner</u> – in person.  Hershey Weiner will testify about (i) the amount and quality of the gloves sold by Kitchen Winners to Rock Fintek, (ii) the trucking and storage of the gloves and the costs associated therewith, (iii) the outstanding unpaid invoices owed by Rock Fintek, (iv) the timeliness of Rock Fintek's payments, (v) Adorama's role in the transactions, (vi) the negotiations and drafting of the Sales and Purchase Agreement. Kitchen Winners will also authenticate any records and testify that (a) the record was made at or near the time by someone with knowledge; (b) the record was kept in the course of a regularly conducted activity of business; and (c) making the record was a regular practice of that activity.

- <u>Arik Maimon</u> – in person.  Maimon will testify about (i) the timeliness of Rock Fintek's payments, and (ii) Adorama's role in the transactions.

- <u>Joel Stern</u> – in person.  Stern will testify about the  the gloves that JNS Capital Holdings LLC sold and delivered to Rock Fintek.

- <u>Principal of Wenzy Inc.</u> (David Wertzberger) – in person.   A principal of Wenzy Inc. will testify about the trucking of the gloves and the costs associated therewith.  A Principal of Wenzy  Inc. will also authenticate any records and testify that (a) the record was made at or near the time by someone with knowledge; (b) the record was kept in the course of a regularly conducted activity of business; and (c) making the record was a regular practice of that activity.

- <u>Principal of ACL America</u>. – in person.   A principal of ACL America will testify about the trucking of the gloves and the costs associated therewith.  A Principal of ACL America will also authenticate any records and testify that (a) the record was made at or near the time by someone with knowledge; (b) the record was kept in the course of a regularly conducted activity of business; and (c) making the record was a regular practice of that activity.

- <u>Principal of MD 3PL</u>. – in person.   A principal of MD 3PL will testify about the trucking of the gloves and the costs associated therewith.   A Principal of MD 3PL will also authenticate any records and testify that (a) the record was made at or near the time by someone with knowledge; (b) the record was kept in the course of a regularly conducted activity of business; and (c) making the record was a regular practice of that activity.

- <u>Principal of Del Express</u> - in person.  A principal of Del Express will testify about the Bills of Lading as well as about the trucking of the gloves and the costs associated therewith.  A principal of Del Express will also authenticate any records and testify that (a) the record was made at or near the time by someone with knowledge; (b) the record was kept in the course of a regularly conducted activity of business; and (c) making the record was a regular practice of that activity.

- <u>Michael Elstro</u> – via deposition.  Elstro will testify about (i) the amount of gloves received by The Resource Group/Ascension, (ii) the amount that Ascension paid Rock Fintek for the gloves.

- <u>Willim Huber</u> - in person.  Huber will testify about the statistical adequacy of Rock Fintek's testing of the gloves.

- <u>John Carson</u> - via deposition.  Carson will testify about the statistical adequacy of Rock Fintek's testing of the gloves.

- <u>Thomas Kato</u> - in person.  Kato will testify about (i) the payment history from Ascension to Rock Fintek, (ii) Rock Fintek's procurement of the gloves, (iii) Rock Fintek's actions in connection with the purchase order for gloves that it obtained from Ascension; and (iv) Rock Fintek's dealings with Kitchen Winners, JNS, Stern, and Adorama.

- <u>Bradley Gilling</u> – in person.  Gilling will testify about (i) the payment history from Ascension to Rock Fintek, (ii) Rock Fintek's procurement of the gloves, (iii) his communications (or lack thereof) with Adorama, (iv) the negotiations of the SPA.
- Kitchen Winners reserves the right to call any witnesses on Rock Fintek's and Adorama's witness lists.

- Kitchen Winners reserves the right to call rebuttal witnesses.

### B.    ADORAMA

- <u>Hershey Weiner</u> – in person.  Mr. Weiner will testify about Adorama's role in the transactions, and the negotiations and drafting of the Sales and Purchase Agreement.

- <u>Joseph Mendlowitz</u> - in person.  Adorama will testify about its role in the transactions at issue.

- <u>Thomas Kato</u> - in person.  Kato will testify about (i) the payment history from Ascension to Rock Fintek, (ii) Rock Fintek's procurement of the gloves, and (iii) his communications (or lack thereof) with Adorama.

- <u>Bradley Gilling</u> – in person.  Gilling will testify about (i) the payment history from Ascension to Rock Fintek, (ii) Rock Fintek's procurement of the gloves, (iii) his communications (or lack thereof) with Adorama, (iv) the negotiations of the SPA.

- Adorama reserves the right to call any witnesses on Rock Fintek's witness list.

- Adorama reserves the right to call rebuttal witnesses.


### C.    Rock Fintek May Call the Following Witnesses at Trial:

| Name | Brief Summary of Testimony |
|---|---|
| Thomas Kato (live) | Mr. Kato will testify regarding the negotiations and substance of the SPA and the parties' roles under the SPA, the course of performance of the SPA and the one-off transactions at issue, the defects in and non-conforming nature of the gloves, damages sustained by Rock Fintek, and Rock Fintek's mitigation of damages efforts. Mr. Kato will also testify as to the chain of custody, the sampling and preservation and storage of gloves sampled from Medline warehouses during this litigation. |
| Bradley Gilling (live) | Mr. Gilling will testify regarding the negotiations and substance of the SPA and the parties' roles under the SPA, the course of performance of the SPA and the one-off transactions at issue, the sampling and preservation and storage of gloves sampled from Medline warehouses during this litigation, the defects in and non-conforming nature of the gloves, damages sustained by Rock Fintek, and Rock Fintek's mitigation of damages efforts. |
| Alex King (Dimerco Logistics) (deposition) | Mr. King's deposition testimony will describe the method of shipping and proofs of delivery for the gloves at issue as well as the ability for Rock Fintek and its agents to verify the nature of the products. |
| Ascension Health (deposition) | Ascension Health will testify as to the defects in and non-conforming nature of the gloves, the storage of the gloves and Rock Fintek's mitigation of damages efforts. |
| Medline, Inc. (deposition) | Medline will explain the procedure underlying the audit that revealed defects in and non-conforming nature of the gloves, the storage of the gloves, the inventory count of the gloves, including to identify "protection" versus "examination" gloves, and manner of receiving shipments of gloves sold by Rock Fintek to Ascension. |
| Joseph Mendlowitz (live) | Mr. Mendlowitz is expected to testify regarding the negotiations and substance of the SPA and the parties' roles |

| | |
|---|---|
| | under the SPA, the course of performance of the SPA, and Adorama's breaches of the SPA. |
| Joel Stern (live) | Mr. Stern is expected to testify as to the nature of the gloves received from Kitchen Winners/Adorama; the source and nature of the gloves at issue; and his pertinent communications with Adorama/Kitchen Winners and their logistics providers. |
| Hershey Weiner (live) | Mr. Weiner is expected to testify regarding the negotiations and substance of the SPA and the parties' roles under the SPA, the course of performance of the SPA, and Adorama's and Kitchen Winners' breaches of the SPA. |
| Alan Schwartz (deposition) | Mr. Schwartz will provide expert testimony as to requirements for obtaining FDA 510(k) clearance, including substantial equivalence, the meaning and significance of product codes listed in FDA clearance letters provided to Rock Fintek by Kitchen Winners and Adorama, requirements of the ASTM D-6319 specifications specified in the pertinent FDA clearance letter, and qualifications of ARDL to conduct glove testing. |
| Tzali Gombo (deposition) | Mr. Gombo will provide expert testimony as to differences in quality between "protection" versus "examination" gloves. |
| Jason Poulton, ARDL (deposition) | Testing of samples of gloves, testimony consistent with Dr. Poulton's expert report and deposition testimony. |
| Any witness identified by Adorama and/or Kitchen Winners. | |
| Rock Fintek reserves the right to call rebuttal witnesses. | |

ix.    **Deposition Designations.**

  A. **Rock Fintek:**

**Kitchen Winners and Adorama object to the use of any deposition testimony absent compliance with Fed. R. Civ. P. 32.  Rock Fintek responds by reference to the Court's ruling at the Pretrial Conference that deposition testimony may be introduced in lieu of live testimony in order to reduce burdens on non-party witnesses and streamline the trial in this case.**

| Deponent | Page/Line | Objection | Counter Designation |
|---|---|---|---|
| Michael Elstro | 7:19-21 | | Elstro 7:16-18 |
| Michael Elstro | 9:11-13 | | Elstro 9:9-10 |
| Michael Elstro | 9:20-25 | | Elstro    12:16-13:4; 13:8; 57:20-58:17. |
| Michael Elstro | 12:6-8 | | Elstro 12:9-10 |
| Michael Elstro | 12:11-15 | Fed.    R.    Evid. 401/402 | |

| | | | |
|---|---|---|---|
| Michael Elstro | 13:10-16 | Fed. R. Evid. 401/402 | |
| Michael Elstro | 17:3-11 | | Elstro 61:18-62:20 |
| Michael Elstro | 19:22-20:7 | Fed. R. Evid. 602, 802 | Elstro 17:19-18:10 |
| Michael Elstro | 20:15-22:5 | Fed. R. Evid. 602, 802 | Elstro 17:19-18:10; 22:6-23:3 |
| Michael Elstro | 23:5-6 | | |
| Michael Elstro | 23:10-24 | Fed. R. Evid. 403; 802 | |
| Michael Elstro | 24:22-25:2 | Fed. R. Evid. 802; assumes facts not in evidence. | Elstro 27:10-22 |
| Michael Elstro | 25:6-26:3 | Fed. R. Evid. 602, 802 | |
| Michael Elstro | 27:24-28:12 | | |
| Michael Elstro | 31:8-14 | Fed. R. Evid. 802; mischaracterizes prior testimony; assumes facts not in evidence. | |
| Michael Elstro | 35:9-13 | | |
| Michael Elstro | 36:18-37:1 | | Elstro 37:2-5 |
| Michael Elstro | | | |
| Michael Elstro | 46:19-20 | Fed. R. Evid. 403 | |
| Michael Elstro | 47:3-16 | Fed R. Evid. 403 | |
| Michael Elstro | 47:21-22 | | |
| Michael Elstro | 48:3-19 | Fed. R. Evid. 602, 802 | |
| Michael Elstro | 48:23-49:2 | Fed. R. Evid. 602, 802 | |
| Brad Jaeger | 5:8-10 | | |
| Brad Jaeger | 7:14-22 | | |
| Brad Jaeger | 8:14-9:6 | | |
| Brad Jaeger | 10:6-10:22 | | |
| Brad Jaeger | 11:5-16 | | |
| Brad Jaeger | 12:3-15 | | |
| Brad Jaeger | 22:7-23:12 | | |
| Brad Jaeger | 28:22-29:3 | | |
| Brad Jaeger | 53:6-60:18 | | |
| Brad Jaeger | 61:10-21 | | |
| Brad Jaeger | 62:6-64:10 | | |
| Brad Jaeger | 67:12-68:20 | | Jaeger 68:21-25 |
| Alexander King (September 12) | 5:15-17 | Fed. R. Civ. P. 32 | |

| | | | |
|---|---|---|---|
| Alexander King (September 12) | 13:4-9 | Fed. R. Civ. P. 32 | |
| Alexander King (September 12) | 13:16-19 | Fed. R. Civ. P. 32 | |
| Alexander King (September 12) | 14:12-16 | Fed. R. Civ. P. 32 | |
| Alexander King (September 12) | 14:20-21 | Fed. R. Civ. P. 32 | |
| Alexander King (September 12) | 42:4-15 | Fed. R. Evid. 602 Fed. R. Civ. P. 32 | King (9/12) 42:16-43:18; King (9/18) 50:5-11 |
| Alexander King (September 18) | 11:21-12:22 | Fed. R. Civ. P. 32 | King (9/18) 14:25-15:12; 17:23-19:11 |
| Alexander King (September 18) | 32:4-33:2 | Fed. R. Civ. P. 32; Fed. R. Evid. 602 | 33:3-14 |
| Alexander King (September 18) | 33:15-23 | Fed. R. Civ. P. 32 | |
| Alexander King (September 18) | 72:6-75:6 | Fed. R. Evid. 802 Fed. R. Civ. P. 32 | 75:24-76:4 |
| Alexander King (September 18) | 76:5-78:8 | Fed. R. Evid. 802 Fed. R. Civ. P. 32 | |
| Alexander King (September 18) | 80:11-81:4 | Fed. R. Evid. 802 Fed. R. Civ. P. 32 | |
| Tzali Gombo | 5:2-6 | Fed. R. Civ. P. 32 | |
| Tzali Gombo | 13:3-9 | Fed. R. Civ. P. 32 | |
| Tzali Gombo | 14:3-4 | Fed. R. Civ. P. 32 | |
| Tzali Gombo | 14:10-11 | Fed. R. Civ. P. 32 | |
| Tzali Gombo | 14:15-15:9 | Fed. R. Civ. P. 32; Fed. R. Evid. 402/403 | |
| Tzali Gombo | 40:22-41:18 | Fed. R. Civ. P. 32; Fed. R. Evid. 402/403, 702 | Gombo 37:10-38:10 41:19-42:6 48:15-49:22 |
| Alan Schwartz | 7:6-9 | Fed. R. Civ. P. 32 | Schwartz 6:11-20 |
| Alan Schwartz | 7:12-24 | Fed. R. Civ. P. 32 | |
| Alan Schwartz | 8:18-24 | Fed. R. Civ. P. 32 | |
| Alan Schwartz | 10:23-11:13 | Fed. R. Evid. 702; Fed. R. Civ. P. 26, 32 | Schwartz 12:1-14 |
| Alan Schwartz | 13:13 | Fed. R. Evid. 702, 802; Fed. R. Civ. P. 26, 32 | Schwartz 14:6-12 |
| Alan Schwartz | 13:20-14:5 | Fed. R. Evid. 401/403, 702, 802, 901; Fed. R. Civ. P. 26, 32 | |

| Alan Schwartz | 14:13-15:12 | Fed. R. Evid. 401/403, 702, 802, 901; Fed. R. Civ. P. 26, 32 | |
| Alan Schwartz | 16:5-18:9 | Fed. R. Evid. 401/403, 702, 802, 901; Fed. R. Civ. P. 26, 32 | 18:17-19:14 |
| Alan Schwartz | 18:12-15 | Fed. R. Evid. 401/403, 702, 802, 901; Fed. R. Civ. P. 26, 32 | |
| Alan Schwartz | 20:6-11 | Fed. R. Evid. 401/403, 702, 802; Fed. R. Civ. P. 26, 32 | |
| Alan Schwartz | 23:2-9 | Fed. R. Evid. 401/403, 702, 802, 901; Fed. R. Civ. P. 26, 32 | 25:15-26:11 |
| Alan Schwartz | 30:16-23 | Fed. R. Civ. P. 32 | |
| Alan Schwartz | 32:6-8 | Fed. R. Evid. 401/403, 702; Fed. R. Civ. P. 26, 32 | |
| Alan Schwartz | 32:10-33:5 | Fed. R. Evid. 401/403, 702; Fed. R. Civ. P. 26, 32 | |
| Alan Schwartz | 33:11-16` | Fed. R. Evid. 702 Fed. R. Civ. P. 26, 32 | |
| Alan Schwartz | 48:4-5 | Fed. R. Civ. P. 32 | |
| Alan Schwartz | 48:9-49:12 | Fed. R. Civ. P. 32 | Schwartz 49:13-50:2 |
| Alan Schwartz | 69:19-71:11 | Fed. R. Evid. 702 Fed. R. Civ. P. 26, 32 | Schwartz 56:25-57:23; Carson designations below |
| Alan Schwartz | 87:9-88:1 | Fed. R. Civ. P. 32 | |
| Alan Schwartz | 88:5-12 | Fed. R. Civ. P. 32 | *See* Carson designations below. |
| Alan Schwartz | 89:3-6 | Fed. R. Civ. P. 32 | |
| Jason Poulton | 5:8-10 | Fed. R. Evid 401/403 | |
| Jason Poulton | 8:21-23:6 | Fed. R. Evid 401/403 | |
| Jason Poulton | 35:23-39:23 | Fed. R. Evid 401/403, 702, 901 | Poulton 27:7-32:18; 34:22-35:22 |

| Jason Poulton | 40:19-42:21 | Fed. R. Evid 401/403, 702, 901 | Poulton 39:24-40:18; 42:22-44:11 |
| Jason Poulton | 44:12-47:8 | Fed. R. Evid 401/403, 702, 901 | Poulton 47:9-24 |
| Jason Poulton | 47:25-49:19 | Fed. R. Evid 401/403, 702, 901 | |
| Jason Poulton | 49:25-54:6 | Fed. R. Evid 401/403, 702, 901 | Poulton 54:7-57:15 |
| Jason Poulton | 57:16-25 | Fed. R. Evid 401/403, 702, 901 | Poulton  58:2-5 |
| Jason Poulton | 58:6-60:14 | Fed. R. Evid 401/403, 702, 901 | Poulton 60:15-62:2 |
| Jason Poulton | 62:3-15 | Fed. R. Evid 401/403, 702, 802, 901 | Poulton 63:18-24 |
| Jason Poulton | 63:8-17 | Fed. R. Evid 401/403, 702, 802, 901 | Poulton 64:20-67:16 |
| Jason Poulton | 68:2-22 | Fed. R. Evid 401/403, 702, 901 | Poulton 68:23-72:5 |
| Jason Poulton | 72:6-17 | Fed. R. Evid 401/403, 702, 901 | Poulton 72:18-74:13 |
| Jason Poulton | 74:14-75:17 | Fed. R. Evid 401/403, 702, 901 | Poulton 75:18-78:9 |
| Jason Poulton | 78:17-80:14 | Fed. R. Evid 401/403, 702, 901 | |
| Jason Poulton | 82:18-83:13 | Fed. R. Evid 401/403, 702, 901 | Poulton 83:14-14 |
| Jason Poulton | 80:15-82:7 | Fed. R. Evid 401/403, 702, 901 | |

**B.  Kitchen Winners:**

| Deponent | Page/Line | Objection | Counter Designation |
| --- | --- | --- | --- |
| Michael Elstro | 7:16-21 | | SEE ABOVE |
| Michael Elstro | 9:9-25 | | SEE ABOVE |
| Michael Elstro | 17:3-11 | | SEE ABOVE |
| Michael Elstro | 35:9-13 | | SEE ABOVE |
| Michael Elstro | 57:20-58:17 | | |
| Michael Elstro | 61:18-62:20 | | SEE ABOVE |
| John Carson | 5:8-10 | | |

| John Carson | 11:8-15:7 | | |
|---|---|---|---|
| John Carson | 17:8-21:20 | | |
| John Carson | 24:2-28:12 | FRE 403 | 28:13-30:21; 31:11-32:25 |
| John Carson | 64:17-66:17 | FRE 403 | 66:18-23 |
| John Carson | 66:24-67:11 | FRE 403 | 77:6-22 |

**x.     Exhibit List.**

The parties will provide copies of their exhibit lists on February 21, 2025 along with binders of their exhibits and a letter setting forth the basis for their objections to the exhibits proposed by the other side.

Respectfully submitted,

**LIPSIUS-BENHAIM LAW, LLP**

/s/ Alexander J. Sperber
Alexander J. Sperber
Yisroel Steinberg
80-02 Kew Gardens Road, Suite 1030
Kew Gardens, NY 11415
(212) 981-8440
asperber@lipsiuslaw.com
ysteinberg@lipsiuslaw.com

*Attorneys for Kitchen Winners NY Inc.*


**THE LAW OFFICE OF AVRAM E. FRISCH, LLC**

/s/ Avram E. Frisch
Avram E. Frisch
The Law Office of Avram E. Frisch, LLC
1 University Plaza, Suite 119 Hackensack, NJ 07601
Telephone: 201-289-5352
Facsimile: 866-883-9690
Frischa@avifrischlaw.com

*Attorneys for Adorama, Inc.*


**POLLACK SOLOMON DUFFY LLP**

/s/ Phillip Rakhunov
Phillip Rakhunov
Lauren Riddle (pro hac vice)
John Yokow
48 Wall Street, 31st Fl
New York, NY 10005
(212) 493-3100
prakhunov@psdfirm.com
lriddle@psdfirm.com
jyokow@psdfirm.com

*Attorneys for Rock Fintek LLC*